IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

FILED
IN CLERKS OFFICE

2004 SEP 24  P 3: 52

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| STEVEN G. WICKS and GERALD A. KALBFLEISCH, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| PUTNAM INVESTMENT MANAGEMENT, LLC and PUTNAM RETAIL MANAGEMENT, LLP, | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No.:
04-CV-10988 (GAO)

**PLAINTIFFS STEVEN G. WICKS' AND GERALD A. KALBFLEISCH'S
MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS THEIR COMPLAINT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ iii

I.    PRELIMINARY STATEMENT ................................................................................................ 1

II.   THE ALLEGATIONS PLED IN PLAINTIFFS' COMPLAINT .......................................... 2

    A.    The Parties ................................................................................................................ 2

    B.    Plaintiffs' Section 36(b) Excessive Fees Claims ...................................................... 2

    C.    Allegations Supporting Plaintiffs' Section 36(b) Claims ......................................... 3

    D.    Plaintiffs' Involvement In Earlier Illinois Actions ................................................... 6

III.  ARGUMENT ............................................................................................................................ 7

    THIS COURT SHOULD DENY DEFENDANTS' PENDING MOTION TO
    DISMISS PLAINTIFFS' COMPLAINT IN ITS ENTIRETY ............................................. 7

    A.    Applicable Legal Standards Governing Fed. R. Civ. P. 12(b)(6) Motions
        To Dismiss ................................................................................................................ 7

    B.    Fed. R. Civ. P. 41(a)(1)'s "Two Dismissal" Rule Does Not Bar Plaintiffs
        From Pursuing Their Present Action ........................................................................ 8

        1.    The Present Action Is Not "Based On Or Including The Same
            Claim" As The Actions Dismissed In Illinois ............................................. 9

        2.    The "Two Dismissal" Rule Is Inapplicable To Stipulated
            Dismissals As A Matter Of Law ................................................................. 11

    C.    Defendants' Motion Is Fatally Flawed Because It Rests On The False
        Premise That *Gartenberg*'s Evidentiary Factors Impose A Heightened
        Pleading Standard In Section 36(b) Cases .............................................................. 12

        1.    The *Gartenberg* Factors Are An Evidentiary Standard, Not
            Pleading Requirements ................................................................................ 13

        2.    The *Gartenberg* Factors Can Apply Only After A Section 36(b)
            Plaintiff Has Had A Full Opportunity For Discovery ................................ 14

    D.    Plaintiffs' Complaint Easily States A Claim Under *Gartenberg*'s General
        Legal Standard Potentially Applicable To Section 36(b) Cases ............................ 16

1.   Economies Of Scale .................................................................................. 16

2.   Comparative Fee Structures ....................................................................... 18

3.   Nature And Quality Of Services Provided ................................................. 18

4.   Profitability Of The Funds To Defendants ............................................... 19

5.   Fall-Out Benefits And Indirect Profits ..................................................... 19

6.   Independence And Conscientiousness Of The Trustees ........................... 20

IV.   CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Federal Cases**                                                                           **Page(s)**

*Allianz CP General Insurance Co. Ltd. v. Blue Anchor Line*, 2004 WL 1048228
   (S.D.N.Y. May 7, 2004)...................................................................................................12

*Brown v. Hartshorne Public School District*, 926 F.2d 959 (10th Cir. 1991) ...............................10

*Cooperman v. Individual, Inc.*, 171 F.3d 43 (1st Cir. 1999)............................................................8

*Educadores Puertorriquenos v. Hernandez*, 367 F.2d 61 (1st Cir. 2004) ...................................7, 13

*Evangelist v. Fidelity Management & Research Co.*, 554 F. Supp. 87 (D. Mass. 1982) ..............15

*Garita Hotel Ltd. v. Ponce Federal Bank*, 958 F.2d 15 (1st Cir. 1992) ............................................8

*Gartenberg v. Merrill Lynch Asset Management*, 528 F. Supp. 1038 (S.D.N.Y. 1981) ...............17

*Gartenberg v. Merrill Lynch Asset Management*, 694 F.2d 923 (2d Cir. 1982) ...............12, 18, 20

*Green v. Fund Asset Management, L.P.*, 19 F. Supp. 2d 227 (D.N.J. 1998)...........................14, 16

*Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486 (N.D.Ill. 1999).........................................14, 15

*Hishon v. King & Spaulding*, 467 U.S. 69 (1984)............................................................................8

*In Re TCW/DW North American Government Income Trust Securities Litigation*, 941
   F.Supp. 326 (S.D.N.Y. 1996)................................................................................................15

*Island Stevedoring, Inc. v. Barge CCBI*, 129 F.R.D. 430 (D. Puerto Rico 1990) .........................11

*Krantz v. Fidelity Management & Research Co.*, 98 F. Supp. 2d 150
   (D. Mass. 2000)......................................................................................13, 15, 16, 17, 19, 20

*Krantz v. Prudential Invs. v. Fund Mgmt., LLC*, 305 F.3d 140 (3d Cir. 2002).............................20

*Krinsk v. Fund Asset Management, Inc.*, 875 F.2d 404 (2d Cir. 1989).................................17, 20

*Langner v. Brown*, 913 F. Supp. 260 (S.D.N.Y. 1996) .............................................................14, 16

*Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955)...............................................10, 11

*Meyer v. Oppenheimer Management Corp.*, 609 F. Supp. 380 (S.D.N.Y. 1984) .........................11

Meyer v. Oppenheimer Management Corp., 764 F.2d 76 (2d Cir. 1985) ...............................14, 15

Migdal v. Rowe Price-Fleming Internat., Inc., 248 F.3d 321 (4th Cir. 2001) .........................18, 20

Millenco L.P. v. MEVC Advisors, Inc., 2002 WL 31051604 (D. Del. August 21, 2002) ...........14

Pfeiffer v. Bjurman, Barry & Associates, 2004 WL 1903075 (S.D.N.Y. August 26, 2004).........14

Poloron Products, Inc., 534 F.2d 1012 (2d Cir. 1976).............................................................11, 12

Potomac Capital Markets v. Prudential-Bache Dividend Fund, Inc., 726 F. Supp. 87
    (S.D.N.Y. 1989)....................................................................................................................14, 16

Seidel v. Lee, 1996 WL 578449 (D. Del. August 16, 1996) ..........................................................14

Strougo v. BEA Associates, 2000 WL 45714 (S.D.N.Y. January 19, 2000)..................................14

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)...................................................................7, 13

Western Group Nurseries, Inc. v. Ergas, 211 F. Supp. 2d 1362 (S.D. Fla. 2002) .........................11

Verkouteren v. Blackrock Fin. Mgmt., Inc. 1999 WL 511411 (S.D.N.Y. July 20, 1999) ...........20

Yampolsky v. Morgan Stanley Investment Advisors, Inc., 2004 WL 1065533 (S.D.N.Y.
    May 12, 2004).............................................................................................................................16

## Miscellaneous Authorities

15 U.S.C. § 80a-35(b).................................................................................................................1, 2

15 U.S.C. § 80a-35(b)(3) .................................................................................................................9

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................passim

Federal Rule of Civil Procedure 41(a)(1) ............................................................................. 1, 8-12

Securities Exchange Act of 1934, § 28(e) ..............................................................................19, 20

Security and Exchange Commission Rule 12b-1, 17 C.F.R. ¶ 270.12b-1 .......................................2

Securities; Brokerage and Research Services, Exchange Act Release No. 23170,
    17 C.F.R. Part 241 (April 23, 1986), available at 1986 WL 630442 .......................................20

# I.
# PRELIMINARY STATEMENT

Plaintiffs Steven G. Wicks ("Wicks") and Gerald A. Kalbfleisch ("Kalbfleisch") hereby oppose the Memorandum Of Law In Support Of Motion To Dismiss The Complaint ("Mot.") that Defendants Putnam Investment Management, LLC ("PIM") and Putnam Retail Management, LLP ("PRM") filed with this court on August 13, 2004. Plaintiffs' Complaint more than adequately states a claim for recovery of excessive investment advisory and distribution fees under Section 36(b) of the Investment Company Act of 1940 (the "ICA"), 15 U.S.C. § 80a-35(b).

Defendants' initial "gotcha" argument that the Complaint should be dismissed pursuant to Fed. R. Civ. P. Rule 41(a)(1)'s "two dismissal" provision is premised upon errors of both fact and law. As to the facts, certain earlier actions dismissed in Illinois did not present the "same claim" asserted herein, since they targeted different acts of wrongdoing that victimized different mutual funds during different operative time periods. Moreover, as a matter of law, Rule 41(a)(1) is inapplicable where, as here, one of these earlier dismissals was by mutual stipulation.

Defendants' remaining arguments under Fed. R. Civ. P. 12(b)(6) are equally flawed because they improperly attempt to impose an *evidentiary standard* developed for bench trials by the Second Circuit in Gartenberg as *pleading requirements* in the case at bar. This runs contrary to recent U.S. Supreme Court and First Circuit precedent which clearly prohibits the use of judicially-created heightened pleading standards, calling instead for the "short and plain statement of the claim" contemplated by Fed. R. Civ. P. 8(a). Once the proper pleading standard has been applied, it becomes clear that the level of detail in Plaintiffs' Complaint far surpasses anything that the Federal Rules require.

Defendants' present motion should be summarily denied, and Plaintiffs should be permitted to proceed to the discovery phase of this case.

## II.
## THE ALLEGATIONS PLED IN PLAINTIFFS' COMPLAINT[1]

### A.    The Parties

Plaintiffs Wicks and Kalbfleisch are each shareholders in one or more of nine different Putnam mutual funds (the "Funds"), technically known as open-end registered investment companies. (Compl., ¶¶ 2, 14-15 & Exh. 1). [2]

Defendant PIM provides investment advisory services to the Funds in exchange for a fee (the "management fee" or "investment advisory fee") based upon varying percentages of total assets under management. (Compl., ¶¶ 4-5, 16, 25). PIM operates pursuant to management contracts which require annual approval by the Funds' boards of directors (the "directors" or "trustees"). (Id., ¶¶ 4, 114-15, 122).

Defendant PRM provides underwriting and marketing services to the Funds in exchange for a fee (the "12b-1 fee" or "distribution fee") based upon a percentage of total assets under management. (Compl., ¶¶ 9-10, 17). PRM receives such fees under share distribution plans approved and adopted annually by the Funds' directors pursuant to the Security and Exchange Commission's (the "SEC's") Rule 12b-1, 17 C.F.R. ¶ 270.12b-1. (Id., ¶¶ 9-10, 35, 40).

### B.    Plaintiffs' Section 36(b) Excessive Fees Claims

Plaintiffs allege that certain components of the management fees and 12b-1 fees charged to the Funds by PIM and PRM have been excessive, and therefore in breach of Defendants' fiduciary duties "with respect to the receipt of compensation for services" under Section 36(b). (Compl., ¶¶ 1-2, 13, 22). Plaintiffs seek recovery of these excessive fees on behalf of the Funds.

---

[1] With the exception of subheading "D" below, the following factual allegations are all drawn from Plaintiffs' Complaint ("Compl.") filed with this Court on May 17, 2004.

[2] Whatever point Defendants are trying to make with their standing arguments is lost on Plaintiffs. See (Mot., pp. 3 n.1, 19-20). For standing purposes, all that Section 36(b) requires is for claimants to be "security holder[s] of . . . [a] registered investment company," and here it is undisputed that each Plaintiff is a shareholder in one or more of the Funds at issue. See 15 U.S.C. § 80a-35(b).

(Id.).

With respect to PIM's management fees, Plaintiffs challenge only their pure Portfolio Selection Fee component which is charged for activities relating to selecting and trading securities for the Funds to buy, sell, or hold. (Compl., ¶¶ 5, 23, 29). Plaintiffs do *not* challenge the remaining components of PIM's management fees consisting of certain administrative fees and costs. (Id.).

With respect to PRM's 12b-1 fees, Plaintiffs challenge only their pure Promotional Distribution Fee component which is properly receivable when the Funds' directors have found that it will result in economies of scale benefits to shareholders by virtue of reduced management fees. (Compl., ¶ 10, 37-39). Plaintiffs do *not* challenge the remaining components of PRM's 12b-1 fees, such as contingent deferred sales commission payments to the broker-dealers who sell shares in Putnam mutual funds. (Id.).

## C.    Allegations Supporting Plaintiffs' Section 36(b) Claims

Plaintiffs allege that Defendants' Portfolio Selection Fees and Promotional Distribution Fees are excessive because they are disproportionately large in relation to services rendered, and thus could not have been the product of true arm's-length bargaining. (Compl., ¶¶ 52-55, 128). In support of these allegations, Plaintiffs have pled as follows:

**Economies of Scale.** Defendants' fees are excessive because they reflect a non-participation by shareholders in the economies of scale benefits that have resulted from a tremendous growth in the Funds' assets. See (Compl., ¶¶ 6, 11, 25-28, 31, 41-46, 56-76, 84-85, 89, 122, 124, 132). These economies arise when it costs less to provide services for each additional dollar of assets under management, with such costs ultimately approaching zero. (Id., ¶¶ 6, 56). Here, however, Defendants have actually *increased* their Portfolio Selection Fees in both percentage and dollar terms as the Funds' assets have grown, suggesting that they are

3

capturing resulting scale benefits exclusively for themselves. (Id., ¶¶ 11, 41-46, 59, 69-75, 89). Defendants' use of breakpoints[3] merely gives the false appearance that they are equitably sharing scale benefits, given that the initial fees are set too high, the breakpoints are spaced too far apart, and the reductions across breakpoints are too small. (Id., ¶¶ 25-28). Moreover, as a matter of law, Defendants are not entitled to charge Promotional Distribution Fees at all where scale benefits are not being equitably shared. (Id., ¶¶ 10, 46, 48, 50, 89).

**Comparative Fee Structures**. Defendants' fees are excessive in comparison to what their affiliate charges to institutional clients (*e.g.*, pension funds) for identical services after engaging in arm's-length bargaining. See (Compl., ¶¶ 4, 7-8, 53-54, 77-89, 97-98, 101-102, 106-107, 111, 116). For example, Defendants receive Portfolio Selection Fees from the Funds that are two to four times greater in percentage terms, and hundreds of times greater in dollar terms, than what Putnam's institutional clients pay. (Id., ¶ 88). Moreover, Putnam's institutional clients pay no Promotional Distribution Fees whatsoever. (Id., ¶¶ 54, 77-78, 84-85).

**Nature And Quality Of Services Provided**. Defendants' fees are excessive in relation to the nature and quality of the services that they have provided to the Funds. See (Compl., ¶¶ 101-05). As previously noted, Putnam charges its institutional clients dramatically lower Portfolio Selection Fees for qualitatively identical stock picking services. (Id., ¶ 102). Moreover, these services are clearly second-rate given the Funds' ongoing and substantial underperformance of the benchmark S&P index. (Id., ¶¶ 103-04). Nor are Defendants' Promotional Distribution Fee services of sufficient quality given their failure to have resulted in intended cost savings for shareholders. (Id., ¶ 105).

---

[3] The term "breakpoints" refers to a fee structure in which management fees -- expressed as a percentage of total assets under management -- are incrementally reduced as those assets increase in amount. See (Compl., ¶ 25 & Exh. 4).

**Profitability Of The Funds To Defendants**. Defendants' fees are excessive when considered in light of the enormous (and ever growing) net profits that those fees have generated. See (Compl., ¶¶ 11, 41-46, 59, 69-75, 89, 106-12). Due to economies of scale, Defendants' profits have reached disproportionate levels because their costs have been decreasing at the same time as their Portfolio Selection Fees -- based on total assets under management -- have been increasing. (Id.). Moreover, assuming that Defendants' profits from their institutional clients are fairly dictated by the market, then the profits they are making from the Funds are artificially high by comparison. (Id., ¶ 106). In the case of Promotional Distribution Fees, Defendants are reaping *pure profit* because they are using such fees to cover their own expenses rather than those of the Funds. (Id., ¶¶ 110-12).

**Fall-Out Benefits And Indirect Profits**. Defendants' fees are particularly excessive when all of their additional "fall-out benefits" (*i.e.*, indirect profits) generated from the Funds are properly taken into account. See (Compl., ¶¶ 90-100). These fall-out benefits include, for example, "soft dollars" arrangements with broker-dealers whereby Defendants pay higher than necessary commissions in exchange for certain rebates and kickbacks that benefit Defendants rather than the Funds. (Id., ¶¶ 92-97). Moreover, Defendants and their affiliates have also reaped additional fall-out benefits in the form of custodian fees, transfer agency fees, security loaning fees, cross-selling opportunities, and the development of good will. (Id., ¶¶ 91, 98-99).

**Independence And Conscientiousness Of The Trustees**. Defendants' fees are excessive as a result of being negotiated and approved by Fund trustees who have failed to act independently or conscientiously in accordance with their fiduciary duties. See (Compl., ¶¶ 53, 95, 100, 113-22). Indeed, Defendants have exerted *de facto* authority over the trustees by controlling their activities and compensation. (Id., ¶ 122). In exchange for being appointed to the

5

boards of over one hundred different Putnam mutual funds, the trustees have hired PIM and PRM to be their exclusive service providers. (Id.). Moreover, the trustees either have not been provided with, or have not considered, critical information necessary to assess the reasonableness of Defendants' fees. (Id., ¶¶ 41, 53, 95, 100, 114, 116, 119, 122).

**D.    Plaintiffs' Involvement In Earlier Illinois Actions[4]**

On June 22, 2001, Plaintiff Wicks (but *not* Plaintiff Kalbfleisch) was among a group of plaintiffs that filed a Section 36(b) excessive fees case in the Southern District of Illinois against multiple defendants that included both PIM and PRM (the "First Action"). See (Mot., pp. 1, 5 & Exh. B). Of the nine Putnam mutual funds for which recovery is sought in the case at bar, only two of them -- *viz.*, Putnam Fund for Growth and Income and Putnam Investors Fund -- were likewise targeted in the First Action.[5] On March 28, 2002, the First Action was dismissed *without prejudice* pursuant to a Rule 41(a)(1) stipulation of dismissal executed by all parties. (Id. at Exh. C). In connection with this stipulated dismissal, PIM and PRM were represented by the same attorney, Seth M. Schwartz, Esq., who is their present counsel of record.

On March 2, 2004, Plaintiffs Wicks and Kalbfleisch filed a Section 36(b) excessive fees case against PIM and PRM in the Southern District of Illinois (the "Second Action"). See (Mot., pp. 2, 5 & Exh. D). The Second Action sought to recover overcharges on behalf of the same nine Putnam mutual funds at issue in the case at bar. (Id. at Exh. D, ¶¶ 14-15). On May 14, 2004, the Second Action was dismissed *without prejudice* pursuant to a Rule 41(a)(1) notice of dismissal executed by Plaintiffs. (Id. at Exh. E.).

---

[4] The following factual allegations are drawn from Defendants' moving papers, including certain attachments thereto. For the limited purpose of opposing the present motion, Plaintiffs will treat these allegations as true.

[5] Indeed, unlike the case at bar, in the First Action no excessive fee allegations were raised on behalf of Putnam's Discovery Growth Fund; Growth Opportunities Fund; New Opportunities Fund; New Value Fund; Vista Fund; Voyager Fund; or Classic Equity Fund. Compare (Mot. at Exh. B, ¶ 63) with (Compl., ¶ 14-15 & Exh. 1). Moreover, the First Action implicated four additional Putnam mutual funds that are not at issue here. (Id.).

## III.
## ARGUMENT

## THIS COURT SHOULD DENY DEFENDANTS' PENDING MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN ITS ENTIRETY

For the reasons that follow, Defendants are wrong as a matter of law to argue that Federal Rules of Civil Procedure 12(b)(6) or 41(a)(1) warrant the dismissal of Plaintiffs' Complaint.

### A.    Applicable Legal Standards Governing Fed. R. Civ. P. 12(b)(6) Motions To Dismiss

The U.S. Supreme Court has recently held that, to survive a Rule 12(b)(6) motion to dismiss, a complaint typically "must satisfy only the simple requirements of Rule 8(a)." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002). Consistent with these requirements, a complaint merely needs to "'give the defendant fair notice of what the plaintiff's claim is'" by providing a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. at 512. Thus, with limited exceptions, "the Federal Rules do not contain a heightened pleading standard," and any "requirement of greater specificity for particular claims is a result that 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" Id. at 515.

According to the First Circuit, the Swierkiewicz decision "has sounded the death knell for the imposition of a heightened pleading standard except in cases in which either a federal statute or specific Civil Rule requires that result." Educadores Puertorriquenos v. Hernandez, 367 F.2d 61, 66 (1st Cir. 2004). "In all other cases, courts faced with the task of adjudicating motions to dismiss under Rule 12(b)(6) must apply the notice pleading requirements of Rule 8(a)(2)." Id. Indeed, "[s]trong language in Swierkiewicz makes plain that federal courts should refrain from crafting heightened pleading standards, regardless of the special circumstances those standards are intended to address." Id.

When applying this proper notice pleading standard in the Rule 12(b)(6) context, a court

must "take the factual arguments contained in the complaint as true, indulging every reasonable inference helpful to plaintiff's cause." <u>Garita Hotel Ltd. v. Ponce Federal Bank</u>, 958 F.2d 15, 17 (1st Cir. 1992). <u>Accord</u> <u>Cooperman v. Individual, Inc.</u>, 171 F.3d 43, 46 (1st Cir. 1999)(same). As a result, a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984).

**B.    <u>Fed. R. Civ. P. 41(a)(1)'s "Two Dismissal" Rule Does Not Bar Plaintiffs From Pursuing Their Present Action</u>**

Pursuant to Rule 41(a)(1)'s so-called "two dismissal" rule, a "notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim." In turn, such an adjudication on the merits will give rise to *res judicata* barring the plaintiff from pursuing that same action again for a third time.

In their moving papers, Defendants initially argue that the present action "purports to assert claims identical to those previously asserted" in two earlier actions that were voluntarily dismissed in the Southern District of Illinois. (Mot., p. 5). According to Defendants, "[h]aving voluntarily dismissed their case twice before," Plaintiffs "are now barred from bringing this third lawsuit pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure and the doctrine of res judicata." (<u>Id.</u>, p. 2).

As Plaintiffs demonstrate below, however, Defendants' "two dismissal" argument must fail for at least two reasons. First, the Illinois actions were not "based on or including the same claim" as the present action within the meaning of Rule 41(a)(1). To the contrary, the Illinois actions alleged different acts of wrongdoing that occurred during different operative time periods to different mutual funds than those at issue here. Second, as a matter of law, Rule 41(a)(1)'s

"two dismissal" rule is inapplicable where, as here, at least one of the Illinois dismissals was made by mutual stipulation rather than by unilateral notice.[6]

### 1.    The Present Action Is Not "Based On Or Including The Same Claim" As The Actions Dismissed In Illinois

Far from being "identical" as Defendants contend, the Illinois actions involved neither the "same claim" as each other, nor the "same claim" that is being asserted in the present action. Consequently, Defendants cannot rely upon these Illinois actions as a basis for invoking Rule 41(a)(1)'s "two dismissal" provision.

Like the present action, the Illinois actions included Section 36(b) excessive fee claims directed at both PIM and PRM. However, these claims differ from one another because they target different acts of wrongdoing occurring during different operative time periods. Under the ICA, "[n]o award of damages shall be recoverable" on a Section 36(b) claim "for any period prior to one year before the action was instituted." See 15 U.S.C. § 80a-35(b)(3).[7] Accordingly, as a matter of statutory law, the First Action dismissed in Illinois was limited to the recovery of excessive fees for breaches of fiduciary duty occurring between June 22, 2000 and March 28, 2002. (See, supra, p. 6). By contrast, the Second Action from Illinois covered only those excessive fees arising from breaches of fiduciary duty occurring between March 2, 2003 and May 14, 2004. (Id.). Even farther removed, the present action addresses Section 36(b) violations occurring from May 17, 2003 until the future date on which this case is finally resolved. See (Compl., ¶ 2).

The courts have clearly held that, for purposes of establishing *res judicata* under Rule

---

[6] Moreover, as a preliminary matter, it should be noted that the plain language of Rule 41(a)(1) is inapplicable to *Plaintiff Kalbfleisch* because he is not "a plaintiff who has . . . dismissed" two prior actions. To the contrary, it is undisputed that Plaintiff Kalbfleisch was never even a party to the First Action dismissed in Illinois, and accordingly he cannot be subject to any *res judicata* bar. (See, supra, p. 6).

[7] Notably, Defendants acknowledge this legal standard in their moving papers. See (Mot., p. 9 n.4).

41(a)(1), separately filed lawsuits will not be deemed to involve the "same claim" when they target different acts of wrongdoing occurring during different operative time periods. For example, in <u>Brown v. Hartshorne Public School District</u>, 926 F.2d 959, 961 (10th Cir. 1991), the plaintiff had voluntarily dismissed two previous actions filed in 1980 and 1981 which alleged that defendant school district had discriminated against her in 1979 on the basis of her national origin. When plaintiff again sued the school district for a third time alleging an ongoing pattern of natural origin discrimination occurring between 1979 and 1986, the trial court dismissed her case pursuant to the "two dismissal" rule. <u>Id.</u> at 960-61. The Tenth Circuit ultimately reversed, however, finding that the trial court had "erred in holding . . . that the preclusive effect of Rule 41(a)(1) applies." <u>Id.</u> at 961. Indeed, because plaintiff's third action included a later time period of wrongdoing, it did not present the "same claim" as her earlier actions. <u>Id.</u>. Applying these principles here, the First Action dismissed in Illinois featured a different claim from both the Second Action and the present action because it addressed wrongdoing that occurred in a completely different time period.[8] As such, Defendants are precluded from relying upon the First Action as one of the "two dismissals" required to satisfy Rule 41(a)(1).

Notably, <u>Brown</u>'s interpretation of Rule 41(a)(1) is consistent with how the *res judicata* doctrine has generally been applied elsewhere in the law. In <u>Lawlor v. National Screen Service Corp.</u>, 349 U.S. 322 (1955), for example, the plaintiff filed a second action alleging that the defendants had committed ongoing antitrust violations subsequent to when a first such action had been dismissed with prejudice. The defendants prevailed below on a *res judicata* defense, but the U.S. Supreme Court reversed on grounds that the second action did not present the "same claim" as the first action. <u>Id.</u> at 327-28. As the Court explained, the fact that "both suits involved

_____

[8] As the facts in <u>Brown</u> make clear, it is equally true that the Second Action involves a different claim from the present action even though there is some measure of overlap in the respective time periods that they purport to cover. <u>See</u> 926 F.2d at 961.

'essentially the same course of wrongful conduct' is not decisive [because] [s]uch a course of conduct . . . may frequently give to more than a single cause of action" where different acts of wrongdoing have occurred during different time periods. Id. [9]

Finally, even placing aside the issue of inconsistent time periods, here Defendants fail to satisfy the "same claim" requirement of Rule 41(a)(1) for another dispositive reason as well. In short, seven of the nine Putnam mutual funds for which Plaintiffs have asserted derivative claims in both the Second Action and the present action were never implicated at all in the First Action. (See, supra, p. 6 & n.5).

## 2.    The "Two Dismissal" Rule Is Inapplicable To Stipulated Dismissals As A Matter Of Law

Defendants' Rule 41(a)(1) argument also must fail as a matter of law because the First Action in Illinois was terminated by a mutual stipulation of dismissal agreed to by PIM and PRM rather than by a unilateral notice of dismissal. (See, supra, p. 6).

Indeed, as the courts have repeatedly held, the "filing of a notice of dismissal [i.e., the Section Action] preceded by a stipulation of dismissal knowingly consented to by all parties [i.e., the First Action] does not activate the 'two dismissal' bar against bringing an action based on or including the same claim." Poloron Products, Inc., 534 F.2d 1012, 1018 (2d Cir. 1976). Accord Island Stevedoring, Inc. v. Barge CCBI, 129 F.R.D. 430, 432 (D. Puerto Rico 1990) ("A second dismissal . . . preceded by a dismissal by stipulation knowingly consented to by all the parties does not trigger the two dismissal rule."); Western Group Nurseries, Inc. v. Ergas, 211 F.Supp. 2d 1362, 1371 (S.D. Fla. 2002) ("It is clear that the two dismissal rule does not apply where the

---

[9] The teachings of Lawlor have been implicitly recognized in Section 36(b) cases. In Meyer v. Oppenheimer Management Corp., 609 F.Supp. 380, 381-82, 384 (S.D.N.Y. 1984), the plaintiff settled a Section 36(b) action in 1981 and dismissed it with prejudice. But when plaintiff sued the same defendants under Section 36(b) again in 1982, neither the court nor the parties even considered the possibility of a collateral estoppel or res judicata defense. Id.. Indeed, everyone presumably understood that the two actions necessarily could not, and did not, present the "same claim."

defendant consents to one or more of the voluntary dismissals."); Allianz CP General Ins. Co. Ltd. v. Blue Anchor Line, 2004 WL 1048228 (S.D.N.Y. May 7, 2004) (same).[10]

**C.    Defendants' Motion Is Fatally Flawed Because It Rests On The False Premise That *Gartenberg*'s Evidentiary Factors Impose A Heightened Pleading Standard In Section 36(b) Cases**

In affirming a *bench trial judgment*, the Second Circuit in Gartenberg v. Merrill Lynch Asset Management, 694 F.2d 923, 928 (2d Cir. 1982) adopted a general legal standard for determining when an adviser-manager has breached its Section 36(b) "fiduciary duty with respect to the receipt of compensation for services." Per Gartenberg, such a duty is breached when the fee charged "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." Id.. The court went on to identify a non-exclusive list of six evidentiary factors -- applicable to a *fully developed factual record* --for assessing whether this legal standard has been met. Id. at 929-31. As Gartenberg held, in employing these evidentiary factors, the legislative history of Section 36(b) requires that "all pertinent facts must be weighed" in "light of all of the surrounding circumstances." Id. at 928-30.[11]

Defendants now argue throughout their moving papers that the *evidentiary factors* addressed in Gartenberg constitute *pleading requirements* that need to be satisfied by all Section 36(b) claimants. (Mot., pp. 2, 7-19). Thus, according to Defendants, this Court must use the Gartenberg factors as a litmus test for "evaluating the adequacy of [the] allegations" pled in

---

[10] As the Poloron court has explained, the "primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading." 534 F.2d at 1017. But the "danger of such abuse diminishes, however, where the first dismissal is by stipulation," since a stipulation "is not a unilateral act on the part of the plaintiff but rather is a mutual agreement by all the parties." Id.

[11] Gartenberg's six evidentiary factors were designed as a tool for evaluating *investment advisory fees*. By contrast, Plaintiffs are unaware of any decided case in which *12b-1 fees* (or their Promotional Distribution Fee component challenged herein) have been required to satisfy anything more than Gartenberg's general legal standard.

Plaintiffs' complaint, and then conclude that Plaintiffs have failed such a test. But for the reasons detailed below, Defendants' arguments are incorrect as a matter of law, thereby undermining the entire framework of their pending Rule 12(b)(6) motion.

Indeed, by urging that the Gartenberg factors be used as a heightened pleading standard, Defendants are inviting this Court to err by departing from the Supreme Court's holding in Swierkiewicz, especially as later interpreted by the First Circuit in Educadores. (See, supra, p. 7). As Swierkiewicz clearly mandates, it is improper to use evidentiary standards as pleading requirements because the "issue [on a Rule 12(b)(6) motion] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." 534 U.S. at 511. See Id. at 515 ("Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits"). Not surprisingly then, in the leading Section 36(b) case thus far decided in the First Circuit, Judge Saris properly denied a motion to dismiss, holding that the plaintiff need not satisfy the Gartenberg factors without first having had an opportunity to develop a full factual record through discovery. See Krantz v. Fidelity Management & Research Co., 98 F.Supp. 2d 150 (D. Mass. 2000).

1.    **The *Gartenberg* Factors Are An Evidentiary Standard, Not Pleading Requirements**

Consistent with the teachings of Swierkiewicz and Educadores, numerous courts have rejected Defendants' misguided invitation to treat the Gartenberg factors as pleading requirements:

> . . . *Gartenberg* is a post-trial decision in which the evidence can be weighed against the six-factor test. The pleading standards under the federal rules -- absent a heightened requirement such as exists for pleading fraud under Rule 9(b) -- do not contemplate pleadings sufficiently detailed to enable a court to make a determination on a 12(b)(6) motion as to whether the six *Gartenberg* factors were met. Rather, the inquiry at this stage should be whether the . . . [pleading] alleges sufficient facts to make out a claim under the more general *Gartenberg* [legal] formulation that "the adviser manager must charge a fee that is so

disproportionately large that it bears no reasonable relationship to the services rendered."

Strougo v. BEA Associates, 2000 WL 45714 (S.D.N.Y. January 19, 2000). Accord Millenco L.P. v. MEVC Advisors, Inc., 2002 WL 31051604 at *3 n.4 (D. Del. August 21, 2002) ("The Court will not engage in an analysis of the factors utilized . . . in Gartenberg . . . because the Court agrees with [plaintiff] . . . that the Gartenberg decision does not set a pleading standard, but rather is helpful only after the complete evidentiary record has been established.").

Tellingly, in the most recent Section 36(b) decision to emerge from Gartenberg's own Second Circuit, the court denied a motion to dismiss, expressly holding that at the pleading stage it "is unnecessary for the plaintiff to set forth evidentiary details to support . . . [its] allegation[s], or to support . . . elements of the Gartenberg [evidentiary] test." Pfeiffer v. Bjurman, Barry & Associates, 2004 WL 1903075 at *4 (S.D.N.Y. August 26, 2004). As the Pfeiffer court held, "[w]hether the plaintiff can meet this [Gartenberg] burden will be decided at a later stage of this action. The plaintiff's failure to do so in this pleading is not a ground for dismissal." Id. at *5. Moreover, to the extent that the defendant was able to cite to any contrary case law holdings, the court observed that "[a]lmost all of these cases preceded the Supreme Court's reminder in Swierkiewicz that a plaintiff need only give a plain statement of its claim and fair notice of the ground on which it rests." Id. at *4.[12]

## 2.    The Gartenberg Factors Can Apply Only After A Section 36(b) Plaintiff Has Had A Full Opportunity For Discovery

Given their status as evidentiary standards, courts have consistently found that the Gartenberg factors can properly be applied, if at all, only after a Section 36(b) plaintiff has

---

[12] Many other courts have routinely denied motions to dismiss Section 36(b) claims while failing to treat Gartenberg's evidentiary factors as pleading requirements. See, e.g., Meyer v. Oppenheimer Management Corp., 764 F.2d 76, 81-83 (2d Cir. 1985); Potomac Capital Markets v. Prudential-Bache Dividend Fund, Inc., 726 F.Supp. 87, 94 (S.D.N.Y. 1989); Seidel v. Lee, 1996 WL 578449 at **4-5 (D. Del. August 16, 1996); Langner v. Brown, 913 F.Supp. 260, 266-68 (S.D.N.Y. 1996); Green v. Fund Asset Management, L.P., 19 F.Supp. 2d 227, 234-35 (D.N.J. 1998); Green v. Nuveen Advisory Corp., 186 F.R.D. 486, 490-92 (N.D.Ill. 1999).

moved beyond the pleading stage and been afforded a full opportunity for discovery.

Indeed, in the First Circuit's leading Section 36(b) case, Judge Saris denied the defendants' motion to dismiss an excessive fees claim and allowed the plaintiff to proceed to discovery. See Krantz, 98 F.Supp. 2d 150. The Krantz defendants had argued that to survive a Rule 12(b)(6) motion, the operative complaint was required to satisfy all six of the Gartenberg factors with "specific allegations" and "specific financial information." Id. at 159. But Judge Saris disagreed, holding instead that "the Court must proceed under the notice pleading standard" of Rule 8(a). Id.. Pursuant to such a standard, it was deemed more than sufficient for the complaint to raise *general allegations* pertaining to only "some of the *Gartenberg* factors." Id..[13] As is true in all properly pled Section 36(b) cases, Judge Saris ultimately concluded that discovery was a necessity because the defendants were in "control [of much of] the information relevant to a [full-blown] *Gartenberg* analysis." Id..[14]

In their moving papers, Defendants now baldly assert that the Krantz decision is "contrary to the great weight of authority . . . and should not be followed here." (Mot., p. 13, n.5). But in reality, numerous courts have shared Judge Saris' approach by affording Section 36(b) plaintiffs the benefit of discovery before holding them to the requirements of Gartenberg. See, e.g., Meyer, 764 F.2d at 83 (Section 36(b) plaintiff is "entitled to discovery"); Green, 186 F.R.D. at 491 (pre-discovery dismissal of Section 36(b) claim would be "premature" because court is required to look "beyond the pleadings at market circumstances and other economic

---

[13] As seen in Krantz, even where courts have applied Gartenberg's six evidentiary factors, Section 36(b) plaintiffs have merely been required to satisfy *some* -- but not *all* -- of those factors. Accord In Re TCW/DW North American Government Income Trust Securities Litigation, 941 F.Supp. 326, 333 (S.D.N.Y. 1996).

[14] In the only other significant Section 36(b) case decided in the First Circuit, Judge Zobel reached the same result. See Evangelist v. Fidelity Management & Research Co., 554 F.Supp. 87, 92 (D. Mass. 1982). Indeed, Judge Zobel denied a motion to dismiss prior to the completion of discovery, holding that "it is impossible for me to decide at this early stage" whether the investment advisory fees at issue were excessive. Id.. As the court observed, in Gartenberg these types of evidentiary "determinations were made [only] after a trial" had been completed. Id..

factors."); <u>Green</u>, 19 F.Supp. 2d at 235 (discovery needed because *Gartenberg* requires judicial "exploration of . . . economic realities . . . and market circumstances and practices."); <u>Potomac</u>, 726 F.Supp. at 94 (dismissal of Section 36(b) claim would be "premature" where "[t]here has been no discovery."); <u>Langer</u>, 913 F.Supp. at 267 (dismissal would be "premature and unwarranted" where there has been "no discovery on the factual matters of the § 36(b) claim").

### D.  Plaintiffs' Complaint Easily States A Claim Under *Gartenberg*'s General Legal Standard Potentially Applicable To Section 36(b) Cases

Under the general legal standard proposed in <u>Gartenberg</u> -- which may potentially govern in a Rule 12(b)(6) context[15] -- Plaintiffs' Complaint easily passes muster. <u>Cf.</u> (Mot., pp. 2, 6). Indeed, as shown below, here the pleadings are so abundantly detailed that they would readily satisfy even the *evidentiary factors* from <u>Gartenberg</u> that properly could apply only to a fully developed factual record.

#### 1.  Economies Of Scale

Plaintiffs base their Section 36(b) case in part on extensive allegations relating to un-shared economies of scale benefits. (<u>See</u>, <u>supra</u>, pp. 3-4). Defendants are dead wrong to argue that these allegations can lend no support to an excessive fees claim. (Mot., pp. 8-10).

First, as a pleadings matter, Defendants argue that Plaintiffs' allegations are too generalized and conclusory because they purportedly address only "the entire mutual fund industry" rather than being "specific to any of the Putnam funds in which plaintiffs have invested." (Mot., p. 8) (*citing* <u>Yampolsky v. Morgan Stanley Investment Advisors, Inc.</u>, 2004 WL 1065533 (S.D.N.Y. May 12, 2004)). Simply put, this argument mischaracterizes Plaintiffs' Complaint. Unlike the claimants in <u>Yampolsky</u>, here Plaintiffs have directed particularized allegations toward all of the Funds at issue, especially Putnam's Voyager and Growth and

---

[15] As this Court has observed, to date the "First Circuit has not had occasion to set an excessive fees [legal] standard" for Section 36(b) cases. <u>Krantz</u>, 98 F.Supp. 2d at 158.

Income Funds. <u>Compare</u> (Mot. at Exh. F, ¶¶ 20-22) <u>with</u> (Compl., ¶¶ 6, 11, 25-26, 41-45, 59-60, 69-73 & Exh. 4). Moreover, Defendants' further suggestion that Plaintiffs need to quantify the exact "nature, amount . . . and . . . extent" of un-shared scale benefits (Mot., pp. 8-9) would require exactly the type of non-public "specific financial information" that prompted Judge Saris to grant discovery in <u>Krantz</u>. <u>See</u> 98 F.Supp.2d at 150.

Second, as a legal matter, Defendants cite to <u>Krinsk</u> for the unremarkable proposition that economies of scale are not the sole possible cause of costs declining as assets under management increase. (Mot., p. 9) (*citing* <u>Krinsk v. Fund Asset Management, Inc.</u>, 875 F.2d 404, 411 (2d Cir. 1989)). But the <u>Krinsk</u> court was addressing *evidentiary deficiencies* in a particular bench trial record, not establishing *pleading requirements* that would govern here. (<u>Id.</u>). In any event, the very type of evidence that was lacking in <u>Krinsk</u> -- *i.e.*, proof that the *per unit* cost of providing services had decreased as assets had grown -- is exactly what Plaintiffs are alleging *sub judice*, and which must be accepted as true for pleading purposes. <u>See</u>, <u>e.g.</u> (Compl., ¶¶ 6, 31, 56-57, 64-67, 72).

Finally, Defendants improperly seek to argue the merits on a Rule 12(b)(6) motion where Plaintiffs are entitled to have all of their factual allegations accepted as true, and all reasonable inferences drawn in their favor. (Mot., p. 10). For example, contrary to what Plaintiffs have pled, Defendants cite to a *Fortune* magazine article for the proposition that the Funds actually experience dis-economies of scale. (<u>Id.</u>). Alternatively, Defendants also argue that the Funds' use of breakpoints "reflects a sharing of economies of scale." (<u>Id.</u>). But the relevant legal standard is not merely that scale benefits be shared, but rather "that investors should share equitably" in such benefits. <u>Gartenberg v. Merrill Lynch Asset Management</u>, 528 F.Supp. 1038, 1054 (S.D.N.Y. 1981). Here, Plaintiffs have expressly alleged that any sharing has been *inequitable* because

initial fees are set too high, the breakpoints are spaced too far apart, and the reductions across breakpoints are too small. See (Compl., ¶¶ 25-28).

## 2.    Comparative Fee Structures

Plaintiffs base their Section 36(b) claims in part on comparisons to the dramatically lower rates that Putnam's institutional clients pay for identical services. (See, supra, p. 4). In their moving papers, Defendants badly misread Gartenberg and its progeny for the proposition that any parallels drawn between mutual funds and "institutional investors are irrelevant as a matter of law." (Mot., pp. 10-11). What the Gartenberg court actually held, however, was that as a *factual matter* the money market[16] mutual fund at issue in that case received "sharply different" administrative processing services than those provided to equity pension funds. See 694 F.2d at 930 n.3. By contrast, in the case at bar, Plaintiffs have alleged an apples-to-apples comparison between *equity* mutual funds and *equity* institutional funds, and have eliminated any disparate administrative costs by focusing solely on the Portfolio Selection Fee component that they are charged in common. See (Compl., ¶¶ 5, 23, 29, 88).

## 3.    Nature And Quality Of Services Provided

Plaintiffs base their Section 36(b) claims in part on the relatively poor quality of services that they have received in exchange for fees paid. (See, supra, p. 4). In response, Defendants now rely on Migdal for the proposition "'allegations of [the Funds'] underperformance [standing] alone are insufficient to prove that an investment adviser's fees are excessive.'" (Mot., p. 13) (citing Migdal v. Rowe Price-Fleming Internat., Inc., 248 F.3d 321, 327-28 (4th Cir. 2001)). Any such reliance is misplaced, however, because here Plaintiffs premise their claims not *only* on underperformance, but also on a wide array of additional allegations tending to show that

---

[16] As the Gartenberg court explained, a *money market* fund is an entirely different construct than an *equity* fund: it is "more like a bank account than [like] the traditional investment in securities." See 694 F.2d at 925.

Defendants' fees are excessive. Cf. Krantz, 98 F.Supp. 2d at 158-59. Defendants' further novel contention that Plaintiffs must show their services to have been completely "unnecessary or without value to mutual fund investors" is unsupported by law or precedent. (Mot., p. 12).

### 4.    Profitability Of The Funds To Defendants

Plaintiffs base their Section 36(b) claims in part on the disproportionately high profits that Defendants have generated from their service fees. (See, supra, p. 5). Defendants now contend that the "Complaint here is devoid of any alleged facts bearing on . . . profitability" because it purportedly fails to address the costs "half of the profitability equation." (Mot., p. 13). But this contention is frivolous. Indeed, pursuant to their economies of scale theory, Plaintiffs have alleged throughout the pleadings that Defendants' costs have decreased at the same time that their fees have grown, thereby resulting in increased profitability. See, e.g., (Compl., ¶¶ 11, 41-46, 59, 69-75, 89). Moreover, equally frivolous is Defendants' further contention that institutional client comparisons are irrelevant to profitability. (Mot., pp. 13-14). If Defendants' institutional client relationships are profitable, and if they charge even higher fees to the Funds for identical services, then by inference Defendants' Funds-related profits must be even larger.

### 5.    Fall-Out Benefits And Indirect Profits

Plaintiffs base their Section 36(b) claims in part on the additional fall-out benefits that Defendants have generated from the Funds as a *de facto* means of increasing their fees. (See, supra, p. 5). With respect to "soft dollar" arrangements, Defendants now argue that Plaintiffs were required to plead that these arrangements fall outside of an ostensible safe harbor immunity granted by Section 28(e) of the Securities Exchange Act of 1934. (Mot., p. 15). But Defendants cite no authority for this proposition, which is unsurprising given that this provision is akin to an *affirmative defense* rather than a *pleading requirement*: "The legislative history of section 28(e) makes clear that the burden of proof in demonstrating this determination rests on the money

manager."[17] In any event, the potential availability of a Section 28(e) defense is premised upon a *factual determination -- viz.*, whether the money manager acted in "good faith" -- which is irresolvable on a Rule 12(b)(6) motion. (Mot., p. 15). As to the remaining alleged fall-out benefits, Defendants have quoted language out of context from <u>Krinsk</u> which was referring only to irrelevant "float benefits" and "free credit balances" rather than to the unrelated types of benefits that Plaintiffs have actually pled here. (<u>Id.</u>, p. 14) (*citing* <u>Krinsk</u>, 875 F.2d at 411).

### 6.    <u>Independence And Conscientiousness Of The Trustees</u>

Plaintiffs base their Section 36(b) claims in part on the failure of the Funds' trustees to independently and conscientiously fulfill their watchdog role. (<u>See</u>, <u>supra</u>, pp. 5-6). In response, Defendants now argue that Plaintiffs' trustee allegations are "insufficient to state a claim under Section 36(b)." (Mot., p.. 16). But the cases that Defendants cite -- *viz.*, <u>Migdal</u>; <u>Krantz</u>; <u>Verkouteren</u> -- actually involve an "interested director" analysis under Sections 10 and 15 of the ICA, and cannot be read for the general proposition that Plaintiffs' allegations would be *per se* unsupportive of a Section 36(b) claim. <u>Cf.</u> <u>Krantz</u>, 98 F.Supp. 2d at 158. Moreover, Defendants simply ignore Plaintiffs' extensive allegations about the trustees' failures to have properly considered critical fee-related information. <u>See</u>, <u>e.g.</u>, (Compl., ¶¶ 53, 95, 100, 114, 116, 119, 122). As <u>Gartenberg</u> held, the question of "whether . . . [trustees] are fully informed about all facts bearing on the adviser-manager's service and fee . . . [is an] important factor[]" in assessing liability under Section 36(b). <u>See</u> 694 F.2d at 930.

## IV.
## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' pending motion to dismiss their Complaint in its entirety.

---

[17] <u>See</u> Securities; Brokerage and Research Services, Exchange Act Release No. 23170, 17 C.F.R. Part 241 (April 23, 1986), <u>available at</u> 1986 WL 630442 at *4.

Dated: September 24, 2004

David E. Marder, Esq. (BBO No. 552485)
Marc N. Henschke, Esq. (BBO No. 636146)
Jonathan D. Mutch, Esq. (BBO No. 634643)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
111 Huntington Avenue, Suite 1300
Boston, Massachusetts 02199-7610
Tel. (617) 267-2300

Of Counsel:

Thomas J. Gallo, Esq. (*pro hac vice*)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
950 East Paces Ferry Road N.E.
Atlanta, Georgia 30326-1119
Tel. (404) 233-1267

Thomas R. Grady, Esq. (*pro hac vice*)
THOMAS R. GRADY, P.A.
720 5th Avenue
Suite 200
Naples, Florida 34102
Tel. (239) 261-6555

35017986.1

21

## CERTIFICATE OF SERVICE

I, Marc N. Henschke, hereby certify that on September 24, 2004, I caused a true copy of

the foregoing **Plaintiffs Steven G. Wicks' And Gerald A. Kalbfleisch's Memorandum Of**

**Law In Opposition To Defendants' Motion To Dismiss Their Complaint** to be served by first

class mail, postage prepaid, upon Defendants' counsel of record at the following addresses:

Seth M. Schwartz, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036-6522

            and

James R. Carroll, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, Massachusetts 02108-3194.


Dated: September 24, 2004

                                        _____
                                        Marc N. Henschke