UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| STEVEN G. WICKS; GERALD A. KALBFLEISCH; MICHAEL HATHAWAY; and MYRTLE HATHAWAY<br><br>Plaintiffs,<br><br>v.<br><br>PUTNAM INVESTMENT MANAGEMENT, LLC; and PUTNAM RETAIL MANAGEMENT, LLP<br><br>Defendants. | Civil Action No: 04-CV-10988 (GAO) |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS TO DEFENDANTS PUTNAM INVESTMENT MANAGEMENT, LLC AND PUTNAM RETAIL MANAGEMENT, LLP

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs Steven G. Wicks, Gerald A. Kalbfleisch, Michael Hathaway, and Myrtle Hathaway (collectively, "Plaintiffs") hereby request that Defendants Putnam Investment Management, LLC ("PIM") and Putnam Retail Management, LLP ("PRM") (collectively, "Defendants") provide written responses to these requests, and produce all responsive documents and tangible things, within thirty (30) days of service of these requests.

### I. INSTRUCTIONS

1.  Defendants are required to respond to this request for production of documents and tangible things by drawing upon all materials in their possession, ownership, custody, or control, actual or constructive, including materials that Defendants have a right or ability to secure from any other source. These sources include, but are not limited to, Defendants'

employees, agents, managing agents, attorneys, accountants, investment bankers, consultants, advisers, officers, directors, or representatives of any type whatsoever. These sources further include, but are not limited to, Defendants' predecessors, successors, parents, subsidiaries, affiliates, divisions, and their respective employees, agents, managing agents, attorneys, accountants, investment bankers, consultants, advisers, officers, directors, or representatives of any type whatsoever.

2. If any document or tangible thing herein requested was, but no longer is, in Defendants' possession or subject to their control, whether actual or constructive, state what disposition was made of the document or tangible thing, why such disposition was made, to whom the document or tangible thing was transferred or delivered if applicable, where the document or tangible thing presently is located, and the date or dates (or approximate date or dates) on which such disposition was made.

3. In the event that Defendants file a proper and timely objection to any portion of any individual request for the production of documents and tangible things presented herein, Defendants are required to respond to all other portions of that request that do not fall within the ambit of their objection.

4. If any portion of any document or tangible thing is responsive to any production request herein, then the entire document or tangible thing must be produced. If any requested document or tangible thing cannot be produced in full, then Defendants must produce that document or tangible thing to the greatest extent possible. Whenever a document or tangible thing is not produced in full, or is produced in redacted form, Defendants must indicate that fact on the document or tangible thing produced.

5. If any document or tangible thing responsive to a production request herein is withheld in whole or in part, for any reason whatsoever, including, but not limited to, any claim of privilege, work product, confidentiality, or trade secret, then Defendants must promptly provide a privilege log which states with respect to each such document, tangible thing, or withheld portion thereof: (a) the privilege or ground under which it is being withheld; (b) the type of document or tangible thing (*e.g.*, memo, letter, e-mail); (c) a description of the subject matter thereof; (d) the identity of its author or creator; (e) the identity of all persons to whom it is addressed and all persons to whom copies thereof ever have been furnished; (f) the date thereof; and (g) the present custodian and location thereof.

6. If there do not exist documents or tangible things responsive to a specific production request herein, then Defendants must indicate that fact in their written response hereto.

7. The documents or tangible things produced in response hereto shall be segregated and clearly marked or labeled so as to correspond to the specific production requests to which such documents or tangible things are responsive and are being produced. Alternatively, such documents or tangible things shall be produced as they are kept in the usual course of business, including the production of files and file labels from which such documents or tangible things are taken.

8. All documents or tangible things produced pursuant hereto are to be delivered to Marc N. Henschke, Esq. at the offices of Robins, Kaplan, Miller & Ciresi LLP, 800 Boylston Street, 25th Floor, Boston, Massachusetts 02199.

9. This is a continuing request for the production of documents and tangible things. Thus, if after making its initial production(s), Defendants become aware of any additional

responsive documents or tangible things in their possession, ownership, custody or control (actual or constructive), including materials which it has a right to secure from any other source, Defendants are required without further request to produce, or to make available for inspection and copying, such additional documents or tangible things.

## II. DEFINITIONS

1. The terms "documents" and "tangible things" as used herein shall mean each non-identical copy of any of the types of materials referenced in Local Rule 26.5(c)(2) and Fed. R. Civ. P. 34(a), and shall specifically include emails, voice mails, instant messages, and computer data, and any electronic, magnetic, or digital media on which information can be stored, including but not limited to tapes, hard drives, discs, and any other form of computer memory.

2. The term "non-identical copy" as used herein shall mean any document or tangible thing that, but-for markings, additions, deletions, signatures, modifications of any kind (including, but not limited to, notations on the backs or margins of pages thereof, blind carbon copy notations, attachments, alterations, amendments, or mark-ups) would otherwise be identical to other documents or tangible things responsive to any production request herein. Each non-identical copy constitutes a distinct document or tangible thing and must be produced in response hereto.

3. The term "meeting(s)" as used herein shall mean any assembly, convocation, encounter, or contemporaneous presence of two or more persons for any purpose, whether or not planned, arranged, or scheduled in advance, whether or not occurring face-to-face or by other means including, without limitation, by telephone, videoconference or instant messaging, and whether or not the meeting was informal or formal or occurred in connection with some other activity.

4. The term "agreement" as used herein shall mean any contract, transaction, or other arrangement of any kind, whether conditional, executed, executory, express, or implied, and whether oral or written, in which rights are granted or obligations assumed. The term "agreement" shall apply to completed, actual, contemplated, or attempted agreements or renewals of agreements.

5. The term "negotiate" or any variant thereof as used herein shall mean, without limitation, any deliberations, discussions, conferences, bargaining or trading between parties or their agents, representatives, counsel, or any other persons as herein defined.

6. The term "any" shall mean "any and all." The term "all" as used herein also shall mean "any and all."

7. The terms "and" and "or" as used herein shall be construed conjunctively or disjunctively to bring within the scope of these production requests any and all information which might otherwise be construed as outside their scope.

8. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb includes also within its meaning all other tenses of the verb so used.

9. All entities referred to herein shall be deemed to include their parent companies, subsidiaries, affiliates, directors, officers, employees, agents, successors, assigns, and representatives thereof, including attorneys, consultants, accountants, and investment bankers.

10. The terms "communication," "person," and "concerning" shall have the meanings set forth in Local Rule 26.5.

11. The term "Complaint" shall mean the Amended Complaint filed in this action on or about April 4, 2005.

12. The term "Answer" as used herein shall mean Defendants' Answer And Affirmative Defenses to the Complaint filed in this action on our about April 21, 2005.

13. The term "The Funds" as used herein shall mean, collectively, the Putnam mutual funds identified on Exhibit A to the Complaint, including any mutual funds with different names by which any of these funds were formerly known.

14. The term "PIM" as used herein shall mean the named Defendant Putnam Investment Management, LLC, and any of its agents, assigns, affiliates, predecessors in interest, representatives, employees, servants, associates, attorneys, or any other persons or entities through which Putnam Investment Management, LLC has conducted business potentially including, but not limited to, Putnam LLC; Putnam Investments; Putnam Fiduciary Trust Company; Putnam Investor Services; The Putnam Advisory Company, LLC; Putnam Advisory Company, LLP; Putnam Investments Limited; and Putnam Investments Trust.

15. The term "PRM" as used herein shall mean the named Defendant Putnam Retail Management, LLP, and any of its agents, assigns, affiliates, predecessors in interest, representatives, employees, servants, associates, attorneys, or any other persons or entities through which Putnam Retail Management, LLP has conducted business potentially including, but not limited to, Putnam LLC; Putnam Investments; Putnam Fiduciary Trust Company; Putnam Investor Services; The Putnam Advisory Company, LLC; Putnam Advisory Company, LLP; Putnam Investments Limited; and Putnam Investments Trust.

16. The terms "Defendants," "you," "your," or "yours" as used herein shall collectively mean, unless otherwise specified in a particular request, PIM and PRM.

17. The term "PAC" as used herein shall mean Putnam Advisory Company, LLC, and any of its agents, assigns, affiliates, predecessors in interest, representatives, employees, servants, associates, attorneys, or any other persons or entities through which Putnam Advisory Company, LLC has conducted business.

18. The term "Management Contract" as used herein shall mean any contract between an investment advisor and a mutual fund or other client whereby an investment advisor agrees to provide, *inter alia*, management and/or investment advisory services in exchange for fee-based compensation. By way of example, the term "Management Contract" is meant to include, but not be limited to, contracts of the type that PIM has entered into with The Funds.

19. The term "Management Fees" as used herein shall mean the fees that an investment advisor charges and/or receives pursuant to the breakpoint fee schedule contained in any particular Management Contract.

20. The term "Portfolio Selection Fees" as used herein shall mean that portion of its Management Fees that an investment advisor charges and/or receives in exchange for the services of furnishing an investment program, and for making investment decisions about what securities shall be purchased, held, sold, or exchanged, and/or what portions of client assets shall be held uninvested. As such, the term "Portfolio Selection Fees" is meant to *exclude*, for example, those other portions of its Management Fees that an investment advisor charges and/or receives for other services such as managing, supervising, and conducting a client's other affairs and business, for furnishing office space and equipment, for providing bookkeeping and clerical services, and for placing orders for purchase and sale of a client's portfolio securities.

21. The term "Putnam Mutual Funds" as used herein shall mean, collectively, the entire family of open-end registered investment companies managed or operated by any Putnam entity including, but not limited to, The Funds.

22. The term "Distribution Plan" as used herein shall mean any plan adopted by a mutual fund, and/or by any class of shares of a mutual fund, pursuant to Rule 12b-1 of the Investment Company Act of 1940, 15 U.S.C. § 80a-12(b); 17 C.F.R. § 270.12b-1.

23. The term "12b-1 Fees" as used herein shall mean the aggregate of all types of fees that an investment advisor and/or any affiliated entity charges and/or receives from a mutual fund under or pursuant to a Distribution Plan.

24. The term "Board of Trustees" as used herein shall mean the entire board for any of The Funds -- including their independent staff, auditors, and legal counsel -- as well as any committees, subcommittees, groups, or other portions of such boards.

25. The term "Board of Trustees Committees" as used herein shall mean, collectively, all committees existing under any particular Board of Trustees for any of The Funds including, but not limited to, the Audit and Pricing Committee; the Board Policy and Nominating Committee; the Brokerage and Custody Committee; the Communication, Service, and Marketing Committee; the Contract Committee; the Executive Committee; the Investment Oversight Committees; and any other committees with different names by which any of these committees were formerly known.

26. The term "Institutional Account" as used herein shall mean an account of a non-mutual fund client for which an investment advisor provides management and/or investment advisory services. By way of example, the term "Institutional Account" is meant to include, but not be limited to, accounts held by individual clients; corporate profit-sharing and/or pension

fund clients; state, governmental, and/or public employee retirement fund clients; university endowment fund clients; charitable foundation clients; collective investment vehicle clients; and/or any other categories of clients of the types serviced by PAC.

27. The term "Investment Management Team" as used herein shall mean, relative to any particular client account, that group of persons employed by or associated with an investment advisor who participate in formulating and/or providing an investment program for, and/or making investment decisions on behalf of, a client. As such, the term "Investment Management Team" is meant to include, but not be limited to, Portfolio Leaders, Portfolio Members, and research analysts. The term "Investment Management Team" is also meant to include, but not be limited to, Managing Directors, Portfolio Managers, Chief Investment Officers, and/or Group Chief Investment Officers to the extent that these titles represent positions distinct from Portfolio Leaders and/or Portfolio Members.

28. The term "Illinois Actions" as used herein shall mean, collectively, the two lawsuits previously filed in the United States District Court for the Southern District of Illinois -- bearing Civil Action Nos. 01-CV-287-MJR and 04-CV-145-MJR respectively -- in which PIM and PRM were named as defendants with respect to, *inter alia*, causes of action brought under Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b).

29. The term "Economies of Scale Benefits" as used herein shall mean the cost savings that are realized when the per unit cost of providing services and/or resources to a client account decreases as the amount of assets under management increases. As such, the term "Economies of Scale Benefits" is meant to include both the cost savings that occur at the individual mutual fund or client account level, and at the level of a complex or family of mutual funds or client accounts.

30. The term "Fall-Out Benefits" as used herein shall mean the aggregate of direct and indirect benefits that providers of services in connection with a Management Contract and/or a Distribution Plan may receive over and above their collection of Management Fees and/or 12b-1 Fees. As such, the term "Fall-Out Benefits" is meant to include, for example, brokerage and/or research services received from broker-dealers; soft-dollar allocations; transfer agency fees; custodian fees; attraction of new customers to other funds and products offered by said providers of services; and/or any other benefits.

31. The term "Damages Period" as used herein shall mean the period of time commencing on May 17, 2003 and ending upon the final resolution of this action by way of unappealable final judgment or settlement.

### III. REQUESTED DOCUMENTS AND TANGIBLE THINGS

The following specific requests for the production of documents and tangible things are subject to the "INSTRUCTIONS" and "DEFINITIONS" set forth above.

**REQUEST FOR PRODUCTION NO. 1:**

All documents and tangible things in your possession, custody, or control that comprise the categories of materials identified, or to be identified, in Defendants' Initial Disclosure served pursuant to Fed. R. Civ. P. 26(a)(1)(B).

**REQUEST FOR PRODUCTION NO. 2:**

All documents and tangible things in your possession, custody, or control that constitute any exhibits that Defendants shall or may use at trial.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and tangible things in your possession, custody, or control that tend to support or refute any of the allegations contained in the Complaint, or any of the responses or affirmative defenses thereto pled in the Answer.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and tangible things in your possession, custody, or control that constitute or reflect communications with experts retained or to be retained by Defendants, and/or that comprise the materials reviewed, considered, examined, or analyzed by such experts.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and tangible things in your possession, custody, or control relevant to establishing the total amounts of Management Fees, Portfolio Selection Fees, and 12b-1 Fees that PIM, PRM, or other affiliated Putnam entities have received from each of The Funds at any and all times during the Damages Period.

**REQUEST FOR PRODUCTION NO. 6:**

All documents and tangible things in your possession, custody, or control relevant to establishing the total profits and profit margins that PIM, PRM, or other affiliated Putnam entities have realized in connection with the Management Fees, Portfolio Selection Fees, and 12b-1 Fees that they have received from each of The Funds at any and all times during the Damages Period.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and tangible things in your possession, custody, or control relevant to establishing the total costs, expenses, and expense ratios that PIM, PRM, or other affiliated

Putnam entities have incurred in connection with all services and/or resources that they have provided in exchange for the Management Fees, Portfolio Selection Fees, and 12b-1 Fees that they have received from each of The Funds at any and all times during the Damages Period.

**REQUEST FOR PRODUCTION NO. 8:**

All documents and tangible things in your possession, custody, or control relevant to identifying each of the various types of services and/or resources that PIM, PRM, or other Putnam entities have provided in exchange for the Management Fees, Portfolio Selection Fees, and 12b-1 Fees that they have received from any of the Putnam Mutual Funds.

**REQUEST FOR PRODUCTION NO. 9:**

All documents and tangible things in your possession, custody, or control relevant to unbundling the Management Fees, Portfolio Selection Fees, and 12b-1 Fees that PIM, PRM, or other affiliated Putnam entities have received from any of the Putnam Mutual Funds into their component portions corresponding to each of the various types of services and/or resources that they have provided to The Funds.

**REQUEST FOR PRODUCTION NO. 10:**

With respect to each of the unbundled component portions of the Management Fees, Portfolio Selection Fees, and 12b-1 Fees referenced above in Request For Production No. 9, all documents and tangible things in your possession, custody, or control relevant to establishing the amounts that PIM, PRM, or other affiliated Putnam entities have received from each of The Funds at any and all times during the Damages Period.

**REQUEST FOR PRODUCTION NO. 11:**

With respect to each of the unbundled component portions of the Management Fees, Portfolio Selection Fees, and 12b-1 Fees referenced above in Request For Production No. 9, all

documents and tangible things in your possession, custody, or control relevant to establishing the profits and profit margins that PIM, PRM, or other affiliated Putnam entities have realized from each of The Funds at any and all times during the Damages Period.

**REQUEST FOR PRODUCTION NO. 12:**

All documents and tangible things in your possession, custody, or control relevant to establishing the costs, expenses, and expense ratios that PIM, PRM, or other affiliated Putnam entities have incurred with respect to each of the various types of services and/or resources that they have provided in exchange for the Management Fees, Portfolio Selection Fees, and 12b-1 Fees that they have received from each of the Funds at any and all times during the Damages Period.

**REQUEST FOR PRODUCTION NO. 13:**

All documents and tangible things in your possession, custody, or control relevant to establishing what dispositions or uses, and in what amounts, PIM, PRM, or other affiliated Putnam entities have made of all portions of the Management Fees and 12b-1 Fees that they have received from each of The Funds at any and all times during the Damages Period.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and tangible things in your possession, custody, or control that concern, refer or relate to the issues of if, whether, how, or to what degree any existing mutual fund shareholder benefits from paying 12b-1 Fees.

**REQUEST FOR PRODUCTION NO. 15:**

All documents and tangible things in your possession, custody, or control that concern, refer, or relate to the issues of whether paying 12b-1 Fees is unfair, harmful, detrimental,

disadvantageous, or contrary to the interests or welfare of any existing mutual fund shareholder.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and tangible things in your possession, custody, or control that concern, refer, or relate to the issue of whether the Management Fees and/or 12b-1 Fees paid to PIM, PRM, or other affiliated Putnam entities by any of the Putnam Mutual Funds have been excessive.

**REQUEST FOR PRODUCTION NO. 17:**

All documents and tangible things in your possession, custody, or control that concern, refer, or relate to the issues of whether it is advisable, legal, appropriate, proper, fair, justified, or warranted to directly or indirectly charge 12b-1 Fees to any existing mutual fund shareholder.

**REQUEST FOR PRODUCTION NO. 18:**

All documents and tangible things in your possession, custody, or control that concern, refer, or relate to the issues of whether there have been, should be, or may be any increases, reductions, curtailments, or eliminations of any portion of the Management Fees and/or 12b-1 Fees charged to any of the Putnam Mutual Funds by PIM, PRM, or other affiliated Putnam entities.

**REQUEST FOR PRODUCTION NO. 19:**

All documents and tangible things in your possession, custody, or control that reflect, concern, or relate to any comparisons or contrasts drawn between the nature, amounts, fee structures, breakpoints, dispositions, or uses of the Management Fees, Portfolio Selection Fees, and/or 12b-1 Fees that PIM, PRM, or other affiliated Putnam entities receive from any of the

Putnam Mutual Funds on the one hand, and those that PAC or any non-Putnam entities receive from any Institutional Accounts or any non-Putnam mutual funds on the other hand.

**REQUEST FOR PRODUCTION NO. 20:**

All documents and tangible things in your possession, custody, or control that concern, refer, or relate to the issues of if, whether, how, or in what amounts PRM or other affiliated Putnam entities profit, benefit, or save on expenses by virtue of receiving 12b-1 Fees from any of the Putnam Mutual Funds.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and tangible things in your possession, custody, or control that concern, refer, or relate to the issues of whether the nature or amounts of Management Fees that PIM has charged to any of the Putnam Mutual Funds are advisable, legal, appropriate, proper, fair, justified, or warranted.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and tangible things in your possession, custody, or control that concern, refer, or relate to the issues of whether the nature or amounts of Management Fees that PIM has charged to any of the Putnam Mutual Funds are excessive, unfair, harmful, detrimental, disadvantageous, or contrary to the interests or welfare of any of the Putnam Mutual Funds or their shareholders.

**REQUEST FOR PRODUCTION NO. 23:**

All documents and tangible things in your possession, custody, or control that reflect, concern, or relate to any comparisons or contrasts drawn between the nature or extent of the services that PIM provides to any of the Putnam Mutual Funds pursuant to any Management

Contract on the one hand, and those that PAC or any non-Putnam entity provides to any of their Institutional Accounts pursuant to any Management Contract on the other hand.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and tangible things in your possession, custody, or control that reflect, concern, or relate to any comparisons or contrasts drawn between the profits or profit margins that PIM, PRM, or other affiliated Putnam entities have realized on the Management Fees, Portfolio Selection Fees, and/or 12b-1 Fees that they receive from any of the Putnam Mutual Funds on the one hand, and those that PAC or any non-Putnam entity have realized with respect to any Institutional Account or any non-Putnam mutual fund client on the other hand.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and tangible things in your possession, custody, or control that reflect, concern, or relate to any comparisons or contrasts drawn between the costs, expenses, or expense ratios that PIM, PRM, or other affiliated Putnam entities have incurred with respect to any services and/or resources provided under any Management Contract or Distribution Plan for any of the Putnam Mutual Funds on the one hand, and those that PAC or any non-Putnam entity have incurred with respect to any services provided to any Institutional Client or any non-Putnam mutual fund client on the other hand.

**REQUEST FOR PRODUCTION NO. 26:**

All documents and tangible things in your possession, custody, or control that concern, refer, or relate to the nature, amounts, fee structures, breakpoints, dispositions, or uses of any Management Fees, Portfolio Selection Fees, and/or 12b-1 Fees charged or received by PAC or any non-Putnam entity.

**REQUEST FOR PRODUCTION NO. 27:**

All documents and tangible things in your possession, custody, or control that concern, refer, or relate to profits or profit margins realized by any entity with respect to Management Fees, Portfolio Selection Fees, and/or 12b-1 Fees.

**REQUEST FOR PRODUCTION NO. 28:**

All documents and tangible things in your possession, custody, or control sufficient to identify all members of each of the Investment Management Teams for each of The Funds at any and all times during the Damages Period.

**REQUEST FOR PRODUCTION NO. 29:**

All documents and tangible things in your possession, custody, or control that constitute or concern any annual financial statements (audited and unaudited) of PIM, PRM, or any of The Funds covering any and all times from January 1, 2000 to the present including, but not limited to, income statements; balance sheets; statements of cash flows; statements of operations; all footnotes relating thereto; all cost allocation policies or procedures relating thereto; and all underlying source materials, supporting materials, and back-up materials considered or relied upon in generating such documents, including ledgers and sub-ledgers.

**REQUEST FOR PRODUCTION NO. 30:**

All documents and tangible things in your possession, custody, or control that constitute or concern any monthly or quarterly financial statements (audited and unaudited) of PIM, PRM, or any of The Funds covering any and all times during the Damages Period including, but not limited to, income statements; balance sheets; statements of cash flows; statements of operations; all footnotes relating thereto; all cost allocation policies or procedures relating thereto; and all underlying source materials, supporting materials, and

back-up materials considered or relied upon in generating such documents, including ledgers and sub-ledgers.

**REQUEST FOR PRODUCTION NO. 31:**

All documents and tangible things in your possession, custody, or control that constitute or concern any annual financial statements (audited and unaudited) of any parent or affiliate entities whose financial results include the results of PIM or PRM covering any and all times from January 1, 2000 to the present including, but not limited to, income statements; balance sheets; statements of cash flows; statements of operations; all footnotes relating thereto; and all underlying source materials, supporting materials, and back-up materials considered or relied upon in generating such documents.

**REQUEST FOR PRODUCTION NO. 32:**

All documents and tangible things in your possession, custody, or control that constitute or concern any monthly or quarterly financial statements (audited and unaudited) of any parent or affiliate entities whose financial results include the results of PIM or PRM covering any and all times during the Damages Period including, but not limited to, income statements; balance sheets; statements of cash flows; statements of operations; all footnotes relating thereto; and all underlying source materials, supporting materials, and back-up materials considered or relied upon in generating such documents.

**REQUEST FOR PRODUCTION NO. 33:**

All documents and tangible things in your possession, custody, or control that constitute, concern, or relate to any Form N-SAR filed on behalf of any of The Funds including, but not limited to, all underlying source materials, supporting materials, and/or