UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN G. WICKS, GERALD A. KALBFLEISCH, and MICHAEL and MYRTLE HATHAWAY<br><br>Plaintiffs,<br><br>v.<br><br>PUTNAM INVESTMENT MANAGEMENT, LLC and PUTNAM RETAIL MANAGEMENT, LLP,<br><br>Defendants. | Civil Action No: 04-CV-10988 |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR LEAVE TO AMEND**

Plaintiffs hereby reply to the arguments asserted in Putnam Investment Management LLC's and Putnam Retail Management, LLP's (collectively, "Putnam") Opposition to the Motion to File Second Amended Complaint (the "Opposition"). Plaintiffs file concurrently herewith a response to Putnam's pending motion for summary judgment.

**I.   INTRODUCTION**

A fundamental goal of the Federal Rules of Civil Procedure is to provide a framework for determining claims on their substantive merits. *See Kuehl v. Federal Deposit Ins. Corp.*, 8 F.3d 905, 908 (1st Cir. 1993), *cert. denied*, 511 U.S. 1034, 114 S.Ct. 1545 (1994). That goal is especially important here, where the plaintiffs serve as "private attorneys general" for little personal gain. Congress created their cause of action to provide for scrutiny into the fees

charged to mutual funds. Congress passed this statute to address its concern that fund managers – like the defendants here – were extracting excessive fees from the mutual funds to which they owe a fiduciary duty.

Putnam has, to date, been successful in thwarting this fundamental purpose of the Federal Rules and Section 36 (b) of the Investment Company Act. Through a series of procedural devices, it has avoided any substantive inquiry into the extravagant fees charged to their customers (indeed, although this action has been pending for over a year, Putnam has yet to produce a single document). Putnam's Opposition is the latest volley in this effort. Instead of assenting to a simple procedural motion to replace a plaintiff, Putnam impugns the integrity of opposing counsel and asserts arguments in its Opposition that are inconsistent with every published case on the subject.

As set forth in the plaintiffs' opening memorandum, motions to amend are freely given unless there has been dilatory conduct by the moving party and prejudice to the non-moving party. The plaintiffs have established that they acted promptly and with diligence in this action. Further, Putnam would not suffer prejudice from the amendment because discovery has not yet begun in earnest, there is no scheduling order in place, and *the proposed amendment does not add any new funds or issues into the case.* The plaintiffs merely seek to maintain the status quo by adding a plaintiff that is asserting claims on behalf of some of the same funds as Plaintiff Wicks.

In an effort to attack the motion to amend, Putnam focuses on the lack of relationship between the existing plaintiffs and the new, proposed one. Without citing any case law, Putnam attempts to create a "relationship test" out of whole cloth. There simply is no requirement in the law that there be such a relationship.

2

Putnam's other arguments similarly ignore the relevant legal principals. For example, as to the alleged delay, Putnam is unable to claim that the plaintiffs failed to act promptly in this action. Accordingly, it resorts to focusing on events that occurred years ago in two other pieces of litigation in another state, inaccurately characterizing the plaintiffs' efforts to respond to Putnam's own procedural motions as "strategic maneuvering." Putnam's focus on other litigation is directly at odds with the relevant case law, which focuses on delay in the action *in which the amended pleading is filed.*

Similarly, Putnam is unable to identify any relevant prejudice. Accordingly, it resorts to arguing that it will suffer prejudice because the claims may relate back to the time of filing of the original complaint. Case after case, however, has held that this is not the type of prejudice contemplated by courts when considering a motion to amend. Indeed, if relation back were truly considered unduly prejudicial, motions to amend would never be granted. Relation back is especially fair here, where the plaintiffs simply seek to preserve claims for damages that are *identical* to ones asserted in the original complaint.

It is time for the scrutiny long-avoided by Putnam to begin. The motion to amend should be granted, and the case should proceed to discovery.

## II.   BACKGROUND FACTS

The facts relevant to this reply are set forth in the plaintiffs' original memorandum. In sum, Plaintiff Steven G. Wicks ("Wicks") was an original plaintiff when this action was filed on May 17, 2004. On April 4, 2005 plaintiffs filed an amended complaint to cure defects identified in this Court's Order of March 3, 2005. After filing the amended complaint, plaintiffs' counsel learned that Wicks' broker had sold all of Wick's shares of the Putnam mutual funds against his

instructions. To cure a potential defect, plaintiffs now move to file a Second Amended Complaint to add a plaintiff who owns some of the funds sold by Wicks.

As set forth in the accompanying response to Putnam's Summary Judgment Motion, the plaintiffs do not object to the motion for summary judgment, provided the plaintiffs motion to amend is granted. A chart summarizing the effect of granting the motion to amend and the motion for summary judgment on the funds in the litigation is attached hereto at Tab A.

The plaintiffs address herein in detail two factual matters raised by the Opposition: 1) the false implication that plaintiffs' counsel knew of the sale of Wicks' shares while Putnam's motion to dismiss on the "two dismissal" rule was pending; and 2) Putnam's characterizations of the procedural history of this case and the previous two actions to which Wicks was a party.

A. **Counsel Learned of the Sale Well After the Motion to Dismiss was Decided.**

The Court had ruled on Putnam's motion to dismiss long before Plaintiffs' counsel first learned that Wicks' Putnam mutual fund shares were sold. Plaintiffs' counsel first learned on May 4, 2005, from a paralegal that there had been a sale contrary to Wicks instructions. [Affidavit of Thomas R. Grady (herein "Grady Aff.") at ¶ 3].[1] Counsel was first able to speak directly with Wicks in detail on May 16, 2005 [Grady Aff. ¶ 4]. During that conversation, plaintiffs' counsel learned that all his Putnam mutual fund shares had been improperly sold in mid-February of 2005, even though Wicks specifically instructed his broker to retain a portion of the shares in funds at issue in this litigation, and even though the broker had been told specifically that those shares were to be retained so that Wicks could continue to serve as a plaintiff in this lawsuit. [Grady Aff., ¶ 4]. Plaintiffs' counsel also learned during the May 16, 2005 conversation that Wicks himself had only recently learned that all of the shares had been

---

[1] References to "Grady Aff." are to the Declaration of Thomas Grady attached at Tab A of the Plaintiff's Response to Defendants' Motion for Summary Judgment on Claims of Steven G. Wicks and Opposition to Motion to Stay.

4

sold. [Grady Aff., ¶ 5]. Thereafter, plaintiffs' counsel completed a necessary investigation of the relevant circumstances, including whether the unauthorized sale could be reversed, whether Mr. Wicks could repurchase, or whether he continued to own the relevant funds in other accounts, such as a retirement account. [Grady Aff, ¶ 6]. As Putnam admits, plaintiffs' counsel notified Putnam's counsel on June 3, 2005. As set forth in plaintiff's original memorandum in support of the motion to amend, plaintiffs' counsel moved to amend the complaint one week after they were formally retained by Vaughn, the new plaintiff.

In sum, plaintiffs' counsel acted with diligence and good faith. For Putnam to suggest that plaintiffs' counsel knew of the sales while briefing and arguing Putnam's motion to dismiss is baseless and irresponsible.

**B.      Plaintiffs Have Not Engaged in Improper Strategic Maneuvering**

Putnam's suggestions that the plaintiffs are somehow responsible for having orchestrated "years of procedural maneuvering and attendant delay" by filing "seriatim lawsuits" from 2001 to present are equally unfounded. (Opposition, pp. 1, 3, 4). Indeed, these suggestions rest on the false premise that the plaintiffs are a monolithic unit. To the contrary, three of the four plaintiffs that are presently moving to amend (Kalbfleisch, Michael Hathaway, Myrtle Hathaway) were not participants in the first Illinois action, and the Hathaways were also uninvolved in the second Illinois action. The new plaintiff, Vaughn, was not a party to either action.[2]

Given these facts, Putnam's only conceivable argument is that Plaintiff Wicks has ostensibly exerted common control over three unrelated § 36(b) actions, and that any "procedural maneuverings" occurring therein must be attributed to him. But this argument is frivolous. Far

---

[2]      Copies of the pleadings in the Illinois actions were attached as exhibits to the Defendants' Memorandum of Law in Support of the Motion to Dismiss the Complaint.

from controlling the first Illinois action, for example, Wicks was merely one of twenty-one named plaintiffs in a case brought on behalf of fifty-one different mutual funds against forty-eight different defendants.

In any event, it has been *Putnam*, and *not Wicks*, who has been responsible for any and all "procedural maneuverings." A stipulated dismissal of the first Illinois action was prompted by Putnam's successful procedural motions seeking severance and a transfer of venue. (Opposition, p. 6). Similarly, the second Illinois action was voluntarily dismissed after Putnam again filed briefing that address venue challenges.[3] Accordingly, the "procedural maneuvering" of which Putnam complains was nothing more than the plaintiffs seeking to keep the action in their choice of venue, which is hardly an improper motivation.

Similarly, the motion practice in the Massachusetts case has been prompted by Putnam. Plaintiffs' first amendment to the Complaint was prompted by Putnam's partially successful procedural attack against Wicks under F.R.C.P. 41(a), and Plaintiffs' proposed second amendment was made in anticipation of Putnam's further procedural challenge to Wicks' standing.[4]

### III.   PLAINTIFFS' MOTION TO AMEND SHOULD BE GRANTED

#### A.   There Is No Requirement of a "Relationship" Between Proposed New Plaintiffs and the Existing Plaintiffs.

Putnam's focus on the lack of a relationship between the existing plaintiffs and the new proposed plaintiff, and on the current plaintiffs' "interest" in amending the Complaint, is

---

[3] The Court ordered briefing on this subject.

[4] The Defendants question in a footnote why Vaughn was not included from the beginning of this case. The answer is simple: He was not needed. Section 36(b) allows a shareholder such as Wicks to sue on behalf of all fund shareholders. Further, Plaintiffs could not possibly have imagined that a broker would disregard specific instructions and sell Wicks' shares, thereby allowing Defendants (through no fault of the plaintiffs) opportunity to raise a further roadblock to scrutiny of its fees.

baffling. There is no requirement that there be such a "relationship," and Putnam does not cite to any case providing that there is such a requirement. Rather, Putnam merely notes that many of the cases cited in Plaintiffs' moving papers involved new claims, not new plaintiffs.[5] While this may be true, this fact does not establish the Putnam's supposed "relationship requirement." Further, contrary to Putnam's claims, courts have added plaintiffs to ongoing litigation without requiring the type of showing urged by Putnam. Rather, courts have focused on whether there is similarity or commonality between the <u>claims</u> asserted by the new plaintiffs and the pre-existing plaintiffs. *See, e.g., Gregg Communications Systems, Inc. v. American Telephone and Telegraph*, 98 F.R.D. 715, 722 (N.D. Ill. 1983) (allowing addition of new plaintiffs to private antitrust action who were merely "similarly situated" to existing plaintiffs even though new discovery would be needed, and defendant faced potential for increased liability); *in re Osage Exploration Co.*, 104 F.R.D. 45, 49 (S.D.N.Y. 1984) (allowing addition of new plaintiffs where their joinder raised "questions of law and fact common to each other and common to those asserted by the original plaintiffs").

Here, the proposed new plaintiffs have the necessary similarity or commonality of claims. In this Section 36(b) case, all plaintiffs bring suit on behalf of the mutual fund in which they are a shareholder. *See* 15 U.S.C. § 80a-35(b) ("[a]n action may be brought . . . by the Commission, or a security holder of such registered investment company <u>on behalf of such company</u>) (emphasis added). The funds for which Vaughn seeks to serve as plaintiff overlaps with funds for which Wicks is currently a plaintiff. Therefore, his addition to the case would not

---

[5] Defendants cite to *Vargas v. McNamara*, 608 F.2d 15, 18 (1st Cir. 1979) for the proposition that the existing plaintiff's motivation is relevant. That case is inapposite, as it involved a proposed amendment to add a new legal theory after the close of the plaintiff's evidence at trial. The "motive" discussed by the Court related to whether there was a dilatory motive. The case does not stand for the proposition that an old plaintiff and a new one must have some relationship or that the existing plaintiff must have an interest in the amendment.

7

only present a "similarity or commonality" of claims – it would present truly identical claims. It is, therefore, proper under Rule 15.[6]

### B. The History of Other Cases Is Irrelevant to Establishing Delay in the Context of a Motion to Amend.

The pages of the Opposition that Putnam devotes to cataloging the procedural history of other cases brought against it is entirely irrelevant to the pending motion. As set forth above, the history of the other cases only demonstrates that Putnam has used procedural devices to avoid substantive scrutiny of its fee-charging practices. Even if the plaintiffs were somehow at fault for the procedural history of these cases, the case law does not indicate that courts rely upon the passage of time in *other* litigations when considering a motion to amend. Putnam does not cite any such case in the Opposition. When courts do discuss whether "delay" is present, they necessarily consider the passage of time in the case actively before them. *See, e.g., Ali v. Mass. Medical Center*, 140 F.Supp. 2d 107, 109 (D.Mass. 2001). In the case currently before the Court, Putnam has not even suggested that Plaintiffs have unduly delayed in filing their amendment.

Even if the Court were to examine the history of the other cases, Putnam has not identified any dilatory conduct other than the plaintiffs' efforts to respond to procedural challenges by Putnam. Accordingly, there is simply no basis for finding undue delay.

---

[6] Even if there were a requirement that the existing plaintiffs have some interest in the amendment, that is the case here. Plaintiff Wicks clearly has an interest in seeing his claims prosecuted by a new plaintiff. All of the plaintiffs (as well as the Court and Putnam) have an interest in the most orderly and efficient administration of this litigation, which would involve handling closely-related and common issues in one piece of litigation. Discovery in any Section 36(b) case is likely to overlap with any other Section 36(b) case against the same fund manager because analysis of economies of scale is likely to require a company-wide assessment.

8

### C. There Is No Possible Undue Prejudice to Putnam in Any Form Recognized by Rule 15 Jurisprudence.

#### 1. There is no Prejudice Here.

Putnam cannot establish undue prejudice resulting from the motion to amend. In general, undue prejudice has been found where discovery must be re-opened, often at additional cost, trial is significantly postponed, or a major alteration in trial tactics is made necessary by the amendment. *See Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004); *see also Glassman v. Computervision Corp.*, 90 F.3d 617, 622 n.9 (1st. Cir. 1996)("unlikely that defendants could have been prejudiced" where court accepted that amendment created no need to reopen discovery or change trial strategy).

None of these factors are present here. Quite literally, the full course of discovery remains available to Putnam. The first document has not been exchanged. Not a single question has been posed to any deponent. And, as explained above, the claim presented by the proposed new plaintiff is identical to some of the claims already put at issue by Wicks when the original Complaint was filed. Accordingly, no new issues are being injected into this litigation.[7] Numerous cases allow motions to amend when, as here, they are brought at the early stages of discovery. *Smith & Nephew, Inc. v. Surgical Solutions, Inc.*, 353 F.Supp.2d 135, 139 (D. MA 2004) ("[d]efendant's motion for leave to file counterclaims was filed before the discovery deadline and Plaintiff cannot be heard to object to Defendant's adherence to it"); *Ali v. University of Mass. Med. Ctr.*, 140 F.Supp.2d 107, 109 (D.MA 2001) (motion to amend allowed 2 years after filing of complaint, mitigating factors included that there has been "no discovery in this case, thus lessening any prejudice to the defendants that might have otherwise arisen");

---

[7] Putnam suggests that new plaintiffs will raise new facts. This is true only in the most trivial, technical sense: All that changes for Putnam is the actual name of a plaintiff, and verifying through discovery the new plaintiff's ownership of two funds, the Putnam Voyager Fund and the Putnam Growth Opportunities Fund.

9

*Knowlton v. Spillane*, 137 F.R.D. 196, 198 (D.MA 1991) (Magistrate's Order) ("fact that discovery had not yet ended" included as factor for allowing motion to amend to add punitive damages claim). Given this clear body of precedent, denying the motion to amend would be unprecedented.[8]

### 2.   Relation Back Is Not an Element of Prejudice and Is Expressly Provided For in the Rule of Civil Procedure that Allows Amendments.

The defendants spend the final portion of their memorandum lamenting the effect of the "relation back" provision of the Federal Rules of Civil Procedure and claiming that the Court should somehow consider that effect when deciding the motion to amend. As before, they cite no cases in support of their argument. That is not surprising, as Putnam's argument is truly nonsensical. The Federal Rules of Civil Procedure expressly provide for relation back in the very same rule that allows amendments and states that they should be "freely given." If relation back inherently creates the type of prejudice that defeats a motion to amend, it would follow that a pleading could never be amended. *See Allied International, Inc. v. International Longshoremen's Assoc.*, 814 F.2d 32, 35 (1st Cir. 1987)(complaint amended to add new party even though claim would relate back). Relation back is especially fair here, where the plaintiffs simply seek to preserve the status quo; they assert claims for damages that are *identical* to ones asserted in the original complaint.

### C.   The "Relation Back" Issue Is Premature and Not Yet Ripe for a Ruling.

Near the end of its Opposition brief, the defendants tacitly recognize that the plaintiffs' proposed amendment is proper by asking the Court to rule that the new plaintiffs' claims do not

---

[8] Putnam's argument that the Plaintiffs will suffer no prejudice by denial of the pending motion turns Rule 15 on its head, as the proper inquiry is whether <u>defendant</u> is unduly prejudiced. Furthermore, the assertion is false. All Putnam shareholders, including the existing plaintiffs, will suffer if the mutual funds for which Vaughn is a shareholder escape scrutiny under Section 36(b).

relate back to the date of filing of the original Complaint. The Court should decline this invitation. If Putnam believes that relation back is improper, its opposition to the motion to amend is not the appropriate vehicle to make this argument. Putnam ought to file a separate motion on that issue rather than rely on a single footnoted citation to an inapposite decision.

In any event, Putnam is plainly wrong. The claims of the new plaintiffs do indeed relate back. In *Allied International, Inc. v. International Longshoremen's Assoc.*, 814 F.2d 32 (1st Cir. 1987), the Court adopted a three part test to assess relation back, but held that the test need only be applied where the new plaintiff's claim "is different" from the old plaintiff's claim. *Id.*, at 35. Accordingly, to find relation back, the Court would not even need to reach the three part test. Plaintiff Vaughn, pursuant to Section 36(b), seeks to recover on behalf of certain mutual funds excessive fees charged to those funds. Wicks made the *exact same claim* in his original complaint with respect to the *exact same funds*. Therefore, Vaughn's claim is not "different."

Even if the Court should reach the three part test, it is satisfied. The test is as follows:

> The amended complaint must arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; there must be a sufficient identity of interest between the new plaintiff, the old plaintiff, and their respective claims so that the defendants can be said to have been given fair notice of the latecomer's claim against them; and undue prejudice must be absent.

*Id.*, at 35. Here, there can be no dispute that the claim arises out of the same conduct, transaction, or occurrence, because Vaughn's claims were asserted by Wicks. Similarly, the two plaintiffs have a sufficient identity of interest so that Putnam received fair notice of the claim. Vaughn has interests that are identical to Wicks, because Vaughn seeks to recover the same damages on behalf of some of the same funds as Wicks, and Putnam cannot claim surprise. Finally, there is no undue prejudice because discovery has not begun in earnest.

Defendants' reliance on *Young v. Lepone*, 305 F.3d 1 (1st Cir. 2002) is misplaced. In that case, violations of Rule 10b-5 were alleged. The court found a lack of identity of interest because the new plaintiff's individual claims differed from the old plaintiff's individual claims in "significant respects," the parties' injuries were "completely separate and distinct," and there was no reason to believe that the old plaintiff "was speaking on behalf, or acting to the behoof, of" the new plaintiffs. *Young*, 305 F.3d at 16. This rationale would not apply in our case.[9] Vaughn's claim does not differ in *any* respects from ones asserted by Wicks. The injuries are not separate or distinct because, pursuant to Section 36(b), both seek to recover on behalf of the mutual funds at issue, and neither one prosecutes individual claims. *See* 15 U.S.C. § 80a-35(b) (claim to be brought by investor on behalf of investment company). Both acted on behalf, or to the behoof, of those companies.[10]

---

[9] The Court in *Young* gave examples of cases where there would be a sufficient identity of interest, focusing on related corporations. This list does not purport to be all-inclusive and is not applicable to our situation, where the parties are acting in a representative capacity.

[10] Putnam's gratuitous argument that, despite its continued wrongdoing, § 36(b) damages purportedly ceased accruing "following commencement of the suit" misconstrues the plain language of the statute and contradicts established case law precedent. *See* Opposition, p.9 n.12. The statute merely states that past damages are unrecoverable for the period "prior to one year before the action was instituted," *not* that that the filing of suit serves as a cut-off to the recovery of prospective damages going forward. Cf. Krinsk v. Fund Asset Management, Inc., 715 F.Supp. 472, 476 (S.D.N.Y. 1988) aff'd 875 F.2d 404 (2d Cir. 1989)(trial court hears evidence on § 36(b) damages that continued accruing subsequent to May 16, 1985 commencement of action).

## III.  CONCLUSION

For the reasons set forth above, the Motion to Amend should be granted.

Respectfully submitted,

_____
David E. Marder (BBO #552485)
Marc N. Henschke (BBO #636146)
Jonathan D. Mutch (BBO #634543)
Robins, Kaplan, Miller & Ciresi LLP
111 Huntington Ave.
Boston, MA  02199
(617) 267-2300

Of Counsel:

Thomas R. Grady (admitted *pro hac vice*)
Ackerman, Link, & Sartory, P.A.
222 Lakeview Avenue, Suite 1250, Esperante
West Palm Beach, FL  33401

## CERTIFICATE OF SERVICE

I, David E. Marder, hereby certify that on July 18, 2005 I caused the foregoing to be served by first class mail upon Defendants' counsel of record at the following addresses:

Seth M. Schwartz, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

and

James R. Carroll, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, Massachusetts 02108-3194

_____
David E. Marder

BN1 35024910.2

13