UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| STEVEN G. WICKS, <br> GERALD A. KALBFLEISCH, and <br> MICHAEL and MYRTLE HATHAWAY <br><br> Plaintiffs, <br><br> v. <br><br> PUTNAM INVESTMENT <br> MANAGEMENT, LLC and <br> PUTNAM RETAIL <br> MANAGEMENT, LLP, <br><br> Defendants. | Civil Action No: 04-CV-10988 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT ON CLAIMS OF
STEVEN G. WICKS AND OPPOSITION TO MOTION TO STAY**

Plaintiffs file this paper in response to the defendants' motion for summary judgment and motion to stay discovery. Contemporaneously herewith, the plaintiffs have filed a reply memorandum relating to their motion to amend. The plaintiffs respectfully suggest that the Court review that reply memorandum before the instant filing, as it provides the appropriate context and background for the matters discussed in this Response. For the reasons set forth herein, plaintiffs do not oppose the motion for summary judgment on the issue of standing, provided that the Court first grant the pending motion to amend.

I.  **INTRODUCTION**

The current summary judgment motion arises because the broker of one of the plaintiffs, Steven G. Wicks ("Wicks"), sold all Wicks' shares in Putnam mutual funds against instructions. Unbeknownst to plaintiffs' counsel, this sale had already occurred at the time of the filing of the

Amended Complaint. Upon learning of this event, plaintiffs' counsel notified opposing counsel and moved to correct the Amended Complaint by revising the portions relating to Wicks and adding a plaintiff to represent some of the funds whose shares had been sold. Assuming the motion to amend is decided in plaintiffs' favor (as is should be, given that the discovery has not begun in earnest and there is no undue delay or prejudice), the two large funds that form the heart of the plaintiffs' case will remain in this litigation. Accordingly, granting the defendants' motion for summary judgment will not significantly alter the case.

As set forth in detail in the accompanying reply memorandum relating to the motion to amend, the defendants have managed to avoid scrutiny of their extravagent fees by filing a series of procedural motions. The plaintiffs are eager to commence discovery and begin such scrutiny. Although summary judgment is not required for the reasons set forth herein, the plaintiffs will not oppose the entry of summary judgment on standing grounds, provided that the pending motion to amend is allowed first.[1] The plaintiffs do so to conserve judicial resources and avoid further procedural machinations by Putnam.

The plaintiffs do, however, oppose the motion to stay discovery. Contrary to Putnam's protestations, it is clear which funds will remain in this litigation: the ones set forth in the proposed Second Amended Complaint. At a bare minimum, Putnam should be required to produce documents in response to the plaintiffs' requests that are not fund-specific or that relate to the funds not implicated by the current motions.

---

[1] Obviously, the plaintiffs do oppose if the motion to amend is not granted. Attached at Tab A to the accompanying Reply Memorandum in Support of Plaintiffs' Motion for Leave to Amend is a chart that summarizes the funds at issue in the litigation and the effect that granting the motion to amend and the motion for summary judgment will have on such funds.

## II. FACTS

Putnam's recitation of the facts is largely accurate. The Plaintiffs respond here only to Putnam's suggestion that issues related to Wicks' standing could have been raised during the briefing and argument on Putnam's earlier motion to dismiss. In fact, the issue of the unauthorized sale was not known at that time.

As is established in the Affidavit of Thomas Grady attached hereto at Tab A, the Court had ruled on Putnam's motion to dismiss long before Plaintiffs' counsel first learned that Wicks' Putnam mutual fund shares were sold. Plaintiffs' counsel first learned on May 4, 2005, from a paralegal, that there had been a sale contrary to Wicks' instructions. [Affidavit of Thomas R. Grady (herein "Grady Aff.") at ¶ 3].[2] Counsel was first able to speak directly with Wicks in detail on May 16, 2005 [Grady Aff. ¶ 4]. During that conversation, plaintiffs' counsel learned that Wicks' Putnam mutual fund shares had been improperly sold in mid-February of 2005, even though Wicks specifically instructed his broker to retain a portion of the shares in the funds at issue in this litigation, so that Wicks could continue to serve as a plaintiff in this lawsuit. [Grady Aff., ¶ 4]. Plaintiffs' counsel also learned during the May 16, 2005 conversation that Wicks himself had only recently learned that all of the shares had been sold. [Grady Aff., ¶ 5]. Thereafter, plaintiffs' counsel completed a necessary investigation of the relevant circumstances, including whether the unauthorized sale could be reversed, whether Mr. Wicks could repurchase, or whether he continued to own the relevant funds in other accounts, such as a retirement account. [Grady Aff, ¶ 6]. As Putnam admits, upon completing its investigation, plaintiffs' counsel promptly notified Putnam's counsel on June 3, 2005.

---

[2] References to "Grady Aff." are to the Declaration of Thomas Grady attached at Tab A hereto.

III. **RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

    A. **Wicks Has Standing**

Contrary to the assertions set forth in Putnam's summary judgment motion, Wicks has standing to sue on behalf of the Putnam Funds he owned at the time the Complaint was filed.

        1. **Wicks Has Standing Under Section 36(b).**

The plain language of Section 36(b) only required Wicks to be a shareholder at the time the original complaint was filed. The statute provides, in relevant part, only that "[a]n action may be brought under this subsection… by a security holder of such registered investment company on behalf of such company." Defendants do not, and cannot, contend that Section 36(b) requires plaintiff shareholders to continuously own fund shares, even after filing suit. Accordingly, Wick's sale of shares after the filing of the original complaint is irrelevant under the plain language of Section 36(b).

        2. **Wicks Has Article III Standing**

Article III of the Constitution limits federal jurisdiction to actual cases or controversies. *Courtemanche v. General Services Admin.*, 172 F.Supp.2d 251, 261-62 (D. Mass. 2001). Standing under Article III requires that the plaintiff suffer an injury that is concrete and particularized to him, that the injury be "fairly traceable" to the defendant's wrongful conduct, and that a decision favorable to plaintiff will redress the injury. *Courtemanche*, 172 F.Supp.2d at 262. Provided that the plaintiff has suffered a distinct injury to himself, Congress can, by statute create standing in persons to obtain relief on the basis of the rights and interests of others. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). As set forth above, Congress has enacted Section 36(b) and Wicks has established himself as a proper plaintiff under that statute. Therefore, Article III is satisfied as well.

Putnam's effort to raise events that occurred after the Complaint was filed, such as the sale of Wick's shares, have no bearing on this analysis. This is because "standing is to be 'assessed under the facts existing when the complaint is filed.'" *Becker v. Federal Election Comm'n*, 230 F.3d 381, 386 n.3 (1st Cir. 2000) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992)). *See also Lujan*, 504 U.S. at 569 n.4 (standing assessed when complaint filed); *Courtemanche*, 172 F.Supp.2d at 262 (same).

    3.    **Wicks' Case Is Not Moot.**

        a.    **Defendants' Brief Improperly Conflates The Issue of Standing With The Separate and Legally Distinct Issue of Mootness.**

Defendants' motion for summary judgment is limited to challenging Wick's sale of his shares of the Putnam Funds *subsequent* to the filing of the Complaint. The Defendants' motion thus improperly conflates issues of standing with issues of mootness. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (personal interest assessed throughout litigation goes to mootness, not standing); *Becker* 230 F.3d at 386 n.3 (whether plaintiff has personal interest at stake throughout litigation should be assessed under the law of mootness and should be treated separately from questions of standing).

        b.    **Defendants Have Not Met Their Heavy Burden Of Establishing That Wick's Claims Are Moot.**

The Defendants have a "heavy burden" to establish that Wick's claims are moot. *Conservation Law Foundation v. Evans*, 360 F.3d 21, 24 (1st Cir. 2004) (party invoking mootness doctrine has "heavy burden" to establish its applicability). The Defendants have not met their burden, as shown below.

(i) **As a Section 36(b) Plaintiff, Wicks Need Not Have A Continuing Personal Stake in the Litigation.**

There is no inflexible rule that requires a finding of mootness because Wicks has sold his shares. Mootness is a "flexible" doctrine with "uncertain and shifting contours." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 400-01 (1980) (citations omitted). The mootness doctrine is "riddled with exceptions" based upon "practicalities and prudential considerations." *Id.* at 404 n.11. Where courts have required a "personal stake" in the litigation under the mootness doctrine, it was to "assure that the case is in a form capable of judicial resolution." *Id.* at 403. It does not follow, however, that a plaintiff's claim is always moot when he loses his personal stake in the litigation. To the contrary, the Supereme Court has held that having a continuing personal stake in the litigation is *not* an absolute constitutional requirement under the mootness doctrine in "nontraditional forms of litigation" where a plaintiff is acting in a representative capacity akin to a "private attorney general" to vindicate the rights of others. *Id.* at 402-03 ("[a]pplication of the personal-stake requirement" to cases involving plaintiffs suing in a representative capacity "is not automatic or readily resolved."). In short, the courts have recognized that "vigorous advocacy can be assured through means other than the traditional requirement of a 'personal stake in the outcome.'" *Id.* at 404.

Contrary to Defendants' attempt to summarily dispose of Wick's claims, "determining [the mootness doctrine's] 'uncertain and shifting contours' with respect to nontraditional forms of litigation… [in fact] requires reference to the purposes of the case or controversy requirement." *Geraghty*, 445 U.S. at 402 (citations omitted). Section 36(b), allowing shareholders to sue on behalf of and for the benefit of investment companies, undoubtedly falls within the scope of "nontraditional forms of litigation" requiring closer scrutiny than Defendants ask this Court to undertake. As stated above, the purpose of requiring a plaintiff's "personal

stake" in the litigation is to have the case is in a form capable of judicial resolution. *Id.* at 403. In this case, the Court can decide whether the Defendants have breached their fiduciary duties to the Putnam Funds irrespective of whether or not Wicks maintains a traditional "financial stake" in the litigation. *See Id.* at 403 (right to have class certified more analogous to private attorney general concept than to type of interest traditionally satisfying personal stake requirement).

As it concerns the mootness doctrine, a plaintiff suing under Section 36(b) on behalf of investment companies closely resembles a named plaintiff suing on behalf of a class, or acting as a private attorney general. The mootness of a named plaintiff's personal claim in a certified class action does not render the controversy moot. *See Franks v. Bowman Transportation Co.*, 424 U.S. 747, 756 (1976) (adversary relationship continues as to unnamed class members); *Sosna v. Iowa*, 419 U.S. 393, 401-402 (1975) (controversy between defendant and class member represented by named plaintiff may exist even though named plaintiff no longer has personal stake in litigation). Defendants certainly do not suggest that Plaintiffs' counsel lacks the tenancity and competence to pursue Wicks' action on behalf of the Putnam Funds. *See Franks*, 424 U.S. at 756 (mootness argument without merit where no questions raised concerning tenacity and competence of counsel to pursue legal relief on behalf of unnamed class members). Since its inception, this case has been about the injuiries suffered by the Putnam Funds at the hands of the Defendants, not about the harm suffered by any one shareholder. As in the class action context, an exception can and should be made for Section 36(b) plaintiffs as to any such "personal stake requirement," because "vigorous advocacy can be assured through means other than the traditional requirement of a 'personal stake' in the outcome.'" *Geraghty*, 445 U.S. at 404.

Defendants have cited to no controlling authority interpreting Section 36(b) so as to require under the mootness doctrine that Wicks maintain a personal stake in the litigation. *Gollust v. Mendell*, 501 U.S. 115 (1991), a decision addressing standing, not mootness, concerned Section 16(b) of the Securities Exchange Act of 1934, not Section 36(b) of the Investment Company Act of 1940 at issue in the instant matter. Contrary to the Defendants' suggestion, the Court did not hold that Section 16(b) was Constitutionally mandated to require a person suing thereunder to maintain a financial stake in the litigation. At most, the Court suggested that Congress may have been concerned about a "serious constitutional question" or "doubt" when enacting Section 16(b), but the Court neither addressed nor answered the question. *See Gollust*, 501 U.S. at 125-26. Instead, the Court's holding was grounded upon a close examination of the unique legislative history of Section 16(b), wherein Congress had expressed its intention that a Section 16(b) plaintiff maintain a personal profit motive for bringing suit. *See Gollust*, 501 U.S. at 124-25 (discussing legislative history). Here, Defendants have offered no explanation of the legislative history of Section 36(b), or why that history should render Wick's claims moot under the present circumstances.

Similarly, the unreported decision of *Batra v. Investors Research Corp.*, 1992 WL 278688 (W.D.Mo.) did not address the facts present here. Moreover, it did not hold that a plaintiff suing under Section 36(b) must under the mootness doctrine maintain a personal stake in the litigation.

### B. Notwithstanding the Fact that Wicks Has Standing, Plaintiffs do not Oppose the Motion for Summary Judgment.

The heart of the plaintiffs' case revolves around two of the largest funds managed by Putnam, the Growth and Income Fund and the Voyager Fund. If the accompanying motion to amend is granted, these two funds will remain in the litigation. Therefore, the net effect of the

summary judgment motion is somewhat minimal: it will remove from the litigation certain smaller funds that were owned by Wicks but are not owned by Mr. Vaughn, the new plaintiff. Accordingly, if the accompanying motion to amend is granted, the plaintiffs will not object to the motion for summary judgment on standing grounds. This will have the following salutary affects: 1) it would avoid forcing the Court to decide constitutional issues and conserve judicial resources; 2) it would end the procedural skirmishes that have accompanied this litigation; and 3) it would clarify the identity of the funds at issue in the litigation and remove Putnam's asserted rational for avoiding discovery.

### III.  THE MOTION TO STAY SHOULD BE DENIED.

Putnam has filed a motion to stay discovery until the pending motions are resolved. In the meantime, it has refused to provide any discovery. Of course, this tactic resulted in Putnam effectively granting its own motion. Setting aside this obvious manipulation of the discovery rules, Putnam's motion has no merit. There is no rationale for staying all discovery at this time. The only discovery served to date is a document request from the plaintiffs. Many of the requests are not fund-specific and Putnam has an obligation to respond to them regardless of the result of the pending motions. As to requests that are fund-specific, Putnam can at least begin to produce the documents that are not affected by the motion for summary judgment.[3]

Although not relevant to this motion, the plaintiffs strongly contest Putnam's assertion that the document requests are somehow overly broad or unduly burdensome. As this Court is aware, resolution of the plaintiffs' claims depend, in part, upon an assessment of the factors set forth in *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923 (2d Cir. 1982).

---

[3]  There is no impediment under the Federal Rules to proceeding with discovery at this time. The parties held their Rule 26(f) conference on May 6, 2005. In recent correspondence, Putnam has claimed that discovery has been held up due to unspecified delays on the plaintiffs' part in preparing the Joint Discovery Plan. This position is nonsensical. The Court has not yet scheduled its initial scheduling conference, so the lack of a joint discovery plan

Accordingly, discovery in this matter is likely to focus on those factors. The factors include; 1) whether Putnam has benefited from economies of scale as the size of the funds has increased; 2) comparative fee structures; 3) the nature and value of fallout benefits attributable to the funds; 4) the nature and quality of services provided to the funds' shareholders; 5) profitability of the funds to the fund manager; and 6) the independence and conscientiousness of fund trustees. As the Court can appreciate, evaluation of these elements requires a detailed assessment of Putnam and its finances. The document requests are carefully tailored to achieve this objective.[4]

Finally, the plaintiffs address one issue presented to them by letter which is certain to make its way into Putnam's reply brief. Notwithstanding the fact that Putnam has moved for a stay of discovery, refused to produce any documents of its own, and not served any document request, Putnam has demanded that the plaintiffs begin producing their own documents (specifically, their account statements for the various accounts owned by them). The plaintiffs responded by offering to discuss a mutual exchange of documents, but Putnam refused and continues to insist on a one-way production, calling its position "eminently reasonable." The lack of merit in this position needs no comment.

## IV.   CONCLUSION

The Court should deny the motion to stay discovery. Further, for the reasons set forth in the accompanying papers, the Court should grant the pending motion to amend. If the Court does in fact grant the motion to amend, the plaintiffs do not oppose the motion for summary judgment on standing grounds, but do oppose if the motion to amend is denied.

Dated: July 18, 2005

---

is irrelevant. Under the rules, discovery can begin upon holding of the meeting of counsel and the service of initial disclosures, both of which have occurred. Fed. R. Civ. P. 26(d); Local Rule 26.2 (A).

[4]   The document request quoted in footnote 8 of Putnam's Memorandum is a perfect example. It seeks the financial materials required for an assessment of factors 1, 3, and 5.

Respectfully submitted,

STEVEN G. WICKS
GERALD A. KALBFLEISCH
MICHAEL and MYRTLE HATHAWAY

By their counsel,

_____
David E. Marder (BBO #552485)
Marc N. Henschke (BBO #636146)
Jonathan D. Mutch (BBO # 634543)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
(617) 267-2300


Thomas J. Gallo (admitted pro hac vice)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
950 E. Paces Ferry Rd., N.E.
Atlanta, GA 30326-1119
(404) 760-4300


Thomas R. Grady (admitted pro hac vice)
ACKERMAN, LINK & SARTORY, P.A.
222 Lakeview Avenue, Suite 1250, Esperante
West Palm Beach, FL 33401

## CERTIFICATE OF SERVICE

I, David E. Marder, hereby certify that on 7/18/05, I caused the attached to be served by first class mail upon Defendants' counsel of record at the following addresses :

Seth M. Schwartz, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

and

James R. Carroll, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, Massachusetts 02108-3194

David E. Marder