UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN G. WICKS,<br>GERALD A. KALBFLEISCH, and<br>MICHAEL and MYRTLE HATHAWAY<br><br>    Plaintiffs,<br><br>v.<br><br>PUTNAM INVESTMENT<br>MANAGEMENT, LLC and<br>PUTNAM RETAIL<br>MANAGEMENT, LLP,<br><br>    Defendants. | Civil Action No: 04-CV-10988 *G A O* |

## JOINT STATEMENT AND DISCOVERY PLAN

Pursuant to Fed. R. Civ. P. 16(b) and 26(f) and Local Rule 16.1(D), the parties

submit this Joint Statement and Discovery Plan.

## I.   PRELIMINARY ISSUE - MOTION TO STAY DISCOVERY

### A.   DEFENDANTS' POSITION

Defendants submit this Joint Statement and Discovery Plan entirely subject to their

motion to stay discovery. That motion seeks a stay of discovery (i) pending resolution of

Defendants' motion for summary judgment on the claims of plaintiff Wicks, on the basis that he

lacks standing due to the fact that, contrary to the allegations in the Amended Complaint, he does

not own shares in any Putnam fund, and (ii) pending resolution of Plaintiffs' motion for leave to

file a Second Amended Complaint. The discovery plan set forth herein concerns discovery that,

in Defendants' view, should not proceed until after resolution of those motions (and that should

proceed thereafter only in a manner that is appropriately tailored to the case as it is defined following those motions).

**B.    PLAINTIFFS' POSITION**

There is no need for a complete stay of discovery. The only discovery request served to date is Plaintiffs' first set of document requests. The vast majority of the documents sought by those requests will not be affected by the pending motion for summary judgment. Defendants should, at a minimum, be required to produce documents in response to Plaintiffs' document requests that are: 1) not fund-specific; or 2) relate to the funds that will remain in this action regardless of the outcome of Defendants' motion for summary judgment. More complete grounds for Plaintiffs' objection to a stay of discovery are found in Plaintiffs' opposition to the motion to stay.

**II.    JOINT PROPOSED SCHEDULE FOR MOTIONS AND DISCOVERY**

A.    The parties shall have 12 months from the entry of the Court's Rule 16(b) Scheduling Order in which to conduct fact discovery. Discovery requests must be served in time for the responses to be due by the deadline. The parties do not believe that conducting phased discovery is appropriate in this action.

B.    The parties have completed their Initial Disclosures pursuant to Rule 26(a)(1) and Local Rule 26.2.

C.    Within 45 days following the conclusion of the period allotted for fact discovery, the plaintiffs shall serve expert witness disclosures and submit expert reports pursuant to Fed. R. Civ. P. 26(a)(2). Within 60 days from the service of those expert reports, the defendants shall serve their disclosures and reports. Any reply to the defendants' expert reports shall be served within 30 days after service of the rebuttal expert reports.

D.      Within 30 days following service of the experts' replies to the rebuttal reports, the parties shall complete any expert depositions.

E.      All motions to amend the pleadings and motions to compel fact discovery shall be filed before the expiration of the period for fact discovery as set forth above.

F.      Summary judgment motions shall be filed no later than 30 days following the expiration of the period allowed for conducting expert depositions.

G.      The Pre-Trial Conference and Trial will be scheduled by further Order of the Court.

## III.   OTHER MATTERS

H.      The certifications required by Local Rule 16.1(D)(3) are attached hereto at Tabs A and B.

I.      The parties disagree on the issue of whether there should be any adjustments to the discovery event limitations set forth in Fed. R. Civ. P. 30(a)(2)(A), 30(d)(2), and 33(a) and LR 26.1(C). The parties state their respective positions on this issue *infra*.

### PLAINTIFFS' POSITION CONCERNING DISCOVERY LIMITS

This is a complex action requiring significant discovery. The plaintiffs provide herein background information concerning the nature of their claims so that the Court can appreciate the need for expanding the discovery limits. The plaintiffs also itemize the proposed number of discovery events and the justification for each such event.

The plaintiffs respectfully disagree with the defendants' assertion that a decision on the scope of discovery should await motion practice at some later date. Fed. R. Civ. P. 26(f)(3) specifically provides that the parties' discovery plan should encompass what "changes should be made in the limitations on discovery imposed under these rules or by local rule. . . ." Similarly,

BN1 35024961.1

3

Rule 16(c)(6) provides the Court with broad authority to issue orders regarding the control of discovery at scheduling conferences. Waiting for motion practice will only delay resolution of these issues and waste judicial resources.

The plaintiffs also disagree with the defendants' assertion that the proposed discovery is "unfocused" or "inefficient." As set forth below, each of the proposed topics of discovery is narrowly tailored to address the issues that will be litigated in this action.

## A.    Case Background

Defendant Putnam Investment Management ("PIM") manages mutual funds in return for substantial management fees. In addition to those fees, the funds pay a distribution fee to Defendant Putnam Retail Management ("PRM"), an affiliate of PIM. The plaintiffs allege that the management and distribution fees charged to nine of the funds are grossly excessive and violate the defendants' fiduciary duties to the funds. The plaintiffs bring this action on behalf of the funds pursuant to Section 36(b) of the Investment Company Act of 1940.

In order to judge whether mutual fund fees are excessive, courts look to the six factors enunciated in *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923 (2d Cir. 1982). Accordingly, discovery in this matter is likely to focus on those factors. The factors and the likely subjects of discovery are as follows:

1.    Economies of Scale: The plaintiffs will perform discovery into the nature and amount of the defendants' expenses, the degree to which those expenses have increased with growth of the funds, the degree to which the defendants have benefited from economies of scale and the extent to which those benefits have been passed on to shareholders.

2.    Comparative Fee Structures: This factor will require discovery into the fees paid by other comparable mutual funds. The plaintiffs will also examine the disparity

BN1 35024961.1

4

between the fees charged to the funds and those charged to Putnam's institutional clients. In its public filings and reports, the defendants represent that the fund trustees, when determining the appropriateness of the fees charged to the funds perform the same comparison. As part of this examination, the plaintiffs will need to discover the amount of the fees charged by Putnam Advisory Company, LLC ("PAC"), the affiliated entity that manages institutional funds. The plaintiffs also need to ascertain the portion of the management fee charged to the funds that is attributable to portfolio selection (which is comparable to the work performed for institutional clients) and the portion that is attributable to other administrative tasks (which are not performed for institutional clients).

3.    Fallout Benefits Attributable to the Funds: The plaintiffs plan to discover the nature and value of the benefits that defendants receive as a result of serving as adviser to the funds (in addition to the receipt of fees). These benefits may include, but are not limited to, transfer and/or custodian fees, revenues from securities lending arrangements, and compensation from brokers for selecting those brokers to transact trades for the funds (so-called "soft dollars").

4.    Nature and Quality of Services Provided to the Funds' Shareholders: This factor requires detailed discovery into the scope and nature of the services that the defendants perform for the funds.

5.    Profitability of the Fund to the Adviser-Manager: The plaintiffs will perform discovery into the expenses, revenues, and profitability of the defendants and their related entities. This is a discovery-intensive task because of the lack of transparency in the publicly available financial statements, the complicated accounting mechanisms used by the defendants, the number and variety of Putnam affiliates involved in fund management, and the transfer of funds between them and various third parties.

BN1 35024961.1

5

6.      Independence and Conscientiousness of Trustees: This factor will require

discovery into the compensation of the fund trustees, their relationship to Putnam, the nature of

the trustees' analysis of the appropriateness of the fees, and the type of information that the

trustees review when performing this analysis.

### B.      Proposed Number of Depositions

The plaintiffs envision the need to take a substantial number of depositions, and request

that the Court provide leave to take up to forty (40) depositions. The plaintiffs further request

that up to ten of these depositions not be subject to the one day, seven hour limit set forth in Fed.

R.. Civ. P. 30(d)(2).

A breakdown of the identity of the witnesses, the reason for the depositions, and the

number of deponents is set forth below. The breakdown is preliminary only and plaintiffs

reserve the right to adjust the number and type of witnesses. The plaintiffs provide this list only

as a means of illustrating the categories, numbers, and types of witnesses that may be important.

Plaintiffs also note that the breakdown only includes a small portion of the number of witnesses

with knowledge of relevant facts. For example, PIM employs teams to manage the funds, which

consist of portfolio managers, analysts, and support personnel. PRM also employs personnel in

connection with its activities. The funds' board of trustees alone are twelve individuals.[1] There

are also numerous third parties with knowledge of facts that are central to the *Gartenberg*

analysis. The preliminary breakdown is as follows:

> Identity: Trustees of the Funds
> Approximate Number of Individuals: 12
> Subjects: Independence and conscientiousness (*see* factor 6 above).

---

[1]     The need for the discovery set out in this proposed plan would change little, if at all, if the number of funds
at issue in this litigation changes as a result of currently pending motion practice.

Identity: Present and Former Portfolio Managers of Putnam
Approximate Number of Individuals: 10
Subjects: Nature and quality of portfolio management (*see* factor 4 above).

Identity: Miscellaneous officers and employees of Putnam and the funds
Approximate Number of Individuals: 8
Subjects:    Cost of providing services to funds; accounting issues; flow of
funds and compensation; interaction with trustees; nature and
amount of soft dollars and other fallout benefits; economies of
scale; profitability of funds; tasks performed by defendants other
than pure portfolio management; the nature of the defendants'
document production, records management, and electronic storage
of information.

Identity: Employees of PAC
Approximate Number of Individuals: 2
Subjects:    Nature of the fees charged to institutional clients and whether the
type of services performed for these clients are comparable to
those performed by the defendants (*see* factor 2 above).

Identity: Institutional clients of PAC
Approximate Number of Individuals: 4
Subjects:    *See* previous entry.

Identity: Accounting firms that audited the funds
Approximate Number of Individuals: 2
Subjects:    Nature of the defendants' accounting practices. *See also* factors 1,
3 and 5.

Identity: Employees of Putnam affiliates
Approximate Number of Individuals: 2
Subject:    Nature of the tasks delegated to other related entities; flow of
investors' funds among the defendants and their related entities.

## C.    **Proposed Number of Other Discovery Events**

In light of the complex nature of this matter, the plaintiffs propose that the Court expand

the other discovery limits set forth in the Federal Rules and Local Rules as follows:

Sets of document requests to parties:  Three sets to each defendant

Interrogatories:  Twenty-five to each defendant

Requests for admission: Fifty requests to each defendant (not including requests to admit used to authenticate documents, which would have no limit).

## DEFENDANTS' POSITION CONCERNING DISCOVERY LIMITS

The Court should not at this time -- prior to any discovery -- expand the discovery event limitations of L.R. 26.1(C), much less to the excessive degree proposed by plaintiffs.[2]

L.R. 26.1(C) is presumptively applicable to all cases, and provides for substantial discovery: 10 depositions, 25 interrogatories, 25 requests for admissions, and 2 sets of requests for production.

Further, the Court may alter those limits, as appropriate, during the one-year period for fact discovery (upon the required motion by the requesting party, signed by the attorney and the client).[3]

Plaintiffs should avail themselves of the discovery automatically provided for by L.R. 26.1(C), and thereafter, if they deem it appropriate, make a motion seeking additional discovery, setting forth their factual basis for that request.[4]

At that point the Court will have a factual basis on which to make a determination as to whether discovery in excess of that provided for in Rule 26 is appropriate.

---

[2]     Plaintiffs seek 40 depositions, three sets of document requests to "each defendant," 25 interrogatories to "each defendant," and "fifty" requests to admit to "each defendant", "not including requests to admit used to authenticate documents, which would have no limit."

[3]     See L.R. 26.2(B) ("Should a party exhaust the opportunities for any type of discovery events under LR 26.1(C), any requests that such party may make for additional interrogatories, depositions, admissions or other production of documents beyond that allowed pursuant to L.R. 26.1(C) shall be by discovery motion. All requests for additional discovery events . . . must be signed by the attorney and the party making the request.")

[4]     See Whittingham v. Amherst College, 163 F.R.D. 170, 172 (D. Mass. 1995) (Neiman, M.J.) (denying plaintiffs' request for leave to expand the L.R. 26.1(C) limits prior to taking any discovery, and stating that "[i]f necessary, the issue can be revisited when and if the Plaintiff has reached the limit, provided that he can demonstrate good cause consistent with the principles underlying Rule 26(b)(2).)

BNI 35024961.1

8

In addition, on that approach, Plaintiffs will have an incentive to pursue discovery in a focused and efficient way -- an important issue, which plaintiffs now appear to disregard. For example, plaintiffs indicate an intention to depose every trustee, ignoring that fees are reviewed by a committee of the trustees; plaintiffs should at least begin by deposing one or more members of that committee. As another example, plaintiffs ask for three sets of document requests to each defendant, even though their already-served first set of document requests includes 141 separate document requests. (Defendants attach that set of document requests to this joint statement at Tab C.)

This approach is also consistent with the underlying purpose of L.R. 16.1(D)(1)(b), which states that the parties should "take into account the desirability of conducting phased discovery in which the first phase is limited to developing information needed for a realistic assessment of the case, and, if the case does not terminate, the second phase is directed to information needed to prepare for trial." Defendants do not advocate implementation of phased discovery in this case, but submit that L.R. 16.1(D)(1)(b)'s evident underlying purposes (which include efficiency, and reducing unnecessary burden) should be taken into account in evaluating plaintiffs' request, and that those purposes are clearly consistent with denying that request, without prejudice to its renewal later in the case.

In sum, denying plaintiffs' request without prejudice does no harm to plaintiffs, because they may renew their request as litigation progresses, and such a ruling would be otherwise beneficial, for all of the above-stated reasons.

BN1 35024961.1

9

Respectfully submitted:

_David E. Marder (BBO #552485)_
Marc N. Henschke (BBO #636146)
Jonathan D. Mutch (BBO #634543)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P
800 Boylston Street, 25th Floor
Boston, Massachusetts 02199
(617) 267-2300

James R. Carroll (BBO #554426)
David S. Clancy (BBO #636031)
Scott T. Lashway (BBO #655268)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800

Thomas J. Gallo (admitted *pro hac vice*)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
950 E. Paces Ferry Rd., N.E.
Atlanta, GA  30326-1119
(404) 760-4300

Of Counsel:
Seth M. Schwartz
Elizabeth A. Hellmann
SKADDEN, ARPS, SLATE
 MEAGHER & FLOM LLP
4 Times Square
New York, New York  10036
(212) 735-3000
COUNSEL FOR DEFENDANTS

Thomas R. Grady (admitted *pro hac vice*)
ACKERMAN, LINK & SARTORY, P.A.
222 Lakeview Avenue, Suite 1250, Esperante
West Palm Beach, FL  33401
COUNSEL FOR PLAINTIFFS