UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| JOHN J. VAUGHN, GERALD A. KALBFLEISCH, MICHAEL HATHAWAY, and MYRTLE HATHAWAY,<br><br>          Plaintiffs,<br><br>     v.<br><br>PUTNAM INVESTMENT MANAGEMENT, LLC and PUTNAM RETAIL MANAGEMENT, LLP,<br><br>          Defendants. | Civil Action No.  04-10988-GAO |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DEFENDANTS TO RESPOND TO PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

# TABLE OF CONTENTS

Page

I.    FACTUAL BACKGROUND ........................................................................... 1

II.    THE DISPUTED DISCOVERY ...................................................................... 2

A.    Putnam Has Refused to Provide Documents Within The Discoverable
Time Period ........................................................................................ 4

1.    Putnam's Documents Are Discoverable Through the Present .................... 4

2.    Documents At Least As Far Back As January 1, 1995 Are
Discoverable. ............................................................................ 8

B.    Putnam Must Disclose All Responsive Internal Documents. ............................. 11

1.    Putnam's Agreement to Provide "Black Books" Is Insufficient ............... 11

2.    Putnam's Agreement to Provide Operations Finance Department
Documents Relating to Fee-Related Communications With the
Trustees Is Insufficient and, Therefore, Not Responsive ........................ 13

3.    Putnam Cannot Limit Discovery to Its Public Filings and Trustee
Communications and Minutes. ................................................. 13

4.    Putnam Must Produce Full and Complete Financial Information. ........... 14

C.    Putnam's Failure to Respond to the Entirety of Plaintiffs' Requests and
Outright Refusals to Respond Cannot Stand. ...................................... 14

1.    Putnam Must Produce All Non-Privileged Responsive Documents
Concerning Excessive Fee Litigation and Investigations. ..................... 15

2.    Putnam Must Provide Documents Responsive to Plaintiffs'
Requests Concerning its Policies, Practices or Procedures. ................... 15

3.    Putnam Must Respond Fully and Completely Where It Has Not. ............ 16

III.    CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**REGULATIONS**

17 C.F.R. § 270, 12b-1.................................................................................................. 2

35 U.S.C. § 286............................................................................................................ 6

Section 36(b) of the Investment Company Act of 1940, 15 U.S.C.§ 80a-35(b)................... *passim*

**CASES**

*Daily Income Fund v. Fox,* 464 U.S. 523 (1984)....................................................... 5, 6

*Forsythe v. Sun Life Financial*, 2006 WL 148935 (D. Mass. Jan. 19, 2006) ................ 5

*Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923 (2d Cir. 1982) .......... *passim*

*Grossman v. Johnson*, 674 F.2d 115 (1st Cir. 1982) ..................................................... 5

*Hogar Agua Y Vida En El Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177 (1st Cir. 1994) ............ 6

*Krasner v. Dreyfus Corp.*, 90 F.R.D. 665 (S.D.N.Y. 1981) ........................................... 5

*Krinsk v. Fund Asset Management, Inc.*, 875 F.2d 404, 409 (2d Cir. 1989) ................................ 3

*Leinoff v. Milona*, 726 F.2d 734 (Fed. Cir. 1984)........................................................ 6

**MISCELLANEOUS AUTHORITIES**

S.Rep. No. 184, 91st Cong. 1st Sess. (1970), 1970 U.S.C.C.A.N. 4897 ....................... 6

Nearly two years ago, Plaintiffs commenced this action to recover excessive fees on behalf of five Putnam mutual funds. Defendants Putnam Investment Management and Putnam Retail Management (collectively, "Putnam") have done everything possible to avoid scrutiny of their fees. They delayed discovery for as long as possible by filing a series of procedural motions and refused to produce documents until those motions were decided. Now that the motions are resolved, Putnam still refuses to produce little more than a few years' worth of publicly-available or narrowly-crafted categories of documents.

Putnam's objections to Plaintiffs' document requests are utterly without merit. For example, Putnam refuses to produce documents created after June 30, 2005, even though damages continue to accrue until the time of trial. Putnam also seeks to limit its responses to many requests by refusing to produce internal documents other than those documents it provided to the boards of trustees (the "Trustees"). That objection is especially troublesome because Putnam has twice been sanctioned by the SEC for providing misleading materials to the Trustees. Simply put, Putnam's responses are, by and large, grossly unresponsive.

The material required by Local Rule 37.1 is attached hereto at Appendix 1.[1]

## I.   FACTUAL BACKGROUND

Plaintiffs are four shareholders who each own one or more of five Putnam mutual funds (collectively, the "Funds"). Defendant Putnam Investment Management ("PIM") provides investment advisory services to the Funds in exchange for a fee (the "management fee") based upon varying percentages of total assets under management. PIM operates pursuant to management contracts which require annual approval by the Funds' boards of trustees (the "Trustees"). Defendant Putnam Retail Management ("PRM") provides underwriting and

---

[1] Given the large number of requests at issue, it would be impossible to comply with Local Rule 37.1 by including all of the requests at issue and their responses, and to keep this memorandum within the 20 page limit. Accordingly, Plaintiffs have set forth the information required by Local Rule 37.1, including a summary of Plaintiffs' position as to the contested issues, in Appendix 1 hereto.

marketing services to the Funds in exchange for a fee pursuant to distribution plans adopted under Rule 12b-1, 17 C.F.R. § 270.12b-1 (the "12b-1 fee"). Like the management fee, the 12b-1 fee is based upon a percentage of total assets under management and must be approved annually by the Trustees.

Plaintiffs bring this action on behalf of the Funds under Section 36(b) of the Investment Company Act of 1940, 15 U.S.C.§ 80a-35(b), alleging that certain components of the management and 12b-1 fees charged to the Funds by Putnam have been excessive, and therefore in breach of Putnam's fiduciary duties. With respect to PIM's management fees, Plaintiffs challenge the Portfolio Selection Fee component, which covers the cost of selecting securities for the Funds to buy, sell, or hold. With respect to PRM's 12b-1 fees, Plaintiffs challenge the Promotional Distribution Fee component, which is charged for marketing and distributing the Funds' shares. Plaintiffs further contend that Putnam's fees are excessive by their retention of certain "fall out benefits" (*i.e.* the indirect benefits Putnam receives by virtue of its relationships with the Funds), including "soft dollars" that properly belong to the Funds.

## II.    THE DISPUTED DISCOVERY

The scope of discovery in this action is appropriately comprehensive because of the nature of the inquiry to be performed under Section 36(b). That statute provides that investment advisers (such as Putnam) have a fiduciary duty with respect to their receipt of compensation paid by mutual funds. The leading case authority addressing the meaning of fiduciary duty under Section 36(b), *Gartenberg v. Merrill Lynch Asset Management, Inc*., 694 F.2d 923 (2d Cir. 1982), holds that fees are actionable if they are "so disproportionately large that [they bear] no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Id*. at 928. [2]   Under *Gartenberg* and its progeny, there are a number of

---

[2]  Although the First Circuit has not expressly adopted *Gartenberg,* the parties and the Court addressed the *Gartenberg* factors in connection with Defendants' 12(b)(6) motion to dismiss Plaintiffs' Complaint.

factors to consider in determining whether fees are excessive within the scope of Section 36(b) including, (1) economies of scale; (2) comparative fee structures; (3) the profitability of the fund to the adviser-manager; (4) the nature and quality of services provided to the fund shareholder; (5) fall-out benefits; and (6) the independence and conscientiousness of the trustees. *Krinsk v. Fund Asset Management, Inc*., 875 F.2d 404, 409 (2d Cir. 1989) (*citing Gartenberg*, 694 F.2d at 929-30)). In connection with their approval of the management contracts, the Trustees have reportedly considered these factors, including economies of scale, investment performance, and fall-out benefits to Putnam, as well as compared retail and institutional fee structures. *See* January 31, 2005 Semiannual Report on Performance and Outlook for Putnam Voyager Fund, at 17-20, attached as Exhibit A to the Affidavit of Lisa Furnald, filed in Support of Plaintiffs' Motion to Compel ("Furnald Affidavit").[3]

On May 26, 2005, Plaintiffs served its First Set of Requests for the Production of Documents on Putnam, seeking discovery narrowly tailored to Plaintiffs' claims and Putnam's defenses, including documents relevant to the *Gartenberg* factors. In response, Putnam agreed to produce mostly publicly-available or narrowly-crafted categories of documents from an unreasonably abbreviated period of time. On November 10, 2005, Tom Gallo and David Clancy, on behalf of Plaintiffs and Putnam, respectively, conferred by telephone for approximately two hours concerning Putnam's responses. Following the conference, Putnam served an Amended Response which, not surprisingly, fails to respond almost to the entirety of Plaintiffs' requests. In the few instances where Putnam has agreed to produce selected non-publicly-available documents, the production is nonetheless egregiously incomplete and unresponsive. Counsel for the parties subsequently exchanged correspondence concerning the areas of disagreement, and on April 13, 2006, Mr. Clancy and Lisa Furnald, counsel for Plaintiffs, spoke for approximately one

---

[3] All Exhibits referenced herein are attached to the Furnald Affidavit.

hour to see if any further agreements could be reached.  Despite these efforts, Putnam is standing

on its tenuous objections as to all but a few of those asserted in its amended response.[4]  The

specific requests at issue are discussed below.[5]

A.    Putnam Has Refused to Provide Documents Within The Discoverable Time
      Period.

Putnam has taken the untenable position in response to all but a few requests that it will

produce documents for the time period January 1, 2002[6] to June 30, 2005 only.  Its rationale for

limiting discovery to a mere 30-month period is altogether wrong, both on the facts and the law.

1.    Putnam's Documents Are Discoverable Through the Present.

Putnam's attempt to cut discovery off after June 30, 2005 is wholly untenable.  Post-June

30, 2005 materials are relevant because, among other reasons, damages continue to accrue for

excessive fees charged through the time of trial.  Furthermore, such materials are relevant and

discoverable irrespective of the applicable damages period.

a.    Plaintiffs' Damages Accrue Through the Time of Trial.

Putnam's position is based, in part, upon the faulty premise that damages stopped

accruing at the time Plaintiffs filed suit.  This is incorrect as a matter of law.  Although Section

36(b) provides that the damages period does not *begin* until one year prior to the lawsuit is filed,

---

[4]  The parties have reached agreement as to certain financial information from 1995 through 2001.  Specifically, Putnam will produce black books, 12b-1 reports and trial balances from that period, and the parties will attempt to define together further particular categories of financial documents prior to 2001.  Plaintiffs reserve the right to seek additional categories of financial documents back to 1995 should the parties be unable to reach agreement.

In addition, Plaintiffs have agreed to continue working with Putnam toward a resolution of issues surrounding Plaintiffs' requests to Putnam for institutional and/or Putnam Advisory Company materials.  Plaintiffs reserve the right to include the requests directed to these materials in a subsequent motion to compel should the parties be unable to reach agreement.

[5]  Plaintiffs have grouped, wherever possible, the disputed discovery by the nature of the dispute and/or the subject matter of the request.  Immediately following each of the numbered requests throughout this Memorandum, Plaintiffs provide a brief description of the subject matter covered by the request. In other places, longer summaries of the requests are provided.  These descriptions and summaries are done for the convenience of the Court, and do not purport to describe the entirety of the request and in no way are intended to alter or limit the scope of any particular request.

[6]  The only exception to Putnam's pre-2002 production relevant to this motion is with respect to a limited number of financial documents. *See supra* n.4.

there is nothing in the statute providing that damages stop at any particular time.[7]  On its face, the statute provides only a temporal limit on *pre-filing* damages.

No court has provided controlling authority requiring the Court to accept Putnam's interpretation.  No such court has (1) squarely considered when Section 36(b) damages end and (2) concluded that they end when suit is filed.[8]  Indeed, at least one case before this Court is proceeding with a damages period that continues after the filing of the complaint.  *See Forsythe v. Sun Life Financial*, 2006 WL 148935 (D. Mass. Jan. 19, 2006) (O'Toole, J.).[9]  *See also Krasner v. Dreyfus Corp.*, 90 F.R.D. 665, 672 (S.D.N.Y. 1981) (stating recovery period begins no earlier than one year before suit commenced and analyzing settlement on basis that damages continue after action filed).

As set forth above, Section 36(b) unambiguously limits only the recoverable pre-suit damages, such that damages do not begin to accrue until one year before an action is commenced.  Even if the statute's plain meaning could somehow be viewed as ambiguous, the longer damages period applies, nonetheless, under the well-settled presumption that ambiguous language in a remedial statute should be construed broadly to effectuate its purpose.  *See e.g.*

---

[7]  The statute reads, in relevant part, "No award of damages shall be recoverable for any period prior to one year before the action was instituted."  15 U.S.C.§ 80a-35(b)(3).

[8]  Putnam may rely upon dicta contained in *Daily Income Fund v. Fox*, 464 U.S. 523 (1984), but that case does not support Putnam's interpretation.  The issue of when the damages period ends was not before the Court.  Nor did the Court hold that damages stop accruing when suit is filed.  In a footnote summarizing selected portions of Section 36(b), the Court merely stated that "recovery is limited to actual damages for a period of one year prior to suit."  *Fox*, 464 U.S. at n.2.  This statement is consistent with the fact that the limitation applies to pre-suit damages.  In addition, Plaintiffs note that in his concurring opinion, Justice Stevens observed that 36(b) limits recovery to "actual damages incurred *beginning* one year prior to commencement of suit." *Id*. at 546 (emphasis added).  On this point, there was no disagreement between Justice Stevens and the majority.

Likewise, *Grossman v. Johnson*, 674 F.2d 115 (1st Cir. 1982) does not hold that damages stop accruing when the complaint is filed.  In deciding that Section 36(b) plaintiffs must make demand on the investment company prior to filing suit (a holding the Supreme Court subsequently overruled in *Fox, supra* n.2), the court simply referred to the "one-year recovery period," *Id*. at 122, available for pre-suit damages under Section 36(b).  The issue of when damages end was not before the Court.

[9]  The *Forsythe* plaintiffs filed class action claims with a class period that began five years before and ended six days after the complaint was filed.  *Id*. at *11.  No separate damages period for the 36(b) claim was made.  *Id*.  The court agreed with the defendants that 36(b) damages did not begin until one year before suit was filed.  *Id*.  The Court did not consider whether damages continued beyond the six days because the alleged damages period did not include that period.

*Hogar Agua Y Vida En El Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177, 181 (1st Cir. 1994) (remedial statute's ambiguous language should be generously construed consistent with its reformative mission).  The Supreme Court has recognized that Section 36(b) has a "broad remedial purpose" and that allowing security holders to bring an action "ensures that…the company's rights under the statute can be fully vindicated by plaintiffs authorized to act on its behalf."  *Fox*, 464 U.S. at 541.  Not allowing Plaintiffs to recover the excessive fees retained by Putnam once suit is filed would frustrate, not vindicate, the Funds' right to have an investment advisor fulfill its fiduciary duty under Section 36(b).  If the statute were construed to limit damages to a one-year period only, investment advisors such as Putnam would have little incentive to discontinue charging excessive fees, or could even *increase* excessive fees with impunity once suit is filed, forcing investors to file new actions repeatedly.[10]

The interpretation of similar statutes support Plaintiffs' position. For example, Section 36(b)'s damage provision is strikingly similar to the statutory time limitation for patent infringement actions.[11]  The Federal Circuit has stated that that statute, "only restricts the extent one can recover *pre-filing* damages."  *Leinoff v. Milona*, 726 F.2d 734, 741 (Fed. Cir. 1984) (emphasis supplied).

Putnam is wrong about the applicable damages period, and must produce responsive documents through the present.

      b.    <u>Documents Created After June 30, 2005 Are Discoverable Irrespective of the Damages Period.</u>

Even if Plaintiffs' damages were limited to the time period of May 2003-May 2004, which they are not, that would not support cutting off discovery as Putnam proposes.  Plaintiffs

---

[10]  There is nothing in Section 36(b)'s legislative history to support Putnam's absurd interpretation.  To the contrary, that history makes clear that "[d]amages… are not recoverable for any period prior to one year before the action was instituted."  S.Rep. No. 184, 91st Cong., 1st Sess. (1970), 1970 U.S.C.C.A.N. 4897, 4911.

[11]  35 U.S.C. § 286 provides, in relevant part, "[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint."

would still be entitled to obtain otherwise discoverable information through the time of trial. For example, documents discussing conflicts of interest between the Funds and Putnam created after June 30, 2005 would still be relevant, as would documents dated after June 30, 2005 that discuss earlier time periods.

In addition to its damages-related argument, Putnam objects to producing documents from the more recent period on the basis they would reveal "pending deliberations." Whatever concerns Putnam might have about such deliberations have been adequately addressed in the Stipulation and Order for the Protection and Exchange of Confidential and Highly Confidential Information ("Protective Order"), which protects from public disclosure documents and information Putnam deems confidential.

Finally, Putnam has suggested that producing documents through the present would require production of documents "as they are generated" and would be "impractical." Putnam's categorical refusal to produce *any* documents on this ground is unavailing. Responsive documents created between June 30, 2005 and March 31, 2006 can and should be produced right away. This would include, for example, the documents Putnam gave to the Trustees in early 2006 as part of the annual review of management fees and 12b-1 plans (the "black books"). As to responsive documents not yet in existence, Putnam's periodic production would satisfy Plaintiff's legitimate discovery needs without imposing undue hardship on Putnam.

Accordingly, Plaintiffs request that Putnam be compelled to provide responsive documents through the present as to the following requests: 5-7, 10-13, 65-67, 104, and 138 (fees, profits and expenses), 8, 9 and 128 (concerning Putnam's fees and services provided therefore), 20 (benefits of 12b-1 fees to Putnam), 18 and 54 (addressing changes in fees), 21-22 and 109 (addressing excessiveness of fees and impact of fees on shareholders), 34 and 59 (concerning management teams), 29-32, 64, 120-123 and 140 (financial reports and sources of financial information), 59 (activities of investment teams), 42 (concerning Plaintiffs' 36(b)

actions), 43-45 (addressing requirements of and compliance with Section 36(b) and Rule 12(b)-1), 48 (Fund portfolio holdings), 50 (performance of the Funds), 55 (Trustee compensation), 56 (relating to Putnam's brokerage), 58 (investment policies), 60 (trade allocation policies), 68-71 (other fees, services and costs to Funds), 72 (Trustee minutes), 73 (materials provided to Trustees), 75-87 (addressing Trustees' considerations in reviewing management and 12(b)-1 fees), 88-93 (concerning economies of scale and fall-out benefits), 94 (model fee schedules), 95 (investment performance and investment process), 98 (policies about making fee disclosures), 101-102 (concerning Putnam's fee schedules), 103 (fees to Putnam from entities other than Putnam funds), 106 (PIM's policy to obtain favorable prices on trades), 107 (certain statements by Putnam with respect to management contracts and fees), 108 (conflicts of interest between Putnam and its funds), 110 (transparency of fees), 111 (concerning breakpoints and profits), 112 and 113 (government investigations and litigation about fees), 116 (concerning Lipper peer groups of the Funds), 117 (training manuals), 118 (resumes of investment management team members), 124 (impact to Funds of using PIM as investment advisor), 125 (agreements between Trustees and Putnam), 127 (contracts between Putnam and the Funds), 129 (securities clearing relationships), 130 (Putnam policies concerning calculation of fees, investment programs and marketing of funds), 131 (records of daily purchases and sales on behalf of Funds), 132 (audits relating to the Funds), 136 (securities lending agreements), 137 (communications with shareholders concerning fees), and 139 (marketing plans for the Funds).

2.    Documents At Least As Far Back As January 1, 1995 Are
      Discoverable.

Putnam takes the position as to almost all requests that Plaintiffs cannot have access to documents created prior to January 1, 2002.[12]  Its position, apparently tied to the May 17, 2003

---

[12] Putnam has agreed to provide a limited number of financial documents back to 1995. *See supra* n.4.

start of damages,[13] is patently unreasonable.  Furthermore, if permitted, it would have the illogical effect of giving Plaintiffs less temporal access than the Trustees have in their annual review of the management and the 12b-1 plans.

Documents generated at least as far back as January 1, 1995 must be produced so that the *Gartenberg* factors can be fully and fairly applied.[14]  For instance, analyzing economies of scale-- the proposition that the costs of providing services go down as assets under management increase—necessarily requires looking at years of data.  Plaintiffs must examine the fees charged, the assets under management, the costs and expenses, and Putnam's profits over a period of years to determine whether, and to what extent, economies of scale have been shared with the Funds.  Similarly, Plaintiffs require years of information concerning the nature and quality of the services Putnam provides to the Funds to see how, if at all, those services have changed with the changing assets under management.

Putnam's' position is especially untenable because it ignores the fact that the Trustees, when analyzing the *Gartenberg* factors during their annual evaluations, review information going back to the mid-1990s.  For example, when the Trustees reviewed economies of scale in 2004, they "reviewed data [from]… *the years* leading up to the market peak in 2000…" (emphasis added).  Exhibit A, at 18.  When the Trustees performed their review of the management contracts in 2005, Putnam provided them with ten-year trends (back to 1995) in fund and shareholder expenditures, as well as ten-year trends in the revenues, expenses and profitability of PIM relating to the management contracts.  Furnald Affidavit, at ¶ 6.[15]  Putnam

---

[13]  Plaintiffs filed this action on May 17, 2004, thus the damages period begins on May 17, 2003.  15 U.S.C.§ 80a-35(b)(3).

[14]  Although Plaintiffs originally sought production from the Funds' respective dates of inception, Plaintiffs have offered to accept production as far back as January 1, 1995 only.  With the exception of limited financial documents, *see supra* n.4, Putnam has refused Plaintiffs' proposed compromise.

[15]  This information comes from documents Putnam has marked "confidential" under the Protective Order.  Putnam has allowed Plaintiffs to make this statement without filing under seal.

simply cannot contend that documents predating January 1, 2002 are irrelevant when its own Trustees analyze data from before that time period when performing (at least in part) the exact same analysis Plaintiffs must perform here.

Indeed, obtaining discovery back to 1995 is eminently reasonable for reasons beyond the *Gartenberg* factors and irrespective of what time period the Trustees might have reviewed. For example, an internal Putnam memorandum questioning the appropriateness of 12b-1 fees would be no less probative on January 1, 1995 than January 1, 2002, Putnam's proposed starting point. Discovery beginning with documents from January 1, 1995 would fairly capture relevant, discoverable information without imposing an unreasonable burden on Putnam.

Plaintiffs ask, therefore, that Putnam be compelled to provide responsive documents and tangible things beginning January 1, 1995 as to the following requests: 8, 9 and 128 (concerning Putnam's fees and services provided therefore), 14-17, 21-22 and 109 (addressing excessiveness of fees and impact of fees on shareholders), 18 and 54 (addressing changes in fees), 20 (benefits of 12b-1 fees to Putnam), 35 and 59 (activities of investment teams), 43-45 (addressing requirements of and compliance with Section 36(b) and Rule 12(b)-1), 75-87 (addressing Trustees' considerations in reviewing management and 12(b)-1 fees), 88-93 (concerning economies of scale benefits and fall-out benefits), 94 (model fee schedules), 101-102 (concerning Putnam's fee schedules), 103 (fees to Putnam from entities other than Putnam funds),108 (conflicts of interest between Putnam and the Funds), 111 (concerning breakpoints and profits), 112-113 (government investigations and litigation about fees), 117 (training manuals), 124 (impact to Funds of using PIM as investment advisor), 127 (contracts between Putnam and the Funds), 130 (Putnam policies concerning calculation of fees, investment programs and marketing of funds), 132 (audits relating to the Funds), 133 (subcontracting agreements to perform services for Funds), 137 (communications with shareholders concerning fees), and 138 (Putnam's profits, costs and expenses as to each of the Funds).

10

B.    <u>Putnam Must Disclose All Responsive Internal Documents.</u>

In responding to Plaintiffs' requests, Putnam adheres to two (faulty) guidelines: Produce only publicly-filed documents or, when necessary, produce limited communications with the Trustees and selected related documents.  With few exceptions, Putnam improperly refuses to produce any internal documents. Putnam must respond to Plaintiffs' requests in full, not with the documents it unilaterally decides are discoverable.

1.    <u>Putnam's Agreement to Provide "Black Books" Is Insufficient.</u>

In response to a great many of Plaintiffs' requests, Putnam has agreed to produce only their fee-related communications with the Trustees, which consist mostly of what Putnam refers to as "black books."  These "black books" constitute the information compiled by Putnam and submitted to the Trustees in connection with their annual reviews of the management contracts and 12b-1 plans.  Putnam has flat out refused to provide anything more, including internal memoranda, emails, data and other documents otherwise responsive to Plaintiffs' requests but not constituting "fee-related communications with the Trustees."  On its face, Putnam's response makes a mockery of its discovery obligations.

Putnam's position fails because the documents Plaintiffs seek are discoverable, whether or not Putnam submitted them to the Trustees.  There are innumerable categories of responsive, discoverable documents that may not have been provided to the Trustees, either because Putnam was not required to or because the Trustees never asked for them.  For example, internal memoranda analyzing fee schedules, emails commenting on the justification for fees, and internal analyses of the Trustees' annual reviews would constitute responsive, discoverable documents that, under Putnam's view, would never be produced because they were not given to the Trustees.  That is absurd.

Putnam's position is especially untenable in light of the allegations in this action. Plaintiffs specifically allege in their Second Amended Complaint, *inter alia*, that Putnam has

failed to provide the Trustees with all of the information necessary to meet their responsibilities in determining the fairness of the management and 12b-1 fees. Amended Complaint, at ¶¶ 114-123. Putnam would turn Plaintiffs' legitimate inquiries on their head if permitted to produce no more than the very information they gave the Trustees.

Finally, Putnam's position is especially outrageous considering that on at least two recent occasions, Putnam was sanctioned by the SEC for failing to disclose to the Trustees material facts in connection with their reviews. *See* SEC Order dated November 13, 2003, attached as Exhibit "B"; SEC Order dated March 23, 2005, attached as Exhibit "C".[16] In one case, the SEC found that Putnam did not disclose to the Trustees financial arrangements that potentially benefited Putnam at the expense of fund shareholders. That misconduct, for which Putnam was fined $40 million, occurred during the period January 1, 2000 through December 31, 2003, thus overlapping with the start of the damages period in this action. In the other case, the SEC found that Putnam failed to disclose to the Trustees potentially self-dealing securities trading when Putnam learned about it at least as far back as the year 2000. Plaintiffs' allegations in this case are sufficient to require that Putnam produce all documents responsive to the requests and not only "fee-related communications to the Trustees." The SEC's findings in these other matters means that Putnam's producing anything less would be a sham.

Accordingly, Plaintiffs request that Putnam be compelled to respond in full by providing all documents responsive to the following requests, including internal memoranda, presentations, data and email communications, whether or not "fee related" and communicated to the Trustees: Request Nos. 8 (services for fees), 21 (justification for fees), 22 (whether fees harmful), 65-67 (fees other than management and 12b-1 fees, and expenses and profits thereon), 69-71 (other than management and 12b-1 fees, the costs to Funds, services to funds therefore and entities who

---

[16] On both occasions, Putnam consented to the entry of the pertinent SEC order.

received such fees), 78-82, 86 (relating to Trustees' consideration of management and distribution plans), 92 (concerning quantification of economies of scale and fall-out benefits), 94 (model fee schedules), 128 (nature and extent of services Putnam provides to the Funds), and 138 (Putnam's profits on fees, costs and expenses as to each of the Funds).

> 2.    <u>Putnam's Agreement to Provide Operations Finance Department Documents Relating to Fee-Related Communications With the Trustees Is Insufficient and, Therefore, Not Responsive.</u>

In other responses, Putnam agrees to provide operations finance department documents relating to the fee-related communications, in addition to the "black books." This response suffers from nearly the same deficiencies as providing the "black books" only, as a great many categories of responsive documents would never be produced. For instance, Plaintiffs would be denied access to documents from Putnam's investment management personnel simply because they are not part of the operations finance department. That is a ridiculous position. Plaintiffs are entitled to discover any and all documents responsive to the requests, not merely documents from one Putnam department that reportedly were reviewed or generated in connection with the communications to the Trustees about fees. All responsive data, memoranda, communications and other documents from any and all Putnam departments and irrespective of whether generated or reviewed in connection with the "black books" is discoverable and must be produced. Putnam should be ordered to respond in full to Request Nos. 6, 7, 9, 10, 11 (fees, profits and expenses), 13 (Putnam's uses of fees), 18 (changes to fees), 54 (Putnam's decision to waive fees and expenses), 102 (development of fee schedules), 107 (concerning Putnam's public statements about management fees), 116 (Lipper peer groups for the Funds) and 124 (benefits and disadvantages to Funds of using PIM as investment advisor).

> 3.    <u>Putnam Cannot Limit Discovery to Its Public Filings and Trustee Communications and Minutes.</u>

Similarly, Putnam abuses the discovery process when it limits its production to public filings, Trustee communications, and Trustee minutes, as it does in response to Request Nos. 5

(concerning fees), 34 (other accounts serviced by Fund's investment management teams), 48 (portfolio holdings and turnover rates), 50 (investment performance), 55 (compensation to investment management teams and Trustees), 56 (Putnam's decision to stop directing brokerage), 58 (investment policies), 75 (negotiations with Trustees), 76 (Trustees' approval of management and distribution plans), and 131 (documents summarizing daily purchases and sales of securities made on behalf of the Funds). Putnam must respond in full by providing all responsive documents, including internal documents.

        4.     Putnam Must Produce Full and Complete Financial Information.

In Request Nos. 29, 30, 31, 32, 64, 104, 120, 121, 122, 123 and 140, Plaintiffs seek annual, quarterly and monthly financial information concerning Putnam, its affiliated entities (including Putnam Advisory Company and PFTC), and the Funds, as well as proxy statements and prospectuses. In addition to financial statements, balance sheets, budgets forecasts and cost accounting reports, Plaintiffs seek the underlying financial records, including the breakdowns, ledgers, sub-ledgers and allocations. Plaintiffs also seek the databases of financial information that support the proxy statements and prospectuses. In response, Putnam has agreed to produce only the publicly-filed consolidated financial statements, limited trial balance entries as to those consolidated financials and the proxy statements and prospectuses themselves. Putnam has refused to produce any of the internal financial records, reports, breakdowns, ledgers, sub-ledgers, allocations and financial databases that Plaintiffs need to unravel the true fees, costs and expenses attributable to the Funds and the profits to Putnam. This information is undeniably discoverable and must be produced.

        C.     Putnam's Failure to Respond to the Entirety of Plaintiffs' Requests and Outright Refusals to Respond Cannot Stand.

Putnam in response to a great many of Plaintiffs' requests selectively ignores part of the request, or altogether refuses to respond. This is entirely improper.

1.     <u>Putnam Must Produce All Non-Privileged Responsive Documents
        Concerning Excessive Fee Litigation and Investigations.</u>

Putnam wrongly refuses Plaintiffs' legitimate requests for documents concerning this action, and other fee-related litigation and government investigations.

Request No. 42 seeks documents concerning, referring to or addressing the existence, substance, merits or outcomes of the "Illinois Actions" (the Section 36(b) actions previously filed by Plaintiffs Kalbfleisch and former Plaintiff Wicks against Putnam in Illinois) or the instant action.  Putnam refuses to produce <u>any</u> documents on the grounds of privilege. Obviously, Putnam overreaches with this objection.  It must produce any non-privileged responsive documents, such as internal employee emails and communications concerning the litigation.

Request No. 112 asks for documents concerning, referring or relating to government, administrative or self-regulatory investigations regarding the propriety or amount of fees charged to Putnam's mutual funds.  Putnam inappropriately limits its production to communications between Putnam and the regulators in connection with excessive management or 12b-1 fee investigations.  Putnam's response is incomplete in its attempt to limit the disclosure to communications and to excessive fees.  Putnam should respond in full to Plaintiffs' legitimate request.

Request No. 113 calls for documents that concern, refer or relate to litigation, arbitration or mediation involving PIM and/or PRM as parties that contained allegations of excessive fees charged to any of Putnam's mutual funds.  Putnam refuses to produce any documents.  This request clearly seeks discoverable information, and Putnam must respond.

2.     <u>Putnam Must Provide Documents Responsive to Plaintiffs'
        Requests Concerning its Policies, Practices or Procedures.</u>

Putnam has refused to provide certain information concerning its policies, practices or procedures relevant to this action.

Request No. 59 seeks documents concerning Putnam's policies that apply to investment management team members relating to the practice of servicing multiple accounts. This request is relevant under *Gartenberg* because it will help discover the nature and quality of the services Putnam provides, and the similarity of services provided to the Funds and institutional accounts. It will also help Plaintiffs unravel accounting issues as to how the salaries of these individuals are expensed. Claiming the request is vague and ambiguous, Putnam refuses to respond. Plaintiffs contend the request is clear, and Putnam should respond.

Request No. 98 asks for documents concerning Putnam's policies with respect to making fee disclosures to the shareholders. Putnam refuses to respond on the grounds that it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs see nothing vague about the request. Moreover, a request for Putnam's policies concerning fee disclosures in this excessive-fee case is entirely appropriate. In the same vein, Putnam must respond to Plaintiffs' Request No. 110, which seeks documents concerning whether the fees Putnam charges have been or should be made transparent to actual or potential shareholders. Putnam in response to Request No. 110 refuses to provide any documents. That cannot stand.

Request No. 106 seeks documents concerning or constituting PIM's policies for seeking the most favorable prices and execution of trades on behalf of its mutual funds. Putnam objects on the grounds that the request is vague, overly broad and seeks irrelevant information. To the contrary, this request properly seeks information relevant to the nature and quality of services Putnam provides, as well as the fall-out benefits it receives. Putnam must respond.

      3.    <u>Putnam Must Respond Fully and Completely Where It Has Not.</u>

There are a number of other requests that Putnam has failed to respond to, either in whole or in part. A summary of these requests, and Putnam's responses are as follows.

Request No. 35 requests documents constituting or concerning explanations or

16

descriptions of the activities that the investment management teams perform in connection with the decisions to purchase, hold or sell securities for the Funds. Putnam agrees to provide only the management contracts and the prospectuses, and takes the position that Plaintiffs should get the rest of this information through depositions or interrogatories. The requested information is relevant to the nature and quality of the services PIM provides to the Funds, and is especially material to Plaintiffs' challenge to the portfolio selection component of the management fees. This is a proper subject for document discovery, and Putnam must respond.

Request Nos. 44 and 45 seek documents concerning whether, how, or to what extent Putnam has complied, should comply, or may comply with the requirements of Section 36(b) and Rule 12b-1. Putnam's responses are deficient because its agreement to produce documents addressing the *requirements* of those laws does not respond to the requests posed. Putnam must produce documents that address, among other things, whether Putnam has complied with the legal requirements.

Request No. 68 seeks documents to establish other persons or entities that were paid by Putnam and the amounts paid in connection with their provision of services to the Funds from May 2003 to the present. Putnam objects that the request is vague and ambiguous, and refuses to respond. This is request is clear, and is relevant to the issues of Putnam's costs, expenses and profits. Putnam must respond.

Putnam's responses to Request Nos. 101 (documents concerning fee schedules) and 136 (concerning contracts or practices by which Fund securities are loaned, including documents to establish amounts of profits realized thereon) are incomplete in that Putnam agrees to produce only certain documents (the fee schedules and contracts), but not the related documents that are discoverable, *i.e.* internal documents that concern the fee schedules and contracts. Request No. 101 clearly seeks discoverable documents and Putnam must respond in full, including providing internal documents that analyze, discuss or otherwise address the fee schedules. Request No.

136 seeks information relevant to Putnam's fall-out benefits. Again, Putnam must provide all documents that address, analyze or discuss its practice of lending the Funds' securities.

Request No. 104 seeks documents relevant to establishing on an annualized basis relative to each of the Funds their portfolio holdings, amounts of assets under management, amounts of management and 12b-1 fees paid, fee schedules, Putnam's costs and expenses, and Putnam profits and profit margins. This request seeks information relevant to the core of Plaintiffs' Complaint, including economies of scale, fee structures and Putnam's profits. This request undeniably seeks discoverable information that, while may be responsive to some other requests as well, is not duplicative. To the extent that Putnam believes it is producing responsive information in connection with other responses, it must provide all of the information sought in Request No. 104 (1) as to each Fund (*i.e.* not only consolidated amounts) (2) on an annualized basis, and (3) from January 1, 1995 to the present. Anything less is not responsive.

Request No. 108 seeks documents referring or relating to the issues of whether and to what extent conflicts of interest exist between Putnam and the Funds. Putnam objects several grounds, including vagueness and relevance, and complains that Plaintiffs improperly ask Putnam to decide what documents would bear on the issue. Of course, conflicts of interest between Putnam and the Funds is a relevant subject for discovery. Moreover, there is nothing vague about this request. Having been heavily sanctioned by the SEC twice in the recent past for failing to disclose to the Trustees potential conflicts of interest, (*See* Exhibits C and D), Putnam should certainly be able to identify responsive documents. This production should include any documents that address conflicts of interest between Putnam and the Funds, including any internal documents.

Request No. 118 seeks the resumes of investment management team members, officers or trustees from May 2003 through the present. Objecting on the grounds that the request is overly broad, unduly burdensome, and seeks irrelevant information, Putnam refuses to respond.

Putnam's objection is without merit.  This request seeks documents relevant to the quality of the investment services provided to the Funds.  Putnam must respond with the resumes of the investment management team members and officers relative to each of the Funds.

Request No. 129 seeks documents concerning securities clearing relationships between Putnam and any other entity. Objecting on the grounds that the request is vague and ambiguous, Putnam refuses to answer.  The request, which seeks information relevant to fall-out benefits, could not be any clearer.  Putnam should respond.

Request No. 132 seeks audits of the Funds and related documents, including opinion letters of attorneys and accountants and information provided to auditors relating to management and 12b-1 fees.  Putnam refuses to respond, objecting on the grounds that the request is vague, overly broad, unduly burdensome, and seeks irrelevant information.  Contrary to Putnam's overused objections, this is a clear request seeking relevant information about the Funds and fees.  Putnam's objection is without merit.

Finally, Request No. 137 asks for documents constituting, concerning, or referring to communications to or from the Fund's shareholders concerning the fees.  This is obviously a discoverable category of documents, yet Putnam agrees to produce only public filings and "complaints" from shareholders about the fees.  This request encompasses more, such as communications other than complaints and internal documents that concern or refer to the communications.  Putnam should respond in full.

III.    <u>CONCLUSION</u>

Plaintiffs have asked for documents in categories well-tailored to the issues at the core of this action for excessive fees.  In response, Putnam has agreed to produce very little non-public information, essentially agreeing to produce only publicly-available documents, fee-related communications with the Trustees, and a limited category of related documents from a 30-month period of time.  Putnam ignores and, in some instances, outright abuses its discovery obligations.

This cannot be tolerated.  Putnam should produce the requested information immediately, and not delay one day longer Plaintiffs' right to fair and full discovery.

Dated: April 27, 2006

Respectfully submitted,


 /s/ David E. Marder _____
David E. Marder (BBO #552485)
Marc N. Henschke (BBO #636146)
Lisa A. Furnald (BBO #631059)
Jonathan D. Mutch (BBO #634543)
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: DEMarder@rkmc.com
(617) 267-2300

Of Counsel:

Thomas R. Grady (admitted *pro hac vice*)
Ackerman, Link, & Sartory, P.A.
222 Lakeview Avenue, Suite 1250, Esperante
West Palm Beach, FL  33401

## CERTIFICATE OF SERVICE

I, Lisa A. Furnald, hereby certify that on April 27, 2006, a true copy of Plaintiffs' Memorandum In Support Of Motion To Compel Defendants To Respond To Plaintiffs' First Set of Requests For The Production of Documents was served electronically through the ECF System and by first class mail, postage prepaid, to those counsel of record indicated as non-registered ECF participants.

 /s/ Lisa A. Furnald   
Lisa A. Furnald
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: LAFurnaldr@rkmc.com
(617) 267-2300