**EXHIBIT B**

**REQUEST NO. 65**

**Plaintiffs' Request:**  "All documents and tangible things in your possession, custody, or control relevant to identifying, and establishing the amounts of, each of the various types of monies, fees, and/or reimbursable expenses *other than Management Fees or 12b-l Fees* that PIM, PRM, or other affiliated Putnam entities have received from any of The Funds at any and all times during the Damages Period."

**Defendants' December 5, 2005 Written Response:**  "Defendants further object to this request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. For example, it is inappropriate, and extraordinarily inefficient, for plaintiffs to seek the information at issue through a sweeping document request for '[a]ll documents . . . relevant to . . . establishing' that information; an interrogatory is the proper device for such information, and then only to the extent properly discoverable; further, even if it were appropriate to seek the information at issue through a document request, this request, as drafted, is overly broad and unduly burdensome, including to the extent that it purports to seek '[a]ll' documents 'relevant to establishing' the information at issue (concerning the amounts of certain fees), rather than documents sufficient to provide that information.

Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' review of management and distribution fees."

**Additional Context Relevant To This Request:**

- The black books contain -- among many other things -- a report that <u>specifies</u> the many fees and payments that are the subject matter of this request.  That report is transmitted to the trustees in each year's black books, meaning that plaintiffs <u>have</u> that report for 2002-2005.  (A sample of that report is Exhibit D to Defendants' Confidential Appendix, which is described in Defendants' brief at page 2, footnote 2.)

- In addition, Defendants have committed to produce the voluminous <u>back-up</u> to the black books for 2002, 2003, 2004, and 2005, <u>i.e.</u>, the underlying work papers.

- Defendants have also produced the trial balances for 2001, 2002, 2003, and 2004 (<u>i.e.</u>, the trial balances for the calendar year <u>covered</u> by the 2002-2005 black books), which itemize each revenue item, and each expense item, for each Putnam entity (not just Defendants PIM and PRM).

- Defendant PIM also specified the payments that are the subject matter of these requests at pages 20-22 of its response to plaintiffs' interrogatories (Exhibit B to Confidential Appendix).

- Plaintiffs cannot <u>possibly</u> be demanding all documents that in any way "relate to" all of these fees and payments.  Such a request would be patently unreasonable, given the <u>many</u> types of fees and payments shown on each report, and the innumerable documents and information that, in any given year, could be construed to "relate to" any <u>one</u> of them.

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request:**

- <u>None</u> as to this request specifically.  (See pages 12-13 of plaintiffs' brief, grouping this request along with 18 other requests.)

1

- As to the group of 19 requests as a whole, plaintiffs state that Putnam has "flat out refused to produce anything more" than the "'black books,'" "mak[ing] a mockery of its discovery obligations." (Pl. Mem. at 11.)  As shown above, that assertion is wrong, and misleading.

2

**REQUEST NO. 66**:

**Plaintiffs' Request:** "All documents and tangible things in your possession, custody, or control relevant to establishing the profits and profit margins that PIM, PRM, or other affiliated Putnam entities have realized in connection with each of the various types of monies, fees, and/or reimbursable expenses *other than Management Fees or 12b-l Fees* that they have received from any of The Funds at any and all times during the Damages Period."

**Defendants' December 5, 2005 Written Response:** "Defendants further object to this request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. For example, it is inappropriate, and extraordinarily inefficient, for plaintiffs to seek the straightforward information at issue through a sweeping document request for '[a]ll documents . . . relevant to establishing' that information; an interrogatory is the proper device for such information, and then only to the extent properly discoverable; further, even if it were appropriate to seek the information at issue through a document request, this request, as drafted, is overly broad and unduly burdensome, including to the extent that it purports to seek '[a]ll' documents 'relevant to establishing' the information at issue (concerning profits), rather than documents sufficient to provide that information.

Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' review of management and distribution fees."

**Additional Context Relevant To This Request:**

- Defendants are producing, for specifically articulated and reasonable multi-year time periods, a host of financial documents showing profits, and the underlying revenues and expenses, including:

  - Annual financial statements of MMC, Putnam's parent. (These have been produced.)

  - Quarterly MMC financial statements. (These have been produced.)

  - Annual audited financial statements for Putnam Investments Trust, which consolidate the financial results of all of that trust's subsidiaries, including Defendants PIM and PRM. (These non-public documents have been produced.)

  - Annual audited financial statements for Defendant PIM. (These non-public documents have been produced.)

  - Annual audited financial statements for Defendant PRM. (These non-public documents have been produced.)

  - Annual audited financial statements for Putnam Advisory Company ("PAC"), the entity which services Putnam's institutional accounts. (These non-public documents have been produced.)

  - Trial balances (also non-public), which underlie the audited financial statements. These have been produced for 2002-2004, and are being produced for 1995, 1996, 1997, 1998, 1999, 2000 and 2001.

  - Black books, which contain multiple additional financial reports. (These non-public documents have been produced).

3

- Back-up to the black books -- i.e., the voluminous hardcopy and electronic materials relating to the preparation of the black books. (More than 30,000 pages of such information has been produced thus far.)

- Further, Defendants' counsel have stated their willingness to provide <u>more</u> data, but plaintiffs responded by moving to compel, instead of specifying the additional data they believe they need to analyze the issue addressed in this request:

    > I am open to working with you as to the financial data that you want, but I cannot go back to my client simply asking for "more" financial information than they have already provided. Can you be more clear and specific about what you need? (Maybe you have an expert or experts you could work with to articulate in technical terms the additional information that you think you do not have, and still need? I could then take that clarification to Putnam, and have a concrete discussion with Putnam about what you are asking for.)

    (Letter from Defendants' counsel to plaintiffs' counsel dated April 20, 2006, which is Ex. 36 to the Appendix that is filed with this opposition [and is distinct from the Confidential Appendix containing other materials that Defendants <u>propose</u> to file.])

**<u>Plaintiffs' stated basis for their motion to compel</u>:**

- <u>None</u> as to this request specifically. (See pages 12-13 of plaintiffs' brief, grouping this request along with 18 other requests.)

- As to the group of 19 requests as a whole, plaintiffs state that Putnam has "flat out refused to produce anything more" than the "'black books,'" "mak[ing] a mockery of its discovery obligations." (Pl. Mem. at 11.) As shown, that assertion is wrong, and misleading.

## REQUEST NO. 67:

**Plaintiffs' Request:**  "All documents and tangible things in your possession, custody, or control relevant to establishing the costs, expenses, and expense ratios that PIM, PRM, or other affiliated Putnam entities have incurred in connection with each of the services and/or resources that they have provided in exchange for the various types of monies, fees, and/or reimbursable expenses *other than Management Fees or 12b-l Fees* that they have received from any of The Funds at any and all times during the Damages Period."

**Defendants' December 5, 2005 Written Response:**  "Defendants further object to this request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. For example, it is inappropriate, and extraordinarily inefficient, for plaintiffs to seek the straightforward information at issue through a sweeping document request for '[a]ll documents . . . relevant to establishing' that information; an interrogatory is the proper device for such information, and then only to the extent properly discoverable; further, even if it were appropriate to seek the information at issue through a document request, this request, as drafted, is overly broad and unduly burdensome, including to the extent that it purports to seek '[a]ll' documents 'relevant to establishing' the information at issue (concerning costs), rather than documents sufficient to provide that information.

Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' review of management and distribution fees."

**Additional Context Relevant To This Request:**

- Defendants are producing, for specifically articulated and reasonable multi-year time periods, a host of responsive financial documents showing profits, and the underlying revenues and expenses, including:

    - Annual financial statements of MMC, Putnam's parent.  (These have been produced.)

    - Quarterly MMC financial statements.  (These have been produced.)

    - Annual audited financial statements for Putnam Investments Trust, which consolidate the financial results of all of that trust's subsidiaries, including Defendants PIM and PRM.  (These <u>non</u>-public documents have been produced.)

    - Annual audited financial statements for Defendant PIM.  (These <u>non</u>-public documents have been produced.)

    - Annual audited financial statements for Defendant PRM.  (These <u>non</u>-public documents have been produced.)

    - Annual audited financial statements for Putnam Advisory Company ("PAC"), the entity which services Putnam's institutional accounts. (These <u>non</u>-public documents have been produced.)

    - Trial balances (also <u>non</u>-public), which underlie the audited financial statements.  These have been produced for 2002-2004, and are being produced for 1995, 1996, 1997, 1998, 1999, 2000 and 2001.

    - Black books, which contain multiple additional financial reports.  (These <u>non</u>-public documents have been produced).

5

- Back-up to the black books -- i.e., the voluminous hardcopy and electronic materials relating to the preparation of the black books. (More than 30,000 pages of such information has been produced thus far.)

- Further, Defendants' counsel have stated their willingness to provide more data, but plaintiffs responded by moving to compel, instead of specifying the additional data they believe they need to analyze the issue addressed in this request:

    I am open to working with you as to the financial data that you want, but I cannot go back to my client simply asking for "more" financial information than they have already provided. Can you be more clear and specific about what you need? (Maybe you have an expert or experts you could work with to articulate in technical terms the additional information that you think you do not have, and still need? I could then take that clarification to Putnam, and have a concrete discussion with Putnam about what you are asking for.)

    (Letter from Defendants' counsel to plaintiffs' counsel dated April 20, 2006, Appendix Ex. 36.)

**Plaintiffs' Stated Basis For Their Motion As To This Request:**

- None as to this request specifically. (See pages 12-13 of plaintiffs' brief, grouping this request along with 18 other requests.)

- As to the group of 19 requests as a whole, plaintiffs state that Putnam has "flat out refused to produce anything more" than the "'black books,'" "mak[ing] a mockery of its discovery obligations." (Pl. Mem. at 11.) As shown, that assertion is wrong, and misleading.

6

**REQUEST NO. 69:**

**Plaintiffs' Request:** "All documents and tangible things in your possession, custody, or control relevant to identifying, and establishing the amounts of, each of the various types of costs and expenses that each of The Funds incurred at any and all times during the Damages Period *other than from their payments of Management Fees or 12b-1 Fees* including, but not limited to, investor servicing fee expenses; custodian fee expenses; trustee compensation costs and expenses; administrative services expenses; and/or any other types of costs or expenses."

**Defendants' December 5, 2005 Written Response:** "Defendants further object to this request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. For example, it is inappropriate and inefficient for plaintiffs to seek the information at issue through a sweeping document request for '[a]ll documents . . . relevant to establishing' that information; an interrogatory is the proper device for such information, and then only to the extent properly discoverable; further, even if it were appropriate to seek the information at issue through a document request, this request, as drafted, is overly broad and unduly burdensome, including to the extent that it purports to seek '[a]ll' documents 'relevant to . . . establishing' the information at issue (concerning costs and expenses of the funds at issue), rather than documents sufficient to provide that information.

Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' review of management and distribution fees."

**Additional Context Relevant To This Request:**

- Black books contain -- among many other things -- a report that <u>specifies</u> these costs and expenses. That report is transmitted to the trustees in each year's black books, meaning that plaintiffs <u>have</u> that report for 2002, 2003, 2004, and 2005. (A sample of that report is Exhibit D to Defendants' Confidential Appendix.)

- In addition, Defendants have committed to produce the voluminous <u>back-up</u> to the black books for 2002, 2003, 2004, and 2005, <u>i.e.</u>, the underlying work papers.

- Defendants have also produced the trial balances for 2001, 2002, 2003, and 2004 (<u>i.e.</u>, the trial balances for the calendar year covered by the 2002-2005 black books).

- Defendant PIM also specified the fees and payments that are the subject matter of these requests at pages 20-22 of its response to plaintiffs' interrogatories. (Those interrogatory responses are Exhibit B to Defendants' Confidential Appendix.)

- Plaintiffs cannot possibly be demanding all documents that in any way "relate to" each of these costs and expenses. Such a request would be patently unreasonable, given the many types of costs and expenses shown on each report, and the innumerable documents and information that could be construed to "relate to" any <u>one</u> of them.

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request:**

- <u>None</u> as to this request specifically. (See pages 12-13 of plaintiffs' brief, grouping this request along with 18 other requests.)

7

- As to the group of 19 requests as a whole, plaintiffs state that Putnam has "flat out refused to produce anything more" than the "'black books,'" "mak[ing] a mockery of its discovery obligations." (Pl. Mem. at 11.) As shown, that assertion is wrong, and misleading.[1]

---

[1] A similar analysis applies to Request Nos. 70 and 71. Request No. 70 demands all documents "relevant to identifying" the "services" provided in exchange for these "other" fees and payments. The black book report referenced above includes a description of the nature of these other fees and payments (i.e., what they are for), as do pages 23-26 of the PIM interrogatory response (Confidential Appendix, Ex. B.) (Plaintiffs cannot possibly be seeking all documents that "relate to" all of these fees and payments, much less for a more than ten year period, and so it is incumbent upon them to identify what else they need in this regard.)

Request No. 71 seeks "all documents" relevant to "establishing and identifying the persons or entities who received payments from any of the funds, and in what amounts," in connection with such "costs and expenses." The report in the black books identifies those parties, for each cost/expense. If plaintiffs seek further detail about one or more of those identifications, they should make a focused request for that additional information, not move to compel on a vague request for "all documents relevant to identifying" persons and entities who are already identified in documents that have already been produced.

8

## REQUEST NO. 78:

**Plaintiffs' Request:**  "All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, refer, or relate to any criteria or policies used by any of the Boards of Trustees, or their Boards of Trustees Committees, in connection with their consideration of whether or not to approve any actual or proposed Management Contract or Distribution Plan for any of The Funds."

**Defendants' December 5, 2005 Written Response:**  "Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence relevant to any claim or defense.

   Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' review of management and distribution fees."

**Additional Context Relevant To This Request:**

- Defendants are producing to plaintiffs their fee-related communications with the trustees for a three and one-half year period.  Those communications include the voluminous annual black books, and Defendants are producing those volumes for eight prior years, as well (back to 1995).  Those communications also include the monthly "blue books," which themselves contain agendas, meeting minutes, and a host of other materials such as reports on an array of topics including fees.

- These voluminous materials themselves <u>embody</u>, and <u>contain</u>, the trustees' "criteria" and "policies" with respect to evaluation of management and 12b-1 fees. (To give the Court a sense of the substance of one subcategory of documents within this broader category (the black books), the tables of contents for the 2004 black books are at Exhibit A of Defendants' Confidential Appendix.  The first item on that table of contents is (for example): "Ropes & Gray memorandum describing general responsibilities of trustees regarding annual contract reviews," and the tables of contents otherwise show item after item responsive to this request.)

- Also, Defendants have communicated to plaintiffs a plan for searching the e-mails of certain key individuals.  (Appendix Ex. 39.)

- Other than such materials, Defendants do not know what plaintiffs want, when they vaguely demand "all documents that constitute, reflect, concern, refer or relate" to the trustees' "policies and criteria."

- Further, Defendants note that plaintiffs are obtaining documents from the trustees themselves (who are separately represented), and have stated an intention to depose the trustees.

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request:**

- <u>None</u> as to this request specifically.  (See pages 12-13 of plaintiffs' brief, grouping this request along with 18 other requests.)

- As to the group of 19 requests as a whole, plaintiffs state that Putnam has "flat out refused to produce anything more" than the "'black books,'" "mak[ing] a mockery of its discovery obligations."  (Pl. Mem. at 11.)  As shown, that assertion is wrong, and misleading.

9

### REQUEST NO. 79:

**Plaintiffs' Request:** "All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, refer, or relate to any suggestion, opinion, conclusion, or proposal about potentially withholding approval of any Management Contract or Distribution Plan for any of the Putnam Mutual Funds by any of the Boards of Trustees, or by their Boards of Trustees Committees."

**Defendants' December 5, 2005 Written Response:** "Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence relevant to any claim or defense.

Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' review of management and distribution fees."

**Additional Context Relevant To This Request:**

- Defendants are producing to plaintiffs their fee-related communications with the trustees for a three and one-half year period. Those communications include the voluminous annual black books, and Defendants are producing those volumes for 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, and 2004. Those materials also include the monthly "blue books," which themselves contain agendas, meeting minutes, and a host of other materials such as reports on an array of topics including fees.

- The documents in the above category <u>encompass</u> the issue identified by this request, <u>i.e.</u>, any instance in which the trustees considered "withholding approval" of any management contract or distribution plan. Also, Defendants have communicated to plaintiffs a plan for searching the e-mails of certain key individuals. (Appendix Ex. 39.)

- Further, plaintiffs are separately obtaining documents from the trustees themselves (who are separately represented), and have stated an intention to depose them.

- What else plaintiffs want as to this request is unclear, and the commitments that Defendants have made are reasonable, and responsive to the issue identified by this request.

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request:**

- <u>None</u> as to this request specifically. (See pages 12-13 of plaintiffs' brief, grouping this request along with 18 other requests.)

- As to the group of 19 requests as a whole, plaintiffs state that Putnam has "flat out refused to produce anything more" than the "'black books,'" "mak[ing] a mockery of its discovery obligations." (Pl. Mem. at 11.) As shown, that assertion is wrong, and misleading.[2]

---

[2] A similar analysis applies to Request 80, which concerns trustee consideration of "terminating" any management agreement or distribution plan, and to Request 81, which seeks "all documents" that "reflect, concern, refer or relate to any consideration given by any of the Boards of Trustees, or their Boards of Trustees Committees, to permitting, directing or obligating any of the Putnam Mutual Funds to pay Management Fees and/or 12b-1 Fees to any entities other than PIM or PRM."

10

## REQUEST NO. 82:

**Plaintiffs' Request:** "All documents and tangible things in your possession, custody, or control that reflect, concern, refer, or relate to any consideration given by any of the Boards of Trustees, or their Boards of Trustees Committees, to the requirements or standards imposed by Section 36(b) of the Investment Company Act of 1940 or Rule 12b-l promulgated thereunder, and/or to the issues of whether PIM, PRM, or other affiliated Putnam entities have acted in compliance therewith in relation to any Management Contract or Distribution Plan with any of the Putnam Mutual Funds."

**Defendants' December 5, 2005 Written Response:** "Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence relevant to any claim or defense.

Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' review of management and distribution fees."

**Additional Context Relevant To This Request:**

- Defendants are producing to plaintiffs their fee-related communications with the trustees for a three and one-half year period. Those communications include the voluminous annual black books, and Defendants are producing those volumes for 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, and 2004. Those materials also include the monthly "blue books," which themselves contain agendas, meeting minutes, and a host of other materials such as reports on an array of topics, including fees.

- These voluminous materials encompass the subject matter of this request, i.e., "trustee consideration" of the requirements of Section 36(b) and 12b-1. Also, Defendants have communicated to plaintiffs a plan for searching the e-mails of certain key individuals.

- Other than such materials, Defendants do not know what plaintiffs want when they vaguely demand "all documents that constitute, reflect, concern, refer or relate" to the trustees' consideration of the requirements of Section 36(b) and 12b-1.

- Further, Defendants note that plaintiffs are separately obtaining documents from the trustees themselves, and have stated an intention to depose the trustees.

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request:**

- <u>None</u> as to this request specifically. (See pages 12-13 of plaintiffs' brief, grouping this request along with 18 other requests.)

- As to the group of 19 requests as a whole, plaintiffs state that Putnam has "flat out refused to produce anything more" than the "'black books,'" "mak[ing] a mockery of its discovery obligations." (Pl. Mem. at 11.) As shown, that assertion is wrong, and misleading.[3]

---

[3]  Similar analysis applies to Request 86, which seeks documents reflecting "consideration given by any of the Boards of Trustees, or their Boards of Trustees Committees, in deciding whether or not to approve any actual or proposed Management Contract for any of The Funds to the factors for assessing the reasonableness of

*(cont'd)*

11

**REQUEST NO. 92:**

**Plaintiffs' Request:**  "All documents and tangible things in your possession, custody, or control that constitute, reflect, or concern any quantification of Economies of Scale Benefits and/or Fall-Out Benefits that PIM, PRM, and/or other affiliated Putnam entities realize in connection with their provision of any services or resources to any of the Putnam Mutual Funds."

**Defendants' December 5, 2005 Written Response:**  "Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence relevant to any claim or defense.

Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, all documents generated during the period January 1, 2002 to June 30, 2005 containing numerical analysis of economies of scale, including their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005 (including the 'black books' collecting information relevant to the trustees' review of management and distribution fees)."

**Additional Context Relevant To This Request:**

- Black books include analysis of "fall out benefits," and Defendants have also committed to produce the voluminous Operations Finance Department back-up to the black books, i.e., the underlying work papers.

- Further, Defendants have not limited their production to the black books -- they have committed to produce "fee-related communications with the trustees." That is a broader category, and in connection with it, Defendants have already produced various "economies of scale" studies. (Putnam-Wicks 0002972-0003006, 004342-0004366, and 0005597-0005618.)

- As Defendants' written response states, they are also conducting a diligent search for any documents containing "numerical analysis of economies of scale" (see Request, seeking "quantification of Economies of Scale Benefits"), which will include searching the e-mail of key individuals pursuant to a plan that has been presented to plaintiffs for their review. (Appendix Ex. 39.)

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request:**

- None as to this request specifically.  (See pages 12-13 of plaintiffs' brief, grouping this request along with 18 other requests.)

- As to the group of 19 requests as a whole, plaintiffs state that Putnam has "flat out refused to produce anything more" than the "'black books,'" "mak[ing] a mockery of its discovery obligations."  (Pl. Mem. at 11.)  As shown, that assertion is wrong, and misleading.

---

*(cont'd from previous page)*
   Management Fees established in Gartenberg v. Merrill Lynch Asset Management, Inc., 694 F.2d 923 (2d Cir. 1982) and its progeny."

12

**REQUEST NO. 94:**

**Plaintiffs' Request:**  "All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, refer, or relate to any model schedules for Management Fees developed by, or on behalf of, PIM, PRM, and/or any of the Boards of Trustees, or their Boards of Trustees Committees, for any of the Putnam Mutual Funds, including any earlier versions, drafts, or proposals of or for such model fee schedules."

**Defendants' December 5, 2005 Written Response:**  "Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' evaluation of management and distribution fees (which contain information responsive to this request)."

**Additional Context Relevant To This Request:**

- Plaintiffs should specify what documents they seek pursuant to this vague request.  The fee schedules for Defendants' many mutual funds are split into various categories; if this is what plaintiffs mean by "model fee schedules," it is unreasonable for plaintiffs to press an opaque request for all documents that "refer" or "relate" to any of those categories.

- In any event, if this is what plaintiffs mean, Defendants' massive production -- currently at more than 90,000 pages -- contains too many documents "relating" to those fee schedules to even list, but those documents include, for example, the entirety of the black books, as well as the Operations Finance Department's voluminous back-up to the black books.  See also Charts A and B in Defendants' brief.

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request:**

- None as to this request specifically.  (See pages 12-13 of plaintiffs' brief, grouping this request along with 18 other requests.)

- As to the group of 19 requests as a whole, plaintiffs state that Putnam has "flat out refused to produce anything more" than the "'black books,'" "mak[ing] a mockery of its discovery obligations."  (Pl. Mem. at 11.)  As shown, that assertion is wrong, and misleading.

**Note:**  This Exhibit relates to Section IV.A of Defendants' brief, which addresses the various document requests identified in Section II.B.1 of plaintiffs' brief. This Exhibit addresses each of those requests except for the following:

Request No. 8, which is addressed on page 7 of Defendants' opposition brief;

Request No. 21, which is addressed on page 7 of Defendants' opposition brief;

Request No. 22, which is addressed on page 8 of Defendants' opposition brief;

Request No. 128, which is addressed on page 7 of Defendants' opposition brief; and

Request No. 138, which is addressed on page 9 of Defendants' opposition brief.