**EXHIBIT C**

**REQUEST NO. 7:**

**Plaintiffs' Request:** "All documents and tangible things in your possession, custody, or control relevant to establishing the total costs, expenses, and expense ratios that PIM, PRM, or other affiliated Putnam entities have incurred in connection with all services and/or resources that they have provided in exchange for the Management Fees, Portfolio Selection Fees, and 12b-l Fees that they have received from each of The Funds at any and all times during the Damages Period."

**Defendants' December 5, 2005 Written Response:** "Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. For example, it is inappropriate and inefficient to seek the information at issue through a sweeping document request for '[a]ll documents . . . relevant to establishing' that information; an interrogatory is the proper device for such information, and then only to the extent properly discoverable. Further, even if it were appropriate to seek the information at issue through a document request, this request, as drafted, is overly broad and unduly burdensome, including to the extent that it purports to seek '[a]ll' documents 'relevant to establishing' the information at issue (concerning costs), rather than documents sufficient to provide that information.

Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' evaluation of management and distribution fees (which contain information responsive to this request), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications, and data generated or reviewed in connection with such communications)."

**Additional Context Relevant To This Request:**

- Defendants are producing, for specifically articulated and reasonable multi-year time periods, a host of responsive financial documents showing profits, and underlying revenues and expenses, including:

  - Annual financial statements of MMC, Putnam's parent. (These have been produced.)

  - Quarterly MMC financial statements. (These have been produced.)

  - Annual audited financial statements for Putnam Investments Trust, which consolidate the financial results of all of that trust's subsidiaries, including Defendants PIM and PRM. (These non-public documents have been produced.)

  - Annual audited financial statements for Defendant PIM. (These non-public documents have been produced.)

  - Annual audited financial statements for Defendant PRM. (These non-public documents have been produced.)

  - Annual audited financial statements for Putnam Advisory Company ("PAC"), the entity which services Putnam's institutional accounts. (These non-public documents have been produced.)

  - Trial balances (also non-public), which underlie the audited financial statements. These have been produced for 2002-2004, and are being produced for 1995, 1996, 1997, 1998, 1999, 2000 and 2001.

  - Black books, which contain multiple additional financial reports. (These non-public documents have been produced).

- Back-up to the black books -- i.e., the voluminous hardcopy and electronic materials relating to the preparation of the black books. (More than 30,000 pages of such information has been produced thus far.)

- Further, Defendants' counsel have stated their willingness to provide <u>more</u> data, but plaintiffs responded by moving to compel, instead of specifying the additional data they believe they need to analyze the issue addressed in this request:

    > I am open to working with you as to the financial data that you want, but I cannot go back to my client simply asking for "more" financial information than they have already provided. Can you be more clear and specific about what you need? (Maybe you have an expert or experts you could work with to articulate in technical terms the additional information that you think you do not have, and still need? I could then take that clarification to Putnam, and have a concrete discussion with Putnam about what you are asking for.)

    (Letter from Defendants' counsel to plaintiffs' counsel dated April 20, 2006, Appendix Ex. 36.)

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request:**

- <u>None</u> as to this request specifically. (See page 13 of plaintiffs' brief, grouping this request along with 11 other requests.)

- As to the group of 12 requests <u>as a whole</u>, plaintiffs state that they "are entitled to discover any and all documents responsive to the requests, not merely documents from one Putnam department that reportedly were reviewed or generated in connection with the communications to the Trustees about fees." (Pl. Mem. at 13.) This vague statement ignores the <u>facts</u> set forth above concerning Defendants' production, and also ignores plaintiffs' stubborn failure simply to specify what additional financial information they want.[1]

---

[1] As Defendants note in their written responses, Request 13 is substantively identical to Requests 7 and 8. Request 7 is addressed here; Request 8 is addressed in Defendants' motion to compel opposition brief, at page 7.

2

**REQUEST NO. 9:**

**Plaintiffs' Request:** "All documents and tangible things in your possession, custody, or control relevant to unbundling the Management Fees, Portfolio Selection Fees, and 12b-l Fees that PIM, PRM, or other affiliated Putnam entities have received from any of the Putnam Mutual Funds into their component portions corresponding to each of the various types of services and/or resources that they have provided to The Funds."

**Defendants' December 5, 2005 Written Response:** "Defendants further object to this request on the basis that it is vague and ambiguous, particularly in its reference to 'unbundling' the referenced types of fees into 'their component portions corresponding' to 'services and/or resources'; the vagueness is compounded by the request's demand for '[a]ll' documents "relevant" to that abstract concept.

Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' evaluation of management and distribution fees (which contain information responsive to this request), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications, and data generated or reviewed in connection with such communications)."

**Additional Context Relevant To This Request:**

- The fees at issue are paid in exchange for a host of services, and plaintiffs' assumption that the fees at issue can be "unbundled" into a "component portion" associated with each such service is simply wrong. (For example, when one purchases a home, one pays a particular price for the home, and there is no "price" for each "component portion" of the home.)

- Defendants addressed this same issue with plaintiffs in connection with Defendants' interrogatory responses, and it was Defendants' strong impression that, in that context, plaintiffs understood that their reference to "unbundling" is erroneous. Appendix Exhibit 30 is an April 5, 2006 letter to plaintiffs, and item 6 on page 4 of that letter states, in part: "This interrogatory seeks, in part, identification of the 'portion of the management fee that corresponds with' the services we identified in interrogatory 4 (e.g., 'legal and compliance services,' 'accounting services,' etc.). I explained, and I think you acknowledged, that as stated in our General Objection 4 there is no allocated "portion" of the fee for each such service . . . ." Plaintiffs have never contested that point.

- To the extent that plaintiffs are interested in generally examining Defendants' expenses and how they relate to the fees, Defendants are producing, for specifically articulated and reasonable multi-year time periods, a host of documents that will permit such examination, including:

  - Annual financial statements of MMC, Putnam's parent. (These have been produced.)

  - Quarterly MMC financial statements. (These have been produced.)

  - Annual audited financial statements for Putnam Investments Trust, which consolidate the financial results of all of that trust's subsidiaries, including Defendants PIM and PRM. (These non-public documents have been produced.)

  - Annual audited financial statements for Defendant PIM. (These non-public documents have been produced.)

- Annual audited financial statements for Defendant PRM. (These <u>non</u>-public documents have been produced.)

- Annual audited financial statements for Putnam Advisory Company ("PAC"), the entity which services Putnam's institutional accounts. (These <u>non</u>-public documents have been produced.)

- Trial balances (also <u>non</u>-public), which underlie the audited financial statements. These have been produced for 2002-2004, and are being produced for 1995, 1996, 1997, 1998, 1999, 2000 and 2001.

- Black books, which contain multiple additional financial reports. (These <u>non</u>-public documents have been produced).

- Back-up to the black books -- <u>i.e.</u>, the voluminous hardcopy and electronic materials relating to the preparation of the black books. (More than 30,000 pages of such information has been produced thus far.)

- Further, Defendants' counsel have stated their willingness to provide <u>more</u> data, but plaintiffs responded by moving to compel, instead of specifying the additional data they believe they need to analyze the issue addressed in this request:

    I am open to working with you as to the financial data that you want, but I cannot go back to my client simply asking for "more" financial information than they have already provided. Can you be more clear and specific about what you need? (Maybe you have an expert or experts you could work with to articulate in technical terms the additional information that you think you do not have, and still need? I could then take that clarification to Putnam, and have a concrete discussion with Putnam about what you are asking for.)

    (Letter from Defendants' counsel to plaintiffs' counsel dated April 20, 2006, Appendix Ex. 36.)

**<u>Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request</u>:**

- <u>None</u> as to this request specifically. (See page 13 of plaintiffs' brief, grouping this request along with 11 other requests.)

- As to the group of 12 requests <u>as a whole</u>, plaintiffs state that they "are entitled to discover any and all documents responsive to the requests, not merely documents from one Putnam department that reportedly were reviewed or generated in connection with the communications to the Trustees about fees." (Pl. Mem. at 13.) This vague statement ignores the <u>facts</u> set forth above.[1]

---

[1] The same analysis applies to Requests 10 and 11, both of which seek documents concerning "unbundling."

4

**REQUEST NO. 18:**

**Plaintiffs' Request:**  "All documents and tangible things in your possession, custody, or control that concern, refer, or relate to the issues of whether there have been, should be, or may be any increases, reductions, curtailments, or eliminations of any portion of the Management Fees and/or 12b-l Fees charged to any of the Putnam Mutual Funds by PIM, PRM, or other affiliated Putnam entities."

**Defendants' December 5, 2005 Written Response:**  "See General Objections, which are incorporated herein. Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  For example, '[a]ll documents' that 'relate' to whether management and/or 12b-1 fees 'should be' lower is a request that improperly seeks to place on Defendants the burden of attempting to subjectively determine what specific documents, of a sweeping array of potential categories and types of documents, spanning an unlimited period of time and implicating an array of aspects of Defendants' business and activities, plaintiffs' counsel and their expert(s) might find useful in attempting to prove the claims in this case.

      Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005 (including the 'black books' collecting information relevant to the trustees' review of management and distribution fees), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications, and data generated or reviewed in connection with such communications).  This is a broad and substantive category of core documents, and plaintiffs' counsel and their expert(s) should review and understand these documents, and in the future, on the basis of the extensive non-public information in these documents and analysis of that information, propound requests for specific, concrete categories of documents, for which they can offer a good-faith justification."

**Additional Context Relevant To This Request:**

- This request is improper:  plaintiffs allege that the fees at issue are "excessive," and this request demands, <u>inter</u> <u>alia</u>, all documents that "relate to" whether there "<u>should be</u>" fee reductions.  As Defendants' written response states, it is plaintiffs' burden to specify the documents that they believe they need in order to support their allegations, and they cannot properly shift the burden of identifying such documents to the Defendants.

- Nonetheless, Defendants are producing a vast array of documents in this case, and their production of those documents, which is ongoing, currently comprises more than 90,000 pages of documents. Defendants refer to pages 2-4 of their motion to compel opposition brief (including Charts A and B) for specification of the many categories of documents that they have committed to produce.

- Plaintiffs demand more, without acknowledging what Defendants have already committed to produce, without explaining why it is purportedly insufficient, and without identifying <u>what</u> more they want.

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request:**

- <u>None</u> as to this request specifically.  (Plaintiffs' brief groups this request along with 11 others.)

- As to the group of 12 requests <u>as a whole</u>, plaintiffs state that they "are entitled to discover any and all documents responsive to the requests, not merely documents from one Putnam department that reportedly were reviewed or generated in connection with the communications to the Trustees about fees." (Pl. Mem. at 13.)  As shown, that statement does not appropriately take account of the relevant, request-specific facts.

**REQUEST NO. 54:**

**Plaintiffs' Request:**  "All documents and tangible things in your possession, custody, or control that reflect, concern, refer, or relate to any decision or agreement made by PIM and/or PRM to waive fees and reimburse expenses of any of The Funds through at least July 31, 2005 to the extent necessary to ensure that any of The Funds' expenses do not exceed the average expenses of other funds viewed by Lipper, Inc. as having the same investment classification or objective of any of The Funds."

**Defendants' December 5, 2005 Written Response:**  "See General Objections, which are incorporated herein. Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence relevant to any claim or defense.

Subject to and without waiving the foregoing objections, and only subject to an appropriate confidentiality order, Defendants will produce responsive communications between PIM and/or PRM, on the one hand, and the trustees, on the other hand, from January 1, 2002 to June 30, 2005, to the extent located after diligent search.  Defendants will also produce, for that same period of time, Operations Finance Department documents concerning this waiver (for example, e-mails within Operations Finance Department concerning this waiver, and e-mail received by Operations Finance Department concerning this waiver)."

**Additional Context Relevant To This Request:**

- Defendants have made a reasonable commitment, calculated to provide plaintiffs with core documents relating to the subject matter of this request, i.e., documents exchanged between Defendants and the trustees concerning the referenced waiver, and documents concerning this waiver -- regardless of whether they were provided to the trustees -- that are in the possession of the Operations Finance Department (which is at the center of the relevant communications with the trustees concerning fees, by virtue of its role in preparing the black books).

- In addition, Defendants have proposed an e-mail search plan to the plaintiffs which contains search terms calculated to locate additional documents relating to the subject matter of this request.  See Appendix Ex. 39.

- Plaintiffs' demand for "all" documents concerning the waiver that is the subject matter of this request is impractical:  Defendants cannot realistically search the hard-copy and e-mail files of each and every employee, for a multi-year period, for any documents referencing this waiver.  Nor have plaintiffs justified their apparent demand for such a massive and unworkable enterprise.

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request:**

- None as to this request specifically.  (See page 13 of plaintiffs' brief, grouping this request along with 11 other requests.)

- As to the group of 12 requests as a whole, plaintiffs state that they "are entitled to discover any and all documents responsive to the requests, not merely documents from one Putnam department that reportedly were reviewed or generated in connection with the communications to the Trustees about fees." (Pl. Mem. at 13.)  As shown, that boilerplate "justification" is clearly inadequate, upon examination of the relevant, request-specific facts.

6

## REQUEST NO. 102:

**Plaintiffs' Request:** "All documents and tangible things in your possession, custody, or control that concern, refer, or relate to the development or formulation of each of the fee schedules for Management Fees and/or for 12b-l Fees that PIM, PRM, or other affiliated Putnam entities have proposed or furnished to each of The Funds."

**Defendants' December 5, 2005 Written Response:** "See General Objections, which are incorporated herein. Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence relevant to any claim or defense.

Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005 (including the 'black books' collecting information relevant to the trustees' review of management and distribution fees), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications, and data generated or reviewed in connection with such communications)."

**Additional Context Relevant To This Request:**

- It is not clear what this request means, but Defendants note that they have committed to produce -- for 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004 and 2005 -- the black books, which are the core materials concerning the trustees' evaluation of fee schedules. Among many other things, those materials (three volumes each year), identify the fee schedules then in effect, and contain voluminous materials relevant to evaluation of the appropriateness of those fee schedules.

- Since this case is about the fee schedules in effect no earlier than May 18, 200<u>3</u> (as plaintiffs admit), Defendants have committed to produce <u>eight years</u> of core materials constituting "development and formulation" of the fee schedules at issue.

- If plaintiffs want more, it is incumbent upon them to identify what additional documents they seek, and to justify their production.

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request:**

- <u>None</u> as to this request specifically. (See page 13 of plaintiffs' brief, grouping this request along with 11 other requests.)

- As to the group of 12 requests <u>as a whole</u>, plaintiffs state that they "are entitled to discover any and all documents responsive to the requests, not merely documents from one Putnam department that reportedly were reviewed or generated in connection with the communications to the Trustees about fees." (Pl. Mem. at 13.) As shown, that generic statement is insufficient, when the facts relevant to this particular request are examined.

7

**REQUEST NO. 107:**

**Plaintiffs' Request:** "All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, refer, or relate to the drafting, revising, and/or inclusion of: (i) the new passage entitled 'Management fee considerations' that recently began to appear on Putnam's web site; and/or (ii) the new standard passages entitled 'Trustee approval of management contracts' that recently began to appear in, *inter alia*, the semiannual reports published on behalf of some or all of the Putnam Mutual Funds."

**Defendants' December 5, 2005 Written Response:** "See General Objections, which are incorporated herein. Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence relevant to any claim or defense. Defendants understand what public statements plaintiffs refer to in this request, but do not understand what plaintiffs seek, in requesting all documents that 'reflect, concern, refer or relate' to them.

   Subject to and without waiving the foregoing objections, however, Defendants will produce copies of the statements themselves, and, to the extent located after diligent search, the following materials, which constitute the documentary record (and more) of the fee-review process those statements describe: Defendants' fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005 (including the 'black books' collecting information relevant to the trustees' review of management and distribution fees), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications, and data generated or reviewed in connection with such communications)."

**Additional Context Relevant To This Request:**

- This request is inappropriate. The legal disclosures in question speak for themselves, and it is invasive and harassing for plaintiffs to demand production of the legal department's work product in connection with the drafting of legal disclosures.

- In addition, as noted in Defendants' response (and in Defendants' motion to compel opposition brief), Defendants are producing a massive and varied quantity of documents relevant to the substance of plaintiffs' claim. See, e.g., Charts A and B in Defendants' motion to compel opposition brief.

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request:**

- None as to this request specifically. (See page 13 of plaintiffs' brief, grouping this request along with 11 other requests.)

- As to the group of 12 requests as a whole, plaintiffs state that they "are entitled to discover any and all documents responsive to the requests, not merely documents from one Putnam department that reportedly were reviewed or generated in connection with the communications to the Trustees about fees." (Pl. Mem. at 13.) As shown, that generic statement is insufficient, when the facts relevant to this particular request are examined.

8

## REQUEST NO. 116:

**Plaintiffs' Request**:  "All documents and tangible things in your possession, custody, or control relevant to establishing the appropriate Lipper peer group for each of The Funds."

**Defendants' December 5, 2005 Written Response**:  "See General Objections, which are incorporated herein. Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence relevant to any claim or defense; all documents 'relevant to establishing the appropriate Lipper peer group' for a fund is an exceedingly overbroad category, which seeks to place upon Defendants a burden appropriately borne by plaintiffs (e.g., to determine what concrete categories of documents they believe are relevant to performing this analysis, and specifying them).

Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005 (including the 'black books' collecting information relevant to the trustees' review of management and distribution fees), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications, and data generated or reviewed in connection with such communications)."

**Additional Context Relevant To This Request**:

- A significant amount of Lipper-prepared data is contained in the black books, and Defendants have agreed to produce not only the black books, but also the back-up to the black books.

- It is not clear what else plaintiffs want in response to this request, and it is inappropriate for plaintiffs to demand that Defendants undertake to produce "all documents" that would permit plaintiffs to "establish" an appropriate "peer group" for each fund.  Plaintiffs must determine what factors they and their experts believe are relevant to such analysis, and then specify those documents.

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request**:

- None as to this request specifically.  (See page 13 of plaintiffs' brief, grouping this request along with 11 other requests.)

- As to the group of 12 requests as a whole, plaintiffs state that they "are entitled to discover any and all documents responsive to the requests, not merely documents from one Putnam department that reportedly were reviewed or generated in connection with the communications to the Trustees about fees."  (Pl. Mem. at 13.)  As shown, that generic statement is insufficient, when the facts relevant to this particular request are examined.

**REQUEST NO. 124:**

**Plaintiffs' Request:** "All documents and tangible things in your possession, custody, or control that concern, refer, or relate to the benefits and advantages, or detriments and disadvantages, to any of The Funds of using PIM as their investment advisor as opposed to using some entity other than PIM."

**Defendants' December 5, 2005 Written Response:** "See General Objections, which are incorporated herein. Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence relevant to any claim or defense; for example, all documents that 'concern' or 'relate' to the 'benefits and advantages' of the funds' use of PIM as their investment advisor is an absurdly broad category of documents, that could conceivably encompass any document bearing in any way on PIM's advisory services.

Subject to and without waiving the foregoing objections, and solely under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005 (including the 'black books' collecting information relevant to the trustees' review of management and distribution fees), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications, and data generated or reviewed in connection with such communications)."

**Additional Context Relevant To This Request:**

- As Defendants state in their written response, this request is inappropriate, because it could conceivably encompass any document bearing in any way on PIM's advisory services. The discovery process requires that plaintiffs shoulder the burden of specifying the types of documents that they believe are relevant to their claims. Here, plaintiffs attempt to shrug off that burden, by repeatedly proffering vague and open-ended requests that -- like this one -- purport to require <u>Defendants</u> to do so.

- However, as noted elsewhere, Defendants are producing a massive quantity of documents concerning plaintiffs' allegations. <u>See</u>, <u>e.g.</u>, Charts A and B in Defendants' motion to compel opposition brief.

**Plaintiffs' Stated Basis For A Motion To Compel Order As To This Request:**

- <u>None</u> as to this request specifically. (See page 13 of plaintiffs' brief, grouping this request along with 11 other requests.)

- As to the group of 12 requests <u>as a whole</u>, plaintiffs state that they "are entitled to discover any and all documents responsive to the requests, not merely documents from one Putnam department that reportedly were reviewed or generated in connection with the communications to the Trustees about fees." (Pl. Mem. at 13.) As shown, that generic statement is insufficient, when the facts relevant to this particular request are examined.

**Note:** This Exhibit relates to Section IV.B of Defendants' brief, which addresses the various document requests that plaintiffs identify in Section II.B.2 of their brief. This Exhibit addresses each of those document requests except for Request 6, which is addressed on page 9 of Defendants' opposition brief.