**EXHIBIT F**

- Request 68: "[a]ll documents" that are "relevant to establishing which other persons or entities were paid monies, and in what amounts, by PIM and/or PRM in connection with their provision of service to the Funds at any and all times doing the damage period." This request is vague to the point of incomprehensibility.

- Request 101: "[a]ll documents" that "constitute, reflect, concern, refer or relate to each of the fee schedules for Management Fees and/or for 12b-1 Fees that PIM, PRM or other affiliated Putnam entities have proposed or furnished to each of The Funds." To the extent they understand it, Defendants have more than satisfied this request. For example, the fee schedules for the funds at issue are in the black books, and those volumes also contain extensive related information; moreover, Defendants have agreed to produce the voluminous back-up to the black books, and much else. See Charts A and B, supra.

- Request 108: "[a]ll documents" that "relate" to "the issues of if, how, whether, or to what extent any conflicts of interest do or may exist between . . . Putnam entities on the one hand, and/or their shareholders on the other hand." This kind of request is inappropriate: Defendants do not know what documents plaintiffs believe may "relate" to the issue of "conflict of interest," and plaintiffs cannot properly shift to Defendants the burden of determining what documents "relate" to an issue of this kind. This is plaintiffs' theory, and if they believe that certain types of documents might assist them in supporting it, they should specify them in intelligible document requests that comply with Fed. R. Civ. P. 26 and 34.

- Request 118: "[a]ll documents" that contain "the professional and working history for anyone who served as an officer, Trustee, or Member of any of the Investment Management Teams for any of the Funds at any and all times during the Damages Period." Defendants have produced biographical statements for the members of the investment teams relevant to the five funds at issue, and those statements were readily available on Putnam's public website. If plaintiffs ask for some reasonable category of additional information, Defendants are certain an agreement could be reached.

- Request 129: "[a]ll documents" that "relate to" any "securities clearing relationship between PIM, PRM, and any other person or entity." This request is inappropriate. The term "clearing" concerns the involvement of third-party intermediaries (clearing houses) to reconcile, or "match," securities buy-and-sell orders, and at a mutual fund company it is a broad topic, implicating millions of trades, multiple parties (e.g., shareholders, Putnam, brokers, clearing corporations), and multiple contexts (e.g., securities clearing with respect to purchases by funds, securities clearing with respect to purchases by outside shareholders, securities clearing with respect to 401K plans, etc.). If plaintiffs are interested in the complex matter of securities clearing in one or more contexts, there were multiple reasonable approaches, including (i) posing one or more questions in some reasonably-focused interrogatory, (ii) asking questions in an appropriate depositions, and/or (iii) after appropriate basic analysis (by consulting with their own experts, and/or reviewing Putnam's or other documents and materials), propounding some reasonably tailored document request. What is not appropriate is for plaintiffs to reflect their general

1

interest in a topic as broad and complex as "securities clearing" simply by demanding "all documents" about it.

- Request 132: "[a]ll documents" that "relate to" "any legal, accounting, financial, compliance, or other audits (whether internal or external) relating to any of the Funds . . ."  Again, the breadth of this request is unreasonable, and reflective of an inappropriate (and unusual) approach to discovery.  Here, plaintiffs are generally interested in the broad category of "audits," and so propound a document request -- to a large and multi-faceted organization -- not just for all audit reports (which would itself be inappropriate), but for all documents that "relate to" all of those audits (i.e., for every audit, regardless of its topic, every document "relating" to it).

- Request 137: "[a]ll documents" that "refer, or relate to" all "communications to or from shareholders of any of the Funds concerning Management and/or 12b-1 Fees . . . ."  This request is facially unreasonable.  For example, prospectuses are communications to shareholders concerning management and 12b-1 fees, meaning that this request calls for -- in part -- all documents that "refer or relate" to each and every annual prospectus.  That is itself an impossible category, encompassing all correspondence, and all drafts, concerning prospectus preparation.  Consequently, Defendants have undertaken to produce responsive categories of documents: "all Form 485s (which include prospectuses), and all Form N-30Ds and Form N-CSRs, for the funds at issue filed during the period January 1, 2002 to June 30, 2005" as well as "any complaints received from shareholders during the period January 1, 2002 through June 30, 2005 concerning management and/or 12b-1 fees."  That is reasonable.

2