UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| JOHN J. VAUGHN, GERALD A. KALBFLEISCH, MICHAEL HATHAWAY, and MYRTLE HATHAWAY,<br><br>                    Plaintiffs,<br><br>          v.<br><br>PUTNAM INVESTMENT MANAGEMENT, LLC and PUTNAM RETAIL MANAGEMENT, LLP,<br><br>                    Defendants. | Civil Action No.  04-10988-GAO |

**PLAINTIFFS' [PROPOSED] REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DEFENDANTS TO RESPOND TO PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

## I.    INTRODUCTION

From the outset of this litigation, Putnam has done everything possible to avoid producing relevant documents.  In its original response to the requests, Putnam categorically refused to provide a meaningful production of documents.  After a lengthy meet and confer process, Putnam served an amended response that failed to address most of the deficiencies in its proposed production.  Further efforts to meet and confer were met with a blanket refusal to produce numerous categories of relevant documents.

Putnam's Opposition is little more than an effort to divert attention away from these tactics.  Instead of justifying its failure to produce the documents requested, Putnam asserts a variety of red herrings and facially implausible arguments.  Putnam claims that the Plaintiffs failed to meet and confer, even though the Plaintiffs did so extensively and exhaustively. Putnam claims that the Plaintiffs failed to comply with Local Rule 37.1, even though Putnam

knows that technical compliance was impossible due to the monumental task of cataloging Putnam's discovery failures. Putnam claims that the Plaintiffs mischaracterize the scope of Putnam's production, even though the Plaintiffs' statements were precisely accurate. Putnam professes to be unable to understand basic requests written in plain language. Putnam even complains about requests that are not part of the Plaintiffs' motion. *See* Putnam's Opposition at 1, 5-6 (complaining twice about Request No. 27, despite the fact that Plaintiffs have not included that request in their motion).

Putnam also asks the Court to ignore its written responses and focus on the *number* of pages it has produced. The number of pages produced is utterly irrelevant and does not excuse Putnam's refusal to respond in full to all of Plaintiffs' requests.[1] Putnam has responded to many requests by stating that it will produce no documents at all, or will only produce certain limited documents. Contrary to Putnam's suggestion, the Court should not ignore these written responses and instead consider the documents produced "in the aggregate." (Putnam's Opposition at 8, n.8). Putnam's written responses are entirely improper, and the number of documents it has produced is simply another red herring to distract the Court's attention.

By contrast, Plaintiffs' motion seeks clear and concise relief as to the following open issues:

1.    Putnam's refusal to produce documents through the present as to a carefully-selected subset of Plaintiffs' requests. (See Plaintiffs' Opening Memorandum at 4-8);

2.    Putnam's refusal to produce documents back to January 1, 1995 as to certain, even more limited, requests. (See Plaintiffs' Opening Memorandum at 8-10);

3.    Putnam's refusal to produce more than a few limited categories of internal documents in response to certain specified requests (See Plaintiffs' Opening Memorandum at 11-

---

[1] Putnam's reported production of over 16,000 pages in training manuals and organizational charts alone (Putnam's Opposition at 3) illustrates why the number of pages produced cannot properly define Putnam's discovery obligations.

14);

4.    Putnam's refusal to provide the financial databases and detailed reports necessary to allow Plaintiffs to perform the complicated task of unraveling true fees, expenses, and costs of the funds at issue and the institutional accounts, to quantify the effects of the 12b-1 fees on the funds, and to analyze economies of scale. (See Plaintiffs' Opening Memorandum at 14);

5.    Putnam's refusal to produce *any* non-privileged documents concerning this litigation or other excessive fee litigation, and its refusal to produce all non-privileged documents concerning government investigations regarding Putnam's fees.  (See Plaintiffs' Opening Memorandum at 15); and

6.    Putnam's refusal to provide full and complete documents as to certain other limited requests. (See Plaintiffs' Opening Memorandum at 15-19).

## II.    <u>PUTNAM'S DOCUMENTS ARE DISCOVERABLE THROUGH THE PRESENT.</u>

Nearly one year after service of Plaintiffs' First Set of Requests for the Production of Documents, Putnam now states for the first time that it will produce the 2006 Black Books and "related materials" when the current Trustee reviews are over on June 30, 2005.  (Putnam's Opposition at 19).  Putnam also states that "there are likely other categories of documents" that it would agree to produce, but does not even bother to identify those documents. *Id.*  This is precisely the type of gamesmanship which resulted in this motion to compel.  Putnam's production remains an ever-moving target and it still has not clarified what will be produced.

The Court should end Putnam's ever-shifting positions and order Putnam to provide documents that are responsive to the requests identified on pages 7-8 of Plaintiff's Opening Memorandum through the present.  As set forth in detail below, documents dated after the filing of the Complaint are discoverable because: 1) the Plaintiffs seek recovery for excessive fees charged during that time period; and 2) the documents are relevant irrespective of the damages period.

As set forth in Plaintiffs' Opening Memorandum, Section 36(b) unambiguously limits only the recoverable <u>pre-suit</u> damages.  In an effort to create the impression that a Section 36(b) plaintiff's recovery ends with the filing of the complaint, Putnam presents a distorted picture of what courts have "held."  None of the courts in the cases cited by Putnam were even presented with the issue of when damages end.  Therefore, the language cited by Putnam is, at best, dicta.  For example, Putnam cites *Daily Income Fund v. Fox*, 464 U.S. 523 (1984) and *Grossman v. Johnson*, 89 F.R.D. 656 (D.Mass. 1982), but neither case supports Putnam's position.  The language Putnam quotes from *Daily Income Fund* comes from a footnote providing a quick summary of selected portions of Section 36(b).  The issue of when the damages period ends was not even before the Court in that case.  Putnam also quotes similar language from the *Grossman* decision, but the issue of when damages end was not presented in *Grossman* either.  The decisions cited from other jurisdictions similarly do not "hold" anything about post-Complaint damages. [2]

The language cited by Putnam from these cases should be interpreted as merely summarizing the <u>pre-suit</u> limitations period found in Section 36(b), and not as an opinion on when damages end.  If Putnam had bothered to review the subsequent histories of these cases, it would know this to be true.  For example, Putnam cites *Krinsk v. Fund Asset Management, Inc.*, No. 85 Civ. 8428, 1986 WL 205 (S.D.N.Y May 9, 1986), for the proposition that damages under

---

[2]   The courts in *Green v. Nuveen Advisory Corp.*, 295 F.3d 738 (7th Cir. 2002), *Fox v. Reich & Tang, Inc.*, 692 F.2d 250 (2d Cir. 1982), *Brever v. Federated Equity Mgmt. Co.*, 233 F.R.D. 429 (W.D. Pa. 2005) *King v. Douglass*, 973 F.Supp. 707 (S.D. 1996), *Krinsk v. Fund Asset Management, Inc.*, No. 85 Civ. 8428, 1986 WL 205 (S.D.N.Y. May 9, 1986) and *In re Alliancebernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) were not presented with the issue of when damages end.  Indeed, the language Putnam quotes from *Green* and *King* were merely those courts' attempts to summarize Section 36(b)'s language, not perform statutory construction.  The *Brever* decision (previously relied upon by Putnam for the argument that Plaintiff Vaughn's claims do not relate back to the filing of the original Complaint, an argument this Court rejected) does not concern at all the post-filing damages period.  The issue in *Krinsk v. Fund Asset Management, Inc.*, No. 85 Civ. 8428, 1986 WL 205 (S.D.N.Y. May 9, 1986) was only whether plaintiffs could recover damages for the period before the one year prior to its filing of the lawsuit.  Finally, the court in *In re Alliancebernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) dismissed plaintiffs' 36(b) claim  for failure to state a claim based, in part, upon facts alleged in the complaint for a time period <u>predating</u> the one year period before the action was commenced.  There was no issue at all about post-filing damages.

Section 36(b) are limited to a "short one year period."  The subsequent history of that case (not included by Putnam in its Opposition) reveals that the very same court tried the issue of excessive fees **for a time period beginning from the one year period before suit was filed, past the filing of the complaint, and continuing until shortly before trial.**  *Krinsk v. Fund Asset Management, Inc.*, 715 F. Supp. 472, 476 (S.D.N.Y.), *aff'd* 875 F.2d 404 (2d Cir. 1989) (assessing evidence of excessive fees over same time period).  Obviously, the language cited by Putnam in the earlier case must be interpreted as addressing only the pre-suit limitations period.  The same is true of the other cases cited by Putnam, none of which even consider the issue of when damages end.[3]

Putnam's reliance on quoted language from these decisions regarding the statutory history of Section 36(b) and Congressional intent is also unavailing.  The courts in those cases were merely supporting their holdings concerning the pre-suit damages period.  As discussed above, none of those cases were even presented with the issue of when damages end.  Indeed, Putnam quotes from the *Krinsk* court's discussion of the Congressional purposes behind Section 36(b), yet the same court tried the issue of excessive fees well past the filing of the complaint.  *Krinsk,* 715 F. Supp. at 476.  There is no public policy for ending damages in a Section 36(b) case at the time the Complaint is filed.  To the contrary, creating such a limitation would interfere with judicial economy by encouraging repetitive suits by mutual fund shareholders, who would have to continuously refile to maintain their damages claims.

Moreover, even if damages do not continue through the present (which they do), the documents requested are relevant and discoverable nonetheless.  Documents dated after June 30, 2005 (Putnam's proposed cut-off) that analyze, discuss or comment upon earlier time periods

---

[3] Putnam also relies upon a transcript from a motion hearing in Illinois.  The trial court's comments there are cryptic at best: "if [Section 36(b)] circumscribes damages and limits it, then any discovery beyond what [Section 36(b)] would afford would not be relevant."

clearly would be relevant. Also relevant are documents created after June 30, 2005 that generally address the benefits of 12b-1 fees, whether fees should be changed, the impact of fees on shareholders, excessive fee litigation, potential conflicts of interest, and allocation practices that would affect pre-June 30, 2005 results. Such documents and the other limited categories set forth on pages 7-8 of Plaintiff's Opening Memorandum can and should be produced on a periodic basis.

## III. PUTNAM SHOULD PRODUCE DOCUMENTS CREATED AS OF JANUARY 1, 1995.

With the exception certain limited financial reports and the black books, Putnam has not agreed to produce any documents created before January 1, 2002.[4] This is entirely improper. In their motion, Plaintiffs seek production back to January 1, 1995 as to limited categories of documents that have obvious relevance in this matter, including audits of the Funds, and documents that address the excessiveness of fees, address the impact of fees on shareholders, address changes in fees and benefits of 12b-1 fees to Putnam, and concern economies of scale benefits and fall-out benefits. (Plaintiffs' Opening Memorandum at 10). Plaintiffs' requests directed to this time period are intended to capture relevant, discoverable information. Putnam's self-serving complaint that complying with Plaintiffs' reasonable requests would be "crippling" grossly exaggerates the difficulty in complying with the requests. A company of Putnam's sophistication should be able to locate responsive documents (particularly in electronic form) without undue hardship. Putnam's position is especially galling because the time period requested by the Plaintiffs is the same one Putnam chose for its own Trustees. As set forth in its Opening Memorandum, the Trustees review information going back to the mid-1990's when they analyze the *Gartenberg* factors during their annual evaluations (Plaintiffs' Opening

---

[4] Putnam's pre-2002 financial reports are not the subject of the instant motion because the parties are continuing to attempt to reach agreement as to that category of documents. Plaintiffs agreed not to raise this issue in their motion pending these further discussions. Plaintiff's motion is limited to pre-2002 documents that are listed on page 10 of Plaintiffs' Opening Memorandum.

Memorandum at 9-10).

It is reasonable to expect that more frank and unguarded analyses, memoranda and communications were created prior to June 2001—when former plaintiff Steven Wicks filed the first 36(b) action against Putnam in Illinois—than anytime thereafter. While this may be the motivation driving Putnam's refusal, it is not a legitimate reason to deny Plaintiffs the discovery they are due.

Putnam should be ordered to produce documents back to January 1, 1995 that are responsive to the requests identified on page 10 of Plaintiffs' Opening Memorandum.

## IV.    PUTNAM MUST PRODUCE ALL INTERNAL DOCUMENTS.

As set forth in the Plaintiffs' Opening Memorandum, Putnam refuses to produce all internal documents in response to certain specified requests served upon it. Instead, Putnam seeks to limit its production to a limited category of documents that support its own positions in this litigation without providing the documents that undermine those positions. In an effort to divert attention from this simple truth, Putnam relies upon a variety of red herrings. It complains that the Plaintiffs have not met and conferred, failed to comply with the local rules regarding motions to compel, misrepresented the scope of Putnam's production, and have not propounded clear requests. As set forth in detail below, none of these arguments have any merit whatsoever.

### A.    Plaintiffs Have Complied With Local Rules and Propounded Clear Requests.

Incredibly, Putnam suggests that the Court's guidance would be unnecessary if only Plaintiffs' would "reasonably" confer. As set forth in Plaintiffs' Opening Memorandum, beginning no later than November 10, 2005, Plaintiffs undertook communications with Putnam about their disagreements with Putnam's responses, which communications included *specifically* identifying the issues to be raised by motion. (*See e.g.* Lisa Furnald's April 7, 2006 correspondence to David Clancy, attached at Tab 31 to Putnam's Appendix; Lisa Furnald's April 18, 2006 correspondence to David Clancy, attached at Tab 34 to Putnam's Appendix). Putnam

7

has refused to budge from its position on these issues.  Putnam knows that continuing to talk

through these issues will bare only one fruit; namely, the continued delay of this two-year-old

action. What Putnam *really* complains about in their Opposition is Plaintiffs' justified insistence

that Putnam respond in full to Plaintiffs' clear and reasonable requests.

Putnam also criticizes Plaintiffs' motion for being "facially inconsistent with LR 37.1

(B)."  (Putnam's Opposition at 6).  As Putnam well knows, the discrete issues raised by

Plaintiffs' motion (such as the appropriate time period for discovery and the production of

internal documents) arise as to the great majority of Putnam's responses, making it impossible

for Plaintiffs to strictly comply with Local Rule 37.1(B) and the page limits of Local Rule

7.1.(B)(4).  Moreover, addressing the requests and responses on an individual basis (rather than

by issue) in the Opening Memorandum would change nothing except adding superfluous pages

for the Court to read.  The Appendix submitted with Plaintiffs' Opening Memorandum contains

each request for production and the response thereto that is disputed, as Local Rule 37.1(B)(4)

requires.[5]  The rule also requires that "[a] statement of the moving party's position *as to each*

*contested issue*… shall be set forth separately immediately following each contested item."

(emphasis added).  Plaintiffs have complied with this requirement by grouping the requests and

responses by issue and providing Plaintiffs' position as to each of these issues immediately

following the corresponding requests and responses.

Finally, Putnam also implausibly contends that it is unable to discern what documents

Plaintiffs seek by those requests that use the term "relating."[6]  Plaintiffs use the word as a

synonym for "concerning," which Local Rule 26.5 defines as "referring to, describing,

evidencing, or constituting."  This is a straightforward concept to understand and Putnam cannot

---

[5]  Plaintiffs unintentionally omitted from their papers Putnam's Amended Response to Plaintiffs' First Set of Requests for the Production of Documents, but note that Putnam attached it at Tab 1 to their Appendix.

[6]  For instance, Putnam complains about the use of "relating" in Plaintiffs' Request No. 27.  (Putnam's Opposition at 1, 5-6).  But as stated above, this request is not part of Plaintiffs' motion.

8

legitimately claim it does not know how to respond.  For example, Request No. 78 calls for documents that, *inter alia*, "relate" to criteria or policies used by the Trustees in connection with their consideration of the management contract.  This request is easy to understand.  It would encompass any such policies or lists of criteria, as well as any documents discussing, analyzing or considering such policies or criteria.  Another example is Request No. 21, which asks, in part, for documents that relate to the issue of whether the amount of management fees PIM charges to the Funds are appropriate.  Again, this request is straight-forward.  It encompasses any document that contains a discussion about the appropriateness of the fee.  Putnam should respond to these and the other requests it claims to be unable to understand.

Even if the term "relate to" were vague, Putnam's position that it need not respond to the entire requests at issue is untenable.  The requests generally use the terminology "concern, refer, or relate to ...".  If Putnam finds the term "relate to" impossible to understand, it should still produce documents that "concern or refer" to the topic at issue in the request.

B.     **Plaintiffs Accurately Described Putnam's Failure to Produce Internal Documents, Which Must Be Produced.**

In response to the requests, Putnam repeatedly refuses to provide a general production of internal documents (*i.e.* those that are not public or disclosed to the Trustees).  For nineteen of Plaintiffs' requests (enumerated on page 12 and the top of page 13 of Plaintiffs' Opening Memorandum), Putnam refuses to produce any documents other than the fee-related communications with the Trustees (the "black books").  For another twelve requests (enumerated in the middle of page 13 of Plaintiffs' Opening Memorandum), Putnam agrees only to provide the black books and documents relating to those communications from the department that generates the black books.  In response to another ten requests (enumerated on the bottom of page 13 and the top of page 14 of Plaintiffs' Opening Memorandum), Putnam limits its response to the foregoing categories as well as public filings, Trustee communications, and Trustee

9

minutes.  Finally, in response to another ten requests, (enumerated in the middle of page 14), Putnam limits its responses to proxy statements, prospectuses, publicly-filed financial statements and certain limited accounting reports.[7]  All told, Putnam refuses to provide a general production of internal documents in response to 52 separate requests.  All of this is in addition to the many requests set forth at the end of Plaintiffs Opening Memorandum where Putnam refuses to produce any documents at all.

To comprehend the ramifications of this failure, the Court must appreciate the nature of the documents that Putnam has agreed to produce.  The so-called "black books" are advocacy pieces.  They consist of materials Putnam puts together each year to justify its fees to the Trustees.  A primary focus in the Plaintiffs' case will be to prove that these materials are misleading and do not provide the Trustees with the information they need to fairly judge the appropriateness of the fees.  By limiting the Plaintiffs to the black books themselves and "related" documents from the department that produced them, Putnam seeks to deprive the Plaintiffs of the documents they need to undermine the conclusions Putnam advocates in the black books.  Essentially, Putnam is asking the Plaintiffs to trust that Putnam provided all relevant information to the Trustees and presented that information in an accurate manner.  This is a tall order, given that Putnam has been sanctioned twice for misleading the Trustees.[8]

Putnam's inclusion of certain limited internal documents from one department at Putnam (the Operations Finance Department) does not satisfy its discovery obligations because this department does not include all persons who would reasonably be expected to have responsive information (*i.e.* it excludes that management teams that manage the Funds).  For example, Request No. 18 asks for documents concerning whether there should be increases or reductions

---

[7]  Plaintiffs do not include Putnam's Response to Request No. 104 in counting ten requests because Putnam agreed to provide some, although limited, internal documents.

[8]  In its Opposition, Putnam argues that it did not admit the findings that supported the sanctions.  This fact is irrelevant; Putnam consented to the entry of these Orders.

BN1 35031463.1

in the relevant fees.  (Plaintiffs' Appendix at 132).  Such discussions could occur in many departments at Putnam.  However, under Putnam's view, documents relating to such discussions would not have to be collected if they come from other departments other than the Operations Finance Department or even if they come from that department but do not "relate" to the "fee-related communications" with the Trustees.  This cannot be tolerated.

In an effort to draw attention away from its own discovery failures, Putnam alleges that the Plaintiffs mischaracterized Putnam's document production by overstating Putnam's failure to produce internal documents.[9]  (Putnam's Opposition, at 1-2).  Putnam focuses on one sentence taken out of context.  The sentence in question was an introduction to Section (B) of Plaintiffs' Opening Memorandum, which dealt with the topic of the 52 requests described above.  Viewed in that context, it was precisely accurate and was supplemented and supported by a precise enumeration of the 52 requests where Putnam refuses to provide a complete production of internal documents.

Putnam also asks the Court to ignore the presumably careful distinctions it made in these responses and, instead consider its responses "in the aggregate."  (Putnam's Opposition at 8, n.8).  This is a total abuse of the discovery process.  Putnam has identified the documents it agrees to produce in response to particular requests, and must stand by its representations or file an amended response.  Its discovery responses cannot be a moving target.

The inadequacy of Putnam's production of internal documents is exemplified by its proposal concerning e-mail.  (See Putnam's Appendix at Tab 39).  Putnam's plan is to search the emails of "key individuals" (Putnam's opposition at 3), but these are only a handful of Putnam's most senior executives and management, without any production from the personnel who would be expected to have the bulk of responsive documents.  For instance, Putnam plans not to search

---

[9]   The statement Putnam quotes out of context is "with few exceptions, Putnam improperly refuses to produce any internal documents."

BN1 35031463.1

the emails of the investment management team members for the Funds, or Operations Finance department managers and employees.  Moreover, Putnam places the same date restrictions on its e-mail production that it places on its other responses.[10]

Putnam must produce all internal memoranda, presentations, analyses, emails, data and other internal documents otherwise responsive to Plaintiffs' requests set forth in pages 11-14 of Plaintiffs' Opening Memorandum.

### C.    The Documents Discussed in Section IV of Putnam's Opposition Must Be Produced

In Section IV of its Opposition, Putnam addresses the requests where it refused to provide internal documents.  Putnam's primary complaint is that the Plaintiffs did not address these requests individually in their Opening Memorandum.  As discussed above, such an exercise would be academic:  Putnam's response to each request is nearly identical.  Simply put, Putnam has refused to produce all internal documents responsive to the requests.

The requests themselves are straight-forward and the materials sought are plainly relevant to this litigation.  For example, Request No. 8 (discussed on page 7 of Putnam's Opposition), seeks documents relevant to identifying each of the various types of services and/or resources that various Putnam entities have provided in exchange for the management fees, portfolio selection fees, and 12b-1 fees that they have received from any of the funds.  This request is plainly relevant to several of the *Gartenberg* factors, including the nature and quality of the services provided to the fund's shareholders.  Putnam argues that it has satisfied this request by producing a single report contained in one of the black books, and appears shocked to learn that Plaintiffs still seek more documents.  As discussed above, the black books are advocacy pieces

---

[10] Putnam's proposal is deficient for other reasons, including its plan to search the e-mails using an abbreviated list of terms that does not capture the issues in this litigation and not providing the e-mails resulting from the search to the Plaintiffs.   Putnam submitted their proposal to Plaintiffs after the Motion to Compel was filed, and the issue of electronic production is not before the Court at this time while the parties are continuing their discussions about this category.  Plaintiffs address it briefly herein only because Putnam raises it in its Opposition.

wherein Putnam attempts to justify its fees to the Trustees. The Plaintiffs are entitled to other documents within Putnam that address or summarize the type of services performed so that Plaintiffs can test the accuracy of the representations made to the Trustees.

Another request about which Putnam complains is Request No. 6 (discussed on page 9 of Putnam's Opposition), which seeks documents relevant to establishing the total profits and profit margins that the various Putnam entities have received in connection with the management and 12b-1 fees that are at issue in this litigation. Again, this request is straight-forward and would encompass the various financial reports and financial databases that would allow the Plaintiffs to assess the profitability of Putnam's business. This is directly relevant to the *Gartenberg* factor concerning the profitability of the Funds to Putnam. Putnam identifies certain limited documents it has agreed to produce, but Plaintiffs are entitled to all relevant financial data so that they can test the accuracy of the representations made to the Trustees.

Putnam also complains about Request No. 5 (discussed on page 10 of Putnam's Opposition), which seeks documents relating to negotiations, bargaining, or communications relating to any proposed management fees, management contracts, 12b-1 fees, or distribution plans. Again, Putnam argues that it has satisfied its obligations because it has produced the fee-related communications with the Trustees and certain documents from the Operations Finance Department. However, there is no justification for limiting their production to these documents and Plaintiffs are entitled to documents from other departments that address this issue.

## V.     PUTNAM MUST PRODUCE FULL AND COMPLETE FINANCIAL INFORMATION.

In Section IV (D) of its Opposition, Putnam greatly understates the complex financial analyses that Plaintiffs must undertake to establish that Putnam's fees are excessive, including, but not limited to, analyses of the *Gartenberg* factors. Three forms of analysis that will be particularly cumbersome (discussed in detail below) are the analysis of economies of scale, the

13

comparison between fees charged to Putnam's institutional accounts and the Funds, and the propriety of Putnam's 12b-1 fees.

Plaintiffs allege that Putnam has not shared with the Funds the economies of scale it realizes as assets under management have increased.  (Second Amended at ¶¶57-77).  In order to perform this analysis, Plaintiffs plan to examine, among other things, the expenses and costs at a *fund* level (*i.e.* the expenses and costs incurred for the individual funds, not the costs and expenses of Putnam in general) and how those expenses have changed with various fund sizes. This is an inordinately complicated task because all of the financial documents provided to date are either not fund-specific or merely make extrapolations of the expenses of individual funds from Putnam's overall expenses.  Plaintiffs may wish to unravel the actual expenses of the funds or at least determine an allocation methodology that captures the economies of scale at the individual funds.

Plaintiffs also allege that the fees charged to the Funds are excessive when compared to the fees Putnam charges to its institutional clients following arm's length negotiations.  (Second Amended at ¶¶ 78-90).  Putnam contends that comparison to institutional fees is not appropriate because the services provided to institutions are different from those provided to the Funds.  (*See* Defendants' Memorandum of Law in Support of Motion to Dismiss Complaint, at 11). Accordingly, Plaintiffs plan to examine and quantify the expenses claimed to be different to determine whether the comparison is appropriate and whether allocations can be performed so that there is an "apples to apples" comparison.

In addition, Plaintiffs allege that the 12b-1 fees Putnam charges have produced no benefits to the Funds or their shareholders. (Second Amended at ¶¶ 36-52).  Plaintiffs must analyze under what, if any, financial circumstances the 12b-1 fees would ever benefit the Funds or their shareholders.  This requires a careful analyses of the Funds' *actual* flows, expenses (after sorting out Putnam's one-sided allocation methodologies) and returns.

All of these foregoing analyses will likely require much more detailed financial information than Putnam has agreed to provide.  At this time, it is impossible for the Plaintiffs to identify the actual reports and databases that will have to be accessed.  Putnam should be ordered generally to comply with the document requests directed to financial information so that the Plaintiffs can make this assessment. (*See* Plaintiffs' Opening Memorandum at 14).

## VI.    PUTNAM MUST PRODUCE NON-PRIVILEGED DOCUMENTS CONCERNING EXCESSIVE FEE LITIGATION AND INVESTIGATIONS.

Putnam refuses on the grounds of privilege to produce <u>anything</u> at all in response to Plaintiffs' request for documents concerning, referring to or addressing the existence, substance, merits or outcomes of the "Illinois Actions" (the Section 36(b) actions previously filed by Plaintiffs Kalbfleisch and former Plaintiff Wicks against Putnam in Illinois) or the instant action (Plaintiffs' Request No. 42), and Plaintiffs' request for documents that concern, refer or relate to litigation, arbitration or mediation involving PIM and/or PRM as parties that contained allegations of excessive fees charged to any of Putnam's mutual funds.  (Plaintiffs' Request No. 113).  Plaintiffs are not asking Putnam to produce privileged documents, but Putnam cannot seriously contend that every single responsive document is privileged.  Putnam must provide all non-privileged responsive documents (including, for example, emails between Putnam employees discussing this litigation) and produce a log of the documents it claims to be privileged.  The relevance of these documents is beyond question.

Likewise, Putnam should respond in full to Plaintiffs' Request No. 112, which seeks documents concerning, referring or relating to government, administrative or self-regulatory investigations regarding the propriety or amount of fees charged to Putnam's mutual funds. Putnam's response, which selectively limits its production to public communications between Putnam and the regulators in connection with excessive management or 12b-1 fee investigations, is wholly improper.  Putnam must respond in full to this request, including with the non-

15

privileged internal documents such as memoranda, emails and analyses concerning fee investigations. Any such documents would be relevant to the issues in this action.

## VII. PUTNAM MUST RESPOND FULLY AND COMPLETELY WHERE IT HAS NOT.

On pages 12 through 15 of its Opposition, Putnam lists various specific requests where it has refused to provide any documents at all. In general, Putnam professes to be completely unable to understand the request or contends that the request is irrelevant. As set forth below, Putnam's arguments are utterly without merit.

Request No. 59: Request No. 59 seeks documents concerning "policies relating to the practice of simultaneously servicing multiple accounts . . .". Putnam contends that it is unable to understand this request. This request is straight-forward and simply seeks documents concerning policies about the practice of investment management team members performing services for retail funds simultaneously with their performance of services for institutional accounts, or for multiple retail funds at the same time.

Request No. 98: This request seeks documents relating to Putnam's practices and procedures concerning disclosures to shareholders regarding management and 12b-1 fees. Putnam claims that it has satisfied this request by producing the disclosures themselves (*i.e.*, the prospectuses and shareholder reports). However, this request seeks internal documents discussing such disclosures. This request is plainly relevant because it will be used to rebut Putnam's argument that the fees are appropriate because they are adequately disclosed to shareholders.

Request No. 106: This request seeks documents relating to policies and procedures concerning obtaining the most favorable prices and executions of trades. Putnam does not contend that this request seeks irrelevant documents, but argues that it has satisfied the request by producing its trading manual. Again, this production is insufficient. Putnam must produce

16

other documents that discuss or refer to these policies, including whether the policies are sufficient and whether they have been violated.

Request No. 35:  This request seeks documents containing descriptions of the activities that each of the investment management teams perform.  Putnam claims to be unable to understand what the term "description of activities" means.  This argument is so ludicrous that it need not be responded to here.

Request Nos. 44 and 45:  These requests seek documents that concern whether and how Putnam has complied with standards imposed by Section 36(b) and Rule 12b-1.  Putnam cannot seriously contend that these requests are irrelevant, as they go to the heart of the issues in this litigation.  The requests are straight-forward and would encompass any non-privileged memoranda, emails, and other documents that address whether Putnam has complied with these statutes.

Request No. 136:  This request seeks all documents concerning the practice of loaning securities owned by the funds to third parties.  As Putnam is aware, this request is directly relevant to the *Gartenberg* factor concerning fall-out benefits.   Plaintiffs must assess a wide variety of factors to ascertain the extent to which the funds benefits from the securities lending arrangements.  Providing the contacts themselves and the few selected documents identifying the profits from these arrangements is simply insufficient.[11]

## VIII.  CONCLUSION

When Putnam's red herrings are seen for what they are and the discrete issues raised by Plaintiffs' motion are properly considered, it is abundantly clear that Putnam has not met its discovery obligations.  Putnam should be ordered to respond in full to Plaintiffs' First Request for the Production of Documents.

---

[11]   Request No. 104, which requests certain financial information, is encompassed within the discussion contained in Section V, *supra*.

Dated: May 31, 2006

Respectfully submitted,


 /s/ Lisa A. Furnald
David E. Marder (BBO #552485)
Marc N. Henschke (BBO #636146)
Lisa A. Furnald (BBO #631059)
Jonathan D. Mutch (BBO #634543)
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: LAFurnald@rkmc.com
(617) 267-2300

Of Counsel:

Thomas R. Grady (admitted *pro hac vice*)
Ackerman, Link, & Sartory, P.A.
222 Lakeview Avenue, Suite 1250, Esperante
West Palm Beach, FL  33401

## CERTIFICATE OF SERVICE

I, Lisa A. Furnald, hereby certify that this document filed through the ECF system on May 31, 2006 will be served electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those non-registered participants.

 /s/ Lisa A. Furnald
Lisa A. Furnald
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: LAFurnaldr@rkmc.com
(617) 267-2300

18