UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOHN J. VAUGHN, GERALD A.
KALBFLEISCH, MICHAEL HATHAWAY   :
and MYRTLE HATHAWAY,                       Civil Action
                                                    :   No. 04-10988-GAO
    Plaintiffs,
                                                    :
    v.
                                                    :
PUTNAM INVESTMENT
MANAGEMENT, LLC and                        :
PUTNAM RETAIL MANAGEMENT, LLP,
                                                    :
    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' [PROPOSED] SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

James R. Carroll
David S. Clancy
Scott T. Lashway
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800

Counsel for Defendants Putnam
Investment Management, LLC and
Putnam Retail Management Limited Partnership

Dated: June 6, 2006

I.  **PLAINTIFFS ADMIT TO NONCOMPLIANCE WITH LOCAL RULE 37.1**

Plaintiffs euphemistically admit that their motion does not "strictly comply" with L.R. 37.1. (Reply, at 8) (emphasis added.)  But that noncompliance is not de minimis; it is flagrant.  Plaintiffs have made this matter far, far more complex and burdensome than necessary, and their motion should be denied on the basis of admitted noncompliance with Rule 37.1.[1]  Plaintiffs' cavalier treatment of their Rule 37 obligations is a microcosm of this entire motion.

II. **PLAINTIFFS' REPLY IS RIFE WITH BASELESS ASSERTIONS, STARTING WITH A FIRST SENTENCE THAT IS SO IMPROPER THAT IT SHOULD BE WITHDRAWN**

Plaintiffs' Reply is a collection of baseless assertions and irresponsible exaggerations, starting with its first sentence:  "From the outset of this litigation, Putnam has done everything possible to resist producing relevant documents." (Reply, at 1.)  Defendants refer the Court to their Charts A and B. (Defendants' Opposition, at 3-4.)  Plaintiffs do not dispute that Defendants have committed to produce those categories of documents; Plaintiffs do not dispute that each of them is indeed "relevant"; and Plaintiffs cannot dispute that, as of today, Defendants have already produced more than 100,000 pages of documents.  Sentence one of Plaintiffs' Reply is baseless, and should be withdrawn.[2]  Hyperbole is no substitute for merit.

III. **PLAINTIFFS' REPLY DISTORTS THE *FACTS* CONCERNING TIME PERIOD**

As to their request for documents "through the present," Plaintiffs say that they want such discovery as to a "carefully selected subset" of their requests. (Opp. at 2.)  A "carefully selected subset"

---

[1]  Plaintiffs' excuse is the "monumental task of cataloging Putnam's discovery failures." (Reply, at 2.) Plaintiffs have it backwards.  They served 141 defective document requests.  Then, despite Defendants' efforts to work toward reasonable document production commitments, and without acknowledging them, Plaintiffs moved to compel on 100 requests, themselves creating an unmanageable motion to compel situation.  This approach to discovery does not excuse noncompliance with Rule 37 -- it is the very thing that Rule 37 exists to prevent.

[2]  Plaintiffs call the size of Defendants' production "utterly irrelevant" (Opp., at 2), but viewing matters reasonably, it shows that the categories of documents Defendants have already committed to produce are broad and meaningful, and that Defendants are working diligently on a large and difficult production.

1

of requests? Plaintiffs demand "through the present" production on 94 of their document requests. (See Plaintiffs' opening brief, at 7-8.) That is not a "carefully selected subset" of requests, and, as Defendants show in their Opposition, attempting to gather and produce all documents within those 94 categories on a real-time basis would -- if even possible -- be a monumental task occupying the time and attention of the entire Putnam organization, every day, from now until the end of this case. Plaintiffs have no answer to that (other than to mischaracterize the nature of their demand).[3]

As to their demand for discovery back to 1995, Plaintiffs say that all they want is such discovery as to "certain, even more limited, requests." (Reply, at 2.) In reality, Plaintiffs demand "back to 1995" production as to 53 document requests (see Plaintiffs' opening brief, at 10), the confusing and overbroad nature of which is established in Defendants' Opposition.[4]

Defendants' Opposition carefully -- and factually -- addressed the issue of discovery time period, explaining how Defendants have actually approached this issue, and the reasoning for that approach. Defendants refer the Court to pages 15-20 of their Opposition.

---

[3]    Plaintiffs make much of their argument that Section 36(b) permits restitution with respect to post-suit fees. That is a secondary issue on this motion. The primary issue is the sweeping and harassing post-suit discovery that Plaintiffs ask this Court to categorically endorse. (Defendants are already producing documents through June 30, 2005, more than one year post-suit.) In any event, Plaintiffs make far too much of the one case that they cite on post-suit fees: Krinsk v. Fund Asset Management, Inc., 715 F. Supp. 472 (S.D.N.Y.), aff'd 875 F.2d 404 (2d Cir. 1989). The complaint in Krinsk was filed on May 16, 1985, and the district court in that case merely noted that, at trial, it "heard evidence on the plaintiff's remaining claims: (1) that for the period May 17, 1984 to December 31, 1986, fees were paid to the investment advisor in violation of Section 36(b) . . . ." Id. at 476 (emphasis added). Nothing in the decision indicates any ruling that, if plaintiffs were to prevail, they could actually obtain restitution for the May 17, 1985 to December 31, 1986 period (i.e., the post-suit period for which plaintiffs "claim[ed]" a legal violation), and there was no reason for the trial court to reach that issue -- on the issue of liability, it found "for the defendants . . . and dismisse[d] the complaint." Id.

[4]    Plaintiffs say that "the Trustees review information going back to the mid-1990's when they analyze the Gartenberg factors." (Reply, at 6.) First, Plaintiffs' opening brief identified particular topics on which the trustees have reviewed historical information, but Plaintiffs do not tailor their requests to those topics. Second, Defendants are producing the back-up to the 2002-2005 black books, which encompasses the data Putnam relied on in preparing any historical summaries for the trustees during that period. Third, Defendants are producing black books, 12b-1 reports, and trial balances back to 1995. In sum, Plaintiffs should -- and can -- reasonably particularize any additional information they need from the pre-2002 time period.

IV. **PLAINTIFFS' REPLY IS OTHERWISE HOLLOW, AND DOES NOT JUSTIFY, ANY MORE THAN DID THEIR OPENING BRIEF, THE <u>SWEEPING AND INAPPROPRIATE DISCOVERY ORDER THEY DEMAND</u>**

1. Trying to support their demand for even more "internal documents," Plaintiffs call the black books "advocacy pieces." (Reply, at 10.) Plaintiffs offer no <u>basis</u> for that inappropriate assertion. Armed with more than 100,000 pages of Putnam documents -- including thousands upon thousands of pages of data <u>underlying</u> the black books -- Plaintiffs identify nothing about the black books that is purportedly incomplete, or inaccurate. Further, this statement is nothing more than another variation on Plaintiffs' theme that "[w]ith few exceptions, Putnam improperly refuses to produce any internal documents." (Plaintiffs' opening brief, at 2.) Charts A and B show that this theme is flatly <u>wrong</u>, and Plaintiffs do not (and cannot) dispute the accuracy of those charts.

2. Plaintiffs continue to insist that, as to each request at issue, the Court engage in a blinkered analysis, looking solely at the text of the particular written response to that request, disregarding <u>context</u>, such as (i) the array of categories of documents that Defendants committed to produce in that same written response <u>as a whole</u>, and (ii) the many subsequent months of document production and discovery correspondence. Plaintiffs cannot be serious. If so, then the Court should reject the scores of document requests that contain no time limitation at all *entirely* on *that* <u>basis</u>, even though Plaintiffs agreed to time limitations on such requests <u>later</u>, in correspondence with Defendants. If so, then the Court should ignore Plaintiffs' brand-new statement that the term "relating" in their requests should be read to mean "concerning," because that is not what the requests themselves say. If so, then the Court should ignore the documents that Defendants have committed to produce back to 1995, because Defendants committed to do so <u>after</u> serving their written responses. Defendants could go on, but the point is that Courts, and responsible counsel, analyze discovery issues based upon <u>all</u> relevant facts. Here, such facts include what Defendants' written responses commit to produce in the aggregate (looking

3

at all responses, not just individual responses in isolation), and what Defendants have <u>in fact</u> produced, and otherwise committed to produce, in the <u>six months</u> since they served their written response to Plaintiffs' 141 confusing document requests.  Plaintiffs' motion must be measured against those facts, but it ignores them, and is therefore useless as a resource for evaluating particular discovery requests.[5]

      3.    Plaintiffs purport to "cure" their scores of deficient requests by stating that "they use the word ["relate"] as a synonym for 'concerning.'" (Reply, at 8.)  It simply is not <u>true</u> that this is what Plaintiffs' "meant."  Request after request after request demands all documents that "concern" a topic, <u>and</u> all documents that "relate" to it.  In any event, striking the word "relate" does not come close to reforming Plaintiffs' defective motion, and the <u>100</u> defective requests on which it seeks relief.[6]

      4.    Plaintiffs persist in making statements like "PUTNAM MUST PRODUCE ALL INTERNAL DOCUMENTS" (Reply, at 7), and "PUTNAM MUST PRODUCE FULL AND COMPLETE FINANCIAL INFORMATION." (Reply, at 13.)  Plaintiffs simply do not get it.  Putnam is a 4000-employee organization, with scores of functions and departments.  Putnam has specified an array

---

[5] For example, as to various requests, Plaintiffs seek relief on the stated basis that Defendants are producing "only" black books, pointing to isolated written document request responses.  Yet Plaintiffs <u>know</u> what Defendants are <u>in fact</u> producing: all of the categories of documents set forth in Charts A and B, and more.  Plaintiffs do not even <u>acknowledge</u> those crucial commitments, much less establish, as to each particular request on which they seek an order, why those commitments are purportedly inadequate.  (Surely, Plaintiffs do not want Defendants to amend their written responses, to insert Charts A and B within the written response to each of Plaintiffs' requests.)

[6] For example, some requests do not use the words "relate" or "concern" <u>at all</u>, but remain fundamentally deficient.  For instance, Request 5 seeks all documents "relevant to establishing" the management and 12b-1 fees on the funds at issue during the "Damages Period," and -- as explained at pages 4-5 of Defendants' Opposition -- Defendants have satisfied that request, but Plaintiffs still move to compel, without explaining why.  Other requests <u>do</u> use the words "relate," but removing that word would do nothing to cure them.  For instance, Request 35 seeks all documents that "concern, refer or relate to any explanations, characterizations, or descriptions of the activities that each of the Investment Management teams perform."  Investment management is what Putnam <u>does</u>.  Whether the operative word is "relating" or "concerning," this is like demanding that the Massachusetts Federal Court produce, for a ten year period, "all documents that concern or refer to any explanations, characterizations, or descriptions of the activities that each of the Judges and their staff perform" -- and then mutely pressing that request even after a reasonable production of responsive documents.  (<u>See</u> Defendants' Opposition at 13-14, which specifies the documents that have already been produced in response to this vague and open-ended request.)

4

of concrete categories of documents for production, and is in the midst of a large production of documents within those categories. If there is to be any sense and reason to this process, Plaintiffs have a burden of <u>specifying</u> what else they need, and why they need it. Yet they persist in ignoring what Defendants have already produced and agreed to produce, and in making such opaque demands as "Putnam must produce all financial information." For example, Defendants' Opposition, at pages 10-11, specified the many concrete categories of financial information that Defendants have committed to produce, and established that, <u>before</u> Plaintiffs filed their motion, Defendants asked Plaintiffs to specify what <u>other</u> financial information they need. Plaintiffs' "response" is to ignore those facts and to bluntly demand -- yet again -- "all financial information." This is unhelpful, and inappropriate. Plaintiffs' thoughtless and irresponsible approach to discovery should end, now.[7]

      A proposed Order is attached to this Surreply, as Exhibit A.

Dated: June _, 2006  
      Boston, Massachusetts

Respectfully submitted,

_____  
James R. Carroll (BBO #554426)  
David S. Clancy (BBO #636031)  
Scott T. Lashway (BBO #655268)  
SKADDEN, ARPS, SLATE,  
  MEAGHER & FLOM LLP  
One Beacon Street  
Boston, Massachusetts 02108  
(617) 573-4800  
jcarroll@skadden.com  
dclancy@skadden.com  
slashway@skadden.com

**Certificate Of Service**
I, Scott T. Lashway, hereby certify that on June _, 2006, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those as non-registered participants.

Dated: June _, 2006    _____

---

[7] So that the Court may see how <u>Plaintiffs</u> respond to discovery requests, Defendants attach Mr. Vaughn's recent response to Defendants' <u>9</u> document requests (as Exhibit B to this brief). One of those requests (No. 3) asks for all documents concerning Vaughn's "consideration of bringing a lawsuit concerning mutual fund management and/or 12b-1 fees, before you retained counsel in that connection." Vaughn refuses to produce <u>any</u> documents. Two other requests (Nos. 6 and 8) seek all documents "concerning non-Putnam mutual funds" and "correspondence with investment professionals concerning mutual fund investment." Vaughn alleges that mutual fund fees are not properly disclosed, and that the mutual fund industry is not competitive. In making such allegations, he opens the door to examination of his <u>own</u> decision-making with respect to mutual fund investment, over time (<u>e.g.</u>, when and why he made particular transactions). Again, Vaughn refuses to produce <u>any</u> documents. It was already clear that Plaintiffs' discovery demands are unreasonable. It is now clear that they are hypocritical as well.