UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| JOHN J. VAUGHN, GERALD A. KALBFLEISCH, MICHAEL HATHAWAY, and MYRTLE HATHAWAY,<br><br>Plaintiffs,<br><br>v.<br><br>PUTNAM INVESTMENT MANAGEMENT, LLC and PUTNAM RETAIL MANAGEMENT, LIMITED PARTNERSHIP<br><br>Defendants. | Civil Action No.  04-10988 (GAO) |

## PLAINTIFFS' [Revised] MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DEFENDANTS TO RESPOND TO FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

On April 27, 2006, Plaintiffs filed a motion to compel Defendants Putnam Investment Management and Putnam Retail Management (collectively, "Putnam") to respond to Plaintiffs' First Set of Requests for the Production of Documents.[1]  This Court held a discovery conference on August 2, 2006, at which time the parties agreed to meet and discuss further whether, in light of the discovery produced to date, any of the issues raised in the motion could be narrowed or resolved.

The parties conferred exhaustively and, as a result, have reached agreement on the vast

---

[1] Plaintiffs did not include in the motion to compel Putnam's e-mail production, pre-2002 financial/accounting documents, and requests concerning Putnam's institutional/non-mutual fund clients.  Plaintiffs reserved the right to raise these issues at a later date if the parties could not reach agreement thereon.  The parties have been unable to resolve the issue of Putnam's e-mail production.  Therefore, Plaintiffs now include this issue in this memorandum. The parties continue to work together about Putnam's institutional/non-mutual fund clients and pre-2002 financial/accounting documents.  Plaintiffs reserve the right to raise these issues later if the negotiations fail.

majority of the requests at issue in the original motion to compel.[2]  In accordance with the
Court's further discovery conference held on August 31, 2006, Plaintiffs file this memorandum
to address the outstanding issues that are now ripe for resolution by the Court.[3]

The open issues for the Court to decide are discrete.  First, Plaintiffs want Putnam to
respond in full to 5 document requests (of the 70 at issue in Plaintiffs' original memorandum)
where Putnam's responses are substantively incomplete.  In addition, Putnam refuses to provide
responsive documents from the appropriate time period in response to these requests and a
number of others.  Specifically, Putnam wrongfully refuses to produce certain documents
through the date of trial, based primarily on Putnam's erroneous position that Plaintiffs' damages
stopped accruing at the time the complaint was filed.  Putnam also improperly refuses to provide
Plaintiffs with certain pre-2002 documents.  Finally, Putnam's search for responsive e-mails is
grossly deficient.

I.    FACTUAL BACKGROUND

Plaintiffs are four shareholders who each own one or more of five Putnam mutual funds
(collectively, the "Funds").  Defendant Putnam Investment Management ("PIM") provides
investment advisory services to the Funds in exchange for a fee (the "management fee") based
upon varying percentages of total assets under management. PIM operates pursuant to
management contracts which require annual approval by the Funds' boards of trustees (the
"Trustees").  Defendant Putnam Retail Management ("PRM") provides underwriting and
marketing services to the Funds in exchange for a fee pursuant to distribution plans adopted
under Rule 12b-1, 17 C.F.R. § 270.12b-1 (the "12b-1 fee").  Like the management fee, the 12b-1

---

[2] Plaintiffs have agreed not to include certain requests in this revised memorandum (the "removed requests") based
upon the discovery produced to date and Putnam's agreement to provide additional categories of documents.
Plaintiffs reserve the right to request from Putnam additional documents responsive to these removed requests
and/or requests not identified in Plaintiffs' original memorandum in response to document and/or deposition
production.

[3] This memorandum is intended to replace Plaintiffs' original memorandum in support of Plaintiffs' motion to
compel, filed on April 27, 2006.

fee is based upon a percentage of total assets under management and must be approved annually by the Trustees.

Plaintiffs bring this action on behalf of the Funds under Section 36(b) of the Investment Company Act of 1940, 15 U.S.C.§ 80a-35(b), alleging that certain components of the management and 12b-1 fees charged to the Funds by Putnam have been excessive, and therefore in breach of Putnam's fiduciary duties. With respect to PIM's management fees, Plaintiffs challenge the Portfolio Selection Fee component, which covers the cost of selecting securities for the Funds to buy, sell, or hold. With respect to PRM's 12b-1 fees, Plaintiffs challenge the Promotional Distribution Fee component, which is charged for marketing and distributing the Funds' shares. Plaintiffs further contend that Putnam's fees are excessive by their retention of certain "fall out benefits" (*i.e.* the indirect benefits Putnam receives by virtue of its relationships with the Funds), including "soft dollars" that properly belong to the Funds.

II.    THE DISPUTED DISCOVERY

The scope of discovery in this action is appropriately comprehensive because of the nature of the inquiry to be performed under Section 36(b). That statute provides that investment advisers (such as Putnam) have a fiduciary duty with respect to their receipt of compensation paid by mutual funds. The leading case authority addressing the meaning of fiduciary duty under Section 36(b), *Gartenberg v. Merrill Lynch Asset Management, Inc*., 694 F.2d 923 (2d Cir. 1982), holds that fees are actionable if they are "so disproportionately large that [they bear] no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Id*. at 928. Under *Gartenberg* and its progeny, there are a number of factors to consider in determining whether fees are excessive within the scope of Section 36(b) including, (1) economies of scale; (2) comparative fee structures; (3) the profitability of the fund to the adviser-manager; (4) the nature and quality of services provided to the fund; (5) fall-out benefits; and (6) the independence and conscientiousness of the trustees. *Krinsk v. Fund Asset*

3

*Management, Inc.*, 875 F.2d 404, 409 (2d Cir. 1989) (*citing Gartenberg*, 694 F.2d at 929-30). In connection with their approval of the management contracts, the Trustees have reportedly considered these factors, including economies of scale, investment performance, and fall-out benefits to Putnam, as well as compared retail and institutional fee structures. *See* January 31, 2005 Semiannual Report on Performance and Outlook for Putnam Voyager Fund, at 17-20, attached as Exhibit A to the Affidavit of Lisa Furnald (the "Furnald Affidavit"), filed in Support of Plaintiffs' Motion to Compel.

A.    Putnam Wrongfully Refuses to Provide Complete Responses.

Plaintiffs dispute Putnam's substantive response to five requests.[4] The requests (in the most current form following Plaintiffs' compromise efforts), Putnam's responses (and compromise offers, if any) and Plaintiffs' positions thereto are as follows:

Request No. 35: All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer to any explanations, characterizations, or descriptions of the activities that each of the Investment Management Teams perform for each of The Funds in connection with furnishing them with investment programs and/or making investment decisions for them about what securities shall be purchased, held, sold, or exchanged.

Putnam's Response to Request 35: See General Objections, which are incorporated herein. Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence relevant to any claim or defense. Defendants further object to this request on the basis that it is improper, and inefficient, to seek the information at issue (specification of the responsibilities and activities of investment personnel) through a sweeping document request; interrogatories or depositions are the proper device for such information, and then only to the extent the information is properly discoverable.

Putnam's Offer: Putnam reports that it has produced the Fund's prospectuses, which contain such descriptions for each fund.

Plaintiffs' position on Request No. 35:

The nature and quality of the services Putnam provides to the Funds is a *Gartenberg* factor Plaintiffs will address at trial. In addition, Plaintiffs contend that the investment management services Putnam provides to the Funds are the same as are provided to Putnam's

---

[4] The issue of the appropriate time period for production of documents responsive to these requests is addressed on pages 7-16 below.

institutional clients, but at a far higher rate (*i.e.* the "portfolio selection" component of the

management fees). The requested information is clearly relevant to both inquiries. Plaintiffs

require all responsive documents to sort out the specific investment management services

Putnam provides. Putnam's reliance on fund prospectuses is incomplete. Putnam should

produce all responsive documents, including its internal documents.

Request No. 56: All documents and tangible things in your possession, custody, or
control that reflect, concern or refer to any decision or agreement made by PIM and/or PRM
effective as of January 1, 2004 to cease directing brokerage to broker-dealers in connection
with the sale of fund shares.

Putnam's Response to Request 56 : See General Objections, which are incorporated
herein. Defendants further object to this request on the basis that it is vague, overly broad,
unduly burdensome, and not reasonably calculated to lead to the discovery of admissible
evidence relevant to any claim or defense. Subject to and without waiving the foregoing
objections, and only under an appropriate confidentiality order, Defendants will produce
January 1, 2002-June 30,2005 communications about the referenced decision between one or
both of the Defendants, on the one hand, and the trustees, on the other hand, to the extent
located after diligent search.

Putnam's Offer: Putnam commits to produce as well reports provided by Putnam to the
Brokerage & Custody Committee.

Plaintiffs' position on Request No. 56:

This request is directed to Putnam's fall-out benefits. Prior to January 1, 2004 (including

during the undisputed damages period of this action), Putnam directed brokerage commissions

on the Funds' portfolio transactions to broker-dealers in exchange for "shelf space" within the

broker-dealer's distribution system. Under this arrangement, the Fund's assets were used to pay

for services that benefited Putnam. *See* SEC Order dated March 23, 2005,[5] attached as Exhibit C

to the Affidavit of Lisa Furnald, filed in Support of Plaintiffs' Motion to Compel. Putnam's

commitment to produce only its communications with the Trustees and reports to one trustee

committee is woefully incomplete. Putnam must produce all internal documents concerning or

referring to Putnam's decision or agreement to stop its directed-brokerage practice.

---

[5] Putnam consented to the entry of this order.

Request 102: All documents and tangible things in your possession, custody, or control that concern or refer to the development or formulation of each of the fee schedules for Management Fees and/or for 12b-1 Fees that PIM, PRM, or other affiliated Putnam entities have proposed or furnished to each of The Funds.

Putnam's Response to Request 102 : See General Objections, which are incorporated herein.  Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence relevant to any claim or defense.  Subject to and without waiving the foregoing objections, and only under an appropriate confidentiality order, Defendants will produce, to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005 (including the "black books" collecting information relevant to the trustees' review of management and distribution fees), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications and data generated or reviewed in connection with such communications.)

Plaintiffs' position on Request No. 102:

This request properly seeks all documents that concern or refer to the development of the

management and/or 12b-1 fee schedules proposed to the Funds.  Although the black books and

the Operations Finance department documents relating to the black books contain *some* of

Putnam's responsive documents, this is incomplete.  Putnam cannot properly limit its response to

one department and documents that relate to the black books.  Putnam must produce *all*

responsive internal documents (*i.e.* documents not shared with the trustees).

Request No. 112: All documents and tangible things in your possession, custody, or control that concern or refer to any investigation by any governmental, administrative, or self-regulatory body regarding the propriety or amount of any fees charged to any of the Putnam Mutual Funds including, but not limited to, all documents produced in such investigations, all transcripts of testimony, and all communications with such governmental, administrative, or self-regulatory bodies concerning such investigations.

Putnam's Response to Request 112 : See General Objections, which are incorporated herein.  Defendants further object to this request on the basis that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence relevant to any claim or defense, particularly in its demand for all documents relating to all investigations concerning "the propriety or amount of fees" (which would encompass investigations on topics unrelated to this suit), without any time limitation, or other subject matter limitation.  Subject to and without waiving the foregoing objections, Defendants will produce documents constituting communications between Defendants and the regulator(s) in connection with any investigation alleging excessive management and/or excessive 12b-1 fees during the period January 1, 2002 to June 30, 2005.

Putnam's Offer: Putnam now commits to produce its communications with regulators concerning any investigation about mutual fund fees.

Plaintiffs' position on Request No. 112:

Putnam's response is still incomplete. Putnam must produce all non-privileged

responsive documents, including its internal documents.

Request No. 113: All documents and tangible things in your possession, custody, or
control that concern or refer to any litigation, arbitration, or mediation proceedings involving
PIM and/or PRM as parties that contained any allegation concerning excessive fees charged to
any of the Putnam Mutual Funds including, but not limited to, complaints, orders, judgments
and settlement agreements.

Putnam's Response to Request 113 : See General Objections, which are incorporated
herein. Defendants further object to this request on the basis that it is vague, overly broad,
unduly burdensome, and not reasonably calculated to lead to the discovery of admissible
evidence relevant to any claim or defense.

Putnam's Offer: Putnam now commits to produce documents "filed in any such matter"

Plaintiffs' position on Request No. 113:

This request clearly seeks discoverable information and Putnam's response is

incomplete. Putnam must produce all responsive documents, not merely documents that have

been "filed."

B.    Putnam Refuses to Provide Documents From the Discoverable Time Period.

Plaintiffs have carefully selected a subset of requests from Plaintiffs' 141 original

document requests (identified below) and asked Putnam to continue producing 21 responsive

categories of documents through the time of trial. In addition, Plaintiffs want Putnam to produce

20 categories of documents from 2000 forward, and 4 categories of documents from 1995

forward. With the exception of 5 requests (discussed immediately above), the parties have

resolved the issues about the category of documents Putnam must produce in response to these

requests. The only issue is the appropriate time period. Notwithstanding Plaintiff's significant

compromise on the categories and Plaintiffs' need for the information from the requested time

period, Putnam wrongfully limits its production of these documents.

1.    Putnam's Documents Are Discoverable Through Trial.

Putnam refuses to provide the requested documents through the time of trial based upon

its incorrect argument that damages stopped accruing under Section 36(b) on the date the

Complaint was filed.

Even if Putnam were right about the damages period (which it is not), Putnam's argument is largely moot. Plaintiffs have filed a new complaint to remove any alleged uncertainty that Plaintiffs are seeking damages for Putnam's post-May 2004 excessive fees.[6] Plaintiffs are filing a motion asking this Court to consolidate the two matters for discovery and trial, which, if allowed, leaves no room for doubt that Putnam's June 30, 2005 cut-off date (the cut-off for most of these documents) cannot stand. Even if the matters are not consolidated, Putnam's statutory interpretation is simply wrong. For the reasons set forth below, the requested discovery is appropriate because damages continue to accrue through trial.

Finally, the requested documents are relevant and discoverable through the start of trial, irrespective of the applicable damages period.

### a.    Plaintiffs' Damages Accrue Through the Time of Trial.

Putnam's refusal to provide these documents through trial is based, in part, upon the faulty premise that damages stopped accruing at the time Plaintiffs filed suit in May 2004. This is incorrect as a matter of law. Although Section 36(b) provides that the damages period does not *begin* until one year prior to the lawsuit is filed, there is nothing in the statute providing that damages stop at any particular time.[7] On its face, the statute provides only a temporal limit on *pre-filing* damages. *See Hunt v. Invesco Funds Group*, 2006 WL 1751900 (S.D. Tex. June 22, 2006) (recognizing that language of Section 36(b) does not limit damages for period of time following commencement of action).

No court has provided controlling authority requiring the Court to accept Putnam's interpretation. No such court has (1) squarely considered when Section 36(b) damages end and

---

[6] The new action is captioned <u>Vaughn, et al. v. Putnam Investment Management, LLC et al.</u>, No. 06-CV-11438 (GAO) (the "2006 Action").

[7] The statute reads, in relevant part, "No award of damages shall be recoverable for any period prior to one year before the action was instituted." 15 U.S.C. § 80a-35(b)(3).

(2) concluded that they end when suit is filed.   Indeed, at least one case before this Court is proceeding with a damages period that continues after the filing of the complaint.  *See Forsythe v. Sun Life Financial*, 2006 WL 148935 (D. Mass. Jan. 19, 2006) (O'Toole, J.).[8]  *See also Krasner v. Dreyfus Corp.*, 90 F.R.D. 665, 672 (S.D.N.Y. 1981) (stating recovery period begins no earlier than one year before suit commenced and analyzing settlement on basis that damages continue after action filed).

As set forth above, Section 36(b) unambiguously limits only the recoverable pre-suit damages, such that damages do not begin to accrue until one year before an action is commenced.  Even if the statute's plain meaning could somehow be viewed as ambiguous, the longer damages period applies, nonetheless, under the well-settled presumption that ambiguous language in a remedial statute should be construed broadly to effectuate its purpose.  *See e.g. Hogar Agua Y Vida En El Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177, 181 (1st Cir. 1994) (remedial statute's ambiguous language should be generously construed consistent with its reformative mission).  The Supreme Court has recognized that Section 36(b) has a "broad remedial purpose" and that allowing security holders to bring an action "ensures that…the company's rights under the statute can be fully vindicated by plaintiffs authorized to act on its behalf."  *Daily Income Fund v. Fox*, 464 U.S. 523, 541 (1984).  Not allowing Plaintiffs to recover the excessive fees retained by Putnam once suit is filed would frustrate, not vindicate, the Funds' right to have an investment advisor fulfill its fiduciary duty under Section 36(b).  If the statute were construed to limit damages to a one-year period only, investment advisors such as Putnam would have little incentive to discontinue charging excessive fees, or could even *increase* excessive fees with impunity once suit is filed, forcing investors to file new actions

---

[8]  The *Forsythe* plaintiffs filed class action claims with a class period that began five years before and ended six days after the complaint was filed.  *Id.* at *11.  No separate damages period for the 36(b) claim was made.  *Id.*  The court agreed with the defendants that 36(b) damages did not begin until one year before suit was filed.  *Id.*  The Court did not consider whether damages continued beyond the six days because the alleged damages period did not include that period.

repeatedly.

The interpretation of similar statutes support Plaintiffs' position. For example, Section 36(b)'s damage provision is strikingly similar to the statutory time limitation for patent infringement actions.[9]  The Federal Circuit has stated that that statute "only restricts the extent one can recover *pre-filing* damages."  *Leinoff v. Milona*, 726 F.2d 734, 741 (Fed. Cir. 1984) (emphasis supplied).

b. <u>Putnam's Anticipated Reliance on Certain Authorities Does<br>Not Support Its Position to Cut Off The Damages Period<br>With the Filing of the Complaint.</u>

In its original opposition to Plaintiffs' motion to compel, Putnam presented a distorted picture of what courts have "held" to create the impression that a Section 36(b) plaintiff's recovery ends with the filing of the complaint.  None of the courts in the cases Putnam cited were even presented with the issue of when damages end.  For example, Putnam cited dicta from *Daily Income Fund v. Fox*, 464 U.S. 523 (1984) and *Grossman v. Johnson*, 89 F.R.D. 656 (D.Mass. 1982), but neither case supports Putnam's position.  In *Daily Income Fund*, the Court in a footnote provided a quick summary of selected portions of Section 36(b).  The Court was not presented with the issue of when the damages period ends, nor did it hold that damages stop accruing when suit is filed.[10]  The *Grossman* court also did not decide when damages end.

The decisions Putnam cited from other jurisdictions similarly do not "hold" anything

---

[9]  35 U.S.C. § 286 provides, in relevant part, "[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint."

[10]  In a footnote summarizing selected portions of Section 36(b), the Court merely stated that "recovery is limited to actual damages for a period of one year prior to suit."  *Fox*, 464 U.S. at n.2.  This statement is consistent with the fact that the limitation applies to pre-suit damages.  Additionally, in his concurring opinion, Justice Stevens observed that 36(b) limits recovery to "actual damages incurred *beginning* one year prior to commencement of suit." *Id.* at 546 (emphasis added).  On this point, there was no disagreement between Justice Stevens and the majority.

10

about post-Complaint damages.[11]  These cases merely summarize the <u>pre-suit</u> limitations period

found in Section 36(b), and do not opine when damages end.  In its original opposition, Putnam

cited *Krinsk v. Fund Asset Management, Inc.*, No. 85 Civ. 8428, 1986 WL 205 (S.D.N.Y May 9,

1986), for the proposition that damages under Section 36(b) are limited to a "short one year

period."  The subsequent history of that case (not included by Putnam in its original Opposition)

reveals that the very same court tried the issue of excessive fees **for a time period beginning**

**from the one year period before suit was filed, past the filing of the complaint, and**

**continuing until shortly before trial.**  *Krinsk v. Fund Asset Management, Inc.*, 715 F. Supp.

472, 476 (S.D.N.Y.), *aff'd* 875 F.2d 404 (2d Cir. 1989) (assessing evidence of excessive fees

over same time period).  Obviously, the language cited by Putnam in the earlier case must be

interpreted as addressing only the pre-suit limitations period.  The same is true of the other cases

Putnam cited, none of which even consider the issue of when damages end.[12]

       Putnam's reliance on quoted language from these decisions regarding the statutory

history of Section 36(b) and Congressional intent this, too, is unavailing.  The courts in those

cases were merely supporting their holdings concerning the pre-suit damages period.  There is

---

[11]   The courts in *Green v. Nuveen Advisory Corp.*, 295 F.3d 738 (7th Cir. 2002), *Fox v. Reich & Tang, Inc.*, 692 F.2d 250 (2d Cir. 1982), *Brever v. Federated Equity Mgmt. Co.*, 233 F.R.D. 429 (W.D. Pa. 2005) *King v. Douglass*, 973 F.Supp. 707 (S.D. 1996), *Krinsk v. Fund Asset Management, Inc.*, No. 85 Civ. 8428, 1986 WL 205 (S.D.N.Y. May 9, 1986) and *In re Alliancebernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) were not presented with the issue of when damages end.  Indeed, the language Putnam might quote from *Green* and *King* were merely those courts' attempts to summarize Section 36(b)'s language, not perform statutory construction.  The *Brever* decision (previously relied upon by Putnam for the argument that Plaintiff Vaughn's claims do not relate back to the filing of the original Complaint, an argument this Court rejected) does not concern at all the post-filing damages period.  The issue in *Krinsk v. Fund Asset Management, Inc.*, No. 85 Civ. 8428, 1986 WL 205 (S.D.N.Y. May 9, 1986) was only whether plaintiffs could recover damages for the period before the one year prior to its filing of the lawsuit.  Finally, the court in *In re Alliancebernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) dismissed plaintiffs' 36(b) claim for failure to state a claim based, in part, upon facts alleged in the complaint for a time period <u>predating</u> the one year period before the action was commenced.  There was no issue at all about post-filing damages.

[12] Putnam also relied upon a transcript from a motion hearing in Illinois.  The trial court's comments there are cryptic at best: "if [Section 36(b)] circumscribes damages and limits it, then any discovery beyond what [Section 36(b)] would afford would not be relevant."

nothing in Section 36(b)'s legislative history to support Putnam's absurd interpretation.[13]  As

discussed above, none of those cases were even presented with the issue of when damages end.

Indeed, Putnam quoted from the *Krinsk* court's discussion of the Congressional purposes behind

Section 36(b), yet the same court tried the issue of excessive fees well past the filing of the

complaint.  *Krinsk,* 715 F. Supp. at 476.  There is no public policy for ending damages in a

Section 36(b) case at the time the Complaint is filed.  To the contrary, creating such a limitation

would interfere with judicial economy by encouraging repetitive suits by mutual fund

shareholders, who would have to continuously re-file to maintain their damages claims (as

Plaintiffs have now done).

     Putnam is wrong about the applicable damages period, and must produce the requested

categories of responsive documents through trial.

> c.    The Requested Documents Are Discoverable Through Trial
>        Irrespective of the Damages Period.

     Even if Plaintiffs' damages were limited to the time period of May 2003-May 2004 (the

one year period prior to the filing of the Complaint), which they are not, that would not support

cutting off discovery as Putnam proposes.  Plaintiffs would still be entitled to obtain this

otherwise discoverable information through the time of trial.  For example, documents

addressing and/or quantifying economies of scale and fall-out benefits and internal

communications about shareholder complaints about fees created after June 30, 2005 would still

be relevant, as would documents dated after June 30, 2005 that analyze, discuss or comment

upon earlier time periods.

     In addition to its damages-related argument, Putnam has objected to producing

documents from the more recent period on the basis they would reveal "pending deliberations."

Whatever concerns Putnam might have about such deliberations have been adequately addressed

---

[13] Instead, that history makes clear that "[d]amages… are not recoverable for any period prior to one year before the
action was instituted."  S. Rep. No. 184, 91st Cong., 1st Sess. (1970), 1970 U.S.C.C.A.N. 4897, 4911.

in the Stipulation and Order for the Protection and Exchange of Confidential and Highly

Confidential Information, which protects from public disclosure documents and information

Putnam deems confidential.

Finally, Putnam has suggested that producing documents through trial would require

production of documents "as they are generated" and would be "impractical." Plaintiffs are

asking for a very limited number of document categories for production through trial. Putnam's

categorical refusal to produce *any* of these documents on this ground is unavailing. Responsive

documents created between June 30, 2005 and August 31, 2006 can and should be produced

right away. As to responsive documents not yet in existence, Putnam's periodic production

would satisfy Plaintiff's legitimate discovery needs without imposing undue hardship on Putnam.

d.    The Requests

For the reasons explained above, Plaintiffs request that Putnam be ordered to produce

through the time of trial documents responsive to Request Nos.112 and 113 (concerning

investigations and litigation about Putnam's fees), and 102 (concerning development of fee

schedules).[14]

Putnam should also produce through the time of trial its fee-related communications with

the trustees (including the "black books" from 2007 and forward), and the Operations Finance

department documents relating to those communications.[15]

Putnam must also produce the following particularized financial/accounting documents

through trial:[16] (1) The "black book" Tab 50 back-up and supporting documentation (including

---

[14] Plaintiffs also disagree with Putnam's substantive responses to these requests. The descriptions in the parenthesis are only summaries of Plaintiffs' requests, not the category of documents Putnam commits to produce. The requests are set forth in Plaintiffs' First Set of Requests for the Production of Documents to Defendants, attached hereto as Exhibit A.

[15] These are categories of documents that Putnam has committed to produce in response to a number of Plaintiffs' requests. Plaintiffs do not identify those particular requests because there is no dispute about the categories themselves, only the appropriate time period for their production.

[16] These documents are responsive to some or all of Request Nos. 29-32, 64, 104, 120, 121, 122, 123 and 140 and are categories that Putnam has committed to produce for some time periods but not through the time of trial.

documents similar to bates numbers 84736-84760 and 85590-85618) and Tab 18 back-up and supporting documentation (including documents similar to bates numbers 76422-76439). Tabs 18 and 50 in the "black books" contain annual financial statements for the Funds and Putnam, including detail (at a high level) of income and expense breakdowns. (2) Work papers for the financial statements of PIM, PRM and PAC (the Putnam entity that contracts with institutional clients) and (3) SAP reports that show how cost centers are rolled up into legal entities. Plaintiffs require these documents to unravel the true fees, costs and expenses attributable to the Funds and the profits to Putnam. (4) SAP's allocation percentages (SAP is Putnam's accounting system) and (5) the back up to Putnam's budget allocations. Putnam charges expenses to the Funds based, in part, on allocations. These documents are critical to unraveling the Funds' true expenses and Putnam's profits. (6) Worksheets for the 12b-1 quarterly reports to the Trustees. Plaintiffs require this information to demonstrate the actual fees and profits to Putnam with respect to 12b-1 fees. (7) The regular and customary reports of the trading group at Putnam, which accounts for soft dollars and third party research. Plaintiffs need these documents to establish Putnam's "fall-out benefits."

Finally, Putnam should produce through the start of trial the documents it has committed to produce in response to the requests identified in Appendix 1 to this memorandum.

> 2.    Putnam Should Produce Documents Created From January 1, 1995 Forward That Are Relevant to Economies of Scale.

Putnam has refused to provide all of the documents Plaintiffs require from the time period from January 1, 1995-June 30, 2002 to analyze and prove economies of scale. Analyzing economies of scale-- the well-recognized concept that costs of providing services go down as assets under management increase—necessarily requires looking at many years of data. Plaintiffs must examine the fees charged, the assets under management, the costs and expenses, and Putnam's profits over a period of years to determine whether, and to what extent, economies

of scale have been shared with the Funds.  Plaintiffs require the following documents for the period on and after January 1, 1995[17]: documents responsive to Request Nos. 88-93 (addressing economies of scale and fall-out benefits as they relate to management fees), 102 (concerning development of fee schedules),[18] and 132 (annual reports of financial statements for each of Funds and annual SAS 70 internal control audits for custody, fund accounting and transfer agency operations).  In addition, Putnam should produce back to 1995 the financial analysts' work sheets for budget allocations and the SAP reports that show how cost centers are rolled up into legal entities.  Putnam has committed to provide these documents from other time periods, but Plaintiffs require this information back to 1995 to analyze economies of scale.

Putnams' refusal to provide these documents from 1995 forward is untenable because it ignores the fact that the Funds' Trustees, when analyzing the *Gartenberg* factors during their annual evaluations, review information going back to the mid-1990s.  For example, when the Trustees reviewed economies of scale in 2004, they "reviewed data [from]… *the years* leading up to the market peak in 2000…" (emphasis added).  Exhibit A to the Furnald Affidavit, at 18. When the Trustees performed their review of the management contracts in 2005, Putnam provided them with ten-year trends (back to 1995) in fund and shareholder expenditures, as well as ten-year trends in the revenues, expenses and profitability of PIM relating to the management contracts.  Furnald Affidavit, at ¶ 6.[19]  Putnam simply cannot contend that these documents predating January 1, 2002 are irrelevant when its own Trustees analyze data from before that time period when performing (at least in part) the exact same analysis Plaintiffs must perform

---

[17] Unless otherwise noted, the categories Putnam has committed to produce are set forth in the parenthesis. Plaintiffs are asking only that these documents be produced back to 1995 (*i.e.* not all of the documents responsive to the requests).

[18] This is Plaintiffs' summary of the request, not the category of documents Putnam has committed to produce in response.  Indeed, Plaintiffs dispute the substance of Putnam's response to this request, as explained on page 6 of this memorandum.

[19]  This information comes from documents Putnam has marked "confidential" under the Protective Order.  Putnam has allowed Plaintiffs to make this statement without filing under seal.

here.

        3.      Putnam Should Provide The Documents Plaintiffs Require From January 1, 2000.

Plaintiffs seek production back to January 1, 2000 as to a limited number of well-tailored categories of documents that have obvious relevance in this matter, including documents that address the excessiveness of fees, address the impact of fees on shareholders, and address changes in fees and benefits of 12b-1 fees to Putnam.[20]  Putnam's refusal, apparently tied to the May 17, 2003 start of damages,[21] is patently unreasonable.  For example, an internal Putnam memorandum questioning the appropriateness of 12b-1 fees would be no less probative on January 1, 2000 than January 1, 2002, Putnam's proposed starting point.

Putnam has also suggested that complying with Plaintiffs' reasonable requests would be "crippling," which grossly exaggerates the difficulty in complying with the requests.  A company of Putnam's sophistication should be able to locate responsive documents (particularly in electronic form) without undue hardship.  This is especially true because the categories of documents are extremely tailored and are limited in number.  Discovery of these documents from January 1, 2000 forward would fairly capture relevant, discoverable information without imposing an unreasonable burden on Putnam.

Accordingly, Putnam should produce the regular and customary reports of the trading group at Putnam(which accounts for soft dollars and third party research) and the training materials for the personnel who enter data into the SAP and GPS systems (Putnam's accounting systems).  Putnam has agreed to produce these categories, but not back to 2000.  In addition, Putnam should produce back to January 1, 2000 the documents it has committed to produce in response to the requests identified in Appendix 2 to this memorandum.

---

[20] This marks another significant compromise by Plaintiffs, as Plaintiffs previously sought production of these documents from 1995 forward.

[21] Plaintiffs filed this action on May 17, 2004, thus the damages period begins on May 17, 2003.  15 U.S.C.§ 80a-35(b)(3).

C.    Putnam's Production of E-Mails Is Inexcusably Incomplete.

The parties agreed that prior to Putnam's production of e-mails, Putnam would provide Plaintiffs with its plan for searching for responsive documents.  Pursuant to that agreement, Putnam provided Plaintiffs with a list of individuals whose e-mails would be searched, as well as a list of the search terms.  Following the parties' negotiations on the subject, Plaintiffs are satisfied, for now, with Putnam's search terms.[22]  The list of individuals whose files are being searched, however, is utterly lacking.  Moreover, Putnam has not yet produced a single e-mail from its (inadequate) search.

Putnam plans to search the files of a mere 11 individuals who, together, held a total of 9 job positions over the period 1/1/2002-6/30/2005 (the entire period Putnam agrees to produce e-mails).[23] These job titles are limited to Putnam's highest corporate levels, including Putnam's President and CEO, where one would expect only the most "high level"-- and guarded— communications.[24]  Astoundingly, and indicative of the glaring inadequacy of Putnam's e-mail production, Putnam flat out refuses to search the e-mails of anyone on the Funds' investment management teams, notwithstanding that these employees are key to Plaintiffs' case and will have responsive and discoverable e-mails.

Plaintiffs allege that the lion's share of the management fees paid by the Funds are attributable to the services provided by the Funds' investment management teams (*i.e.* the

---

[22] Plaintiffs reserve the right to insist that Putnam search for additional terms in the future based upon documents and/or deposition discovery.  For example, Putnam's search terms do not include any institutional clients.  And yet particular client names will need to be searched to locate documents responsive to documents requests directed to institutional/PAC information.  Putnam has not yet provided Plaintiffs with any institutional client names, so Plaintiffs are not able at this time to request that those terms be added.

[23] Putnam has agreed to search the electronic files of individuals holding only the positions of (1) Senior Vice President, Senior Counsel (Steve Asher ), (2) Managing Director, Divisional CFO (David Boon and Jonathan Horwitz), (3) President and CEO (Charles Haldeman and Larry Lasser), (4) Managing Director, Senior Counsel (Robert Leveille), (5) Managing Director, Manager of Fund Administration (Beth Mazor), (6)Assistant Vice President, Senior Financial Analyst (Jeff McNeil), (7) Managing Director, Director of Trustee Relations (James Pappas) (8) Vice President, Senior Financial Analyst (Patrick Quinn) and (9) Chief Administrative Officer (Richard Robie).

[24] Two of the individuals are "Senior Counsel."  Putnam should not be permitted to limit its list so egregiously and then claim the responsive e-mails are privileged.

portfolio selection component of the fees).  Plaintiffs also allege that the fees Putnam receives from its institutional clients for Putnam's providing identical services are far less as a percentage (and in actual dollars).  On this basis alone, the e-mails from the investment management department whose services are so much at the heart of this case must be searched and produced. The fact that Putnam refuses to search the electronic files from anyone in this department makes clear that Putnam is not even attempting to satisfy its discovery obligations.

In addition, Putnam's commitment to produce certain categories of documents demonstrates the inadequacy of its search.  For example, Putnam commits to "search diligently" to produce documents comparing management and/or 12b-1 fees on mutual funds with fees for institutional clients, comparing portfolio holdings and/or portfolio turnover rates of the Funds with institutional accounts, comparing performance of any of the Funds with institutional accounts, addressing whether management fees are excessive, and addressing the impact of 12b-1 fees on expense ratios and/or flow volatility.  Putnam cannot seriously contend that searching the files of these 11 individuals only constitutes a "diligent search" for these and the other documents it commits to produce.  Putnam should be ordered to produce electronic documents after a legitimately diligent search, which should include, at a minimum, the files of the Funds' investment management teams, and the heads of institutional and retail (mutual fund) management.[25]

Putnam attempts to defend its position by arguing that the search should be limited to people who have responsibility for the "negotiation of management and 12b-1 fees."  Putnam also states that some e-mails of other Putnam personnel (who do not have such responsibility) will be produced (incidentally) as a consequence of the search.  Putnam further defends its plan by arguing that it would be even more expensive and burdensome to Putnam to expand the list.

---

[25] Putnam has suggested that it is Plaintiffs' burden to identify the additional people to be searched.  It is not.  It is Putnam's obligation to locate and produce responsive e-mails, and it is readily apparent that Putnam has not done so. Moreover, Putnam's suggestion is disingenuous.  Putnam has rejected all of Plaintiffs' proposals on this point.

These arguments are all red herrings.

While the fee negotiations are undeniably an important part of Plaintiffs' case, it is not the sole issue and cannot define Putnam's discovery obligations. For instance, Putnam's fees and services to the Funds and institutional products, economies of scale, fall-out benefits, and 12b-1 fees are other critical areas that will not be covered by Putnam's production if the search is limited to (some) people involved with "fee negotiation."

Nor can Putnam rely upon chance to meet its discovery obligations; Putnam must search the files of <u>all</u> individuals likely to have responsive e-mails. The possibility that a responsive e-mail *may* be produced notwithstanding Putnam's narrow search parameters does not satisfy Putnam's obligation.

And while a proper search no doubt will require effort by and expense to Putnam, it is not unduly burdensome and costly. *During the period 1/1/2002-6/30/2005 (Putnam's proposed time period for e-mail production), Putnam charged the Funds in management fees alone over $1 billion.* Plaintiffs reasonably believe, and Putnam has not stated otherwise, that e-mail is the prevailing, if not the primary, means of internal written communications at Putnam. Plaintiffs are not going to be able to obtain this information from any other source. It is altogether appropriate that Putnam fulfill its discovery obligations with respect to e-discovery so that Putnam's fees (and the services therefore) may be properly and fully examined.

Plaintiffs ask the Court to order Putnam to produce all e-mails (and other documents stored electronically) responsive to Plaintiffs' requests in searchable format following a legitimately diligent search from the time period January 1, 2000-June 30, 2005, except that as to the categories of documents identified on pages 13-14 of this memorandum (addressing the production of documents to trial), Putnam should provide responsive e-mails through the date of trial and as to the categories of documents identified on page 15 of this memorandum (addressing the production of documents from 1995 forward), Putnam should provide responsive

e-mails back to 1995.

III.     <u>CONCLUSION</u>

For the reasons explained herein, Plaintiffs respectfully request that the Court allow

Plaintiffs' motion to compel.


Dated: September 11, 2006

Respectfully submitted,


 /s/ Lisa A. Furnald_____
David E. Marder (BBO #552485)
Marc N. Henschke (BBO #636146)
Lisa A. Furnald (BBO #631059)
Jonathan D. Mutch (BBO #634543)
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: LAFurnald@rkmc.com
(617) 267-2300

Of Counsel:

Thomas R. Grady (admitted *pro hac vice*)
Ackerman, Link, & Sartory, P.A.
222 Lakeview Avenue, Suite 1250, Esperante
West Palm Beach, FL  33401

<u>**CERTIFICATE OF SERVICE**</u>

I, Lisa A. Furnald, hereby certify that on September 11, 2006, a true copy of Plaintiff's [Revised] Memorandum In Support Of Motion To Compel Defendants To Respond To First Set Of Requests For The Production Of Documents was served electronically through the ECF System and by first class mail, postage prepaid, to those counsel of record indicated as non-registered ECF participants.

 /s/ Lisa A. Furnald_
Lisa A. Furnald
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: LAFurnaldr@rkmc.com
(617) 267-2300