**EXHIBIT E**

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE BEACON STREET

BOSTON, MASSACHUSETTS 02108-3194

———

TEL: (617) 573-4800

FAX: (617) 573-4822

www.skadden.com

DIRECT DIAL
617-573-4889
EMAIL ADDRESS
DCLANCY@SKADDEN.COM

FIRM/AFFILIATE OFFICES

CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

August 31, 2006

BY E-MAIL AND FIRST CLASS MAIL

Lisa A. Furnald, Esq.
Robins Kaplan Miller & Ciresi LLP
800 Boylston Street
25th Floor
Boston, MA  02199

RE:    Vaughn v. Putnam

Dear Lisa:

This sets forth my understanding of the status of the open discovery issues we have been discussing in connection with your motion to compel.  The purpose is to make clear where we are in agreement and where we are not, and to create a baseline for further discussion on the still-open issues.

## I.    The Financial Documents You Identify In Your August 21 Letter

These documents were listed one-by-one in Exhibit 1 to my August 28 letter.  I attach that same Exhibit 1 to this letter, with certain handwritten changes (addressed below).

As I understand it, we have two open issues here: (1) time period (you do not agree with our proposed time periods for any of the items, as I understand it); and (2) your request for "financial analysts' work sheets for budget allocations from 1995 through trial" (I have placed an asterisk next to this item on the attached Exhibit 1).

As to issue (1), please see the handwritten notations on the attached Exhibit 1. These are areas where we would be willing to extend the end-date of our proposed time period from "2006" to "through trial."  We do not understand your request that we do this, since it is a request that we engage in discovery after discovery has closed (and, in any lawsuit, there is a good reason for discovery to close on some date-certain).  But we will do it in the specified areas in an effort to reach a compromise, without waiver of our objection to "through trial" production in other areas (which, again, we do not think is appropriate, or makes sense).

Lisa A. Furnald
August 31, 2006
Page 2

As to issue (2), as I said this past Tuesday during our late afternoon telephone conference, I am looking into this further, in an effort to obtain more specifics about the breadth of your request and the burden that it imposes.

## II.    Documents You Seek in Your August 18 Letter
### In Connection With The Testimony Of Stacy Mills

Your August 18 letter asks for:

*1. "[A] copy of the SAP report that shows how cost centers are rolled up into legal entities (Deposition of Stacey [sic] Mills p. 29, ln. 20 – p.30 ln. 2)"*

We agreed to produce copies of such reports for the years 2002, 2003, 2004 and 2005 for PRM, PIM, PAC and PFTC.

In our conversation on Tuesday of this week, you accepted this commitment.  (As with all statements of this nature, this is my understanding of the status, and if you think it isn't correct, please just let me know.)

*2. "[T]raining materials for the personnel who enter data into the SAP and GPS systems (Mills Deposition p. 32 ln12 – p.33, ln.8; p. 43, ln. 7-24)"*

We agreed to produce such training materials for the period 1/1/02 - 6/30/05.

During our conversation on Tuesday of this week, you accepted this commitment.

*3. "[I]nformation and documents regarding, referring to, or concerning the title, structure, membership, and duties of the group at Putnam responsible for accounting for 'soft dollars' or third party research, as well as any regular or customary reports prepared by that group (Mills Deposition p. 56, ln. 5-19)."*

For the period 1/1/02-6/30/06, we agreed to produce the reports that are provided twice annually by Putnam to the Trustees' Brokerage and Custody Committee; we also referred you to Tab 19 of the black books, which contains responsive information.

During our conversation on Tuesday of this week, you stated that you would also like documents identifying the group that Stacy Mills referenced during her deposition; I will look into this, but I am sure that we can produce documents sufficient to do so.

## III.    Your August 18 Letter's Request For Access To SAP

Your August 18 letter asks that we give you access to Putnam's SAP system.  As I stated in my August 28 letter, we cannot agree to that, and we think that the proper way for you

Lisa A. Furnald
August 31, 2006
Page 3

to seek information from that system is to make specific requests for such information (which is the process we have been following until now; see, e.g., Sections I and II of this letter.)

This is a topic about which we have not communicated since my August 28 letter. (I do not think that either of us raised it during our telephone conversation this past Tuesday.)

## IV.    Document Requests Discussed In Your August 18 Letter Where We Have Open Issues About Scope *And* Time Period

As in my August 28 letter, I again address each of these requests separately, setting forth the request and your proposed time period first, and then our response; for purposes of this letter, I then add a section called "Current Status."[1]

**Request 18:** For the period 1/1/00 through trial, "[a]ll documents . . . that concern, refer, or relate to the issues of whether there have been, should be, or may be any increases, reductions, curtailments, or eliminations of any portion of the Management Fees and/or 12b-1 Fees charged to any of the Putnam Mutual Funds by PIM, PRM, or other affiliated Putnam entities."

*Our Offer:* For the period 1/1/02-6/30/05, we will produce all documents discussing the possibility of a reduction in management and/or 12b-1 fees on the Putnam mutual funds, to the extent located after diligent search.

*Current Status:* During our conversation this past Tuesday, you accepted this commitment if we add "reduction and/or increase in management and/or 12b-1 fees" (we hereby do so), except with respect to time period.

**Requests 21 & 22:** For the period 1/1/00 through trial, "[a]ll documents . . . that concern, refer or relate to the issues of whether the nature or amounts of management fees that PIM has charged to any of the Putnam Mutual Funds are advisable, legal, appropriate, fair, justified, or warranted" (Request 21); and "[a]ll documents . . . that concern, refer or relate to the issues of whether the nature or amounts of Management Fees that PIM has charged to any of the Putnam Mutual Funds are excessive, unfair, harmful, detrimental, disadvantageous, or contrary to the interests or welfare of any of the Putnam Mutual Funds or their shareholders." (Request 22).

*Our Offer:* For the period 1/1/02-6/30/05, we will produce all documents discussing the appropriateness of management and/or 12b-1 fees on the Putnam mutual funds, to the extent located after diligent search.

---

[1]    As you know, we have been separately addressing our plan for e-mail searching. Nothing in this letter is meant to alter our proposed time periods or custodians for that e-mail review.

Lisa A. Furnald
August 31, 2006
Page 4

*Current Status*:  During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

**Request 34:**  For the period 1/1/02 through trial, "[a]ll documents . . . sufficient to identify all accounts other than The Funds that have been serviced by any Portfolio Leader or Portfolio Member of any of the Investment Management Teams for any of The Funds at any and all times during the Damages Period."

*Our Offer:*  N/A.  As we understand it, you agree to take this request off the table for now, in light of our agreement on the institutional spreadsheet (which will identify the investment management team members for the listed accounts).

*Current Status*:  Please let me know; are we in agreement here?

**Request 35:**  For the period 1/1/00-6/30/05, "[a]ll documents" that "concern, refer or relate to any explanations, characterizations or descriptions of the activities that each of the Investment Management Teams perform . . . ."

*Our Offer:*  We have already produced prospectuses, which contain such description for each fund, for each time period covered.

*Current Status*:  During our conversation this past Tuesday, you stated that you are not satisfied.  As I said in my August 28 letter, I would appreciate your telling me more specifically what you need, and why you need it (particularly given that you will be deposing investment management personnel, and asking them about their activities).

**Request 42:**  For the period 1/1/02 through trial, "[a]ll documents" that "concern, refer to or address" this lawsuit, and the Section 36(b) actions in Illinois that preceded this lawsuit.

*Our Offer/Response:*  You stated on Tuesday of last week (during our in-person meeting) that you do not want documents that are responsive to this request to the extent that those documents involve Putnam's legal department (and that you do not want a privilege log reflecting such documents), but that you would want us to produce any other responsive documents.  Even as reformulated, your request would require us to review thousands (or more) e-mails and other documents all or the vast majority of which relate directly to privileged litigation-related activities, in hopes of finding one or more employee comments about the litigation that are not privileged -- and which, in our view, would by definition not be sufficiently probative to warrant the search.

*Current Status*:  During our conversation this past Tuesday, you stated that you are not satisfied, and expect to raise this issue with the Court.

Lisa A. Furnald
August 31, 2006
Page 5

**Requests 44 & 45:** For the period 1/1/00-6/30/05, " [a]ll documents" that "concern" the "issues of if, whether, how, or to what extent PIM has complied, should comply, or may comply with any of the requirements or standards imposed by Section 36(b) . . . ." and "Rule 12b-1."

*Our Offer:* For the period 1/1/02-6/30/05, we will produce all documents discussing the appropriateness and/or legality of management fees on the Putnam mutual funds, to the extent located after diligent search.

*Current Status:* During our conversation this past Tuesday, you accepted this commitment, except with respect to time period, if we will add "management <u>and/or 12b-1 fees</u>" (we will do so).

**Request 48:** For the period 1/1/02 through trial, "[a]ll documents . . . relevant to establishing the portfolio holdings (on a daily or other periodic basis) and/or the portfolio turnover rates of each of The Funds at any and all times during the Damages Period."

*Our Offer:* You stated that you would be satisfied with documents sufficient to show the portfolio holdings of each of the mutual funds at issue on a monthly basis. We will commit to produce such documents, for the period 1/1/02-6/30/05.

*Current Status:* During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

**Request 55:** "All documents . . . sufficient to establish the amounts of Putnam-related compensation of any type (including cash and non-cash forms of compensation) earned or received by each of the members of the Investment Management Teams and the Boards of Trustees for each of the Funds at any and all times from January 1, 2002 to the present."

*Our Offer:* For the period 1/1/02-6/30/05, we will produce documents sufficient to show the cash and non-cash compensation of each of the investment management personnel identified in our interrogatory responses, and for each of the trustees.

*Current Status:* During our conversation this past Tuesday, you said that you would accept this commitment, except with respect to time period, if we were to add the Chief Investment Officers of each of the funds at issue. We will do so. (We are working on a list of those individuals, and, for clarity, will provide that to you when we have it.)

**Request 56:** For the period 1/1/02 through trial, "[a]ll documents . . . that reflect, concern, refer, or relate to any decision or agreement made by PIM and/or PRM effective as of January 1, 2004 to cease directing brokerage to broker-dealers in connection with the sale of fund shares."

*Our Offer/Response:* We have committed to produce communications with the trustees on this issue. We will now also commit to produce all reports provided by Putnam to the

Lisa A. Furnald
August 31, 2006
Page 6

Brokerage & Custody Committee for the period 1/1/02-6/30/05. We think these materials are sufficient at least to permit you to make a much more focused request; *i.e.*, what specifically is it about this issue that you believe is relevant to the case, and is there not some way that you could craft a request for documents that is significantly more narrow and concrete?

*Current Status*: During our conversation this past Tuesday, you said that you would not accept this commitment, and expect to raise it with the Court. (My immediately-preceding question does still stand, however.)

**Request 59:** For the period 1/1/00 through trial, "[a]ll documents" concerning "policies relating to the practice of simultaneously servicing multiple accounts."

*Our Offer:* For the period 1/1/00-present, we will produce any training manuals, policy statements, or similar documents addressing policies concerning investment management personnel servicing multiple accounts. (As I said on Tuesday of last week, I do not believe any such documents exist, but we can conduct further research.)

*Current Status*: During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

**Requests 65, 66, and 67:** For the period 1/1/02-6/30/05, "[a]ll documents . . . relevant to identifying, and establishing the amounts of, each of the various types of monies, fees, and/or reimbursable expenses *other than Management Fees or 12b-l Fees* that PIM, PRM, or other affiliated Putnam entities have received from any of The Funds at any and all times during the Damages Period." (Request 65; Requests 66 and 67 are quoted in the below footnote.)[2]

*Our Offer:* As I explained last Tuesday, we have produced black books from 1995-2006, which specifically identify all such fees and payments (see Tab 7 thereof). We would now commit to produce the annual financial statements for PFTC for the years 2002-2005. (And I note that we have already produced the trial balances, which encompass all Putnam entities.)

---

[2]    "All documents and tangible things in your possession, custody, or control relevant to establishing the profits and profit margins that PIM, PRM, or other affiliated Putnam entities have realized in connection with each of the various types of monies, fees, and/or reimbursable expenses *other than Management Fees or 12b-l Fees* that they have received from any of The Funds at any and all times during the Damages Period." (Request 66.) "All documents and tangible things in your possession, custody, or control relevant to establishing the costs, expenses, and expense ratios that PIM, PRM, or other affiliated Putnam entities have incurred in connection with each of the services and/or resources that they have provided in exchange for the various types of monies, fees, and/or reimbursable expenses *other than Management Fees or 12b-l Fees* that they have received from any of The Funds at any and all times during the Damages Period." (Request 67.)

Lisa A. Furnald
August 31, 2006
Page 7

*Current Status*:  During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

**Request 75 and 76**:  For the period 1/1/00 through trial, all documents that "reflect, concern, refer or relate to any negotiations, bargaining, or communications relating to any actual or proposed Management Fees, Management Contracts, 12b-1 Fees, or Distribution Plans . . . " (Request 75); and all documents that "concern, refer or relate to any consideration given" by the trustees to "whether or not to approve any actual or proposed Management Contract or Distribution Plan . . ." (Request 76).

*Our Offer*:  For the period 1/1/02 through 6/30/05, we will produce all documents concerning negotiation with the trustees of management and/or 12b-1 fees, to the extent located after diligent search.

*Current Status*:  During our conversation this past Tuesday, you accepted this commitment, except with respect to time period, as to Request 75.  But you did not accept it as to Request 76; please tell me if it would satisfy you as to Requests 75 and 76 if the commitment were to read:  "For the period 1/1/02 through 6/30/05, we will produce all documents concerning negotiation with the trustees of management and/or 12b-1 fees, including trustee consideration of whether or not to approve a management contract or distribution plan, to the extent located after diligent search."

**Request 78**:  For the period 1/1/00 through trial, "[a]ll documents . . . that constitute, reflect, concern, refer, or relate to any criteria or policies used by any of the Boards of Trustees, or their Boards of Trustees Committees, in connection with their consideration of whether or not to approve any actual or proposed Management Contract or Distribution Plan for any of The Funds."

*Our Offer*:  For the period 1/1/00-6/30/05, we will produce all documents addressing criteria or policies utilized by the trustees in connection with their consideration of whether or not to approve a management contract and/or distribution plan, to the extent located after diligent search.

*Current Status*:  During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

**Requests 79 and 80**:  For the period 1/1/00 through trial, "[a]ll documents . . . that constitute, reflect, concern, refer, or relate to any suggestion, opinion, conclusion, or proposal about potentially withholding approval of any Management Contract or Distribution Plan for any of the Putnam Mutual Funds by any of the Boards of Trustees, or by their Boards of Trustees Committees." (Request 79); and "All documents . . . that reflect, concern, refer, or relate to any consideration given by any of the Boards of Trustees, or their Boards of Trustees Committees, to

Lisa A. Furnald
August 31, 2006
Page 8

terminating any Management Contract and/or Distribution Plan existing between any of the Putnam Mutual Funds and PIM or PRM."  (Request 80.)

> *Our Offer:*  For the period 1/1/02-6/30/05, we will produce all documents discussing the possibility of the trustees withholding approval of a management contract and/or distribution plan for any of the funds at issue, to the extent located after diligent search.

> *Current Status*:  During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

**Request No. 81:**  For the period 1/1/00 through trial, "[a]ll documents" that "reflect, concern, refer or relate to any consideration given by any of the Boards of Trustees, or their Boards of Trustees Committees, to permitting, directing or obligating any of the Putnam Mutual Funds to pay Management Fees and/or 12b-1 Fees to any entities other than PIM or PRM."

> *Our Offer:*  For the period 1/1/02-6/30/05, we will produce all documents discussing the possibility of the trustees considering changing the management and/or distribution company for one or more of the mutual funds, to the extent located after diligent search.

> *Current Status*:  During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

**Request Nos. 82 & 86:**  For the period 1/1/00 through trial, "[a]ll documents . . . that reflect, concern, refer, or relate to any consideration given by any of the Boards of Trustees, or their Boards of Trustees Committees, to the requirements or standards imposed by Section 36(b) of the Investment Company Act of 1940 or Rule 12b-1 promulgated thereunder, and/or to the issues of whether PIM, PRM, or other affiliated Putnam entities have acted in compliance therewith in relation to any Management Contract or Distribution Plan with any of the Putnam Mutual Funds." (Request 82); and "[a]ll documents" reflecting "consideration given by any of the Boards of Trustees, or their Boards of Trustees Committees, in deciding whether or not to approve any actual or proposed Management Contract for any of The Funds to the factors for assessing the reasonableness of Management Fees established in Gartenberg v. Merrill Lynch Asset Management, Inc., 694 F.2d 923 (2d Cir. 1982) and its progeny."  (Request 86).

> *Our Offer:*  For the period 1/1/02-6/30/05, we will produce all documents concerning the trustees' consideration, with respect to the mutual funds, of the requirements of Section 36(b) and/or 12b-1 (including court decisions applying those statutes), to the extent located after diligent search.

> *Current Status*:  During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

Lisa A. Furnald
August 31, 2006
Page 9

**Request No. 92:**  For the period 1/1/02 through trial, "[a]ll documents . . . that constitute, reflect, or concern any quantification of Economies of Scale Benefits and/or Fall-Out Benefits that PIM, PRM, and/or other affiliated Putnam entities realize in connection with their provision of any services or resources to any of the Putnam Mutual Funds."

*Our Offer:*  For the period 1/1/02 through 6/30/05, we will produce all responsive documents located after diligent search.

*Current Status:*  During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

**Request No. 102:**  For the period 1/1/95 through trial, "[a]ll documents . . . that concern, refer, or relate to the development or formulation of each of the fee schedules for Management Fees and/or for 12b-1 Fees that PIM, PRM, or other affiliated Putnam entities have proposed or furnished to each of The Funds."

*Our Offer/Response:*  Would you tell me if the various commitments we have made otherwise (including production of black books back to 1995) would satisfy you with respect to this request?  If not, would you formulate for me what this request seeks that we have otherwise not already committed to produce?

*Current Status:*  During our conversation this past Tuesday, you told me that you are not satisfied with our response, but we did not discuss the second question immediately above.  Could you think about that question, so that we may discuss it next time we talk?

**Request No. 106:**  For the period 1/1/02 through trial, "[a]ll documents" that "relate to any policies, practices, or procedures . . . with respect to seeking and obtaining the most favorable prices and execution of trades."

*Our Offer/Response:*  We will produce manuals and/or similar documents sufficient to show Putnam's best execution policies for the period 1/1/02-6/30/05.

*Current Status:*  During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

**Request No. 107:**  For the period 1/1/02 through trial, "[a]ll documents . . . that constitute, reflect, concern, refer, or relate to the drafting, revising, and/or inclusion of: (i) the new passage entitled 'Management fee considerations' that recently began to appear on Putnam's web site; and/or (ii) the new standard passages entitled 'Trustee approval of management contracts' that recently began to appear in, inter alia, the semiannual reports published on behalf of some or all of the Putnam Mutual Funds."

*Our Offer/Response:*  You said that you do not want privileged memos, drafts, e-mails or other documents relating to the legal department's involvement with respect to these

Lisa A. Furnald
August 31, 2006
Page 10

passages (nor do you request that we reflect such documents on a privilege log), but that you would like to have any <u>non</u>-privileged responsive documents. We will commit to diligently search for and produce such documents, if any exist, for the period 1/1/02-6/30/05.

       *Current Status*:  During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

    **Request No. 108:**  For the period 1/1/00 through trial, "[a]ll documents" that "relate" to "the issues of if, how, whether, or to what extent any conflicts of interest do or may exist between . . . Putnam entities on the one hand, and/or their shareholders on the other hand."

       *Our Offer*:  For the period 1/1/02-6/30/05, we will produce documents (if any) addressing the issue of "conflict of interest" between PIM and/or PRM and mutual fund shareholders, to the extent located after diligent search.

       *Current Status*:  During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

    **Request No. 112:**  For the period 1/1/00 through trial, "[a]ll documents" that "concern, refer or relate to" government investigations regarding "the propriety or amount of any fees."

       *Our Offer/Response:*  For the period 1/1/02-present, we will produce communications with regulators concerning any investigation about mutual fund fees, to the extent located after diligent search.

       *Current Status*:  During our conversation this past Tuesday, you told me that you will not accept this commitment, and expect to raise this issue with the Court.

    **Request No. 113:**  For the period 1/1/00 through trial, "[a]ll documents" that "relate to" all "litigation, arbitration, or mediation" concerning "excessive fees."

       *Our Offer/Response:*  To the extent this request concerns this case (and its predecessors in Illinois), I refer you to the discussion of Request 42 above.  Otherwise, for the period 1/1/00 to present, we will produce documents filed in any such matter to the extent that there have been any (I do not believe there have been any).  Based on what we produce (if anything), you could then decide whether you want to pursue further documents.

       *Current Status*:  During our conversation this past Tuesday, you told me that you will not accept this commitment, and expect to raise this issue with the Court.

    **Request No. 118:**  For the period 1/1/02 through trial, "[a]ll documents" that contain "the professional and working history for anyone who served as an officer, Trustee, or Member of any of the Investment Management Teams for any of the Funds at any and all times during the Damages Period."

Lisa A. Furnald
August 31, 2006
Page 11

*Our Offer/Response:* You said last Tuesday (I paraphrase) that you would be satisfied for now if we were to produce a CV for key investment management personnel as to the funds at issue. We will commit to do so (to the extent such CVs exist) for the investment management personnel referenced in our interrogatory response.

*Current Status*: During our conversation this past Tuesday, you accepted this commitment, except with respect to time period, if we will add the Chief Investment Officers for each of the funds (we will do so).

**Request No. 129:** For the period 1/1/02 through trial, "[a]ll documents" that "relate to" any "securities clearing relationship between PIM, PRM, and any other person or entity."

*Our Offer/Response:* On Tuesday of last week (during our in-person meeting) you said that you might be satisfied for now with securities clearing contracts. Based on my research these are the contracts between Putnam and its custodian banks, and we will produce such contracts (to the extent relevant to the 1/1/02-6/30/05 time period, and to the Putnam mutual funds).

*Current Status*: During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

**Request No. 132:** For the period 1/1/95 through trial, "[a]ll documents" that "relate to" "any legal, accounting, financial, compliance, or other audits (whether internal or external) relating to any of the Funds . . .."

*Our Offer/Response:* We will produce the annual report of the financial statements for each fund at issue, as well as the three annual SAS 70 internal control audits (for the custody, fund accounting, and transfer agency operations). (I think that this is what your request encompasses.)

*Current Status*: During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

**Request No. 136:** For the period 1/1/02 through trial, "[a]ll documents" that "constitute, reflect, concern, refer, or relate to any practices, contracts, or agreements by which securities owned by or on behalf of any of The Funds are loaned to any other person or entity."

*Our Offer/Response:* You said on Tuesday of last week (during our in-person meeting) that you would be satisfied for now with documents sufficient to confirm the point made in the securities lending-related presentations that we have already produced, *i.e.,* that proceeds from securities lending arrangements go to the funds. We will commit to provide such documents.

Lisa A. Furnald
August 31, 2006
Page 12

*Current Status*: During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

**Request No. 137**: For 1/1/00-6/3/05, "[a]ll documents" that "refer, or relate to" all "communications to or from shareholders of any of the Funds concerning Management and/or 12b-1 Fees . . . ."

*Our Offer/Response:*    You have confirmed that as to actual shareholder complaints, you are not demanding that we search the correspondence department's files and are satisfied with the search we performed in the files of the Office of the President.  But you have said that you want internal communications <u>about</u> any shareholder complaints concerning management fees and/or 12b-1 fees.  For the period 1/1/00-6/30/05, we will produce any such internal correspondence, to the extent located after diligent search.

*Current Status*: During our conversation this past Tuesday, you accepted this commitment, except with respect to time period.

**V.    Document Requests From Your August 18 Letter**
<u>**Where We Have An Open Issue About Time Period Only**</u>

Below is the chart that was in my August 28 letter, which sets forth the categories of documents where we have an open issue only about time period, and our proposal as to each.[3]

Here, I think the status is that we are agreeing to disagree, <u>i.e.</u>, that you intend to press your proposed time period for each of these requests.  Please tell me if that is correct, and whether you think there is any room for further compromise.

| Request and category of documents to which we committed: | Your Proposed Time Period | Our Response |
|---|---|---|
| **Request 14**: "all documents generated on or after January 1, 2002 addressing the impact of 12b-1 fees on the interests of mutual fund shareholders, if any, to the extent located after diligent search."[4] | 1/1/00 - 6/30/05 | In light of the breadth and open-ended nature of these closely-related categories, we think that our proposed time period is appropriate.  (But I note that we have already produced extensive related |
| **Request 15**: "all documents generated on or after | | |

---

[3]    To be clear, these are the requests that are listed in the time period section of your August 18 letter, and not in the part of your August 18 letter that complains about the substance of our responses, <u>i.e.</u>, the particular terms of the category we committed to produce.  You told me on Tuesday of last week (during our in-person meeting) that these are requests where you are not pressing any objection about the substance of our response (the particular terms of the category we committed to produce), but are instead pressing an objection solely about time period.

[4]    As you know, this category is subject to a 6/30/05 end-date per our general objections, and the same is true of the other categories in this chart.

Lisa A. Furnald
August 31, 2006
Page 13

| | | |
|---|---|---|
| January 1, 2002 addressing the impact of 12b-1 fees on the interests of mutual fund shareholders, if any, to the extent located after diligent search.<br>Request 17: "all documents generated on or after January 1, 2002 addressing the impact of 12b-1 fees on the interests of mutual fund shareholders, if any, to the extent located after diligent search. | | documentation back to 1995, namely the black books, and the 12b-1 reports.) |
| Request 16: "all documents generated on or after January 1, 2002 addressing whether management and/or 12b-1 fees on Putnam mutual funds are excessive, if any, to the extent located after diligent search." | 1/1/00 - 6/30/05 | Again, in light of the breadth and open-ended nature of the category, we think that our proposed time period is appropriate. (But I again note that we have produced extensive related documentation back to 1995, i.e., the black books, and the 12b-1 reports.) |
| Request 20: "to the extent located after diligent search, . . . fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' review of management and distribution fees (which contain information concerning profits), as well as -- for that same period -- any documents addressing benefits to the defendants of 12b-1 fees."<br>Request 43: "to the extent located after diligent search, . . . fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005 (including the 'black books' collecting information relevant to the trustees' review of management and distribution fees), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications, and data generated or reviewed in connection with such communications). Defendants will also produce, to the extent located after diligent search (and to the extent not privileged), all documents generated during the period January 1, 2002 to June 30, 2005 addressing the requirements of 15 U.S.C. § 80a-35(b)."<br>Request 73: "to the extent located after diligent search, . . . fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' review of management and distribution fees."<br>Request 77: "to the extent located after diligent search, . . . fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting | 1/1/00 – trial<br><br><br><br><br>1/1/00 – trial<br><br><br><br><br><br><br><br><br><br><br><br><br>1/1/02 – trial<br><br><br><br><br>1/1/00 – trial | We maintain our stated time period for these related categories (1/1/02-6/30/05), except that we will expand them to 1/1/00-6/30/06 as to: (1) the monthly trustee blue books, and (2) any presentations or reports to the trustees concerning management and/or 12b-1 fees. (Also, I again note that we have already produced the black books for the period 1995-2006.) |

Lisa A. Furnald
August 31, 2006
Page 14

| | | |
|---|---|---|
| information relevant to the trustees' review of management and distribution fees." | | |
| Request 83: "to the extent located after diligent search, . . . fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' review of management and distribution fees (which category of documents encompasses the category of documents sought by this request). | 1/1/00 – trial | |
| Request 84: "to the extent located after diligent search, . . . fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' review of management and distribution fees (which include information concerning PAC, as it relates to the trustees' review of management and distribution fees)." | 1/1/00 - trial | |
| | | |
| Request 60: "trade allocation procedures for the period January 1, 2002 to June 30, 2005 applicable to the funds at issue." | 1/1/02 - trial | We agree to produce trade allocation procedures for the period 1/1/02 through present. |
| | | |
| Request 72: "to the extent located after diligent search (and to the extent in [Defendants'] possession, custody, or control), minutes of trustee meetings concerning management and/or 12b-1 fees, for the period January 1, 2002 to June 30, 2005." | 1/1/02 - trial | We agree to produce minutes of trustee meetings concerning management and/or 12b-1 fees (to the extent they are in Putnam's possession) for the period 1/1/02 through 6/30/06. |
| | | |
| Request 85: "to the extent located after diligent search, . . . fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005, including the 'black books' collecting information relevant to the trustees' review of management and distribution fees, and Defendants will also produce, for the same period of time, (i) the monthly PIM updates to the Trustees Investment Oversight Committees concerning investment performance of the funds at issue, and (ii) information produced by PIM to the Trustees' Investment Oversight Committees in connection with the trustees' periodic additional reviews of the performance of particular funds, to the extent such review related to the funds at issue." | 1/1/00 - trial | We maintain our stated time period for this category (1/1/02-6/30/05), except that we will expand it to 1/1/00-6/30/06 as to: (1) the monthly trustee blue books, (2) any presentations or reports to the trustees concerning management and/or 12b-1 fees, and (3) the monthly PIM updates to the Trustees Investment Oversight Committees concerning investment performance of the funds at issue. (Also, I again note that we have already produced the black books for the period 1995-2006.) |
| | | |
| Request 87: "responsive documents located after diligent search as to the period January 1, 2002 to | 1/1/00 - trial | We agree to produce responsive documents for the period 1/1/00 through 6/30/05. |

Lisa A. Furnald
August 31, 2006
Page 15

| | | |
|---|---|---|
| June 30, 2005." (Documents concerning "any consideration given by any of the Boards of Trustees, or their Boards of Trustees Committees, for any of the Putnam Mutual Funds to articles written by critics of the alleged disparity between retail and institutional fee schedules, to articles by the ICI or others defending such fee differences, and/or to decisions of the courts providing guidance with respect to such issues.") | | |
| | | |
| Request 88: "to the extent located after diligent search, . . . fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005 (including the 'black books' collecting information relevant to the trustees' review of management and distribution fees), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications, and data generated or reviewed in connection with such communications). (These documents contain economies of scale discussion and analysis.) Defendants will also produce, for that same period of time, all documents otherwise addressing economies of scale benefits and/or fall-out benefits as they relate to management fees, to the extent located after diligent search." <br><br> Request 89: "fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005 (including the 'black books' collecting information relevant to the trustees' review of management and distribution fees), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications, and data generated or reviewed in connection with such communications). (These documents contain economies of scale discussion and analysis.) Defendants will also produce, for that same period of time, all documents otherwise addressing economies of scale benefits and/or fall-out benefits as they relate to management fees, to the extent located after diligent search." <br><br> Request 90: "to the extent located after diligent search, their fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005 (including the 'black books' collecting information relevant to the trustees' review of management and distribution fees), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications, | 1/1/95 - trial | We maintain our stated time period for these related categories (1/1/02-6/30/05), except that we will expand them as follows: <br><br> •     to 1/1/00-6/30/06 as to (1) the monthly trustee blue books, and (2) any presentations or reports to the trustees concerning management and/or 12b-1 fees; and <br><br> •     to 1/1/95 to 6/30/06 as to any reports to the trustees, or memoranda from the trustees, concerning the issue of economies of scale and/or fall-out benefits. |

Lisa A. Furnald
August 31, 2006
Page 16

| | | |
|---|---|---|
| and data generated or reviewed in connection with such communications).   Defendants will also produce, for that same period of time, all documents otherwise addressing economies of scale benefits and/or fall-out benefits as they relate to management fees, to the extent located after diligent search."<br><br>Request 91:  "to the extent located after diligent search, . . . fee-related communications with the trustees  during the period January 1, 2002 to June 30, 2005 (including the 'black books' collecting information relevant to the trustees' review of management and distribution fees), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications, and data generated or reviewed in connection with such communications).  Defendants will also produce, for that same period of time, all documents otherwise addressing economies of scale benefits and/or fall-out benefits as they relate to management fees, to the extent located after diligent search."<br><br>Request 93:  "to the extent located after diligent search, . . . fee-related communications with the trustees during the period January 1, 2002 to June 30, 2005 (including the 'black books' collecting information relevant to the trustees' review of management and distribution fees), as well as Operations Finance Department documents relating to those communications (including e-mail concerning preparation of such communications, and data generated or reviewed in connection with such communications).  Defendants will also produce, for that same period of time, all documents otherwise addressing economies of scale benefits and/or fall-out benefits as they relate to management fees, to the extent located after diligent search." | | |
| Request 95:  "to the extent located after diligent search, all documents generated from January 1, 2002 through June 30, 2005 comparing and/or contrasting 'investment performance,' on the one hand, and 'investment process,' on the other hand." | 1/1/02 - trial | This is a vague and consequently difficult category of documents, and we continue not to see its relevance.  We maintain our proposed time period. |

Lisa A. Furnald
August 31, 2006
Page 17

| | | |
|---|---|---|
| **Request 103:** "documents sufficient to identify, for the January 1, 2002-through-June 30, 2005 period of time, any management and/or 12b-1 fees that PIM and/or PRM have received from any entity other than the Putnam Mutual Funds." | 1/1/00 - trial | We agree to expand this category to 1/1/00 – 6/30/06. |
| **Request 109:** "to the extent located after diligent search, documents generated during the period January 1, 2002 to June 30, 2005 that address the impact of 12b-1 fees on expense ratios and/or flow volatility, if any." | 1/1/00 - trial | In light of the breadth and open-ended nature of this category, we think that our proposed time period is appropriate. |
| **Request 111:** "to the extent located after diligent search, documents generated during the period January 1, 2002 to June 30, 2005 that address the impact of alternate actual or hypothetical breakpoints on profits." | 1/1/00 - trial | In light of the breadth and open-ended nature of this category, we think that our proposed time period is appropriate. |
| **Request 117:** "to the extent located after diligent search and applicable to the period January 1, 2002 to June 30, 2005, any training manuals, and/or training guidelines applicable to portfolio management, to Operations Finance Department personnel, and to PRM personnel to the extent they relate to marketing." <br> **Request 130:** "to the extent located after diligent search and applicable to the period January 1, 2002 to June 30, 2005, any training manuals, and/or training guidelines applicable to portfolio management, to Operations Finance Department personnel, and to PRM personnel to the extent they relate to marketing. | 1/1/00 - trial | We will expand the time period to 1/1/00 through 6/30/05. |
| **Request 125:** "any responsive contracts [contracts between a trustee and Putnam] located after diligent search as to the independent trustees; as to the remaining trustees, Defendants will produce documents sufficient to show their positions with Defendants during the January 1, 2002-to-June 30, 2005 period." | 1/1/02 - trial | We will expand our stated time period to 1/1/02-6/30/06. |

Lisa A. Furnald
August 31, 2006
Page 18

| | | |
|---|---|---|
| **Request 127**: "the following contracts for each of the funds at issue, to the extent the contracts were in effect during the period January 1, 2002 to June 30, 2005, as well as any other contracts effective during that same time period between defendants and any of the funds at issue: management contracts, distributor's contracts, custodian agreements, and distribution agreements." | 1/1/95 - trial | We agree to produce for the five funds at issue the following contracts for the time period 1/1/95 to present: management contracts, distribution agreements, distributor's contracts and custodian agreements. |
| **Request 133**: "responsive contracts, if any, applicable to the period January 1, 2002 to present." (Responsive contracts are: "[C]ontracts or agreements by which PIM and/or PRM subcontract with or for any other person or entity to perform any services pursuant to any Management Contract or Distribution Plan with any of The Funds.")[5] | 1/1/00 - 6/30/05 | We agree. |

\*    \*    \*

      Lastly, your August 24 letter addressed our document production commitments as to your request nos. 14, 15, 17, 20, 109, 16, 19, 23, 24, 47 and 52 (e.g., "documents addressing the impact of 12b-1 fees on the interests of mutual fund shareholders"; "documents comparing management and/or 12b-1 fees on mutual funds with fees for institutional accounts.").

      As to these document production commitments, you demand that we search the files of all "individuals in the investment management department," and express the view that we are not conducting an adequate search.

      I explained in my August 28 letter that the search you demand is inappropriate, but let me know if we can resolve the issue this way: if we agree that the search for documents responsive to these categories of documents will encompass the investment management personnel identified in our interrogatory response, as well as the Chief Investment Officers for the funds at issue (list being prepared, and to be provided).

      Very truly yours,

David S. Clancy

cc:  J. Carroll
     S. Lashway

---

[5]   In this part of your August 28 letter you also referenced your Request No. 139, but we objected to that request, and you have not listed it as one on which you are pressing for us to alter the substance of our response. Please clarify on this point.

**EXHIBIT 1**

| | |
|---|---|
| "General Ledger Trial Balances from 2006 through trial" (in hardcopy and electronic format for 2005 through trial) | We agree to produce year-end trial balances ~~for 2005 and 2006.~~ *through trial* |
| "Audited Financial Statement for Putnam Investment Trust from 2005 through trial" | We agree ~~for 2005 and 2006~~ |
| "Audited Financial Statement for PAC from 2005 through trial" | We agree ~~for 2005 and 2006~~ |
| "Audited Financial Statement for PIM from 2005 through trial" | We agree ~~for 2005 and 2006~~ |
| "2000 Audited Financial Statement for PRM" | We agree. |
| "Audited Financial Statement for PRM from 2005 through trial" | We agree ~~for the period 2005 and 2006~~ |
| "2000 Year End Flash Report" | We agree. |
| "Quarterly Flash Report from Q1 2006 through trial" | We agree ~~for all quarters of 2006~~ |
| "Year End Flash Report from 2000" | We agree. |
| "Year End Flash Report from 2005 through trial" | We agree ~~for 2005 and 2006.~~ |
| "Black Book from 2007 through trial" | These documents will not even exist until after discovery has closed, so we do not understand this request. |
| "Black Book Tab 50 Back-up and Supporting Documentation (including documents similar to bates numbers 84736-84760) from 2000, 2001, 2002, 2003 and 2004 Black Books " | We agree (though as in all cases, where we have already produced documents within the category, we will of course not be reproducing them; and our stated agreement to a category should not be read as an implicit statement that we have not produced responsive documents already.) |
| "Black Book Tab 50 Back-up and Supporting Documentation (including documents similar to bates numbers 84736-84760) from 2006 Black Book through trial" (in hardcopy and electronic format for the 2006 black book through trial) | We agree for the 2006 black book. |
| "Black Book Tab 50 Back-up and Supporting Documentation (including documents similar to bates numbers 85590-85618) from the 2000 Black Book" | We agree. |
| "Black Book Tab 50 Back-up and Supporting Documentation (including documents similar to bates numbers 85590-85618) from the 2006 Black Book through trial" (in hardcopy and electronic format for the 2000, 2001, 2002 and 2003 Black Books and the 2006 Black Book through trial) | We agree for the 2006 black book. |
| "Black Book Tab 18 Back-up and Supporting Documentation (including documents similar to bates numbers 76422-76439) from the 2000, 2001 and 2002 Black Books" | We agree. |

| Your Request | Our Response |
|---|---|
| "Black Book Tab 18 Back-up and Supporting Documentation (including documents similar to bates numbers 76422-76439) from the 2006 Black Book through trial" (in hardcopy and electronic format for the 2000, 2001, 2002, 2003, 2004, 2005 and 2006 Black Books and all Black Books produced through trial) | We agree for the 2006 black book. |
| "Annual N-CSR for Voyager from 2005 through trial" | We agree. |
| "Semi-Annual N-CSR for Voyager from 2006 through trial" | We agree. |
| "N-CSR for Voyager 2002 Semi-Annual" | We agree. |
| "Annual N-CSR for Voyager 1995 through 2002" | We agree. |
| "N-CSR for Growth Opportunities 2002 Semi-Annual" | We agree. |
| "N-CSR for Growth Opportunities 2003 Semi-Annual" | We agree. |
| "Semi-Annual N-CSR for Growth Opportunities from 2005 through trial" | We agree. |
| "Annual N-CSR for Growth Opportunities from 1995 through 2003" | We agree. |
| "Annual N-CSR for Growth Opportunities from 2005 through trial" | We agree. |
| "N-CSR for Investors Fund 2002 Semi-Annual" | We agree. |
| "Annual N-CSR for Investors Fund from 1995 through 2002" | We agree. |
| "Annual N-CSR for Investors Fund from 2006 through trial" | We agree. |
| "Semi-Annual N-CSR for Investors Fund from 2006 through trial" | We agree. |
| "N-CSR for Fund for Growth and Income 2002 Semi-Annual" | We agree. |
| "Annual N-CSR for Fund for Growth and Income from 1995 through 2002" | We agree. |
| "Annual N-CSR for Fund for Growth and Income from 2005 through trial" | We agree. |
| "Semi-Annual N-CSR for Fund for Growth and Income from 2006 through trial" | We agree. |
| "N-CSR for Classic Equity 2002 Semi-Annual" | We agree. |
| "Annual N-CSR for Classic Equity from 1995 through 2002" | We agree. |
| "Annual N-CSR for Classic Equity from 2005 through trial" | We agree. |
| "Semi-Annual N-CSR for Classic Equity from 2006 through trial" | We agree. |
| "Quarterly 12b-1 Reports from Q1 2006 through trial" | We agree for all quarters of 2006. |

| | |
|---|---|
| "Individual fund general ledgers from GPS system from 1995 through trial (Mills Depo. p. 42, ln. 16 - p. 43, ln. 6)" | We agree to produce the trial balances for the five funds at issue for the period 1995 through ~~2006~~ (to the extent available). |
| "Individual fund general ledger back-up from GPS system from 1995 through trial (Mills Depo. p. 42, ln. 16 - p. 43, ln. 6)" | We do not agree to this request in light of its breadth, but will evaluate requests for specific information with respect to the Funds' trial balances after plaintiffs' have had an opportunity to evaluate them. |
| "Institutional client general ledgers from GPS system from 1995 through trial (Mills Depo. p. 77, ln. 7 - ln. 13)" | We do not agree to this request, and expected instead that you would make account-specific requests for information based upon your review of the institutional client spreadsheet. |
| "Institutional client general ledger back-up from GPS system from 1995 through trial (Mills Dep. p. 77, ln. 7 - ln. 13)" | We do not agree to this request for the same reasons listed in the previous response. |
| "PAC Financial Statement Work Papers from 2000 through trial (Mills Depo. p. 66, ln. 7 - p. 68, ln. 9; p. 72, ln. 17 - p. 73, ln. 14)" | We agree for the period 2000-2005 (as with all others, to the extent not already produced). |
| "PIM Financial Statement Work Papers from 2000 through trial (Mills Depo. p. 66, ln. 7 - p. 68, ln. 9; p. 72, ln. 17 - p. 73, ln. 14)" | We agree for the period 2000-2005. |
| "PRM Financial Statement Work Paper from 2000 through trial (Mills Depo. p. 66, ln. 7 - p. 68, ln. 9; p. 72, ln. 17 - p. 73, ln. 14)" | We agree for the period 2000-2005. |
| "SAP allocation percentages from 1995 through trial (Boon Depo. p. 32, ln. 13 - p. 33, ln. 11)" | SAP has not been in place for this entire period (see the deposition of Stacy Mills); we agree for the period from inception of SAP through 2005. |
| "Worksheets for 12b-1 Quarterly Reports from 2000 through trial (Boon Depo. p. 13, ln. 5 - ln. 18)" | We think that the reports themselves are sufficient, but would be open to discussion with respect to some particular aspect of the reports on which you can articulate a need for underlying information. |
| "2006 Budget-Cost Allocations Data Source Binder (Boon Depo. p. 30, ln. 12 - p. 31, ln. 3)" | We agree. |
| "Financial Analysts' Work Sheets for Budget Allocations from 1995 through trial (Boon Depo. p. 31, ln. 15 - p. 32, ln. 12)" | This request is exceedingly overbroad. I would think that on review of the percentages, there might be particular ones, for particular years, as to which you could justify a request for supporting material; we cannot reasonably agree to produce all supporting materials for all percentages for a more than ten year period of time. |
| "List of Asset Sleeves Held by Each Fund from 1995 through trial (Boon Depo. p. 50, ln. 6 - ln. 11)" | We agree. |