**EXHIBIT J**

```
                                                                    1

 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3
     JERRY JONES, et al.,              )  Docket No. 04 C 8305
 4                                     )
                         Plaintiffs,   )
 5                                     )
                vs.                    )
 6                                     )
     HARRIS ASSOCIATES LP,             )  Chicago, Illinois
 7                                     )  December 19, 2005
                         Defendant.    )  9:30 o'clock a.m.
 8

 9            TRANSCRIPT OF PROCEEDINGS - MOTIONS
           BEFORE THE HONORABLE CHARLES P. KOCORAS
10

11   APPEARANCES:

12
     For the Plaintiffs:    MR. KEVIN M. FLYNN
13                          77 W. Wacker Drive, Suite 4800
                            Chicago, Illinois  60601
14
                            MESSRS. RICHARDSON, PATRICK, WESTBROOK
15                            & BRICKMAN
                            BY:  MR. JAMES C. BRADLEY
16                          174 E. Bay Street, Suite 100
                            Charleston, South Carolina  29401
17

18   For the Defendant:     MESSRS. ROPES & GRAY LLP
                            BY:  MR. ROBERT SKINNER
19                          One International Place
                            Boston, Massachusetts  02110
20

21   Court Reporter:        MS. JOENE HANHARDT
                            Official Court Reporter
22                          219 S. Dearborn Street, Suite 2524-A
                            Chicago, Illinois  60604
23                          (312) 435-6874
                    * * * * * * * * * * * * * * * *
24              PROCEEDINGS RECORDED BY
                 MECHANICAL STENOGRAPHY
25            TRANSCRIPT PRODUCED BY COMPUTER
```

1        THE CLERK:  04 C 8305, Jones vs. Harris Associates.
2   Motion for clarification; motion to compel.
3        MR. FLYNN:  Good morning, your Honor, Kevin Flynn and
4   Jim Bradley on behalf of the plaintiffs.
5        MR. SKINNER:  Good morning, your Honor, Robert Skinner
6   on behalf of Harris, the defendant.
7        THE COURT:  Good morning.
8        MR. FLYNN:  Your Honor, there are two motions up this
9   morning:  A motion to clarify, which is a very discrete issue;
10  and, then, a motion to compel.
11       On the motion to clarify, we understood your Honor's
12  ruling on our discovery motion on November 30th.  We understood
13  that.  What we seek clarification on is the implication of that
14  ruling with regard to damages.
15       Basically, you will recall, your Honor, that we were
16  seeking information that supported our claim for continuing
17  damages -- damages beyond the filing of this complaint in
18  August of 2004.
19       Your Honor denied that; and, in your Honor's ruling
20  from the bench, mentioned the statutory language that the
21  defendants had cited; that is, the statutory language that says
22  that the civil remedy that is available is limited to the
23  one year prior to filing.
24       Now, we have always interpreted that as a one-year
25  statute of limitation.

```
 1          The defendants suggested in their opposition to the
 2   discovery motion a couple of weeks ago -- and now makes clear
 3   in its opposition to the clarification -- that it is not just a
 4   statute of limitation, in their view, but that it says we are
 5   limited to that one-year period.
 6          So that if a plaintiff had ongoing damages, he would
 7   need to keep filing new suits -- or amending its existing
 8   suit -- so that it could continue to capture damages.
 9          Our experts -- you know, we went back to them
10   following your Honor's ruling, and the experts -- are saying,
11   "Shall we attempt our damage analysis beyond August 16th,
12   2004?"
13          And our answer was, "We are not sure," in light of
14   your Honor's ruling.
15          Your Honor could have had two bases for his ruling.
16   Your Honor could have said, "Hey, they are not relevant because
17   you can't get -- discovery is not relevant after August 16th,
18   2004, because the statute does not allow them."
19          Or your Honor could have said, "You are not entitled
20   to the discovery because you were too late in bringing the
21   motion to compel."
22          And your Honor had suggested that, you know, "Here we
23   are on the last day of discovery." So, that is why we need the
24   clarification. It was not clear if your Honor was ruling that
25   there was a damage limitation.
```

1    MR. SKINNER: Your Honor, the Seventh Circuit has
2  weighed in on this very question. The statutory language is
3  quite clear. And the Seventh Circuit, in the Green vs. Nuveen
4  Advisory Corp. case from 2002, at 295 F.3rd 738, has said,
5  "Congress enacted 36(b) to provide a narrow federal remedy that
6  is significantly more circumscribed than common law fiduciary
7  duty documents."
8    The Court said, "Damages are recoverable only for the
9  one-year period before the filing of the action."
10   It is quite clear this is not just a backwards-looking
11 statute of limitations. It is, in fact, a substantive cap on
12 the timeframe of the damages.
13   THE COURT: The answer is if the statute circumscribes
14 damages and limits it, then any discovery beyond what the
15 statute would afford would not be relevant. That would be the
16 basis for the ruling.
17   What is the next issue?
18   MR. FLYNN: The motion to compel.
19   Now, first of all, are we jumping the gun?
20   THE COURT: Is who jumping what gun?
21   MR. FLYNN: Have we jumped the gun by bringing this
22 motion to compel?
23   The defendants' initial response -- the bulk of their
24 response -- is: "The motion is premature." We didn't comply
25 with --

1  THE COURT: What are you seeking here?

2  MR. FLYNN: We are seeking very specific documents
3  that are delineated in the relief section. Kind of in two
4  categories, Judge. One should be non-controversial; and, that
5  is, we have gotten some very specific income and expense data,
6  and the documents simply aren't legible.

7  And while the defendant has said, "Oh, we will produce
8  legible copies," you know, in one instance we got them three
9  weeks later; and, of course, as your Honor knows, we got this
10 deadline of January 30th. So, we really need a deadline to be
11 imposed on the defendants, if your Honor would be willing to do
12 that.

13 As to those documents that they had agreed they will
14 --

15 THE COURT: Do you mean to produce legible documents?

16 MR. FLYNN: That is one category.

17 THE COURT: Let us take these one at a time.

18 What is your response to that?

19 MR. SKINNER: Your Honor, the illegible documents were
20 brought to our attention in late November/early December. We
21 told them we would undertake to produce them.

22 Your Honor may recall, we produced a half a million
23 documents in the case. So, we have gone back to the client.
24 We have produced 3500 more documents.

25 On Thursday, in response to the latest request,

including a bunch of the documents in a more legible format, including in their so-called native format -- that is, in the electronic version that the plaintiff requested -- we have not at any point suggested we were not going to produce things illegible --

THE COURT: So, what are you asking me to do, then, in light of the production?

MR. FLYNN: Just a commitment as to when we will get those, in light of the fact that --

MR. BRADLEY: There are still documents that I specifically identified.

THE COURT: I think you need to talk to the other side, if they are willing to produce them, and there are so many documents at play here.

Do you want me to order them to commit to producing something that the inference is they have committed to doing?

MR. SKINNER: Your Honor, we are working around the clock and producing them --

MR. FLYNN: Well, your Honor --

THE COURT: That motion is denied. There is nothing for me to rule on. There is no dispute.

You say, "We need more legible documents," and they have produced a lot of documents, and they are still searching to do more. There is nothing for me to resolve.

MR. FLYNN: But --

1      THE COURT: The next issue? The next issue?

2      I do not want to spend a lot of time on things that
3 are not ripe for adjudication.

4      MR. FLYNN: There are, then, specific requests in our
5 relief with documents; specifically, an advisor's profitability
6 analysis.

7      Now, your Honor will recall this case involves whether
8 or not the defendants overcharged their funds fees. And, of
9 course, these independent directors are responsible to be sure
10 that they don't do that.

11     So, what the Board gets is important for our case.
12 There is an advisor's profitability analysis that is given to
13 the trustees.

14     In the case of the 2004 -- remember, we filed the suit
15 up through August; our damages are available up to August 16th
16 of 2004 -- we need the year-end profitability analysis for
17 2004.

18     The defendants have objected to producing it because
19 it was produced -- it was created -- finally after, of course,
20 August 16th, because it is a year-end document. We still need
21 the analysis as it relates to the first eight months of the
22 year.

23     So, even though the document was produced after August
24 16th, 2004, we would need the information in that analysis that
25 relates to the period that we are entitled to damages.

1            THE COURT: This is some prediction about the future?
2            MR. FLYNN: No, no. It is a year-end document that
3   looks back.
4            Think of a year-end P&L, Judge. It is created as of
5   12-31-2004, but it recounts income and expenses for the year of
6   2000- -- it is a retrospective document.
7            THE COURT: What do you say? You are shaking your
8   head "No."
9            MR. SKINNER: Well, your Honor, this is simply a piece
10  of your Honor's ruling from previously. I mean, at the end of
11  the day, you know, we will produce whatever your Honor thinks
12  is relevant.
13           Here is why we believe this particular document is not
14  relevant; otherwise, we have not objected to producing any such
15  profitability documents, and we have been continuing to produce
16  them, including up through last week.
17           The fees in place, as of the cutoff on August 16th,
18  2004, when the complaint was filed, were approved by the
19  advisors in the prior -- by the trustees, in negotiations with
20  the advisors, at the end of 2003.
21           So, the profitability analysis that they had in hand,
22  that they used to advise and negotiate and approve the fees
23  that were in place up through the time of the filing of the
24  complaint -- the only period that is relevant -- were the ones
25  that were produced from the previous period.

```
 1           The one that was produced at the end of 2004 is now
 2   being used by the trustees for the ongoing negotiations for,
 3   you know, the next year.  So, it is beyond the scope.
 4           THE COURT:  Why is that relevant?
 5           MR. BRADLEY:  We need it to calculate damages, quite
 6   simply.
 7           THE COURT:  But you have historical information about
 8   profit and lost; do you not?
 9           MR. BRADLEY:  Right.  But, because --
10           THE COURT:  This is a planning document setting forth
11   fees?
12           MR. BRADLEY:  No, your Honor.  This is --
13           THE COURT:  That is what he said it is.
14           MR. BRADLEY:  Right.  This is a document that gives
15   the profit --
16           THE COURT:  When was this document created?
17           MR. BRADLEY:  It was probably created in early 2005.
18           Our damages run to August 16, 2004.  We need to be
19   able to calculate damages up to August 16th, 2004.
20           THE COURT:  You can do that in another way, other than
21   in a planning document setting forth forward-looking fees.
22           That request is denied.
23           MR. FLYNN:  Work papers.
24           "Works paper" is not a generic term.  It is a term
25   that is -- it is a term of art in this business; and, it is --
```

1  the term "work papers" has been referred to in Christy
2  Roselle's deposition.
3        You will recall she was the 30(b)(6) representative.
4        There have been work papers that have been objected to
5  being produced; and, they were specifically referenced in Ms.
6  Roselle's deposition that was taken just before we came in on
7  November 30th.
8        THE COURT:  What are the work papers?  What do they
9  show?
10       MR. FLYNN:  Well, we have examples of them.  They are
11 spread sheets and they are back-up for these profitability
12 analyses.
13       THE COURT:  The ones that we just discussed?
14       MR. FLYNN:  No, for other years.
15       No, not for 2004.
16       THE COURT:  Do you know what the work papers are that
17 he is referring to?
18       MR. SKINNER:  I do not think it is a term of art
19 within the mutual fund industry.  It is an accountant's term.
20 They are underlying work papers.  These were raised to us in
21 this letter of December 6th.
22       We said on December 7th, "We don't object to those.
23 We will produce them."
24       We produced -- you know, we have pointed out to them
25 where in the discovery from the prior we produced them already,

1  and we produced additional documents responsive to the December
2  6th requests last Thursday.
3            THE COURT: So, you are not objecting to producing
4  those?
5            MR. SKINNER: No, your Honor.
6            THE COURT: What did you want me to do?
7            MR. BRADLEY: These are specific documents that they
8  have not produced.
9            THE COURT: They said they were going to produce them.
10           I assume it is a timeliness issue?
11           MR. SKINNER: Yes, your Honor.
12           THE COURT: Are you going to produce the ones he is
13 describing?
14           MR. SKINNER: We are working around the clock to find
15 them, your Honor. And we are producing them as we --
16           THE COURT: What do you guys want me to do? Do you
17 want me to go over to his shop and say, "You have to work
18 faster"?
19           MR. BRADLEY: Your Honor --
20           MR. FLYNN: Your Honor, let me make one comment.
21           THE COURT: You are asking for a lot of stuff that you
22 ought to discuss with each other.
23           MR. FLYNN: Judge, one -- well, we have been.
24           One comment about Ms. Roselle.
25           Ms. Roselle, in her deposition, said, "There is

1  information, counsel, that is available electronically going
2  back 10 years." It is not hard to -- this round-the-clock is
3  not supported by their own 30(b)(6) witness.
4       THE COURT: Are you challenging the bona fides and his
5  credibility as an attorney?
6       MR. FLYNN: I would not do that. I would --
7       THE COURT: That is what you just did.
8       MR. FLYNN: I would suggest that it is inconsistent
9  with their 30(b)(6) representative's own testimony.
10      THE COURT: Do you know, what? They have produced
11 half a million documents to you?
12      Is that about right?
13      MR. BRADLEY: It is --
14      MR. FLYNN: I cannot say that.
15      MR. BRADLEY: It is a half a million pages. A lot of
16 them are very large documents. But there is still --
17      THE COURT: Well, I would think there is some manual
18 labor that goes into that. And, so, if they are in agreement
19 to producing things, and they have delivered to you 500,000
20 pieces of materials, you know, you ought to cut them some
21 slack.
22      And they said they are not resisting these work papers
23 that you are making a fuss about.
24      MR. FLYNN: And, your Honor, do you know, what?
25      THE COURT: You know, you are asking for things you

1  should not really -- that it is better addressed to the other
2  side, rather than to bring them to me.
3          MR. FLYNN: And, your Honor, you saw that this is an
4  exhibit where we have had correspondence going on now for
5  months on these points.
6          We would not bring these to your attention if we
7  thought that we were not at an impasse.
8          THE COURT: You are asking me to rule on things that
9  are not in dispute, and I do not do that.
10         MR. FLYNN: I would not want you to do that.
11         THE COURT: Do you have any other points?
12         MR. FLYNN: Yes.
13         Expense allocation terms.
14         Your Honor, one other point. They told us that they
15 were not disputing this, when we received a letter four hours
16 after we filed the motion. All right?
17         So, the motion was filed; and, then, that afternoon,
18 we get a letter. We had not been able to get any response
19 until then.
20         So, again, I am glad that the bringing of the motion
21 has brought some compromise on their part. There are some
22 things that they have not spoken to, either in their letter or
23 in their response.
24         MR. SKINNER: Your Honor, may I?
25         THE COURT: No.

```
 1              Go to the next point.
 2              MR. FLYNN:  Expense allocation.
 3              THE COURT:  We are spending a lot of time and verbiage
 4   on things that I do not --
 5              MR. SKINNER:  These characteristics are flatly
 6   incorrect, your Honor.
 7              THE COURT:  I am not adjudicating anything.
 8              MR. FLYNN:  I apologize for the length of time, your
 9   Honor.
10              Their expense allocation term sheets for 2001 and
11   2002, all we have is a draft for -- we are not sure if it is
12   2002 or 2003.  We can't tell.  We just need what they maintain
13   were the final expense allocation sheets.
14              THE COURT:  Did you ask him for that?
15              MR. FLYNN:  Yes, we have.
16              THE COURT:  What did you say?
17              MR. SKINNER:  The same thing as the prior category,
18   your Honor.
19              They asked for it on December 6th.  We told them on
20   December 7th, "We have no objection to producing them."  And
21   before we had a chance to produce them, the motion appeared
22   with no further conversation.
23              THE COURT:  I think you need to talk to each other
24   more and speak more directly to them about when things may
25   happen, because you are coming in here without the necessary
```

1    dialogue and you are wasting a lot of time -- everybody's time.
2         MR. SKINNER: Your Honor previously ordered that we
3    had to -- we should have face-to-face conversations before any
4    further motions to compel the documents were brought.
5         THE COURT: I think I will enforce that from here on
6    end.
7         MR. FLYNN: Well, your Honor, we will have that
8    conversation right now with Mr. Skinner and see if we can
9    resolve it.
10        THE COURT: You should have it before you file a
11   motion. If you are asking -- if it is a timing situation and
12   they have agreed to produce something, before you run in to
13   compel, without asking them when they are going to produce that
14   stuff, it is taking up everybody's time.
15        MR. FLYNN: I will, your Honor.
16        THE COURT: You know, one of us has got to have the
17   last word here, and I think it is going to be me.
18        MR. FLYNN: I understand that, your Honor.
19        THE COURT: I think you are bringing a lot stuff here
20   unnecessarily, I must say that. And I know you well and I
21   respect you, but I do not understand really the kind of
22   discovery that is at least here in this case.
23        They have produced a lot of stuff here and you are
24   fussing about timing; and, then, you come in here on a motion
25   to compel something that is not in dispute.

```
 1         MR. FLYNN:  That we --
 2         THE COURT:  I do not do that.  That is all.
 3         MR. FLYNN:  Yes, your Honor.
 4         Thank you.
 5         THE COURT:  Next time -- before you file a motion to
 6  compel, again -- you meet face-to-face; and, if that motion is
 7  either in bad faith or unmeritorious, I am going to impose
 8  sanctions.
 9         MR. FLYNN:  I understand, your Honor.
10         THE COURT:  Do you understand that?
11         MR. FLYNN:  I understand.
12         THE COURT:  There is no reason -- I do not know how
13  many times we have done this now, and this is no way to prepare
14  for a case.  And I mean that.
15         MR. FLYNN:  I understand that, your Honor.
16         Thank you.
17                      *  *  *  *  *
18  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
19
20  _____         _____ 12 _____, 2006
    Official Court Reporter
21
22
23
24
25
```