UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------x
JOHN J. VAUGHN, GERALD A. KALBFLEISCH, MICHAEL  :
HATHAWAY and MYRTLE HATHAWAY,
                                                :
    Plaintiffs,                                 Civil Action
                                              : No. 04-10988-GAO
    v.
                                                :
PUTNAM INVESTMENT MANAGEMENT, LLC and            **ORAL ARGUMENT**
PUTNAM RETAIL MANAGEMENT LIMITED PARTNERSHIP,  : **REQUESTED**

    Defendants.                                  :

------------------------------------------------------x
JOHN J. VAUGHN, GERALD A. KALBFLEISCH, MICHAEL   :
HATHAWAY, and MYRTLE HATHAWAY,
                                                :
    Plaintiffs,                                 Civil Action
                                              : No. 06-11438-GAO
    v.
                                                :
PUTNAM INVESTMENT MANAGEMENT, LLC and
PUTNAM RETAIL MANAGEMENT LIMITED PARTNERSHIP,  :

    Defendants.                                  :

------------------------------------------------------x

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION TO CONSOLIDATE CIV. NO. 06-11438-GAO ("*VAUGHN II*")
WITH CIV. NO. 04-10988-GAO ("*VAUGHN I*"), AND IN SUPPORT OF THEIR
MOTION TO STAY *VAUGHN II* PENDING THIS COURT'S RESOLUTION OF *VAUGHN I***

Dated: September 26, 2006            James R. Carroll
                                                 David S. Clancy
                                                 Scott T. Lashway
                                                 SKADDEN, ARPS, SLATE,
                                                   MEAGHER & FLOM LLP
                                                 One Beacon Street
                                                 Boston, Massachusetts 02108
                                                 (617) 573-4800

                                                 Counsel for Defendants Putnam Investment
                                                 Management, LLC and Putnam Retail
                                                 Management Limited Partnership

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      SECTION 36(b) LIMITS RECOVERY TO "EXCESS" FEES PAID
DURING THE ONE-YEAR PERIOD PRECEDING THE LAWSUIT . . . . . . . . . . . . . . 2

          A.      Examination Of Statutory Text, Legislative History,
And Caselaw Shows That Section 36(b) Limits Recovery To
"Excess" Fees Paid During The One-Year Period Preceding The Lawsuit . . . . . . 2

          B.      Practical Considerations Further
Support the Natural Reading of Section 36(b),
and Undermine Plaintiffs' Alternate Reading . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.     CONSEQUENTLY, THIS COURT
SHOULD NOT CONSOLIDATE *VAUGHN II*
WITH *VAUGHN I,* AND INSTEAD SHOULD STAY
*VAUGHN II* PENDING THE OUTCOME OF *VAUGHN I* . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**PRELIMINARY STATEMENT**

On May 17, 2004, <u>Steven G. Wicks, et al. v. Putnam Investment Management, LLC, et al.</u>, 1:04-CV-10988-GAO was filed. (Plaintiff Steven Wicks was later replaced by John Vaughn, and that May 17, 2004 lawsuit is hereafter referred to as "<u>Vaughn I</u>".)

In the context of conferences and disputes about discovery, defendants stated that -- as courts have held -- recovery under Section 36(b) is limited to any "excess" fees paid during the one year prior to suit.[1]

In response, plaintiffs have now filed a second lawsuit, 1:06-CV-11438-GAO (hereafter, "<u>Vaughn II</u>"), which is meant to cover the time period beginning on August 15, 2005. (That second suit was filed on August 14, 2006.) Further, plaintiffs have moved to consolidate this lawsuit with <u>Vaughn I</u>.

<u>Vaughn II</u> should not be consolidated with <u>Vaughn I</u>. As explained below, the two suits involve different periods of time, and consolidating <u>Vaughn II</u> with <u>Vaughn I</u> would be burdensome, and unfairly prejudicial to Defendants. As further explained below, Defendants' submit that the better course of action would be for <u>Vaughn II</u> to be stayed pending the Court's resolution of <u>Vaughn I</u>. (Defendants anticipate that <u>Vaughn I</u> will be at the summary judgment stage in the first half of next year.)

**ARGUMENT**

For consolidation to be appropriate, the two proceedings must "involve a common party *and* common issues of fact or law" (emphasis in original), and then the Court has "broad discretion . . . to decide whether [consolidation] is appropriate" (though it will "usually" be granted absent "demonstrable prejudice"). <u>Seguro de Servicio de Salud de Puerto Rico v.</u>

---

[1]  15 U.S.C. § 80a-35(b)(3).

McAuto Systems Group, Inc., 878 F.2d 5, 8 (1st Cir. 1989) (reversing lower court's order to consolidate).

Here, for the reasons set forth below, Defendants submit that it would be appropriate for the Court to exercise its discretion in the form of an order denying plaintiffs' motion to consolidate Vaughn II with Vaughn I, and staying Vaughn II pending this Court's resolution of that long-pending 2004 lawsuit (which will likely occur next year).  See Landis v. North American Co., 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . ").

I.  **SECTION 36(b) LIMITS RECOVERY TO "EXCESS" FEES PAID DURING THE ONE-YEAR PERIOD PRECEDING THE LAWSUIT**

   A.  **Examination of Statutory Text, Legislative History, And Caselaw Shows That Section 36(b) Limits Recovery To "Excess" Fees Paid During The One-Year Period Preceding The Lawsuit**

Section 36(b) states that "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted."  15 U.S.C. § 80a-35(b)(3) (attached hereto as Exhibit A).  This means that a Section 36(b) plaintiff may recover "excess" fees that were paid during the one-year period prior to his lawsuit.  Section 36(b) states that "[a]n action may be brought . . . for breach of fiduciary duty in respect of . . . compensation or payments paid by such registered investment company" (past tense), not compensation "paid or that will be paid in the future."[2]

---

[2]  Contrast Section 36(a), which gives the SEC a cause of action if the defendant "has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct . . ."  15 U.S.C. § 80a-35(a) (emphasis added).

2

Courts, including the Supreme Court, have uniformly given Section 36(b) this natural reading,[3] and two federal district courts have very recently made the same ruling.[4]

Courts have also explained the rationale for this rule. For example, in <u>Brever v. Federated Equity Mgmt. Co. of Pa.</u>, 233 F.R.D. 429 (W.D. Pa. 2005), the Court held:

> [A] shareholder's ability to police and challenge any such agreement through an award of damages is specifically limited to one year by operation of the statute [because] Congress sought to advance the twin goals of providing an appropriate check on potential conflicts of interest in setting fee arrangements and limiting the potential for increased costs of litigation and the abusive use of lawsuits.

<u>Id.</u> at 433; <u>see also</u> <u>In re AllianceBernstein Mut. Fund Excessive Fee Litig.</u>, 2006 WL 74439, at *2 n.3 (S.D.N.Y. Jan. 11, 2006) ("In contrast to the five-year period set forth in Section 36(a) for SEC enforcement, Congress sharply limited recovery under Section 36(b) to a one-year time

---

[3]     <u>Daily Income Fund, Inc. v. Fox</u>, 464 U.S. 523, 526 n.2 (1984) ("[R]ecovery is limited to actual damages for a period of one year prior to suit, § 80a-35(b)(3)."); <u>Green v. Nuveen Advisory Corp.</u>, 295 F.3d 738, 743 (7th Cir. 2002) ("Congress enacted § 36(b) to provide a narrow federal remedy . . . damages are recoverable only for the one-year period before the filing of the action."); <u>Grossman v. Johnson</u>, 674 F.2d 115, 122 (1st Cir. 1982) ("Lastly, plaintiff invokes the short one-year limitation period on damages as sufficient reason for exempting s 36(b) cases from the demand provision of Rule 23.1 . . . The truth is, however, that ordinarily the demand requirement could change <u>the particular one-year period for which recovery was allowable</u> but would not reduce <u>the one-year</u> recovery period . . ." (emphasis added)); <u>Fox v. Reich & Tang, Inc.</u>, 692 F.2d 250, 261 (2d Cir. 1982) (delay in making demand might preclude recovery since "Section 36(b) expressly limits recovery to excessive fees paid up to one year prior to the commencement of suit."); <u>King v. Douglass</u>, 973F. Supp. 707, 710 n.4 (S.D. Tex. 1996) ("Recovery is limited to actual damages for a period of one year prior to suit. § 80a-35(b)(3)."); <u>Grossman v. Johnson</u>, 89 F.R.D. 656, 661 n.13 (D. Mass. 1981) ("[T]he statute . . . limits damages to 'actual damages', recoverable only for the period one year prior to the initiation of the action.").

[4]     In <u>Jones v. Harris Assocs. LP</u>, No. 04-8305 (N.D. Ill.), the Court denied plaintiffs' request for post-complaint discovery in part on the basis that "any discovery beyond what the statute would afford would not be relevant." Transcript of <u>Jones v. Harris Assocs. LP</u>, No. 04-8305, at 4:13-16 (N.D. Ill. Dec. 19, 2005) (attached as Exhibit B). In <u>Gallus, et al. v. American Express Financial Corp., et al.</u>, the Court also ruled that Section 36(b) limits recovery to the one-year period prior to suit. <u>Gallus, et al. v. American Express Financial Corp., et al.</u>, Civ. No. 04-4498 (DWF/SRN), slip op. at 3-4 (D. Minn. July 27, 2006) (attached as Exhibit C).

3

period because it wanted to create a limited mechanism with which to test and rectify advisory fees . . .") (citation omitted).[5]

Plaintiffs cite cases that do not support their alternate reading of Section 36(b):

- Forsythe v. SunLife Fin., Inc., 417 F. Supp. 2d 100, 117 (D. Mass. 2006). Defendants read this Court's decision in Forsythe to address the beginning date for recovery, not the end date: "Therefore, this lawsuit having been filed on March 25, 2004, the damages period applicable to the § 36(b) claim thus begins on March 25, 2003."

- Krinsk v. Fund Asset Mgmt., Inc., 715 F. Supp. 472 (S.D.N.Y. 1988), aff'd 875 F.2d 404 (2d Cir. 1989). The complaint in Krinsk was filed on May 16, 1985, and the district court in that case merely noted that, at trial, it "heard *evidence* on the plaintiff's remaining claims: (1) that for the period May 17, 1984 to December 31, 1986, fees were paid to the investment advisor in violation of the advisor's fiduciary duty under § 36(b) . . . ." Id. at 476 (emphasis added). Nothing in the decision indicates any ruling that, if plaintiffs were to prevail, they could actually obtain restitution for the May 17, 1985 to December 31, 1986 period (i.e., the post-suit period for which plaintiffs "claim[ed]" a legal violation), and there was no reason for the trial court to reach that issue -- on the issue of liability, it found "for the defendants . . . and dismisse[d] the complaint." Id.

- Krasner v. Dreyfus Corp., 500 F. Supp. 36 (S.D.N.Y. 1980). Krasner was decided before the many decisions cited above, including the Supreme Court's decision in

---

[5]   In addition, Section 36(b) was the product of three years of legislative work, which began in 1967 with introduction to the House and Senate of H.R. 9510 and S. 1659, respectively. Those bills were prepared by the SEC. Regulation of Investment Companies, Cong. Rec. 11256, 90th Cong. (1967). Both of those bills contained a recovery provision stating "[n]o action shall be maintained pursuant to this subsection to recover compensation paid more than two years prior to the date on which such action was instituted." (See H.R. 9510 at 22, attached at Exhibit D hereto, and S. 1659 at 22, attached at Exhibit E hereto.)  That recovery provision spanned two years instead of one, but was otherwise similar to the one at issue here. (Section 36(b)'s recovery provision states: "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted." See Exhibit A at Section (b)(3).)  In a 1967 statement to the House of Representatives, the Chairman of the SEC described the recovery provision in H.R. 9510 as follows: "[O]nly the advisor would be liable and then only for the portion of any fees paid within two years of the commencement of a suit found to be excessive." Investment Company Act Amendments of 1967: Hearing on H.R. 9510 Before the Subcomm. on Commerce and Finance of the Committee on Interstate and Foreign Commerce, 90th Cong. 700 (1967) (supplementary statement of Hon. Manuel F. Cohen, Chairman, Securities and Exchange Commission) (emphasis added) (excerpts are attached hereto as Exhibit F). In other words, the agency that prepared H.R. 9510 saw its recovery provision not as a starting point for recovery, but as framing a discrete period "within" which recovery was permissible. Id. (emphasis added.)

4

Fox. Further, it is merely a court's ruling on a settlement agreement, and therefore it is not binding precedent on the issue.[6]

- Hunt v. Invesco Funds Group, Inc., 2006 WL 1751900, at *1 n.1 (S.D. Tex. June 22, 2006). Plaintiffs seem to imply that this case adopted their view of Section 36(b)'s recovery period, but in fact the Court stated that "it did not intend to rule on this issue in its June 5 Order, nor does it intend to do so at this time." (The Court merely expressed a view -- apparently preliminary -- that the language of Section 36(b) does not resolve the issue. Id.)[7]

### B. Practical Considerations Further Support the Natural Reading of Section 36(b), and Undermine Plaintiffs' Alternate Reading

Under plaintiffs' reading of Section 36(b), a Section 36(b) suit would serve as a platform for challenging not only advisory contracts approved prior to suit, but also advisory contracts approved post-suit -- as many as happen to be approved during the period of time between complaint and summary judgment (or trial). Since post-suit contracts are by definition being deliberated during the pendency of the lawsuit, plaintiffs' proposal would bring with it an unworkable state of affairs: plaintiffs' counsel in effect monitoring ongoing fee deliberations, in doing so intruding upon, and imposing great burden and distraction upon, the work of the advisory company, as well as the work of the trustees.

By contrast, there is nothing impractical or inefficient about Defendants' reading of Section 36(b). Plaintiffs argue that it would require successive lawsuits, leading to inefficiency, but that is wrong.

First, repeated lawsuits are not somehow necessary. If a Section 36(b) plaintiff were to file a single Section 36(b) lawsuit and lose, that would constitute a judgment that there is

---

[6] See, e.g., County of Orange v. Air Cal., 799 F.2d 535, 538-39 (9th Cir. 1986) ("There is no *stare decisis* effect . . . because the product of the litigation at bar was a Stipulated Judgment . . . ").

[7] Plaintiffs also cite Leinoff v. Louis Milona & Sons, Inc., 726 F.2d 734, 741 (Fed. Cir. 1984), but that is a case about patent law, and, as shown, there is an array of cases addressing the particular statute at issue here.

5

nothing unlawful about the current level of management fees, and the plaintiff would have no reason to wish he had filed a second suit. If on the other hand the plaintiff were to win his suit (something that has never happened), he would be able to obtain restitution to the relevant fund(s) of one year of fees deemed to have been "excessive," and the fact of the judgment would <u>inherently</u> have appropriate prospective impact, in that the trustees and the defendant advisory company would plainly evaluate the significance of the judgment with respect to their overall activities and duties (including fee negotiations), and act accordingly.

<u>Second</u>, to the extent a Section 36(b) plaintiff firmly believes that they will win their suit <u>and</u> is committed to maximizing potential restitution, that plaintiff is of course free to file a second lawsuit prior to the trial of his first, and an appropriate approach in that situation would be for the Court to stay the second action pending the outcome of the first. Being a year old already, the first action will likely be resolved shortly thereafter, and, practically, its outcome would likely have a significant impact on the second suit: if the first suit is dismissed, it may well be that the plaintiff drops the second suit; if on the other hand the first suit results in a judgment for the plaintiff, it may well be that the judgment narrows the issues in the second suit, or results in a settlement. And either way, if the plaintiff chooses to litigate the no-longer-stayed second suit, so be it -- the plaintiff will not have "lost" any potential recovery, and neither of the two suits will involve the situation that plaintiffs advocate here, <u>i.e.</u>, an effort to adjudicate the propriety of management contracts being evaluated <u>during</u> the pendency of the lawsuit.[8]

---

[8] There is a potential "compromise" ruling as to Section 36(b)'s recovery period. A court could theoretically permit recovery of "excess" fees paid after the suit's commencement date <u>if</u> paid pursuant to a management contract approved <u>prior</u> to the suit's commencement date, but bar recovery of "excess" fees paid pursuant to any management contracts approved after the suit's commencement date. (Contracts are approved annually.) Defendants do not believe that such a "compromise" approach is consistent with Section 36(b)'s text and purposes, but it is certainly <u>more</u> in line with them than the approach that plaintiffs propose, <u>i.e.</u>, permitting a 36(b) suit to be used as a platform for adjudication of the appropriateness of advisory contracts that, at the time of suit, did not yet even <u>exist</u>. It would also be consistent with general principles of recovery, to which a court

(continued...)

II. **CONSEQUENTLY, THIS COURT
SHOULD NOT CONSOLIDATE *VAUGHN II*
WITH *VAUGHN I,* AND INSTEAD SHOULD STAY
*VAUGHN II* PENDING THE OUTCOME OF *VAUGHN I***

Vaughn I has been pending since May 2004, and, currently, fact discovery is due to close on December 31, 2006.

While the issue has not been definitively resolved, Defendants understand that this Court views the date-of-suit for all Vaughn I plaintiffs as May 17, 2004, the date that Vaughn I was initially filed.[9]

On that approach, Vaughn I will involve potential recovery as to the period of time from May 18, 2003 until May 17, 2004.

---

[8] (...continued) might look if it were to decide that there is no 36(b)-specific rule already. See Lawlor v. Loewe, 235 U.S. 522, 536 (1915): "Damages accruing since the action began were allowed, but only such as were the consequence of acts done before and constituting part of the cause of action declared on. This was correct." See also Federal Trial Handbook: Civil (4th Ed. 2005), § 67:1 ("General Rules Relating to Damages") ("Damages are limited to the date of the filing of the complaint and may be recovered beyond that date only where it is shown that they have resulted from the original illegal acts that were the subject of the complaint").

[9] Certain of the current Vaughn I plaintiffs became part of Vaughn I only after May 17, 2004: Mr. and Mrs. Hathaway and John Vaughn entered Vaughn I by amendment -- on April 4, 2005 and February 7, 2006, respectively -- in order to keep alive claims that Wicks originally made but could not maintain.

Defendants do not believe that, in such a circumstance, the claims of a "substitute" plaintiff should be deemed to "relate back" to the original complaint, and Defendants explained why in opposition to plaintiffs' motion to add Vaughn as a plaintiff. See Defendants' Opposition to Plaintiffs' Motion to File Second Amended Complaint, July 5, 2005, at 10 (explaining that under Young v. Lepone, 305 F.3d 1 (1st Cir. 2002), relation back requires privity between the plaintiffs); see also Transcript of September 22, 2005 hearing, at 15-18 (same). However, this Court rejected that argument. See Memorandum and Order dated January 19, 2006, at 4 ("The amendment of the complaint to substitute [Vaughn] for Wicks . . . properly relates back to the commencement of the action.")

Defendants reserve their rights on the relation back issue, including the right to raise it with respect to the Hathaways and/or Vaughn on summary judgment and at any trial. However, Defendants understand that, at this stage, this Court (and the plaintiffs) view the date-of-suit for all current Vaughn I plaintiffs as May 17, 2004, the date of the original complaint (instead of -- as Defendants believe is correct -- May 17, 2004 for Gerald Kalbfleisch, April 4, 2005 for Mr. and Mrs. Hathaway, and February 7, 2006 for Vaughn).

7

Fees paid during that period of time (May 18, 2003 until May 17, 2004) were approved during two pre-2004 fee-review processes: the fee-review process which determined fees paid during the period July 1, 2002 to June 30, 2003, and the fee-review process which determined fees paid during the period July 1, 2003 to June 30, 2004.

Vaughn II presents a different situation. It was not filed until August 14, 2006, and it therefore covers the period August 15, 2005 until August 14, 2006. Fees paid during that period were approved in June 2005 and in June 2006, pursuant to 2005 and 2006 fee processes that are not at issue in Vaughn I (assuming Vaughn I proceeds in the manner described above).

Consequently, the consolidation that plaintiffs request would have the effect of significantly expanding the scope of Vaughn I, at a point in time when the parties have already been in engaged in discovery for more than seven months, and the parties should be focusing on efficiently and appropriately completing discovery, in the interests of moving Vaughn I into expert and summary judgment proceedings.[10]

Further, the fee review process in any particular year is an intensive, detailed process extending over a period of months, involving multiple meetings and voluminous documents.[11] Defendants do not believe that it is appropriate -- or consistent with the intent of Congress, which deliberately created a one-year limitation -- for a single 36(b) case to involve

---

[10] See Wright & Miller § 2383 (consolidation may be denied if it "will cause delay in the processing of one or more individual cases"); Manual for Complex Litigation § 20.11 ("Cases should not be consolidated if it would result in increased delay and other unnecessary burdens on parties, such as having to participate in discovery irrelevant to their cases."), § 11.631 (consolidation "is also inappropriate where its principal effect will be to magnify unnecessarily the dimensions of the litigation").

[11] The trustees' evaluation of management and 12b-1 fees involves, each year, (i) three voluminous binders of detailed information (the "black books"); (ii) supplemental materials, i.e., additional materials provided pursuant to special requests of the trustees (e.g., concerning economies of scale); (iii) 12b-1 reports, the quarterly reports to the trustees containing detailed information concerning the prior quarter's expenditures of 12b-1 fees; and (iv) "blue books," which are monthly binders provided to the trustees on an array of issues, including fees.

adjudication of <u>many</u> fee review processes, even ones that occurred after the suit was filed.[12] This would impose significant additional burden with respect to discovery, experts, summary judgment and -- if necessary -- trial. It would also inherently detract from the appropriate focus on <u>each</u> of those processes, resulting in a case which tends toward generalizations, rather than specifics.

Further, the sprawling case that plaintiffs seek will require adjudication of the 200<u>6</u> review process. That just-completed process resulted in the fees that are being paid now, <u>and which will be paid until June 30, 2007</u>. As a result, plaintiffs will argue that they need discovery (in some form) at least through that date. (In their pending motion to compel, plaintiffs indeed are seeking such materials as the 200<u>7</u> black books.) But by that time next year, Defendants expect that <u>Vaughn I</u> will be in the expert and/or summary judgment stage, and fact discovery cannot sensibly be taking place in <u>parallel</u> with those proceedings. This case management problem will not exist unless <u>Vaughn I</u> and <u>Vaughn II</u> are consolidated, because, <u>absent</u> consolidation, <u>Vaughn I</u> simply will not adjudicate the just-ended 2006 fee review process, and will not involve the fees that are now being paid as a result of that process.[13]

Defendants have suggested to plaintiffs that the better course would be for <u>Vaughn II</u> to be stayed pending this Court's resolution of <u>Vaughn I</u>. Under that approach, the

---

[12]   See <u>Krinsk v. Fund Asset Mgmt., Inc.</u>, 1986 WL 205, at *4 (S.D.N.Y. May 9, 1986) ("Congress chose to limit recovery of damages by a shareholder to a short one-year period . . . . Congress was not intending to create a broad remedy under Section 36(b) but rather a mechanism whereby the current level of management fees would be policed, tested and, if necessary, rectified. This *testing* mechanism was expressly referred to as such by Rep. Staggers, the bill's manager, who stated that '[b]oth the Senate and the House versions contain important provisions for testing the level of management fees.'" (citing S. Rep. No. 91-184, at 5 (1970); H.R. Rep. No. 91-1382, at 201 (1970); 116 Cong. Rec. 39, 344 (1970)).

[13]   See <u>Data Gen. Corp. and Data Gen. Svc., Inc. v. Grumman Sys. Support Corp.</u>, 834 F. Supp. 477, 487 (D. Mass. 1992) (in evaluating a motion for consolidation, the court "should 'weigh the prospective benefits of consolidation, in terms of convenience to the parties and judicial economy against the extent of any confusion, delay or prejudice that might result from consolidation.'").

9

parties and this Court could adjudicate and resolve the <u>Vaughn I</u> claims, which have been pending since 2004. That adjudication would be appropriately focused and manageable; in addition, it would not involve any of the case management difficulties associated with litigating the just-ended 2006 fee review process. Thereafter, the parties and the Court could address <u>Vaughn II</u> in light of the outcome of <u>Vaughn I</u>.

      Such an approach is well within this Court's inherent equitable powers. In <u>Landis</u>, the United States District Court for the District of Columbia stayed certain lawsuits challenging the constitutionality of a federal statute, pending the outcome of a suit brought by the SEC in another court concerning the same statute, and all subsequent appeals. The Supreme Court remanded for appropriate modification of the stay (which it deemed too lengthy), but made clear that a district court has power to enter a "moderate" stay in such circumstances, calling the power to stay proceedings "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants," and stating that "[w]e must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions." <u>Id.</u> at 255-56. A brief stay of <u>Vaughn II</u>, as the parties and the Court work toward resolution of <u>Vaughn I</u>, would be the kind of "moderate" stay that is an appropriate exercise of this Court's equitable powers.

## CONCLUSION

      For the foregoing reasons, Defendants ask that this Court deny plaintiffs' motion to consolidate, and stay <u>Vaughn II</u> pending this Court's resolution of <u>Vaughn I</u>.

## ORAL ARGUMENT REQUESTED

Pursuant to Local Rule 7.1(D), Defendants respectfully request oral argument on: (i) Plaintiffs' motion to consolidate Civ. No. 06-11438-GAO (<u>Vaughn II</u>) with Civ. No. 04-

10

10988-GAO (Vaughn I); and (ii) Defendants' Motion To Stay Civ. No. 06-11438-GAO ("Vaughn II") Pending This Court's Resolution Of Civ. No. 04-10988-GAO ("Vaughn I").

| | |
|---|---|
| Dated: September 26, 2006<br>Boston, Massachusetts | Respectfully submitted,<br><br>/s/ James R. Carroll<br>James R. Carroll (BBO #554426)<br>David S. Clancy (BBO #636031)<br>Scott T. Lashway (BBO #655268)<br>SKADDEN, ARPS, SLATE,<br> MEAGHER & FLOM LLP<br>One Beacon Street<br>Boston, Massachusetts  02108<br>(617) 573-4800<br><br>jcarroll@skadden.com<br>dclancy@skadden.com<br>slashway@skadden.com |

**CERTIFICATE OF SERVICE**

I, Scott T. Lashway, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 26, 2006.

September 26, 2006                                    /s/ Scott T. Lashway

11