UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---

JOHN J. VAUGHN, GERALD A.
KALBFLEISCH, MICHAEL HATHAWAY, and
MYRTLE HATHAWAY,

           Plaintiffs,

v.

PUTNAM INVESTMENT MANAGEMENT,
LLC and PUTNAM RETAIL MANAGEMENT
LIMITED PARTNERSHIP

           Defendants.

Civil Action No. 06-11438 (GAO)
and Civil Action No. 04-10988 (GAO)

---

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY

#### I.    INTRODUCTION

In support of Putnam's motion to stay (and opposition to Plaintiffs' motion to consolidate), Putnam again presses its wholly incorrect contention that Section 36(b) of the Investment Company Act of 1940 limits Plaintiffs' damages to a single one-year period. For the reasons set forth below, Putnam's argument is incorrect. Section 36(b) precludes recovery of damages incurred more than one year *prior* to the filing of a complaint, but does not limit post-filing damages. Accordingly, *Vaughn I* includes the damages period covered by *Vaughn II* and consolidation should be granted.[1] Staying *Vaughn II* would serve no purpose because *Vaughn I* makes the very same claims (including seeking damages for the same time period) as *Vaughn II*.

Even if the Court accepts Putnam's position about the damages period, the two matters should still be consolidated for the reasons set forth in Plaintiffs' Motion to Consolidate.

---

[1] In its Motion to Stay, Putnam refers to matter No. 1:04-CV-10988-GAO as *Vaughn I* and matter No. 1:06-CV-11438-GAO as *Vaughn II*. Plaintiffs use the same nomenclature herein.

Furthermore, a stay of *Vaughn II* is not at all appropriate because Putnam has not met its heavy burden of showing that it will suffer hardship if a stay is not entered. Even with different damages periods, the matters involve the very same parties, mutual funds, claims, and theories; they raise the very same issues of law; and they have an overwhelming number of facts in common. Contrary to Putnam's assertions, consolidation of *Vaughn II* with *Vaughn I* will not significantly expand or delay this litigation. Under the circumstances, consolidation, and not a stay, is the only appropriate relief.

## II.   ARGUMENT

A.   Putnam's Request for a Stay of *Vaughn II* is Illogical Because *Vaughn I* Claims Damages from the Same Time Period.

Putnam's entire argument for a stay is premised upon its faulty contention that the damages periods for *Vaughn I* and *Vaughn II* are different. Contrary to Section 36(b)'s plain meaning and without any controlling authority in support, Putnam argues that Section 36(b) limits recovery to excessive fees paid during the one-year period preceding the filing of a complaint. As set forth below, this argument is incorrect. Section 36(b) provides that the damages period does not *begin* until one year prior to the time the lawsuit is filed, but does not provide that damages stop at any particular time.

   1.   The Language of Section 36(b) Allows Plaintiffs to Recover Damages for the Excessive Fees Paid by the Funds During the Period Following the Filing of the Complaint.

Any analysis of the meaning of any statute must begin with the statute's language. Here, the statute at issue unambiguously provides a temporal limit only on *pre-filing* damages. Section 36(b) reads, in relevant part, "No award of damages shall be recoverable for any period prior to one year before the action was instituted." 15 U.S.C. § 80a-35(b)(3). Any limitation on post-filing damages would involve creating a new limitation out of whole cloth.

Even if the statute's plain meaning could somehow be viewed as ambiguous, the longer damages period applies, nonetheless, under the well-settled presumption that ambiguous language in a remedial statute should be construed broadly to effectuate its purpose. *See e.g. Hogar Agua Y Vida En El Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177, 181 (1st Cir. 1994) (remedial statute's ambiguous language should be generously construed consistent with its reformative mission). The Supreme Court has recognized that Section 36(b) has a "broad remedial purpose" and that allowing security holders to bring an action "ensures that…the company's rights under the statute can be fully vindicated by plaintiffs authorized to act on its behalf." *Daily Income Fund v. Fox*, 464 U.S. 523, 541 (1984). Not allowing Plaintiffs to recover the excessive fees retained by Putnam once suit is filed would frustrate, not vindicate, the Funds' right to have an investment advisor fulfill its fiduciary duty under Section 36(b). If the statute were construed to limit damages to a one-year period only, investment advisors such as Putnam would have little incentive to discontinue charging excessive fees, or could even *increase* excessive fees with impunity once suit is filed, forcing investors to file new actions successively.

In the latest incarnation of its argument, Putnam now points to the portion of Section 36(b) that authorizes actions for breach of fiduciary duty in respect of payments "paid" by the mutual fund.[2] (Putnam's memorandum at 2). Nothing in this section, however, requires that all of the excessive fees recovered in a 36(b) action must have been paid *at the time the action is commenced*. This portion of the statute simply identifies where the investment adviser's fiduciary duty originates (its receipt of compensation paid by a mutual fund) and the conduct for

---

[2] The statute provides, in relevant part, "[T]he investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company… An action may be brought…by a security holder of such registered investment company on behalf of such company, against such investment adviser… for breach of fiduciary duty in respect of… compensation or payments paid by such registered investment company."

which an investment advisor may be liable under the statute (*i.e.* breach of that fiduciary duty). This portion of the statute does not create a temporal limit on these substantive rights and obligations. *See Martin v. Hadix*, 527 U.S. 343, 353 (1999) (rejecting "statutory arguments…that …stretch the language of [the statute] to find congressional intent on the temporal scope of that section when…[the statute] is better read as setting *substantive* limits…"). Indeed, where the statute does address temporal limits, it does so in plain language limiting certain damages from the pre-complaint period (*i.e.* "No award of damages shall be recoverable for any period prior to one year before the action was instituted.").

Putnam's efforts to contrast the language of Section 36(b) with Section 36(a), 15 U.S.C. §80a-35 (which provides for SEC injunctive actions) is equally unavailing. (*See* Putnam Memorandum, at 2 n.2.). That section simply provides that the SEC has jurisdiction to obtain injunctive relief where no breach of fiduciary duty has yet occurred, but is about to occur. That section is entirely irrelevant to the issue at hand.

2.  The Case Law Supports Plaintiffs' Position.

The case law supports the Plaintiffs' reading of the statutory language. *See Hunt v. Invesco Funds Group*, 2006 WL 1751900 *1 (S.D. Tex. June 22, 2006) (recognizing that language of Section 36(b) does not limit damages for period of time following commencement of action) (attached as Exhibit A). Indeed, at least one case before this Court is proceeding with a damages period that continues after the filing of the complaint. *See Forsythe v. Sun Life Financial*, 2006 WL 148935 (D. Mass. Jan. 19, 2006) (O'Toole, J.).[3] *See also Krinsk v. Fund Asset Mgmt., Inc.*, 715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd* 875 F.2d 404 (2d Cir. 1989) (trial of

---

[3] The *Forsythe* plaintiffs filed class action claims with a class period that began five years before and ended six days after the complaint was filed. *Id.* at *11. No separate damages period for the 36(b) claim was made. *Id.* The court agreed with the defendants that 36(b) damages did not begin until one year before suit was filed. *Id.* The Court did not consider whether damages continued beyond the six days because the alleged damages period did not include that period.

excessive fees for a time period beginning from the one year period before suit was filed, past the filing of the complaint, and continuing until shortly before trial); *Krasner v. Dreyfus Corp.*, 90 F.R.D. 665, 672 (S.D.N.Y. 1981) (stating recovery period begins no earlier than one year before suit commenced and analyzing settlement on basis that damages continue after action filed).

Further, the case law interpreting similar statutes supports Plaintiffs' position. For example, Section 36(b)'s damage provision is strikingly similar to the statutory time limitation for patent infringement actions.[4] The Federal Circuit has stated that that statute "only restricts the extent one can recover *pre-filing* damages." *Leinoff v. Milona*, 726 F.2d 734, 741 (Fed. Cir. 1984) (emphasis supplied).

Putnam strains to distinguish the decisions cited by the plaintiffs. For example, Putnam argues that *Krinsk v. Fund Asset Mgmt.*, 715 F.Supp. 472 (S.D.N.Y. 1988), *aff'd* 875 F.2d 404 (2d Cir. 1989) does not support Plaintiffs' position because it does not include an express ruling about post-complaint damages. Putnam's argument flies in the face of what actually occurred at trial: The trial court (1) allowed evidence of post-complaint excessive fees and (2) decided, as a substantive matter, that the fees for that time period were not excessive. Obviously, it would not have done so if the fees for that time period are irrelevant. And, contrary to Putnam's assertion, the court expressly recognized in *Hunt v. Invesco Funds Group,* 2006 WL 1751900 (S.D. Tex. June 22, 2006) that the language of Section 36(b) "does not limit damages for the period of time *following* the filing of the action." *Hunt*, at *1 (emphasis in original).[5] These decisions and the others set forth above support Plaintiffs' proper construction of Section 36(b)'s plain language.

---

[4] 35 U.S.C. § 286 provides, in relevant part, "[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint."

[5] The Court ultimately declined to decide whether damages from that period are recoverable because the case was being transferred to another district in accordance with an order from the Judicial Panel on Multidistrict Litigation.

3.    The Case Law Cited By Putnam is Unavailing.

No court has provided controlling authority requiring the Court to accept Putnam's damage-period interpretation. No controlling decision has (1) squarely considered when Section 36(b) damages end and (2) concluded that they end when suit is filed. Faced with this problem, Putnam presents a distorted picture of what courts have "ruled" to create the impression that a Section 36(b) plaintiff's recovery ends with the filing of the complaint. However, none of the reported cases Putnam cites were even presented with the issue of when damages end. For example, Putnam cites dicta from *Daily Income Fund v. Fox*, 464 U.S. 523 (1984), *Grossman v. Johnson*, 674 F.2d 115 (1st Cir. 1982) and *Grossman v. Johnson*, 89 F.R.D. 656 (D. Mass. 1982), but these cases do not support Putnam's position. In *Daily Income Fund*, the Court in a footnote provided a quick summary of selected portions of Section 36(b). The Court was not presented with the issue of when the damages period ends, nor did it hold that damages stop accruing when suit is filed.[6] The Courts in the *Grossman* decisions were also not presented with the question of when damages end.

The reported decisions Putnam cites from other jurisdictions similarly do not hold anything about post-Complaint damages.[7] These cases merely addressed the <u>pre-suit</u> limitations period found in Section 36(b), and should not be construed as an opinion on when damages end.[8]

---

[6] In a footnote summarizing selected portions of Section 36(b), the Court merely stated that "recovery is limited to actual damages for a period of one year prior to suit." *Fox*, 464 U.S. at n.2. This statement is consistent with the fact that the limitation applies to pre-suit damages. Additionally, in his concurring opinion, Justice Stevens observed that 36(b) limits recovery to "actual damages incurred *beginning* one year prior to commencement of suit." *Id.* at 546 (emphasis added). On this point, there was no disagreement between Justice Stevens and the majority.

[7] The courts in *Green v. Nuveen Advisory Corp.*, 295 F.3d 738 (7th Cir. 2002), *Fox v. Reich & Tang, Inc.*, 692 F.2d 250 (2d Cir. 1982) and *King v. Douglass*, 973 F.Supp. 707 (S.D. 1996), were not presented with the issue of when damages end. Indeed, the language Putnam quotes from *Green* and *King* were merely those courts' attempts to summarize Section 36(b)'s language, not perform statutory construction.

[8] Putnam also relies upon a transcript from a motion hearing in Illinois. The trial court's comments in *Jones v. Harris* are cryptic at best: "if [Section 36(b)] circumscribes damages and limits it, then any discovery beyond what [Section 36(b)] would afford would not be relevant." The unreported Minnesota trial court decision of *Gallus v. American Express* is contrary to the plain meaning of Section 36(b) and is not otherwise supported by authority.

The common denominator in all of these cases is that the courts were presented with issues other than the issue of whether damages continue after the suit is filed. In each of the cases, the courts make general statements about the limitations period in Section 36(b). The language used in *Krinsk v. Fund Asset Management, Inc.*, 1986 WL 205, at *4 (S.D.N.Y. May 9, 1986) is typical. There, the court stated that "Congress chose to limit recovery of damages by a shareholder to a short one year period." Obviously, because the Court considered post-suit fees when it ultimately tried the case (*see supra*, at 5), this language was intended to address only the one-year limitation on *pre-suit* damages and was not intended to be a holding on *post-suit* damages. The same is true of the other cases cited by Putnam and discussed above, none of which were presented with the issue at hand.

Finally, Putnam's reliance on cases discussing Section 36(b)'s legislative history are unavailing. Putnam's quotations from the legislative history explain the policy behind limiting damages to one year before the filing of the complaint, and provide no rationale for ending damages at the time the complaint is filed. The courts' discussions in *Brever v. Federated Equity Mgmt. Co.*, 233 F.R.D. 429 (W.D. Pa. 2005) and *In re Alliancebernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) were merely in support of those courts' holdings that damages are not recoverable for the period prior to the one year before suit was filed. Neither court was presented with an issue about whether post-filing damages were recoverable, and neither case held that damages end when suit is filed.

Putnam also quotes the trial court's discussion of Section 36(b)'s legislative history in *Krinsk v. Fund Asset Management, Inc.*, No. 85 Civ. 8428, 1986 WL 205 (S.D.N.Y May 9, 1986) for the proposition that a single Section 36(b) action should not adjudicate many fee review processes. (Putnam's Memorandum, at 9). However, as set forth above, the subsequent

history of that case reveals that the very same court tried the issue of excessive fees for a time period beginning from the one year period before suit was filed, past the filing of the complaint, and continuing until shortly before trial. Obviously, the language Putnam quotes from the earlier case must be interpreted as addressing only the legislative history relevant to the pre-suit limitations period.[9]

### 4. Putnam Presents No Legitimate "Practical Considerations" to Support Its Interpretation of the Applicable Damages Period.

Putnam argues that there are "practical considerations" supporting its position that damages are not recoverable for the time period after the lawsuit is commenced. But such speculative arguments should not cloud the Court's statutory construction. *See Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 277 n.2 (1st Cir. 1999) (when a statute's plain meaning resolves the issue, the court "need not rummage through the legislative history or search for other interpretive aids"). Putnam's discussions of the alleged "practical considerations" provide no rationale for overriding the clear statutory language.

Putnam's first contention is that its position about the damages period would not breed successive lawsuits because the first case would be treated as a test case. (Putnam's Memorandum, at 5-6). This highly speculative argument fails. Putnam's argument incorrectly assumes that the first action would be resolved within one year, when the next action would have

---

[9] The statement Putnam cites in note 5 of its memorandum likewise does not support Putnam's statutory construction. First, the statement was not made in support of the bill that actually became Section 36(b). Second, the quoted statement is not inconsistent with Plaintiffs' position that the limitation applies to the pre-filing period only.

to be filed. As *Vaughn I* amply demonstrates, this is an entirely unrealistic assumption.[10] Absent a ruling, plaintiffs would be forced to file a second case to avoid a lapse in time where the trustees would not be under scrutiny. It is clear that Putnam's interpretation would encourage repeated lawsuits and interfere with the orderly administration of justice.

Implicitly acknowledging that its damage-period position would result in the filing of multiple lawsuits, Putnam next suggests that actions filed after the first action should be stayed until the first action is resolved. Of course, this argument has no bearing at all on the proper statutory construction of Section 36(b). Furthermore, a party seeking a stay has a heavy burden to demonstrate prejudice or burden if the stay does not enter. (*See infra*, at 10-11). Putnam's summary argument about staying successively-filed actions *as a general matter and without particularized proof of prejudice* does not meet its burden.

Putnam also complains that allowing Section 36(b) plaintiffs to recover damages from the post-complaint period will somehow distract the trustees and advisory companies during fee deliberations. (Putnam's Memorandum, at 5). However, as explained above, if Putnam's damage-period construction were accurate (which it is not), then shareholders would file successive lawsuits to avoid any lapse in the damages period. This means that there would be no practical difference in the fee deliberation process. Either way, fund advisors and the trustees would perform their work under actual or anticipated litigation. Moreover, Putnam's construction would deprive shareholders from recovering fees paid by the Funds after the lawsuit was filed under advisory contracts approved within the one year before suit is filed, despite the

---

[10] *Vaughn I* was filed in May 2004. Nearly seventeen months later, and with less than three months left for fact discovery under the current scheduling order, Putnam has not completed its hard copy production of documents, has refused to inform Plaintiffs when that production will be completed, has not produced a single e-mail (other than a relatively small number of e-mails produced incidentally as part of its hard copy production), and has not produced any institutional client contracts (despite promising in July 2006 that that production would start "soon"). Putnam has recently suggested to Plaintiffs that discovery (and all of the other deadlines under the scheduling order) be extended an additional three months.

fact that such recovery would have no impact on fee deliberations (because those deliberations would have concluded). Putnam recognizes the fallacy of its primary position (Putnam's Memorandum, at 6 n.8), but Putnam's "compromise" position (*i.e.* permitting plaintiffs to recover damages after suit is filed with respect to management contracts approved prior to suit) cannot supplant the proper construction of the recovery period; namely, that Section 36(b) does not limit plaintiffs to pre-filing damages.

B.  *Vaughn II* Should Be Consolidated with *Vaughn I*, Not Stayed.

Putnam does not dispute in its papers (and therefore implicitly concedes) that *Vaughn I* and *Vaughn II* involve the very same parties, mutual funds, claims, theories, and issues of law, as well as significant commonality of facts. Instead, Putnam argues that consolidation of these matters would be a hardship to Putnam, and *Vaughn II* should therefore be stayed.[11]

Putnam's discussion of a stay ignores the hardship to Plaintiffs that would result from further delay. Largely because of Putnam's dilatory tactics, *Vaughn I* already has been pending for almost seventeen months. Indeed, Plaintiffs are still waiting for Putnam to complete its hard copy document production and to start its e-mail production.[12] Putnam's request for a stay is just another example of its continuing strategy to delay the adjudication of the excessive fees it charges the Funds. Indeed, Putnam can be expected to undertake the same dilatory strategies in *Vaughn II* with the result that, absent consolidation, it will be years before that case is tried. Where, as here, a stay will result in a significant delay in the adjudication of the claims of the party resisting the stay, the moving party bears the heavy burden of demonstrating hardship or inequity. *See Muller v. M.D.Sass Assoc., Inc.*, 1992 WL 80938 *3 (April 22, 1992 D.N.J.)

---

[11] Putnam argues only that it would be burdened if a stay is not ordered and the matters are consolidated. Putnam does not identify any burden that would result if *Vaughn II* is not stayed and, instead, is allowed to proceed in the usual course (without consolidation).

[12] *See* supra n.10.

BN1 35034503.1

(attached as Exhibit B); *see also Landis v. North American Co.*, 299 U.S. 248, 255 (1936) (party seeking stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.").[13]  Putnam has not met its burden.

    1.    <u>Consolidation Will Not Materially Expand *Vaughn I*, and Putnam Will Not be Prejudiced or Burdened.</u>

The only alleged hardship articulated by Putnam is that consolidation will "significantly expand" *Vaughn I*. This is simply not true. If Section 36(b) is properly construed to allow Plaintiffs to recover damages for the excessive fees the Funds paid after *Vaughn I* was filed, then *Vaughn I* includes the damages period claimed in *Vaughn II* and consolidation should be allowed as a matter of course. Even if Putnam were correct in its statutory construction (which it is not), there is significant overlap in the two actions. Both actions will require an examination of the so-called *Gartenberg* factors, which will involve as to both actions: (1) analyzing economies of scale by looking at many overlapping years of financial data; (2) the identical analysis of comparing fees charged and the services provided to the Funds, on the one hand, and Putnam's institutional clients, on the other; (3) examining the (unchanged) independence of the trustees; (4) examining Putnam's fall-out benefits; and (5) analyzing Putnam's profits earned on identical fee schedules.

Indeed, if Putnam's position is correct, the only difference between the actions would be that the damages period for *Vaughn I* runs May 18, 2003 through May 17, 2004 and the damages

---

[13] Putnam relies on *Landis* in support of its Motion to Stay. While the decision makes clear that parties moving for a stay have a heavy burden, the underlying facts of that decision do not support a stay here. In *Landis*, the two actions at issue were pending in different courts and involved constitutional questions presenting "novel problems of far-reaching importance to the… public." *Landis*, 299 U.S. at 256. However, *Vaughn I* and *Vaughn II* will both be tried by this Court so the cases can and should be consolidated, and the common issue to be decided is whether Putnam breached its fiduciary duty to the Funds. This is simply not a case of "extraordinary public moment," *id.*, at issue in *Landis*.

11

period for *Vaughn II* runs August 15, 2005 through August 14, 2006. But these different damages periods would not present the "case management difficulties" identified by Putnam, nor would it require substantial documents to be produced through trial. Under Putnam's statutory construction, damages in *Vaughn II* would end on August 14, 2006. The fee deliberations for the contract in effect during that time period would have concluded by June 30, 2006. (*See* Putnam's Memorandum, at 8.) Putnam has already produced the 2006 black books and many (although not all) of the key documents Plaintiffs need from this period. Putnam cannot credibly complain that producing the remainder of the discoverable documents from this now-concluded fee review process is unmanageable.[14]

While Putnam states that consolidation would add "significant additional burden with respect to discovery, experts, summary judgment and… trial," it is readily apparent that just the opposite is true. Consolidation of the nearly identical *Vaughn I* and *Vaughn II* matters will promote efficiency because of the overwhelming commonality between the actions, as described in Plaintiffs' Motion to Consolidate, including the same Funds, parties, theories, and issues of fact and law. On the other hand, staying *Vaughn II* (and not consolidating it with *Vaughn I*) would mean that this Court and the parties would have to repeat their efforts. This tremendous waste of judicial and attorney resources should not be permitted.

C.  *Vaughn I* and *Vaughn II* Should Be Consolidated.

For the reasons explained in Plaintiffs' Motion to Consolidate, *Vaughn I* and *Vaughn II* should be consolidated. Simply put, these matters have the very same parties, Funds, claims, and theories; they raise the very same issues of law; and they have numerous facts in common. Furthermore, consolidation will avoid undue burden on the Court, and save time, effort and

---

[14] Plaintiffs' pending Motion to Compel seeks a limited number of categories of documents through trial premised upon the correct statutory construction. Under Putnam's construction, this list would be narrower.

expense in litigating separate actions. Putnam's transparent effort to stall the scrutiny of its fees should be rejected.

### III. CONCLUSION

For the foregoing reasons, Putnam's Motion to Stay should be denied.

Respectfully submitted,

/s/ Lisa A. Furnald
David E. Marder (BBO #552485)
Marc N. Henschke (BBO #636146)
Lisa A. Furnald (BBO #631059)
Jonathan D. Mutch (BBO #634543)
Meghan E. Walt (BBO #658971)
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: lafurnald@rkmc.com
(617) 267-2300

Of Counsel:

Thomas R. Grady (admitted *pro hac vice*)
Grady & Associates
720 Fifth Avenue South
Suite 200
Naples, FL 34102

Dana Foster (admitted *pro hac vice*)
Ackerman, Link, & Sartory, P.A.
222 Lakeview Avenue, Suite 1250, Esperante
West Palm Beach, FL 33401

Dated: October 13, 2006

BN1 35034503.1

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Plaintiffs respectfully request a hearing on the issues raised in Defendants' Motion to Stay.

## CERTIFICATE OF SERVICE

I, Lisa A. Furnald, hereby certify that on October 13, 2006, Plaintiffs' Opposition to Defendants' Motion To Stay was served electronically through the ECF System and by first class mail, postage prepaid, to those counsel of record indicated as non-registered ECF participants.

    /s/ Lisa A. Furnald
Lisa A. Furnald
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: lafurnald@rkmc.com
(617) 267-2300

BN1 35034503.1