# EXHIBIT B

C
Briefs and Other Related Documents
Muller v. M.D. Sass Associates, Inc.D.N.J.,1992.Only the Westlaw citation is currently available.

United States District Court,D. New Jersey.
Richard MULLER, et al., Plaintiffs,
v.
M.D. SASS ASSOCIATES, INC., et al., Defendants.
**Civ. A. No. 91-3762.**

April 22, 1992.

Laurence B. Orloff, Orloff, Lowenbach, Stifelman & Siegel, Roseland, N.J., for plaintiffs.
Ronald M. Sturz, Hannoch Weisman, Roseland, N.J., Schulte Roth & Zabel, New York City, for defendants.

OPINION

WOLIN, District Judge.
***1** Before the Court is defendants' motion to stay, or alternatively to dismiss, plaintiffs, complaint. For the reasons expressed below, the Court denies defendants' motion to stay and this Court grants in part and denies in part defendants' motion to dismiss. specifically, this Court will grant defendants' motion to dismiss as to plaintiffs state law claims and will deny defendants' motion as to plaintiffs' ERISA claim brought against Sass in his individual capacity. Furthermore, the Court will grant defendants' motion to dismiss as to plaintiffs cause of action brought under § 206(1) of the Investment Advisers Act but will deny defendants' motion as to § 206(2) of the Investment Advisers Act.

I. BACKGROUND

Plaintiffs Richard Mueller, Robert Contini, Martin Gillen, and Jack Hall are trustees (the "Trustees") of the Teamsters Local 641 Pension Fund (the " Fund"). The Fund is a qualified employee benefit plan under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

Defendant M.D. Sass Associates ("Sass Associates" ) managed and supervised the investment of the Fund's assets that are the subject of this action. Defendant Martin D. Sass ("Sass") is the president, a director, and the principal shareholder of Sass Associates. Sass personally managed and supervised the investment of the Fund's assets that are the subject of this action, and he alone reported to and communicated with the Trustees regarding the investments.

Sass Associates had authority to purchase, sell, or exchange stocks, bonds, or other securities or investments consistent with the Fund's conservative, low-risk investment objectives. On July 16, 1987, the Fund and Sass Associates entered into an Investment Management Agreement for Equity and Balanced Accounts (the "Investment Management Agreement"). The Investment Management Agreement provided, *inter alia,* as follows:
All securities acquired for the Fund and security positions reflected in a report to [the Fund] will be deemed to be in compliance with any investment restrictions applicable to the Fund and will be deemed approved by [the Fund] as appropriate investments for the Fund unless written notice to the contrary is received by [Sass Associates] from [the Fund] within 30 days of the first notice of any such acquisition or position.

In the Investment Management Agreement, Sass Associates also represented that it was registered as an "investment adviser" under the Investment Advisors Act of 1940, as amended (the "Act"), *see* 15 U.S.C. § 80b-14, and that it was a fiduciary under ERISA. *See* 29 U.S.C. § 1002(21)(A).

In its capacity as an adviser to the Fund, Sass Associates caused the Fund to invest in taxable

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

municipal bonds. In particular, the Fund purchased the following bonds that are the subject of this action (the "Bonds"): (1) on October 14, 1986, $1,000,000 face value of El Paso Texas Housing Finance Bonds, (2) on February 13, 1987, $500,000 face value of El Paso Texas Housing Finance Bonds, (3) on March 19, 1987, $2,000,000 face value of Memphis Tennessee Health Bonds, and (4) on November 2, 1989, $1,000,000 face value of Louisiana State Agriculture Bonds.

***2** The Bonds and other taxable municipal securities were promoted by Drexel Burnham Lambert ("Drexel") and were backed by guaranteed investment contracts ("GICs") issued by Executive Life Insurance Company ("Executive Life"). In November, 1986 the California Department of Insurance (the "Department") made two determinations that affected GICS. First, the Department concluded that California insurers, including Executive Life, were not authorized to issue or enter into GICS. Second, the Department took the position that GICs were debt securities of an insurer, rather than insurance products. This distinction is significant because a person would have a lower priority status as a creditor of an insurer than as an insurance policy holder. Effective January 1, 1989, California enacted legislation consistent with each of the Department's positions.

In return for issuing GICS, Executive Life received a portion of the proceeds from the offerings of the Bonds and other taxable municipal securities upon closing. Executive Life invested heavily in the so-called "junk bond" market, mostly through Drexel. This market declined in 1988 and 1989. As a result, Executive Life incurred significant losses in 1989 and 1990. On April 11, 1991 Executive Life's property and assets were placed in the legal custody of the Los Angeles Superior Court under the supervision of Judge Lewin (the " conservatorship proceeding").

At the time the Fund purchased the Bonds, Standard & Poor's gave an "AAA" rating to Executive Life's claims paying ability and to the Bonds themselves. Subsequently, however, Standard & Poor's downgraded Executive Life's claims paying ability and the Bonds to an "All rating.

The price at which the Bonds traded also decreased. On June 24, 1987, Sass Associates sold $500,000 in face value of the Memphis Tennessee Health Bonds for a loss of $37,330. On June 6, 1991, the Fund sold all of its Louisiana State Agriculture Bonds for a loss of $698,640. The Trustees allege that by August 8, 1991, the remainder of the Bonds held by the Fund had a market value of $450,000 and that the Fund therefore had an unrealized loss of $2,464,054.44.

On August 23, 1991, the Trustees commenced this action against Sass Associates and Sass. The Trustees allege the following counts in their complaint: (1) breach of fiduciary duty under § 404 of ERISA, 29 U.S.C. 1104, (2) violation of § 206 of the Act, 15 U.S.C. § 80b-6 (alleged against Sass Associates only), (3) breach of fiduciary duty under the common law of trusts, and (4) negligence.

Sass Associates and Sass move to stay, or alternatively to dismiss, the complaint. Defendants seek to stay the complaint pending resolution of two related actions. The first related action is the conservatorship proceeding. In that action, on November 15, 1991, Judge Lewin determined that, contrary to the position taken by the Department, GICs were insurance policies and thus were entitled to the same priority ("class 5 priority") as other policies issued by Executive Life. An appeal of this decision is pending before the California Court of Appeal. If the decision is upheld, and if a bid by Altus/MAAF, a French consortium, for the assets of Executive Life is approved, the Fund potentially could recover approximately 70 to 80 cents on the dollar with respect to the Bonds.

***3** The second related action is pending in the Eastern District of Louisiana, where at least sixteen class actions were consolidated under the title *In re Taxable Municipal Bond Securities Litigation,* Master File No. MDL-863 (the "MDL action"). The class actions arose as early as 1990 when owners of taxable municipal bonds brought suits against issuers, underwriters, Executive Life, Michael Milken, and others. The defendants in the instant action are not named in the MDL action.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The court in the MDL action has not yet certified a class. The proposed plaintiff class, however, would include the Fund. Some of the complaints allege that owners of the taxable municipal bonds were defrauded by defendants who did not inform the owners that proceeds of the taxable municipal bonds would be invested in "junk bonds" and that there was questionable authority for the issuance of taxable municipal bonds and GICS.

## II. DISCUSSION

### A. *Motion to Stay*

Defendants argue that this action should be stayed pending the outcome of the conservatorship proceeding and the MDL action. In *Landis v. North American Co.,* 299 U.S. 248 (1936), the Supreme Court discussed a court's power to grant a motion to stay litigation. Justice Cardozo wrote as follows:

[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Id.* at 254-55. The Supreme Court also noted that the party seeking a stay has the burden of proving that a stay is warranted. That party "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.* at 255. Because a stay of the instant action pending resolution of the conservatorship proceeding and the MDL action would result in a significant delay in adjudication of the Trustees' claims, defendants bear the burden of showing hardship or inequity.

In support of their motion for a stay, defendants argue that the MDL action definitely will determine whether the bonds were "fraudulent" in nature. Although the factual bases for the Trustees' claims under ERISA and under the Act are similar to some of the claims in the MDL action, the latter case necessarily will involve more issues and will take more time than the Trustees' claim. Thus, the Court does not believe that a determination of liability with respect to the Trustees' complaint should have to await a determination of liability in the MDL action.

Defendants also assert that the two related actions may provide a full recovery to the Trustees. As noted above, the conservatorship proceeding possibly could result in the recovery of 70 to 80 cents on the dollar with respect to bonds backed by Executive Life. Nevertheless, if Judge Lewin's decision that GICs are insurance policies is reversed on appeal, any potential recovery could be significantly less than this amount. Additionally, it presently is unclear how the MDL action will affect any potential damage recovery by the Trustees in the instant case. Moreover, as the Court mentioned at oral argument, although the conservatorship proceeding and the MDL action may affect the amount of damages recoverable against Sass Associates and Sass, the amount of damages does not affect the question of liability. Therefore, the Court does not believe that a determination of defendants' liability should have to await a determination of the damages recoverable by the various plaintiffs in either the conservatorship proceeding or the MDL action.

***4** Furthermore, the principal cases on which defendants rely in support of their motion for a stay are distinguishable from the instant action. For instance, in *Bechtel Corp. v. Laborers' Int'l Union,* 544 F.2d 1207 (3d Cir.1976), the cause of action that was stayed involved the same plaintiff, the same defendant, and the same amount of damages as the other cause of action. on the other hand, the conservatorship proceeding and the MDL action involve numerous parties and many issues other than liability for breach of fiduciary duty under ERISA and for a fraudulent transaction under § 206(2).[FN1] Importantly, defendants in the case at bar are not named in either of the two allegedly related cases.

In addition, in *Schwarz v. Prudential-Bache Securities, Inc.,* No. 90-60074, 1991 WL 137157

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(E.D.Pa. July 19, 1991), the court stayed a suit pending the completion of a class action litigation that the court reasonably expected to end within one month. The conservatorship proceeding and the MDL action, certainly will last considerably longer. In particular, the MDL action is in its infancy. The judge has not even certified a class.

Moreover, in *Texaco, Inc. v. Borda,* 383 F.2d 607 (3d Cir.1967), the Third Circuit upheld the stay of a civil action pending completion of a related criminal action. The Third Circuit reasoned that the criminal suit could reduce the scope of discovery and could simplify issues in the civil suit. In contrast, the Trustees' suit against Sass Associates and Sass now only involves issues of liability under ERISA and under § 206 of the Act that will not require extensive discovery.

The Court also can readily distinguish *Foster Wheeler Corp. v. Agua-Chem, Inc.,* 277 F.Supp. 382 (E.D.Pa.1967). In *Foster Wheeler* the court stayed a suit in the Eastern District of Pennsylvania, concerning the validity of a patent, pending the outcome of another suit in the Eastern District of Louisiana, involving infringement of the same patent. Aqua-Chem was the defendant in Pennsylvania and the plaintiff in Louisiana. Thus, Aqua-Chem had a substantial interest in having the issue of validity considered in the forum of its choice. Sass Associates and Sass do not have such an interest in the present case.

In accordance with *Landis,* the Court has considered judicial economy and the interests of the parties in order to determine whether to grant defendants' request to stay the instant action. Based on the discussion above, the Court denies defendants' motion for a stay. Nevertheless, if the Court ultimately determines that defendants are liable for damages, the Court could consider a motion to stay the Trustees' suit pending any developments in the conservatorship proceeding or the MDL action that may affect the measure of damages for which Sass Associates and Sass are responsible.

B. *Standard for Motion to Dismiss*

When faced with a motion to dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6), the Court may examine only the facts alleged in the complaint. Therefore, defendants have a difficult burden to meet in order to prevail on their motion. *Biesenbach v. Guenther,* 588 F.2d 400, 402 (3d Cir.1978). The Court must accept as true all of the allegations in the complaint. *Wilson v. Rackmill,* 878 F.2d 772, 775 (3d Cir.1989). The Court also must provide the Trustees with the benefit of any inferences that fairly may be drawn from the complaint. *Id.* In fact, the Court cannot dismiss the complaint unless the Court determines that the Trustees cannot prove any set of facts that would entitle the Trustees to relief. *Id.; Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02 (1957).

C. *Waiver of Claims*

***5** Defendants argue that the Trustees' complaint should be dismissed because the Trustees have waived their right to sue defendants. Defendants point out that although the Investment Management Agreement requires the Trustees to object to an investment made by Sass Associates on behalf of the Fund within thirty days of receiving notice of the investment, the Trustees never objected to any investment. In their reply brief and at oral argument, defendants further argue that the Trustees did not delegate complete responsibility over investments to Sass Associates.

As the Court and the parties agreed at oral argument, however, a determination of the precise extent of the delegation of responsibility necessarily involves resolution of factual issues that possibly could be determined in connection with a motion for summary judgment, but that cannot be resolved upon a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Thus, at this stage of the proceedings, defendants have not shown that the Trustees cannot prove any set of facts that would entitle the Trustees to relief. Therefore, the Court denies defendants' motion to dismiss the complaint based on the Trustees' alleged waiver of claims.

D. *ERISA Preemption*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Defendants argue that the Trustees' common law causes of action for breach of fiduciary duty and negligence should be dismissed because the claims are preempted by ERISA. The Trustees apparently concede that ERISA preempts the cause of action for breach of fiduciary duty.[FN2] Therefore, the Court only will consider whether the negligence claim is preempted.

ERISA preempts state laws that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has read the preemption clause broadly. For example, in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549 (1987), the Supreme Court stated that

"[t]he phrase 'relate to' [is] given its broad common-sense meaning, such that a state law ' relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.' ".... [T]he pre-emption clause is not limited to "state laws specifically designed to affect employee benefits plans."

*Id.* at 47-48, 107 S.Ct. at 1553 (*quoting Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389 (1985); *Shaw v. Delta Air Lines,* 463 U.S. 85, 97-98, 103 S.Ct. 2890, 2900 (1983)). *See also Pane v. RCA Corp.,* 868 F.2d 631 (3d Cir.1989) (state law claims for breach of contract, breach of covenant of good faith and fair dealing, and intentional infliction of emotional distress preempted by ERISA); *Shiffler v. Equitable Life Assurance Soc.,* 838 F.2d 78 (3d Cir.1988) (state law claims for breach of duty preempted by ERISA).

Despite the broad scope of the preemption clause, ERISA does not preempt all state law claims. *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 483 (1990). In fact, the Supreme Court has stated that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law relates to the plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21. Thus, ERISA would not preempt "a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Ingersoll-Rand,* 111 S.Ct. at 483; *see also Aetna Life Ins. Co. v. Borges,* 869 F.2d 142 (2d Cir.), *cert. denied,* 493 U.S. 811 (1989).

***6** The Trustees argue that common law negligence is a law of general application and that their cause of action affects the Fund in only a peripheral manner. Therefore, they assert that ERISA should not preempt their negligence claim. Nevertheless, the Court readily may distinguish the principal cases on which the Trustees rely.[FN3]

The Trustees cite *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456 (5th Cir.1986), *cert. denied,* 479 U.S. 1089 (1987), for the proposition that ERISA did not preempt a trust's state law fiduciary duty claim. *Sommers,* however, dealt with the fiduciary duty owed by a director of a corporation to the corporation's shareholders. The director and the corporation purchased the stock of the corporation owned by the trust and several other shareholders. Any of these shareholders could have brought suit against a director for a breach of corporate fiduciary duty. Thus, the trust's cause of action was between a shareholder and a director, and the fact that the plaintiff was the trust of an employee benefit plan was incidental to the claim.

The Trustees also cite Aetna *Life Ins. Co. v. Borges,* 869 F.2d 142 (2d Cir.1989). In that case, the court held that ERISA did not preempt Connecticut's abandoned property laws. Aetna Life Insurance Company ("Aetna") provided health and accident insurance. Often, Aetna would approve a claim for benefits, but the beneficiary would fail to collect the benefits. The court held that ERISA's preemption clause did not prevent Connecticut from recovering the uncollected benefits. Connecticut's escheat law applied to all types of abandoned property, and it was insignificant that the abandoned property in this particular case consisted of the benefits provided under a plan covered by ERISA.

As opposed to the cases cited by plaintiff, in the case at bar a central concern of the negligence claim is the manner in which Sass Associates invested the Funds subject to ERISA. Significantly, in its complaint plaintiffs allege:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendants were negligent and incompetent in their management and supervision of the Fund's assets, in particular with respect to the Bonds.

Accordingly, the fact that the bonds were subject to ERISA is not merely incidental to plaintiffs' negligence cause of action. Thus, this Court finds that the narrow exception to ERISA preemption carved out by the Supreme Court does not apply in the instant action.

Moreover, several district courts specifically have held that ERISA preempted common law negligence claims. For example, in *Pension Fund-Mid Jersey Trucking Indus.-Local 701 v. Omni Funding Group,* 731 F.Supp. 161 (D.N.J.1990), a pension fund and its trustees brought suit against a fiduciary for breach of fiduciary duty under ERISA and for negligence. The court held that it was "beyond dispute" that ERISA preempted the negligence claims. *Id.* at 170. *See also Cox v. Eichler,* 765 F.Supp. 601 (N.D. Cal.1990) (ERISA preempted state law claims for breach of fiduciary duty and for negligence brought by trustees of a plan against a brokerage firm and one of its account executives); *James A. Dooley Associates Employees Retirement Plan,* 654 F.Supp. 457 (E.D. Mo.1987) (ERISA preempted state law claims for breach of fiduciary duty and for negligence brought by a plan and several trustees of the plan against another trustee of the plan).

***7** Based on the authority discussed above, it is clear that ERISA preempts the Trustees' common law causes of action for negligence and for breach of fiduciary duty. Therefore, the Court grants defendants' motion to dismiss the Trustees' state law claims.

E. *ERISA Claim Against Sass Individually*

Defendants argue that the Trustees' ERISA claims against Sass individually should be dismissed based on the Third Circuit's recent decision in *Confer v. Custom Engineering Co.,* No. 91-3259, 1991 WL 268486 (3d Cir. Dec. 19, 1991) and based on *Haber v. Brown,* 774 F.Supp. 877 (S.D.N.Y.1991). Nevertheless, *Confer* does not compel such a result, and *Haber v. Brown* is distinguishable from the instant action.

In *Confer* the Third Circuit held that officers of a corporate fiduciary under ERISA, are not automatically fiduciaries in their individual capacities under ERISA simply because of their status as officers. 1991 WL 268486 at *1. In addition, the Third Circuit specifically stated that an officer of a corporate fiduciary can be a fiduciary in the absence of a designation as such as long as the officer performs functions that fall within the statutory definition of a fiduciary. *Id.* at *8 n.3. Specifically, the Court noted that if the officer has sufficient discretionary control over the funds invested under ERISA, the officer would be considered a fiduciary under ERISA.

Defendants argue that *Confer* requires dismissal of the ERISA cause of action against Sass based in part on the fact that Sass was not designated as a fiduciary. Defendants also argue that the ERISA claim against Sass should be dismissed because the Trustees have not alleged that Sass had an " individual discretionary role" with respect to investment of the assets of the Fund. As defendants readily admit, however, the Third Circuit has not provided a bright-line test to determine whether a person has such a role.

The complaint alleges, *inter alia,* that Sass "at all relevant times controlled Sass Associates," Complaint ¶ 7; "personally managed and supervised the investment of ... the investments which are the subject of this action," *id.;* "was exclusively responsible for reporting to and communicating with the Trustees as to the status of those investments," *id.;* and was "the sole person responsible for making investment decisions on behalf of the Fund." *Id.* ¶ 46. Because this Court finds that plaintiffs have plead adequately that Sass had discretionary control of Sass Associates the Court concludes that the Trustees adequately have alleged that Sass had an individual discretionary role with respect to investing the Fund's assets.

Furthermore, although defendants rely on *Haber v. Brown,* that case is distinguishable from the Trustees' ERISA claim against Sass. In *Haber v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Brown* the plaintiffs merely included in their complaint ERISA's definition of a fiduciary, and the court held that such a conclusory allegation was insufficient to state a claim against the defendant. Clearly the Trustees' complaint does not simply paraphrase the statute. Accordingly, this Court finds that *Haber* does not compel this Court to grant defendants' motion with respect to Sass's individual liability under ERISA. Therefore, the Court denies defendants' motion to dismiss the Trustees' ERISA cause of action against sass individually.

F. *ERISA Damages*

***8** Defendants argue that this Court should dismiss that portion of the Trustees' ERISA cause of action that allegedly seeks damages unauthorized by ERISA.

Twenty nine U.S.C. § 1109(a) specifically provides for three types of damages with respect to a person who breaches a fiduciary duty under ERISA. [FN4] First, the fiduciary is liable for any losses to the plan resulting from the breach. Second, the fiduciary must restore to the plan any profits made by the fiduciary through the use of the plan's assets. Finally, the fiduciary is subject to such other equitable or remedial relief as the court deems appropriate.

With respect to their ERISA claim, the Trustees seek, *inter alia,* "[c]ompensatory damages" and " [s]uch other relief as may be just and equitable." Defendants move to dismiss the Trustees' ERISA cause of action to the extent that it seeks, under the guise of "compensatory damages," relief other than (1) losses to the Fund, and (2) any profits made by the defendants through the use of the Fund's assets.

As the Court mentioned at oral argument, a discussion of the measure of damages is somewhat premature when considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Therefore the Court denies defendants' motion to dismiss any part of the Trustees' complaint based on defendants' allegations with respect to compensatory damages. If the Court should have to determine damages with respect to the Trustees' ERISA claim at a later date, however, the Court only would allow damages to the extent authorized by ERISA.,

G. *Statute of Limitations under Section 206 of the Act*

Sass Associates also seeks to dismiss the Trustees' claims under § 206(1) and 206(2) of the Act.[FN5] At the outset, defendant contends that this Court must dismiss the claims as to three of the four purchases, because plaintiffs instituted the action after the statute of limitations expired. Defendants acknowledges that the Supreme Court implied a private cause of action under § 215. Accordingly, neither § 206 nor § 215 contain a statute of limitations.

Defendant urges this Court to adopt a uniform federal statute of limitations to implied causes of action brought under § 215 of the Investment Advisors Act. In particular, defendants request this Court to apply the statute of limitations for actions instituted under § 215 of the Investment Advisors Act that the Supreme Court recently adopted for lawsuits brought under § 10(b) and Rule 10(b)-5 of the Securities and Exchange Act of 1934. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 111 S.Ct. 2773 (1991). In *Lampf,* the Supreme Court held that a plaintiff must institute an action under § 10(b) and Rule 10(b)-5 within one year after he or she discovers the fraudulent conduct. Under no circumstances, however, could the plaintiff institute an action more than three years after the alleged violation occurred. *Id.* at 2780-81.

Plaintiffs argue that because the purpose of the Investment Advisors Act is dissimilar to the 1934 Act, *Lampf* does not compel this Court to apply the uniform federal statute of limitation announced in that decision. Instead, plaintiffs assert that this Court should follow the traditional analysis and borrow an analogous state law statute of limitations. Plaintiffs further maintain that common law fraud and negligence are the most analogous state causes of action to their claims brought under the Investment Advisors Act. Consequently, plaintiffs implore this Court to employ New Jersey's six-year statute of limitations applicable to common law

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fraud and negligence actions.

***9** Under the general rule, when Congress fails to provide a statute of limitations for a federal cause of action, a court "borrows or absorbs the local time limitation most analogous to the case at hand." *Lampf,* 111 S.Ct. at 2778 (citing *Wilson v. Garcia,* 471 U.S. 261, 266-67, 105 S.Ct.1938, 1941-42 (1985); *International Union, etc. v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704 (1966); *Campbell v. Haverhill,* 155 U.S. 610, 617, 15 S.Ct. 217, 220 (1895). The *Lampf* Court explained, however, that exceptions exist to state borrowing.
In particular, the court should adopt a federal statute of limitations when:

a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.

111 S.Ct. at 2778 (*quoting Reed v. United Transportation Union,* 488 U.S. 319, 324, 109 S.Ct. 621, 625 (1989) *quoting DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281 (1983)).

In *Lampf,* the Supreme Court established a three part procedure to determine whether to adopt a uniform federal statute of limitations to a cause of action for which Congress had not provided a statute of limitations. First, the court has to determine whether it should select a uniform statute of limitations. A cause of action that "tends to encompass numerous and diverse topics and subtopics, such that a single state limitations period may not be applied consistently within a jurisdiction " counsels in favor of adopting a uniform statute of limitations. *Id.* at 2779 (citations omitted).

Second, the court must decide whether to apply a uniform state or federal statute of limitations. If the claim is multistate in nature such that "the use of state statutes would present the danger of forum shopping", then the court should adopt a federal statute of limitations. *Id.*

Third, the court must conclude that a federal statute "affords a closer fit with the cause of action than does any available state-law source." Relevant factors in making this determination include " commonality of purpose and similarity of elements." *Id.*

The *Lampf* court concluded that it should adopt the express statute of limitations contained in the Securities Exchange Act of 1934 and the Securities Act of 1933 which provided for a one year after-discovery statute of limitations and a three year after-injury period of repose. The Supreme Court reasoned that the § 10(b) was one of a series of provisions that formed a "complex web of regulations ... intended to facilitate a central goal." *Id.* at 2781. (addask Ed)

Guided by *Lampf,* this Court finds that it should adopt a uniform statute of limitations. First, this Court finds that a state could apply different types of statute of limitations to an action that alleges a violation of § 206 of the act. For example, in the case at bar plaintiff asks the Court to apply the statute of limitations applicable to negligence or fraud. Furthermore, it seems possible to apply a statute of limitations applicable to contract actions.
Although New Jersey has adopted the same statute of limitations for fraud and negligence actions, there is no guarantee that these various actions would contain the same statute of limitations.

***10** Second, this Court finds that actions brought under § 206 are multistate in nature. An investment advisor can recommend securities purchases to clients located in various parts of the country. Thus, a failure to adopt a uniform federal statute of limitations could lead to forum shopping.

Finally, this Court finds that the most analogous provision to § 206(1) and (2) is § 10(b) and Rule 10(b)-5 of the Securities Exchange Act. Initially, this Court notes that the language in § 206(1), and (2) tracks the language contained in the provisions of Rule 10(b)-5. Moreover, this Court finds that Congress enacted the Investment Advisor's Act and the Securities Acts of 1933 and 1934 for similar purposes. Specifically, the Supreme Court stated in *Securities and Exchange Commission v. Capitol Gains:*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[T]he Investment Advisers Act of 1940 was the last of a series of Acts designed to eliminate certain conduct in the securities industry. It was preceded by the Securities Act of 1933 and the Securities Act of 1934.

*See also Kahn v. Kohlberg,* 1991 WL 253024, 91 Civ. 5670 (S.D.N.Y.1981) ( "The Investment Advisers Act was, in combination with the Investment Company Act, the last in a series of enactments to protect the investing public against securities laws violations.).

Moreover, courts have held that § 206 of the Act is most closely related to § 10 and Rule 10(b)-5. *See Zweig v. Hearst Corp.,* 594 F.2d 1261, 1267-68 (9th Cir.1979) (§ 10(b) and Rule 10(b)(5) of the Securities Exchange Act and § 206 of the Investment Advisers Act "complement each other and provide different means to curb slightly different types of "fraud or conceit"). *See also Kahn* at *3.

Hence, this Court concludes that it should apply a uniform federal statute of limitations to actions based upon § 206(1) and (2) of the Investment Advisors Act. Additionally, this Court holds that 10(b) of the 1934 Act is the most analogous provision to 206(1) and (2) of the Investment Advisors Act. Therefore, this Court adopts the statute of limitations announced in *Lampf* for actions emanating from violations committed under § 206(1) and (2) of the Investment Advisors Act. FN6 The only transaction defendants made within the aforementioned statute of limitations was the purchase of the $1,000,000 of Louisiana State Agriculture Bonds on November 2, 1989. Therefore, this Court will dismiss plaintiffs' claims brought under the Investment Advisers act except the claim based on the purchase of the Louisiana State Agriculture Bonds.

H. *Claims under Section 206 of the Act*

Sass Associates argues that the Trustees' claim under 206 of the Act should be dismissed for two reasons. First, defendants allege that plaintiffs have not stated a cause of action under Fed.R.Civ.P. 12(b)(6) because plaintiffs failed to allege scienter and fraud. Second, defendant's allege that even if this Court finds plaintiffs alleged scienter and fraud, this Court should dismiss plaintiffs' claims under § 206 because plaintiffs failed to comply with Fed.R.Civ.P. 9(b) and allege fraud with particularity. Fed.R.Civ.P. 9(b).

***11** Although the Trustees' complaint does not allege violation of a specific provision of § 206, the Trustees discuss § 206(1) and 206(2) in their brief. Those sections provide as follows:
It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly-
(1) to employ any device, scheme, or artifice to defraud any client or prospective client; [or]
(2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.

15 U.S.C. § 80b-6(1), (2).

A major difference between § 206(1) and § 206(2) is the fact that § 206(1) requires scienter, but § 206(2) does not. *S.E.C. v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 192, 84 S.Ct. 275 (1963). Therefore, in order to state a cause of action under § 206(1), the Trustees must allege " intentional, knowing or reckless conduct resulting in the alleged fraud or deceit." *S.E.C. v. Wall Street Publishing Inst., Inc.,* 591 F.Supp. 1070, 1084 (D.D.C.1984). An assertion of negligence does not meet the requirement of scienter. *Carroll v. Bear, Stearns & Co.,* 416 F.Supp. 998, 1000-01 (S.D.N.Y.1976).

The Trustees' complaint alleges that Sass Associates failed to conduct a reasonable investigation of the Bonds prior to recommending that the Trustees purchase them, Complaint ¶¶ 56, 58, and that Sass Associates knew or should have known the true nature of the Bonds. Complaint ¶ 57. In their brief the Trustees apparently concede that these claims do not allege intentional or knowing conduct, because they argue that the actions of Sass Associates constituted recklessness. Therefore, the Court must determine whether the complaint alleges recklessness, or merely negligence.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Several courts have discussed the type of conduct that constitutes recklessness on the part of an investment advisor. For example, in *Wall Street Publishing* the defendant acted recklessly by stating that articles in a newsletter that the defendant published were based on "thorough research and firsthand interviews" when in fact some of the articles were reprinted almost verbatim from other sources. 591 F.Supp. at 1083-85. In addition, in *S.E.C. v. Blavin,* 557 F.Supp. 1304 (E.D.Mich.1983) , *aff'd,* 760 F.2d 706 (6th Cir.1985), the defendant acted recklessly by taking material from financial reports and reprinting the material "out of context and selectively" in his investment newsletter without investigating the material. *Id.* at 1314.

In contrast to these cases, an assertion of a mere failure to conduct a reasonable investigation does not allege the requisite scienter under § 206(1) of the Act. In *Carroll* the plaintiff alleged that the defendants did not conduct a "proper evaluation of her portfolio" and did not conduct "diligent and reasonable research." 416 F.Supp. at 1000. The court concluded that the complaint "allege[d] no more than that the defendants negligently managed plaintiff's portfolio in connection with advising her on investment decisions." *Id.*

***12** Similarly, the Trustees allege that based on a reasonable investigation Sass Associates should have known the true nature of the Bonds. As in *Carroll,* the complaint merely alleges negligence. Therefore, based on the fact that the Trustees do not allege the requisite scienter, the Court grants Sass Associates's motion to dismiss the Trustees' cause of action under § 206(1) of the Act.[FN7]

As noted above, however, § 206(2) of the Act does not require scienter. Instead, "[a]11 that need be shown is that there is a 'non-disclosure of material facts.' " *Wall Street Publishing,* 591 F.Supp. at 1083 (*quoting Capital Gains Research Bureau,* 375 U.S. at 186, 84 S.Ct. at 280). There is a non-disclosure of material facts if "a reasonable investor would consider the misstatements or omissions important in making an investment decision." *S.E.C. v. Blavin,* 760 F.2d 706, 711 (6th Cir.1985) (*citing TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132 (1976) . Certainly, a reasonable investor would consider the alleged relationship between Drexel and Executive Life important in deciding whether to invest in the Bonds. Thus, the Trustees' Complaint alleges that Sass Associates failed to disclose material facts. Therefore, the complaint states a cause of action under 206(2).

Defendants argue, however, that this Court should limit 206(2) to actions that involve a conflict of interest on the part of an investment adviser. Defendants cite to *SEC v. Capitol Gains,* to support their contention.

In *Capitol* Gains, the Supreme Court acknowledged that the thrust of § 206(2) was to disclose potential conflict of interests. The Court never stated, however, that Congress intended to limit § 206(2) violations to actions that involved conflicts of interests. Moreover, Congress elected to word § 206(2) broadly. If instead Congress desired to limit actions under § 206(2) to actions that involved conflicts of interest Congress could have done so easily. Accordingly, in light of the broad language contained in § 206(2) and the refusal of any court to expressly limit § 206(2) actions to claims predicated solely on conflict of interests, this Court refuses to limit § 206(2) actions to claims that allege a conflict of interest.

Although the Court concludes that the Trustees allege that Sass Associates engaged in a transaction, practice, or course of business operating as a fraud or deceit, the Court must determine whether the Trustees allege this fraud with particularity pursuant to Fed.R.Civ.P. 9(b). The Third Circuit has stated that a plaintiff must "plead with particularity the ' circumstances' of the alleged fraud in order to place the defendant on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984). Allegations of "date, place or time" are sufficient, but not necessary. *Id.*

***13** Based on this standard the Trustees' complaint meets the requirements of particularity. The Trustees allege the precise amounts of the Bonds

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and the dates of their purchase and sale. The Trustees also allege that Sass Associates caused the Trustees to purchase the Bonds. In addition, the Trustees describe in detail the alleged fraudulent scheme between Drexel and Executive Life. Moreover, the Trustees allege that Sass Associates failed to disclose the true nature of the Bonds. Thus, the Trustees allege a cause of action under § 206(2) of the Act with particularity.

Based on the foregoing analysis, the Court grants Sass Associates' motion to dismiss the Trustees' claim under § 206(1) of the Act and denies Sass Associates' motion to dismiss the Trustees' claim under § 206(2) of the Act.

III. CONCLUSION

For the reasons expressed above, this Court will deny defendants' motion to stay. Additionally, this Court will grant defendants' motion to dismiss as to plaintiffs' state law claims and will deny defendants' motion as to plaintiffs' ERISA claim brought against Sass in his individual capacity. Furthermore, the Court will grant defendants' motion to dismiss as to plaintiffs cause of action brought under § 206(1) of the Investment Advisers Act but will deny defendants' motion as to 206(2) of the Investment Advisers Act.

An appropriate order is attached.

ORDER

In accordance with the Court's Opinion filed herewith,

It is on this 22nd day of April, 1992,

ORDERED that defendants' motion to stay is denied; and it is further

ORDERED that defendants' motion to dismiss as to plaintiffs state law claims is granted; and it is further

ORDERED that defendants' motion as to plaintiffs' ERISA claim brought against sass in his individual capacity is denied; and it is further

ORDERED that defendants' motion to dismiss as to plaintiffs cause of action brought under § 206(1) of the Investment Advisers Act is granted; and it is further

ORDERED that defendants' motion as to 206(2) of the Investment Advisers Act is denied.

FN1. As a result of the Court's decisions concerning defendants' motion to dismiss the complaint, only the Trustees' claims under ERISA and under § 206(2) of the Act remain.

FN2. In their brief and at oral argument, the Trustees did not address the issue of whether ERISA preempts the common law cause of action for breach of fiduciary duty. Nevertheless, based on the authority discussed below with respect to the negligence claim, the Court would find that ERISA also preempts the state law claim for breach of fiduciary duty. *See Shiffler v. Equitable Life Assur. Soc.,* 838 F.2d 78 (3d Cir.1988).

FN3. The Trustees also cite *Shulman v. Hosposable Prods., Inc.,* 1991 WL 160340 (D.N.J.1991). A decision of another judge in this district is not binding on this Court, however, and therefore the Court declines to follow *Shulman.*

FN4. 29 U.S.C. § 1109(a) provides, in part, as follows:
Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and shall be subject to such other equitable or remedial relief as the court may deem appropriate....

FN5. In *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 100 S.Ct. 242 (1979), the Supreme Court held that no private cause of action exists under § 206 of the Investment Advisors Act. The Court further held, however, that a private cause of action existed under § 215 of the Act. Specifically, the Court decided that § 215 allows a private party to bring an action to "[rescind] any contract made ... in violation of ... any provision of this subchapter." In accordance with *Transamerica,* the court in *Wellington International Commerce Corp. v. Retelny,* 727 F. Supp 843 (S.D.N.Y.1989), noted that "any contract which violates section 206 is void under section 215, and the ' rescinding party may of course have restitution of the consideration given under the contract, less any value conferred by the other party.' " *Id.* at 845 (quoting 444 U.S. at 24 n.14, 100 S.Ct. at 249 n.14).
In the instant action, plaintiff explicitly alleges that defendant violated § 206. Plaintiff never mentions § 215. Plaintiff asks for the type of relief, however, that is available under § 215. Therefore, this Court will construe plaintiff's complaint as demanding relief under § 215 for defendant's violation of § 206.

FN6. This Court rejects the one year statute of limitations provided under § 36(b) of the Investment Company Act. Congress enacted the Investment Company Act contemporaneously with the Investment Advisers Act, and within the same Chapter as the Investment Advisers Act. As opposed to 206 of the Investment Advisor's Act, however, Congress drafted 36(b) to apply to very specific types of cases. In particular, § 36 of the Investment Company Act applies only to cases in which an investment adviser received an improper fee for his or her services. Given the greater breadth of § 10(b), Rule 10(b)-5, and § 206, this Court will apply the statute of limitations adopted for actions commenced under 5 10(b) and Rule 10(b)-5.

FN7. Because the Court dismisses the Trustees' claim under 206(1) for failure to allege scienter, it is unnecessary for the Court to consider the issues whether the Trustees' claim under § 206(1)(1) alleges fraud and (2) alleges fraud with particularity.

D.N.J.,1992.
Muller v. M.D. Sass Associates, Inc.
Not Reported in F.Supp., 1992 WL 80938 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2:91cv03762 (Docket) (Aug. 23, 1991)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.