UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| JOHN J. VAUGHN, GERALD A. KALBFLEISCH, MICHAEL HATHAWAY, and MYRTLE HATHAWAY,<br><br>Plaintiffs,<br><br>v.<br><br>PUTNAM INVESTMENT MANAGEMENT, LLC and PUTNAM RETAIL MANAGEMENT, LIMITED PARTNERSHIP,<br><br>Defendants. | Civil Action No. 04-10988-GAO<br>Leave to File granted Nov. 13, 2006 |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' REVISED MOTION TO COMPEL DEFENDANTS TO RESPOND TO PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

Plaintiffs submit this memorandum to reply to Defendants' Opposition to Plaintiffs' Revised Motion to Compel filed on September 18, 2006 (the "Opposition"). As further grounds for Defendant's Revised Motion to Compel, Plaintiffs state as follows:

In their Opposition, Defendants continue to assert that Request No. 56 is objectionable. That request seeks documents "that reflect, concern or refer to any decision or agreement made by PIM and/or PRM effective as of January 1, 2004 to cease directing brokerage to broker-dealers." In their Opposition, Defendants assert that they will only provide documents that were given to the Trustees regarding ceasing directed brokerage.

Documents responsive to this request must be produced. Directed brokerage (the practice of directing brokerage commissions on the Funds' portfolio transactions to preferred broker-dealers in exchange for "shelf space" within the broker-dealer's distribution system) is clearly

BN1 35035514.1

relevant to this case. Under these arrangements, the Fund's assets were used to pay for services that benefited Putnam. Putnam voluntarily ended this practice while it was still permitted under the SEC and NASD rules. Putnam's voluntary choice to restrict or eliminate this practice illustrates that they had concerns about its propriety. Directed brokerage increased the fallout benefits that Defendants received as a result of their performance under the management contracts with the mutual funds because the preferred broker-dealers provided special treatment to Putnam in exchange for the directed commissions. The nature of the fallout benefits Defendants received during the relevant time period is key to the Plaintiffs' case, as outlined in Gartenberg v. Merrill Lynch Asset Management, Inc., 694 F.2d 923 (2d Cir. 1982) and its progeny, which list such fallout benefits as one of the factors courts should consider in evaluating whether fees are excessive under Section 36(b). The internal documents discussing or analyzing the rationale for ceasing directed brokerage and the possible impact of such a decision will explain Putnam's view of the potential problems and abuses of this system that led to its discontinuation. Defendants' assertion that the documentation provided to the Trustees is sufficient for this analysis is incorrect because the Trustees are only presented with the Defendants' final recommendations on these issues. The Plaintiffs need to see the various options that Putnam considered and Putnam's discussion of the consequences of those possible choices to analyze and quantify the fallout benefits at issue and determine whether they were improperly received or accounted for.

    Putnam also continues to assert that Request No. 102 is objectionable. That request asks for documents that "concern or refer to the development or formulation of each of the fee schedules for Management Fees and/or for 12b-1 Fees that PIM, PRM, or other affiliated Putnam entities have proposed or furnished to each of the Funds." Here, again, Defendants state in their

2

Opposition that they will produce only those documents that were either provided to the Trustees or used to prepare documents provided to the Trustees. However, Plaintiffs are entitled to the documents that discuss the level and structure of the Management Fees and 12b-1 Fees before that structure was ultimately proposed to the Trustees.

These documents are also relevant. The level and structure of the Management Fees and 12b-1 Fees are key issues in the Plaintiffs' case. The documents reflecting Putnam's internal discussions regarding the structure and amount of each fee prior to the presentation of such fee structures to the Trustees are essential to the Plaintiffs' case. These documents will illustrate the costs and benefits considered in setting the fees; the analysis of the expenses of the funds and the appropriate fees to allow Putnam to recoup these costs; and the factors considered by Putnam in setting the breakpoints. These issues are directly related to the determination of whether the fees ultimately charged were unreasonable and excessive and, therefore, the documents should be produced.

Finally, Putnam's argument concerning the appropriate time period for damages in this action is flatly wrong. The Plaintiffs' response to this argument was fully briefed in their Opposition to Defendants' Motion to Stay filed with the Court on October 13, 2006. Rather than burden the Court with further briefing on this issue, Plaintiffs incorporate that Opposition by reference. For the convenience of the Court, a copy of the Opposition (without exhibits) is attached hereto as Exhibit A.

Dated: November 17, 2006

Respectfully submitted,

/s/ David E. Marder
David E. Marder (BBO #552485)
Marc N. Henschke (BBO #636146)
Lisa A. Furnald (BBO #631059)
Jonathan D. Mutch (BBO #634543)
Meghan E. Walt (BBO #658971)
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: DEMarder@rkmc.com
(617) 267-2300

## CERTIFICATE OF SERVICE

I, David E. Marder, hereby certify that this document filed through the ECF system on November 17, 2006, will be served electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those non-registered participants.

/s/ David E. Marder
David E. Marder
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: DEMarder@rkmc.com
(617) 267-2300