**EXHIBIT 12**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| JOHN J. VAUGHN, GERALD A. KALBFLEISCH, MICHAEL HATHAWAY, and MYRTLE HATHAWAY,<br><br>Plaintiffs,<br><br>v.<br><br>PUTNAM INVESTMENT MANAGEMENT, LLC and PUTNAM RETAIL MANAGEMENT LIMITED PARTNERSHIP,<br><br>Defendants. | Civil Action No. 04-10988 (GAO)<br><br><br><br><u>NOTICE OF SUBPOENA FOR DOCUMENTS ON ROBERT E. PATTERSON</u> |

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 26 and 45, the plaintiffs by their attorneys, have commanded **Robert E. Patterson**, to produce documents at the offices of Robins, Kaplan, Miller & Ciresi L.L.P., 800 Boylston Street, 25th Floor, Boston, Massachusetts, on October 26, 2006 in accordance with the subpoena attached hereto.

Respectfully submitted,

ROBINS, KAPLAN, MILLER & CIRESI LLP

_____
David E. Marder (BBO #552485)
Marc N. Henschke (BBO #636146)
Lisa A. Furnald (BBO #631059)
Jonathan D. Mutch (BBO #634543)
Meghan E. Walt (BBO #658971)
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: lafurnald@rkmc.com

Dated: October 6, 2006                (617) 267-2300

Of Counsel:

Thomas R. Grady (admitted *pro hac vice*)
Ackerman, Link, & Sartory, P.A.
222 Lakeview Avenue, Suite 1250, Esperante
West Palm Beach, FL 33401

BN1 35034645.1

## CERTIFICATE OF SERVICE

I, Lisa A. Furnald, hereby certify that on October 6, 2006, I caused a true and correct copy of the attached *Notice of Subpoena for Documents* to be served first class mail upon Defendants' counsel of record at the following address:

David S. Clancy, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, MA 02108-3194

*[signature]*
Lisa A. Furnald, Esquire

BN1 35034645.1

# Issued by the
## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| John J. Vaughn, Gerald A. Kalbfleisch, Michael Hathaway and Myrtle Hathaway,<br>　　　　Plaintiffs,<br><br>　　　　V.<br><br>Putnam Investment Management, LLC, and<br>Putnam Retail Management Limited Partnership,<br>　　　　Defendants. | **SUBPOENA IN A CIVIL CASE**<br><br>Case Number:[1] 1:04-CV-10988 (GAO) |

TO: Robert E. Patterson
　　　One Post Office Square
　　　Boston, MA 02109

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION: | DATE AND TIME: |
|---|---|
| | |

X YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below. If the documents are produced before the date of the deposition, you need not attend. **SEE EXHIBIT A attached hereto.**

| PLACE:<br>**Robins, Kaplan, Miller & Ciresi L.L.P.**<br>**800 Boylston Street, 25th Floor**<br>**Boston, MA 02199** | DATE AND TIME:<br>October 26, 2006<br>9:30 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>*/s/ Lisa A. Furnald*, Counsel for Plaintiffs | DATE<br>October 6, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Lisa A. Furnald, Esquire, Robins, Kaplan, Miller & Ciresi, LLP,
800 Boylston Street, 25th Floor, Boston, MA 02199 617-859-2790

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on reverse)

---

[1] If action is pending in district other than district of issuance, state district under case number.

BN1 35034646.1

AO 88 (Rev. 11/91) (Subpoena in a Civil Case)

# PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| October 6, 2006 | Boston, MA |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Robert E. Patterson<br>c/o Peter L. Welsh, Esquire<br>Ropes & Gray LLP<br>One International Place<br>Boston, MA 02110 | Via First Class Mail |
| SERVED BY (PRINT NAME) | TITLE |
| Lisa A. Furnald, Esquire | Associate, Robins, Kaplan, Miller, & Ciresi LLP |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: October 6, 2006
           DATE

_____
SIGNATURE OF SERVER

800 Boylston St., 25th Floor, Boston, MA 02199
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) if a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

BN1 35034646.1

### Exhibit A To Subpoena To Putnam Board of Trustees

I. **DEFINITIONS**

   1. The terms "documents" and "tangible things" as used herein shall mean each non-identical copy of any of the types of materials referenced in LR 26.5(c)(2) and Fed. R. Civ. P. 34(a), and shall specifically include emails, voice mails, instant messages, and computer data, and any electronic, magnetic, or digital media on which information can be stored, including but not limited to tapes, hard drives, discs, and any other form of computer memory.

   2. The term "non-identical copy" as used herein shall mean any document or tangible thing that, but-for markings, additions, deletions, signatures, modifications of any kind (including, but not limited to, notations on the backs or margins of pages thereof, blind carbon copy notations, attachments, alterations, amendments, or mark-ups) would otherwise be identical to other documents or tangible things responsive to any production request herein. Each non-identical copy constitutes a distinct document or tangible thing and must be produced in response hereto.

   3. The term "meeting(s)" as used herein shall mean any assembly, convocation, encounter, or contemporaneous presence of two or more persons for any purpose, whether or not planned, arranged, or scheduled in advance, whether or not occurring face-to-face or by other means including, without limitation, by telephone, videoconference or instant messaging, and whether or not the meeting was informal or formal or occurred in connection with some other activity.

   4. The term "agreement" as used herein shall mean any contract, transaction, or other arrangement of any kind, whether conditional, executed, executory, express, or implied, and whether oral or written, in which rights are granted or obligations assumed. The term

"agreement" shall apply to completed, actual, contemplated, or attempted agreements or renewals of agreements.

5. The term "any" shall mean "any and all." The term "all" as used herein also shall mean "any and all."

6. The terms "and" and "or" as used herein shall be construed conjunctively or disjunctively to bring within the scope of these production requests any and all information which might otherwise be construed as outside their scope.

7. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb includes also within its meaning all other tenses of the verb so used.

8. All entities referred to herein shall be deemed to include their parent companies, subsidiaries, affiliates, directors, officers, employees, agents, successors, assigns, and representatives thereof, including attorneys, consultants, accountants, and investment bankers.

9. The term "PIM" as used herein shall mean the named Defendant Putnam Investment Management, LLC, and any of its agents, assigns, affiliates, predecessors in interest, representatives, employees, servants, associates, attorneys, or any other persons or entities through which Putnam Investment Management, LLC has conducted business potentially including, but not limited to, Putnam LLC; Putnam Investments; Putnam Fiduciary Trust Company; Putnam Investor Services; The Putnam Advisory Company, LLC; Putnam Advisory Company, LLP; Putnam Investments Limited; and Putnam Investments Trust.

10. The term "PRM" as used herein shall mean the named Defendant Putnam Retail Management Limited Partnership and any of its agents, assigns, affiliates, predecessors in interest, representatives, employees, servants, associates, attorneys, or any other persons or entities through which Putnam Retail Management Limited Partnership has conducted business potentially including, but not limited to, Putnam LLC; Putnam Investments; Putnam Fiduciary Trust Company; Putnam Investor Services; The Putnam Advisory Company, LLC; Putnam Advisory Company, LLP; Putnam Investments Limited; and Putnam Investments Trust.

11. The term "PAC" as used herein shall mean Putnam Advisory Company, LLC, and any of its agents, assigns, affiliates, predecessors in interest, representatives, employees, servants, associates, attorneys, or any other persons or entities through which Putnam Advisory Company, LLC has conducted business.

12. The term "Management Fees" as used herein shall mean the aggregate of all types of fees that an investment advisor charges and receives pursuant to any particular Management Contract.

13. The term "Portfolio Selection Fees" as used herein shall mean that portion of its Management Fees that an investment advisor charges and/or receives under any particular Management Contract in exchange for furnishing an investment program, and for making investment decisions about what securities shall be purchased, held, sold, or exchanged, and/or what portions of client assets shall be held uninvested. As such, the term "Portfolio Selection Fees" is meant to *exclude*, for example, those fees that an investment advisor charges and receives under any particular Management Contract for managing, supervising, and conducting a client's other affairs and business, for furnishing office space and equipment, for providing

bookkeeping and clerical services, and for placing orders for purchase and sale of a client's portfolio securities.

14. The term "The Funds" as used herein shall mean, collectively, the following Putnam mutual funds, including any mutual funds with different names by which any of these funds were formerly known: Classic Equity Fund; Fund for Growth and Income; Growth Opportunities Fund; Investors Fund; and Voyager Fund.

15. The term "Putnam Mutual Funds" as used herein shall mean, collectively, the entire family of open-end registered investment companies managed or operated by any Putnam entity including, without limitation, The Funds.

16. The term "Distribution Plan" as used herein shall mean any plan adopted by a mutual fund, and/or by any class of shares of a mutual fund, pursuant to Rule 12b-1 of the Investment Company Act of 1940, 15 U.S.C. § 80a-12(b); 17 C.F.R. § 270.12b-1.

17. The term "12b-1 Fees" as used herein shall mean the aggregate of all types of fees that an investment advisor and/or any affiliated entity charges and/or receives from a mutual fund under or pursuant to a Distribution Plan.

18. The term "Board of Trustees" as used herein shall mean the entire board for any of The Funds -- including their independent staff, auditors, and legal counsel -- as well as any committees, subcommittees, groups, or other portions of such boards.

19. The term "Board of Trustees Committees" as used herein shall mean, collectively, all committees existing under any particular Board of Trustees for any of The Funds including, but not limited to, the Audit and Compliance Committee; the Board Policy and Nominating Committee; the Brokerage Committee; the Marketing Committee; the Contract Committee; the Executive Committee; the Investment Oversight Committees; the Pricing Committee; the

Shareholder Communications and Relations Committee; the Investment Process Committee; the Distributions Committee; the Litigation Committee and any other committees with different names by which any of these committees were formerly known.

20. The term "Fall-Out Benefits" as used herein shall mean the aggregate of direct and indirect benefits that providers of services in connection with a Management Contract and/or a Distribution Plan may receive over and above their collection of Management Fees and/or 12b-1 Fees. As such, the term "Fall-Out Benefits" is meant to include, for example, brokerage and/or research services received from broker-dealers; soft-dollar allocations; transfer agency fees; custodian fees; attraction of new customers to other funds and products offered by said providers of services; and/or any other benefits.

21. Unless otherwise stated, the time period applicable to these document requests shall be January 1, 2002 through Decemember 31, 2002 and January 1, 2006 to the present.

## II. REQUESTED DOCUMENTS AND TANGIBLE THINGS

1. All documents and tangible things in your possession, custody or control constituting contracts or agreements between and among you and any other entity or person concerning or referring to your position on the Board of Trustees for the Funds during the time period of January 1, 2002 through the present.

2. All documents and tangible things in your possession, custody or control that addresses, identifies, describes or otherwise sets forth the compensation, benefits, or anything else of value given to you in connection with your position on the Board of Trustees for the Funds during the time period of January 1, 2002 through the present.

3. All documents and tangible things in your possession, custody or control that addresses, identifies, describes or otherwise sets forth the Trustee Compensation Deferral Plan, the Retirement Plan for Trustees of the Putnam Funds, and the Noncontributory Defined Benefits

Plan (collectively, the "Plans") in effect during the time period of January 1, 2002 through the present, as those Plans are identified in the Funds' Statements of Additional Information and Annual Reports.

4.  All minutes of meetings of the Board of Trustees and the Board of Trustees Committees including, but not limited to, all drafts, versions and proposals thereof.

5.  All charters that have been or are applicable to the Board of Trustees and the Board of Trustees Committees for any of The Funds.

6.  All Agendas and other materials (other than the "Black Books" and the quarterly 12b-1 reports) provided to the Trustees in connection with meetings of the Board of Trustees or the Board of Trustees Committees or the review of management and 12b-1 fees.

7.  All notes taken by you in connection with the Trustees' review and approval of the Management Contract for the Funds.

8.  All notes taken by you in connection with the Trustees' review and approval of the Distribution Plan for the Funds.

9.  All written communications between PIM and PRM, on the one hand, and any Trustee, on the other hand.

10. All written communications between the staff of the Office of the Trustees, on the one hand, and any Trustee, on the other hand.

11. All written communications between or among members of the Board of Trustees made in connection with the Trustees review and approval of the Distribution Plan and the Management Contract for the Funds.

12. All written communications between or among members of the Board of Trustees concerning or referring to the management fees or 12b-1 fees charged to the Funds, the services provided by PIM or PRM to the Funds, fall-out benefits or soft dollars, and economies of scale.

13. All written communications between or among members of the Board of Trustees concerning or referring to conflicts of interest between the Putnam Mutual Funds or their shareholders on the one hand, and PIM on the other.

14. All written communications between or among members of the Board of Trustees concerning or referring to any consideration by the Trustees of the factors for assessing the reasonableness of Management Fees established in *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923 (2d Cir. 1982) and its progeny.

15. All engagement letters between the Trustees and Ropes & Gray effective for the time period January 1, 2002 through the present.