**TAB 3**

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE BEACON STREET

BOSTON, MASSACHUSETTS 02108-3194

—

TEL: (617) 573-4800
FAX: (617) 573-4822
www.skadden.com

DIRECT DIAL
(617) 573-4889
EMAIL ADDRESS
DCLANCY@SKADDEN.COM

FIRM/AFFILIATE OFFICES
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

April 5, 2006

**BY ELECTRONIC MAIL**

Thomas J. Gallo, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P
2600 One Atlanta Plaza
950 East Paces Ferry Road N.E.
Atlanta, Georgia 30326-1119

RE:  **Vaughn et al. v. Putnam Investment Management, LLC et al.**

Dear Tom:

As I stated during our March 28 conference call concerning your discovery requests to PIM and PRM, I send you this letter to follow up on the discovery issues we discussed during the March 28 call, as well as those set forth in your March 16 letter.

I will first address the issues that you raised during the call (section "A" of this letter), and then address those issues you did not raise on the call, but which appear in your March 16 letter (section "B" of this letter). (Yesterday we discussed your PAC subpoena; as I said during that call, I will shortly provide you with a letter similar to this on that separate discovery issue.)

A.  **Issues We Discussed During Our March 28 Call**

1.  **Time period**

(a) **Time period as to documents.** You said that you are dissatisfied with our commitment to produce documents for the 1/1/02-to-6/30/05 time period, and I said that I would think about and get back to you on this issue. In an effort to compromise, we would be willing to produce black books and quarterly 12b-1 reports for the 1998 through 2001 time period, as well as the trial balance for each of those same years. If there are additional specific categories of documents you would still want for those earlier years (e.g., particular categories of financial

Thomas J. Gallo, Esq.
April 5, 2006
Page 2

information), we are course willing to discuss such categories with you. (But as I mentioned on the call, we do not think that vague categories such as all documents "concerning profits on the funds" are workable as a general matter, and such requests become exponentially more problematic as the time period expands.)

    **(b)** <u>**Time period as interrogatory responses.**</u> We understand from your March 16 letter that you want information covering a broader time period here as well, but we expect that the above-referenced commitment would change your needs in this area. If we were to produce 1998-2002 black books, would you let me know what particular interrogatory responses you would ask be broadened in terms of time frame, and how? (I note that while your March 16 letter makes a generalized demand for information from 1995 to present, many of your interrogatories are themselves limited to the period beginning "May 17, 2003," and it is not clear to us what you would seek as to the remaining interrogatories, particularly if we were to produce the 1998-2002 black books and trial balances.)[1]

    2. **Institutional information.** As we discussed, you demand information concerning institutional accounts in a variety of contexts. These include your document requests, and your interrogatories (in particular, PIM interrogatories 9-11). We have provided you certain information concerning institutional accounts, but I told you that we would undertake to make a proposal as to what additional such information we could provide, consistent with our stated concerns in this area (including our concerns about client confidentiality, and -- in light of the sweeping nature of your requests and Putnam's hundreds of institutional accounts -- undue burden).

    In broad terms (we could discuss the details), we propose the preparation by us of a spreadsheet that contains on the left side a list of institutional accounts in an agreed-upon category of such accounts, each identified by number (not by client name). Then, for each account, the spreadsheet would contain columns setting forth particular items of information for that account. We would discuss and seek to reach agreement on those columns, but they might include -- for

---

[1] You have also challenged the our June 30, 2005 end-date for discovery. We think that that end-date is appropriate; otherwise, the plaintiff in a 36(b) case would be entitled in effect to sit in on advisor and trustee meetings during the process of fee evaluation. We do not think that is appropriate (or practical).

Thomas J. Gallo, Esq.
April 5, 2006
Page 3

example -- client type, quantification of assets under management, and a statement of the fee schedule such as the hypothetical such statement set forth below.[2]

Attached to this letter is a draft spreadsheet setting forth a proposed format for providing you with this information, and giving you a better sense of what we have in mind, in concept.

We also would be willing to provide you with (1) samples of documents provided to prospective and existing institutional clients (with client-identifying information removed), such as sample marketing materials, and sample portfolio reports; and (2) copies of contracts for the institutional accounts referenced on the spreadsheet (again, with client-identifying information removed).

I look forward to discussing this proposal with you. I think it is far more reasonable than your requests in their current form, which in my view take neither confidentiality nor burden into account,[3] and should at a minimum serve as a platform for resolving our issues concerning institutional accounts. (Also, it may be that once you are provided with this information (and once you have had time to analyze the black books more fully), there will be particular institutional accounts in which you seek further particularized information, and we could discuss that issue then; this would be a far more reasonable and staged approach that our simply undertaking to produce massive quantities of undifferentiated documentation about hundreds of institutional accounts.)

3.  **E-mail searching.** You stated that you were interested in discussing this process with us in an effort to reach a reasonable agreement in advance that might lead to more efficiency, and fewer "after the fact" disputes. We are open to this approach, in this one area. We will soon provide a statement of our plan for e-mail searching (i.e., whose e-mail will be searched, for what period of time, and on the basis of what search terms). We would then contemplate a good-faith discussion about your concerns regarding that plan (if any). We hope that in this process, you will be conscious of the enormous costs associated with putting any

---

[2]   
| "<$25mm | 55 bps |
| $25-50mm | 50 bps |
| $50-100mm | 45 bps |
| >$100mm | 40 bps" |

[3]  For example, your document request 40 seeks "all documents" that "reflect, concern, refer, or relate to the nature or extent of the services that PAC provides under any Management Contract to any of its Institutional Accounts" -- a vague request that seemingly calls for all documents (internal and external) relating to each of Putnam's hundreds of institutional accounts. Such requests are unworkable, and we think it is essential that some alternate approach be fashioned that would *reasonably* accommodate your desire to compare mutual fund services and fees with institutional account services and fees.

Thomas J. Gallo, Esq.
April 5, 2006
Page 4

one individual's e-mails, over a period of years, into a searchable format, and of then performing searches of the resulting massive quantity of e-mails.

4. **PIM Interrogatories 14-17, and PRM Interrogatories 11 and 12.** As stated in our responses (including in General Objection 1), we believe that these interrogatories exceed the permitted number of interrogatories, and that, throughout the interrogatories, you have incorrectly grouped multiple interrogatories together as a "single" interrogatory repeatedly. (See Interrogatory 1 in the PIM and PRM interrogatories, for example, asking for the "three most knowledgeable people" in discrete category after discrete category.) At the same time, three of the excess interrogatories (PIM interrogatories 14 and 15, and PRM interrogatory 11) are contention interrogatories which you suggested are important to you, and that you might be flexible about in terms of timing. Without waiving our stated objections (including those concerning the excess number of interrogatories served), we will commit to answering these three interrogatories by the close of expert discovery.

5. **Contention interrogatories.** The three interrogatories referenced above are three of your four contention interrogatories; the other is PRM interrogatory 10. We are willing to expand the commitment referenced above to PRM interrogatory 10, as well. Please tell me if this commitment would resolve your concerns about the contention interrogatories.

6. **PIM Interrogatory 5.** This interrogatory seeks, in part, identification of the "portion of the management fee that corresponds with" the services we identified in Interrogatory 4 (e.g., "legal and compliance services", "accounting services", etc.). I explained -- and I think you acknowledged -- that as stated in our General Objection 4 there is no allocated "portion" of the fee for each such service, and we left it that I would discuss with Putnam whether it is possible to organize our response to Interrogatory 5 in such a way that it groups the identified costs according to the categories identified in Interrogatory 4. On this issue, I am conferring with the appropriate individuals at Putnam, and we will attempt to provide an amended response which seeks to resolve your concerns in this area. (There is an analogous issue with respect to PRM Interrogatory 4, and I will similarly address that issue as well.)

7. **PIM Interrogatory 1(f) (seeking identification of individuals knowledgeable about PIM expenses).** Here we identified Stacy Mills; without waiving our objections, and my view that the response is adequate, we will undertake to amend this response.

8. **PIM Interrogatory 12 (seeking a description of any resource sharing between PIM and PAC).** I explained our approach to this interrogatory, e.g., that we identified the cost types that involve activities performed

Thomas J. Gallo, Esq.
April 5, 2006
Page 5

on behalf of the mutual funds as well as institutional clients. You said that in light of that explanation your concern was likely with the level of detail here, and not the fundamental substance; if I am correct, we left it that you would think about this response further, with a view to providing me a more specific explanation of the additional detail you would like.

        9. **PRM Interrogatory 8 (seeking a description of the dispositions and uses of the 12b-1 fees).** Here my understanding is that you seek further detail. I will undertake to do so.

        10. **PRM Interrogatory 9 (seeking identification of all PRM personnel with decision-making responsibility relating to the uses and disposition of 12b-1 fees).** Without waiving our objection to this interrogatory (which is vague), we will provide an amended response with additional information.

        11. **References in interrogatory responses to documents.** In our interrogatory responses, we have on occasion referred you to specific documents. We will amend to cite bates numbers. (To the extent you mean that you want citation to all documents underlying the cited documents -- e.g., in the case of tabs in the black books -- we do not think that is called for or appropriate, but, in any event, we are producing what amount to the 'work papers' underlying the preparation of the black books in the 2002-2005 time period; this is an enormous task.)

B.    **Issues From Your March 16 Letter Not Discussed During Our March 28 Call**

        1. **General Objections 9 and 10 (which define "PIM" and "PRM").** We think that our definitions of PIM and PRM are appropriate (and that it is inappropriate to define those entities as including each and every other entity within the Putnam family of businesses). Also, it is not clear to me how these definitions have impacted our responses in a way that impacts you in practical terms. (For example, when you ask for specification of the management fee on a particular fund in a particular year, the answer to that request does not turn on how broadly "PIM" is defined; the answer to that question is the answer that has been provided). To the extent that there are particular interrogatories where you believe the answers are actually impacted or *potentially* impacted by this issue, I would be happy to discuss those interrogatories, and your particular concerns with those particular interrogatories.

        2. **General Objection 16 (objecting to producing information concerning mutual funds other than the five funds at issue).** You object to this general objection, but nearly all of your interrogatories are limited by their terms to the funds at issue. Again here, if there are particular interrogatories where you

Thomas J. Gallo, Esq.
April 5, 2006
Page 6

believe the answers are actually impacted by this issue, please tell me, and we can discuss those interrogatories in more concrete terms.

I think that the above covers all issues we discussed during our March 28 call, and all issues addressed in your March 16 letter. Please let me know, though, if I have missed something.

\* \* \*

Finally, I received a voicemail from Lisa Furnald on Friday morning asking if I agree that we have conferred to the extent that we can concerning documents. I was traveling, but, as Scott told Laura on Friday, we do not think so. After conferring with you about our original response to your document requests, we (as promised) reviewed that response item by item and revised it in multiple areas an effort to reach a compromise. We sent that to you on December 5, and did not hear anything from you about it until your March 16 letter, which asked if it was our "final position." As I stated in my March 21 response, "it would seem sensible for us to discuss your reactions and see if we can reach any further compromise. I continue to feel that the primary stumbling block on these is Putnam's desire to reach agreement on categories of documents that are more specifically defined than those described in your requests. We ourselves have spent a great deal of time defining such categories (as reflected in our responses), and are in the midst of an extensive production of documents within those categories. I understand that you remain dissatisfied, but think we could make great headway toward resolution if you could identify additional categories of documents that are described in similarly concrete terms."

Also, I was a bit surprised by Lisa's voicemail, given that only days before we had discussed three significant issues concerning documents (date range, institutional documents, and e-mail searching), and I said that I was going to get back to you soon with a proposal on each of those things. (Those proposals are contained in this letter.)

Very truly yours,

David S. Clancy

Enclosure

cc: D. Marder
    L. Furnald
    J. Carroll
    S. Lashway

## Institutional Spreadsheet

| Account | Client | Account Type | Client Type | Product | Fee Schedule | AUM |
|---|---|---|---|---|---|---|
| Account 1 | Client 1 | Separate Account | Endowment | | <$25mm 55 bps<br>$25-50mm 50 bps<br>$50-100mm 45 bps<br>>$100mm 40 bps | |
| Account 2 | Client 2 | Separate Account | Pension | | <$100mm 50 bps<br>$100-200mm 40 bps<br>>$200mm 30 bps | |
| Account 3 | Client 3 | Separate Account | Pension | | <$100mm 50 bps<br>$100-200mm 40 bps<br>$200-500mm 30 bps<br>>$500mm 20 bps | |
| Account 4 | Client 3 | Separate Account | Pension | | <$100mm 50 bps<br>$100-200mm 40 bps<br>$200-500mm 30 bps<br>>$500mm 20 bps | |
| Account 5 | Client 4 | Sub-Advisory | Fund Name | | <$50mm 55 bps<br>$50-100mm 45 bps<br>>$100mm 35 bps | |
| Account 6 | Client 5 | Sub-Advisory | Fund Name | | <$50mm 55 bps<br>$50-100mm 45 bps<br>>$100mm 35 bps | |