**TAB 6**

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

### ONE BEACON STREET
### BOSTON, MASSACHUSETTS 02108-3194
———
TEL: (617) 573-4800
FAX: (617) 573-4822
www.skadden.com

DIRECT DIAL
617-573-4889
EMAIL ADDRESS
DCLANCY@SKADDEN.COM

FIRM/AFFILIATE OFFICES
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
——
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

October 20, 2006

**BY E-MAIL AND FIRST CLASS MAIL**

Lisa A. Furnald, Esq.
Robins Kaplan Miller & Ciresi LLP
800 Boylston Street,
25th Floor
Boston, MA 02199

RE:     Vaughn v. Putnam (No. 04-10988-GAO)

Dear Lisa:

I write to address certain open issues, including the issues you raise in your October 6 letter.

First, you have asked when we expect to complete production of the documents we agreed to produce in our communications preceding your revised motion to compel. We anticipate having our hard copy production completed with respect to these documents by November 17.

Second, you have asked about the timing of our e-mail production. Assuming no expansion of our obligations in this regard (e.g., through a motion to compel ruling), we expect to begin producing documents on a rolling basis in the first week of November and to finish doing so by December 15. (I remind you that the quantity of pages being reviewed is in the millions.)

Third, you ask when you can expect our privilege log. We are continuing to focus on the production of documents responsive to your requests. We will provide you with our privilege log after we have completed our production of responsive documents and e-mails.

Fourth, your October 6 letter made certain requests concerning institutional account information, and I will now address those.

A. As to adding breakpoint schedules to the institutional spreadsheets, we are working on that, and expect to have revised spreadsheets to you early next week.

Lisa A. Furnald, Esq.
October 20, 2006
Page 2

B. As to institutional management agreements generally, we are gathering those, and it is an arduous process (requiring a search of client-specific files for contracts matching particular accounts, in particular years). We expect to produce a first installment of these next week.

C. You ask that the investment management agreements for the clients listed on Exhibits A and B to your letter of October 6 be produced with no redactions. We are now focusing on obtaining those contracts first (as you request), but we cannot agree to produce them unredacted. Putnam has non-disclosure agreements with institutional clients, the information you seek is otherwise proprietary, and we do not see that you have any legitimate need for it in this case. (We assigned each client a unique identifying number on the institutional account spreadsheets. Why is that not sufficient?)

D. You ask that we provide institutional spreadsheets for the years 2005 and 2006 as well. Your requests in this regard seem endless; for example, 2006 is not yet over, but you are asking for extensive data about institutional clients for 2006. Our clients expended significant time and effort preparing the four spreadsheets we have already provided, and we believe that they provide you with extensive and more-than-sufficient data.

E. You make 24 requests for what you refer to as "particularized documents" with respect to the 32 clients listed in Exhibit A of your letter (representing 128 different accounts for the time period 2001-2004). These are not requests for "particularized documents," and they remind us very much of the kind of requests you made earlier in the case, before your first motion to compel (which you substantially narrowed after the Court suggested, at the hearing on that motion, a different and more modulated approach). For example, you demand "all documents identifying, discussing or otherwise addressing the services provided to any of the institutional clients," which, as we read it, would require wholesale production of Putnam's files with respect to each of those clients and all of their accounts. Similarly, you demand "[a]ll documents constituting, identifying, discussing or otherwise addressing communications (oral or written) between any of the institutional clients and investment management personnel (including chief information officers, portfolio members, and portfolio leaders)." This request is plainly unreasonable.

In connection with PAC, we have already produced and/or are already producing:

- The institutional spreadsheets, which contain a wealth of information that you requested;

- The investment management agreements for the many accounts on the spreadsheets;

Lisa A. Furnald, Esq.
October 20, 2006
Page 3

- the PAC Form ADV Part II for the period January 1, 2003 through June 30, 2005 (which contains extensive information concerning PAC and its services);[1]

- sample pitch books, client review books, and product profiles, for institutional account types that correspond to the funds at issue.  See 0110593-0111121.

- the annual black books for a more-than-ten-year period (which describe the services provided to institutional clients);

- PAC financial statements;

- the trial balances (which encompass PAC, along with all of the other Putnam entities); and

- other financial records encompassing PAC, including the flash reports.

Further, we have committed to search for and produce documents in multiple categories of documents such as the following:  "All documents generated during the period January 1, 2002 to June 30, 2005 that compare the investment performance of any of the funds at issue with the investment performance of any Putnam institutional account."

Your requests seem to have been drafted without regard to these existing commitments.  (For example, you ask for documents "reflecting" returns on institutional accounts, as well as documents "reflecting" each of the institutional accounts' portfolio holdings, even though there are columns on the spreadsheets for returns, and portfolio holdings.)

I also note that the Court in Baker v. Am. Century Mgmt., Inc., No. 04-4039-CV-C-ODS (W.D. Mo. July 17, 2006), precluded the plaintiffs from presenting any evidence relating to the defendants' management of its institutional accounts, stating -- after review of caselaw, including Gartenberg, on which you have relied heavily -- that such evidence was "irrelevant." At a minimum, this ruling reinforces that discovery in this area should be appropriately modulated.

As was the case on your first motion to compel, I am open to having a reasonable discussion with you about concrete and appropriately tailored categories of documents.  If you want to proceed in that manner, I would ask that you provide, in writing, a substantially narrowed and revised set of requests, which might serve as the basis for that kind of discussion.

Very truly yours,

David S. Clancy

cc:  J. Carroll
     S. Lashway

---

[1] We will now produce the 2002 Form ADV Part II as well, in response to your letter.