**TAB 11**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

ROBERT L. BAKER, et al., )
            )
        Plaintiffs, )
            )
    v. ) CASE NO. 04-4039-CV-C-ODS
            )
AMERICAN CENTURY INVESTMENT )
MANAGEMENT, INC., )
            )
        Defendant. )
            )

**AMERICAN CENTURY'S MOTION *IN LIMINE* TO PRECLUDE
EVIDENCE RELATING TO SUB-ADVISED AND
INSTITUTIONAL ACCOUNTS AND SUGGESTIONS IN SUPPORT**

Defendant American Century Investment Management, Inc. ("American Century") respectfully moves to exclude evidence relating to its management of non-mutual fund accounts such as pension funds and subadvised accounts. Evidence concerning these accounts, often referred to as "institutional accounts,"[1] is irrelevant to a claim involving mutual fund fees under Section 36(b) of the Investment Company Act of 1940 (the "ICA"). Courts have repeatedly rejected attempts to use institutional account fees as a benchmark for mutual fund fees, and there is no reason to contravene settled law on this question.

Plaintiffs' sole claim is that American Century received excessive fees for managing the Ultra, Growth and Select mutual funds in violation of Section 36(b). To support this claim, Plaintiffs intend to offer substantial amounts of evidence about fees charged by American

---

[1] The term "institutional accounts" herein refers to two kinds of accounts: (i) institutional separate accounts such as pension funds and (ii) subadvised accounts. Subadvised accounts are mutual funds marketed to the public by a different investment adviser, which retains American Century to manage the funds' assets. The investment adviser, not American Century, provides most shareholder services and other services. Institutional separate accounts are not mutual funds at all, are not governed by the same regulatory regime as mutual funds, and are less costly to manage.

1

Century to manage the assets of institutional accounts. The comparison is flawed. Courts hearing Section 36(b) cases have repeatedly recognized that there are substantial differences between mutual funds and institutional accounts, and that mutual fund shareholders receive a vast array of costly services that are not provided to institutional accounts.[2] Accordingly, evidence relating to American Century's institutional accounts should be excluded.

## ARGUMENT

Courts that have considered the issue have consistently rejected Plaintiffs' argument that institutional fees are relevant to a claim that mutual fund fees are excessive under Section 36(b). To prevail in a Section 36(b) case, a plaintiff must establish that the fund's fee "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.* ("*Gartenberg I*"), 528 F. Supp. 1038 (S.D.N.Y. 1981), *aff'd*, 694 F.2d 923, 928 (2d Cir. 1982), *cert denied*, 461 U.S. 906 (1983). In deciding whether a plaintiff has met this standard, courts consider six factors identified in *Gartenberg I*, including "comparative fee structures." *See Gartenberg*, 694 F.2d at 930; *see also Krinsk v. Fund Asset Mgmt., Inc.*, 715 F. Supp 472, 486 (S.D.N.Y. 1988). Relevant evidence of "comparative fee structures" is limited to fees charged to an "appropriate universe" of similar mutual funds; fees charged to manage entirely different investment products are irrelevant. *See Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1237 (S.D.N.Y. 1990).

Plaintiffs' false comparison of mutual funds with institutional accounts has been repeatedly rejected. In *Gartenberg I*, the plaintiffs alleged that the fees paid by a money market

---

[2] For example, in managing the mutual funds, American Century provides free telephone and internet services, maintains individual shareholder records and prints account statements and other documents, complies with extensive statutory and regulatory requirements, and incurs many other costs that are not incurred in managing institutional accounts.

2

fund were too high, and sought to compare the fund's fees to fees charged to institutional accounts. The district court rejected the comparison, and instead limited its comparative fee analysis to similar money market funds. 528 F. Supp. at 1048. This approach was supported by the legislative history of Section 36(b), which reflected the intent of Congress that mutual fund fees be evaluated in light of "<u>industry practice</u>" and "<u>industry level of management fees</u>." *Id.* at 1046 (emphasis added).

The *Gartenberg* plaintiffs' reliance on institutional fees was again rejected on appeal. The Court of Appeals explained:

> Appellants' argument that the lower fees charged by investment advisers to large pension funds should be used as a criterion for determining fair advisory fees for money market funds must also be rejected. The nature and extent of the services required by each type of fund differ sharply.

*Gartenberg*, 694 F.2d at 930 n.3.[3]

Since *Gartenberg I*, other courts have refused to use institutional fees to assess mutual fund fees under Section 36(b). In *Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 663 F. Supp 962 (S.D.N.Y. 1987), *aff'd* 835 F.2d 45 (2d Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988), the district court rejected plaintiffs' attempt to compare a money market fund's fees with the fees charged by the same adviser to its "private counsel" (*i.e.*, institutional) accounts. 663 F. Supp. at 974 n.38. The district court stated that "the types of services provided by the Adviser to the Fund and private counsel clients differ substantially." *Id.* at 974 at n.37. Citing *Gartenberg*, the court ruled that it was impermissible to compare the fees charged to different funds or accounts for whom different services were being provided. *Id.*

---

[3] Among other differences, the Second Circuit cited the District Court's determination that "the pension fund does not face the myriad of daily purchases and redemptions throughout the nation which must be handled by the Fund, in which a purchaser may invest for only a few days." *Gartenberg I*, 694 F.2d at 930 n.3.

3

Similarly, in *Strougo v. BEA Assocs.*, 188 F. Supp. 2d 373, 384 (S.D.N.Y. 2002), a shareholder in a equity mutual fund alleged that the fund's fees were excessive because, among other things, the fees were higher than those charged to the adviser's institutional clients. *Id.* The district court rejected the comparison because the "relevant comparison must be to other mutual funds, not to non-mutual fund institutional clients." *Id.* (citing *Schuyt*). Further, in *Kalish,* the court held that to the extent comparative fees are probative in a Section 36(b) case, "a mutual fund adviser-manager must be compared with members of an appropriate universe: adviser managers of similar funds." 742 F. Supp. at 1237. The court found it was irrelevant to compare the mutual fund adviser to broker-dealers and large banks. *See also In re AllianceBernstein Mutual Fund Excessive Fee Litigation,* No. 4 Civ. 4885, 2006 WL 1520222, *2 (S.D.N.Y. May 31, 2006) (dismissing Section 36(b) claim on motion to dismiss based on "fee discrepancies for institutional and retail clients," noting that an independent report disclosed that "the fee differential reflects, among other things, different services provided to such clients, and different liabilities assumed"); *Bromson v. Lehman Mgmt., Co.*, No. 84 Civ. 7795, 1986 WL 165 at *2 (S.D.N.Y. Mar. 13, 1986) (the court refused to allow the plaintiff to conduct discovery regarding the fee schedule for the adviser's non-mutual fund accounts "due to the immateriality of such information to the [Section 36(b)] case").[4]

Courts to have considered the issue have rejected comparisons of mutual funds to institutional accounts.[5] Evidence of fees charged to American Century's institutional clients is

---

[4] In contrast to *Bromson*, a court permitted <u>discovery</u> of evidence concerning institutional account fees in *Batra v. Investors Research Corp.*, 144 F.R.D. 97, 99 (W.D. Mo. June 9, 1992). But in doing so, the court reaffirmed that the use of the information would be "limited" at trial because, under *Gartenberg* and *Bromson*, "advisory fees from dissimilar clients such as pension funds are not relevant for comparative purposes."

[5] Significantly, the cases that have rejected the comparison of institutional and retail fees involved an "advisory fee" which covered fewer services than American Century's "unified" fee. Thus, because

4

not relevant to this case, and that evidence should be excluded at trial.

Dated: June 22, 2006

                      Respectfully submitted,

                      ROUSE HENDRICKS GERMAN MAY PC

                      By: /s/ Daniel E. Blegen
                          Randall E. Hendricks  MO #24832
                          Daniel E. Blegen  MO #47276
                      One Petticoat Lane Building
                      1010 Walnut, Suite 400
                      Kansas City, Missouri 64106
                      Tel: (816) 471-7700
                      Fax: (816) 471-2221

                      MILBANK, TWEED, HADLEY & McCLOY LLP
                          James N. Benedict
                          Sean M. Murphy
                          Mia C. Korot
                      One Chase Manhattan Plaza
                      New York, New York 10005-1413
                      Tel: (212) 530-5000
                      Fax: (212) 530-5219

                      *Attorneys for Defendant American Century Investment Management, Inc.*

---

American Century's unified fee covers far more services that are not provided to institutional accounts, such as shareholder recordkeeping, custody and fund accounting, the institutional and mutual fund comparison is far more attenuated then even the prior cases have recognized. If there was ever a case where fees charged to institutional accounts cannot be compared to mutual fund fees, this is it.

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above and foregoing document was filed electronically with the above-captioned court, with notice of case activity generated and sent electronically by the Clerk of said court (with a copy to be mailed via regular U.S. mail to any individuals who do not receive electronic notice from the Clerk) this 22nd day of June, 2006, to:

Wm. Dirk Vandever, Esq.
Dennis Egan, Esq.
The Popham Law Firm, P.C.
323 W. 8th Street, Suite 200
Kansas City, MO 64105

Guy M. Burns, Esq.
Jonathan S. Coleman, Esq.
Becky Ferrell-Anton, Esq.
Johnson, Pope, Bokor, Ruppel & Burns, LLP
100 North Tampa Street, Suite 1800
Tampa, FL 33602

Michael J. Brickman, Esq.
James C. Bradley, Esq.
Nina H. Fields, Esq.
Patrick Richardson, Esq.
Westbrook & Brickman LLC
174 East Bay Street
Charleston, SC 29401

Gene P. Graham, Jr., Esq.
Steven W. White, Esq.
White, Allinder, Graham & Buckley, LLC
14801 East 42nd Street
Independence, MO 64055

                              /s/ Daniel E. Blegen
                              *Attorney for Defendant*