UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| John J. Vaughn, Gerald A. Kalbfleisch, and Michael and Myrtle Hathaway, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Number 04-CV-10988 (GAO) |
| Putnam Investment Management, LLC and Putnam Retail Management, LLP, | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Defendants. | ) ) ) | |

**THE INDEPENDENT TRUSTEES OF THE PUTNAM FUNDS'
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

John D. Donovan  (BBO# 130950)
Peter L. Welsh  (BBO# 643261)
William F. Abely  (BBO# 660281)
Kim B. Nemirow  (BBO# 663258)
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

Counsel to the Putnam Funds and to the
Independent Trustees of the Putnam Funds

Dated:  December 15, 2006

10288585_9

Neither the Putnam Funds nor the Independent Trustees of the Putnam Funds (the "Trustees") are parties to this action, which alleges violations of Section 36(b) of the Investment Company Act, 15 U.S.C. § 80-35(b) by Putnam Investment Management, LLC and Putnam Retail Management, LLP. Despite the non-party status of the Funds and the Trustees, despite the fact that the Trustees have, over the course of nearly a year, collected some 1.6 million pages of documents, manually reviewed some 100,000 pages of documents and produced some 31,000 pages of documents, and despite the fact that the Trustees have agreed to produce the Chairman of the Board and the Chair of the Contract Committee for deposition testimony, Plaintiffs ask this Court to compel the Trustees to submit forthwith to still further discovery. Specifically, Plaintiffs' Motion to Compel the Putnam Trustees to Respond to Subpoenas (the "Motion") seeks an order: (1) compelling the depositions of four additional Trustees; and (2) compelling the Trustees to review and produce documents created, sent or received during 2006 – documents the relevance of which is currently a matter of dispute that will be resolved shortly by the Court. Such additional discovery would impose unreasonable costs on the Funds and, indeed, on the very shareholders whose interests Plaintiffs claim to represent.

Because the Trustees have extensively complied with the subpoenas served by Plaintiffs and because the additional discovery sought by Plaintiffs is premature, not clearly relevant or cumulative of discovery that has already taken place or will shortly take place, the Court should deny Plaintiffs' Motion.

I.  **BACKGROUND**

   A.  **The January and October Subpoenas**

Plaintiffs have served two sets of document subpoenas on the Trustees, the first on or about January 4, 2006 ("January Subpoenas") and the second on or about October 6, 2006 ("October Subpoenas").[1]  *See* Dec. 5, 2005 Subpoena of John A. Hill (Exhibit 1 attached to the Transmittal Declaration of Peter L. Welsh ("Welsh Decl.")); October 6, 2006 Subpoena of John A. Hill (Exhibit 2 attached to Welsh Decl.).  The January Subpoenas contain a total of 42 document requests covering the period January 1, 2003 through "the present."  While the October Subpoenas contain fewer requests for documents, the requests in the October Subpoenas seek extremely broad categories of documents, including the following:

- "[A]ll written communications between PIM and PRM, on the one hand, [and] any Trustees, on the other hand."  Oct. 6, 2006 Subpoena at R. 9; and
- "[A]ll written communications between the staff of the Office of the Trustees, on the one hand, and any Trustee, on the other hand."  Oct. 6, 2006 Subpoena at R. 10.

The October Subpoenas seek such documents without regard to subject matter and for a broader time period than the January Subpoenas, including the periods January 1, 2002 through December 31, 2002 and January 1, 2006 through "the present."

   B.  **The Trustees' Compliance With the Subpoenas**

For nearly one year now, the Trustees have extensively complied with both the January and October Subpoenas by undertaking sustained and far-reaching discovery efforts to collect, review and produce paper and electronic documents responsive to Plaintiffs' document requests.

---

[1] The October Subpoenas also include notices to depose six of the Independent Trustees.

To date, the Trustees have reviewed and produced the following materials to Plaintiffs for the period 2003 through 2005:

- The "Black Books" provided to the Trustees by the management company in connection with their annual review of the Funds' management contracts and distribution plans;

- All meeting materials and agendas provided to the Trustees in connection with the meetings of the Board of Trustees and the Contract Committee;

- Written communications, including archived e-mails, between the Trustees and the Staff of the Office of the Trustees relating to numerous requested subjects;

- Written communications, including archived e-mails, between the Trustees and Putnam Investment Management Company, LLC ("PIM") and/or Putnam Retail Management, LLP ("PRM") relating to numerous requested subjects;

- Notes taken by the Trustees relating to numerous requested subjects;

- All minutes of meetings of the Board of Trustees, the Contract Committee, the Communication Service and Marketing Committee, and the Brokerage and Custody Committee;

- Certain minutes of meetings of the Board Policy and Nominating Committee and the Audit and Pricing Committee;

- A detailed list of the subject matters discussed during all meetings of the Audit and Pricing Committee;[2] and

- All charters for all of the committees of the Board of Trustees.

In the course of complying with the two sets of subpoenas, the Funds have incurred significant legal fees and expenses. The Trustees, their staff and Ropes & Gray LLP have collected over 1.6 million pages of paper and electronic documents for the time period covered in the January Subpoenas – January 1, 2003 through January 4, 2006. As part of their subpoena compliance efforts, the Funds and the Trustees retained a third-party electronic data hosting

---

[2] In an effort to assist Plaintiffs in identifying those portions of the Audit and Pricing Committee minutes that might conceivably address topics potentially related to matters at issue in this action, the Trustees prepared a detailed list of topics discussed during every Audit and Pricing Committee meeting for the period 2003 - 2005 and provided that list to Plaintiffs. The Trustees have agreed to produce those portions of the Audit and Pricing Committee minutes identified by Plaintiffs, based on their review of the list prepared by the Trustees, as potentially related to matters at issue in this action to this litigation.

vendor. The data hosting vendor, in turn, ran numerous electronic searches for possibly relevant documents. Ropes & Gray then manually reviewed more than 100,000 pages of documents to identify possibly relevant documents, and the Funds and the Trustees have produced, from that review, more than 31,000 pages of documents. The Trustees also have prepared and provided to Plaintiffs a privilege log totaling some 59 pages.

In addition, in the January Subpoenas, Plaintiffs failed to request any documents for the 2002 period. Now, many months after the Trustees began the long and expensive process of responding to the January Subpoenas, in the October Subpoenas, Plaintiffs insist that, among other things, the Trustees return to their files and repeat, for the 2002 period, the same time-intensive and resource-consuming process of collecting, reviewing, and producing documents that was previously performed for the period 2003 through 2005 in response to the January Subpoenas. Notwithstanding the fact that Plaintiffs could have requested the 2002 documents in the January Subpoenas, but instead waited until October to do so – after the Funds and the Trustees had substantially completed collecting and producing documents in response to the January Subpoenas – the Trustees have agreed to repeat much of the process and produce nearly all of the 2002 documents requested in the October Subpoenas.

II. **PLAINTIFFS' REQUEST TO DEPOSE SIX INDEPENDENT TRUSTEES AND SCHEDULE SEVEN MORE DEPOSITIONS IS OVERLY BURDENSOME, UNNECESSARY, AND WILL LEAD TO DUPLICATIVE TESTIMONY**

   A. **Plaintiffs' Request for Deposition Testimony From Between Six and Thirteen Trustees Will Only Lead To Duplicative and Irrelevant Discovery**

The Trustees have agreed to produce for depositions in January of 2007 the Chairman of the Board of the Putnam Funds, John A. Hill, and the Chair of the Contract Committee, Jameson

A. Baxter.[3] Plaintiffs nevertheless seek to depose four more Trustees at this time. Furthermore, during meet and confer conferences between counsel to Plaintiffs and counsel to the Funds and the Trustees preceding the filing of the Motion, Plaintiffs sought to schedule, at this time, seven *additional* Trustees for "possible" depositions in the future.

Plaintiffs contend that, because the Trustees' independence and conscientiousness are factors used to determine whether management fees are excessive, they are entitled to depose any, or even all, of the Trustees. Yet, Plaintiffs have not cited – and cannot cite – to any evidence that any of the Trustees they seek to depose was not independent or that any of the Trustees did not use the utmost conscientiousness. Moreover, the Chairman of the Board and the Chair of the Contract Committee are more than qualified to testify about the discussions, deliberations and votes that occurred during the relevant meetings of the Trustees. Plaintiffs have offered no explanation for why deposing additional Trustees would result in anything other than duplicative testimony and an additional unwarranted burden. In the absence of such an explanation and particularly in the absence of any attempt to first determine whether the testimony of Mr. Hill and Ms. Baxter would be sufficient, the scheduling of additional depositions is premature and unwarranted.

> B.  **The Reasons Cited By Plaintiffs For Requiring the Depositions of Messrs. Curtis, Mullin and Stephens and Ms. Drucker Fail To Explain Why Such Testimony Is Necessary and Non-Duplicative**

Omitted from Plaintiffs' briefing to this Court is the fact that, during the meet and confer process, the Trustees requested several times that Plaintiffs provide reasons for why deposition testimony by Messrs. Mullin, Curtis and Stephens and Ms. Drucker was likely to lead to relevant evidence and was not likely to be duplicative of testimony by Mr. Hill and Ms. Baxter. *See*

---

[3] Mr. Hill served as a member of the Contract Committee prior to becoming Chairman of the Board in 2001 and, since then, has continued to regularly attend Contract Committee meetings.

11/2/06 Letter from P. Welsh to L. Furnald (Exhibit 3 attached to Welsh Decl.). Those requests went unanswered. To this day, Plaintiffs have failed to identify a single reason why the Chairman of the Board of Trustees and the Chair of the Contract Committee would be unable to testify adequately about the deliberations of the Trustees with respect to their annual review of the management contracts and distribution plans.

The specific reasons cited by Plaintiffs for seeking the additional depositions of Messrs. Curtis, Mullin and Stephens and Ms. Drucker are unremarkable, irrelevant to this litigation and unpersuasive given that Mr. Hill and Ms. Baxter are able to testify fully as to all relevant topics. Specifically:

- **Mr. Curtis:** The sole reason advanced by Plaintiffs for seeking Mr. Curtis' deposition – namely, that Mr. Curtis has been a member of the Contract Committee – fails to address the fact that Plaintiffs will be able to learn all pertinent information relating to the Committee and its deliberations from Ms. Baxter, who served as the Chair of that Committee during the relevant period. Although they attempt to offer a reason for why a deposition of Mr. Curtis may be relevant, Plaintiffs simply fail to explain why depositions of Ms. Baxter and Mr. Hill are not sufficient.

- **Mr. Mullin:** As with Mr. Curtis, Mr. Mullin served on the Contract Committee, but this membership alone is insufficient to warrant seeking testimony, particularly where such testimony likely will be duplicative of Ms. Baxter's testimony. Ms. Baxter is fully competent to testify as to the deliberations of the Contract Committee to which Mr. Mullin was a party. Plaintiffs fail to offer any explanation to the contrary.

- **Mr. Stephens:** Plaintiffs argue that Mr. Stephens' positions on the Litigation Committee and the Audit and Pricing Committee make his testimony relevant. Yet, they fail to offer any explanation for this conclusory assertion. Neither of these committees have responsibilities relating to the Funds' management contracts, distribution plans or any other matters conceivably relevant to this action.

- **Ms. Drucker:** Plaintiffs' contention that Ms. Drucker should be deposed because she may be aware of certain unspecified shareholder complaints and because she has had discussions with portfolio managers is unavailing. Plaintiffs first claim that Ms. Drucker "*may be able to* provide" information about some unspecified shareholder complaints. Pls.' Mem. at 6. Yet, there is no claim that such complaints ever occurred or that any such supposed complaints relate to any matter relevant to this action. Plaintiffs likewise offer no explanation for how the specific details of conversations with certain portfolio managers relate, in any way, to the process and diligence employed by the Trustees, or if

they somehow do, why the testimony of the portfolio managers, which Plaintiffs have concededly already obtained, is somehow not sufficient.

### C. Plaintiffs' Position Has Been Rejected By the Courts and By Robins Kaplan Itself In Other Section 36(b) Cases

Although Robins Kaplan, on behalf of Plaintiffs, brands the Trustees' position on this issue "ludicrous," the Trustees' position is precisely the same position successfully advocated by Robins Kaplan in another Section 36(b) case. Pls.' Mem. at 4. In that matter, *Gallus v. Am. Express Fin. Corp., et al.*, Civ. No. 04-4498 (DWF-SRN) (D. Minn.), Robins, Kaplan, Miller & Ciresi LLP, who represents Plaintiffs in the instant action, represented the third party independent trustees of the American Express Funds. In *Gallus*, following service on the trustees of subpoenas which, much like those served by Plaintiffs in this case, sought depositions of some seven trustees of the American Express Funds (k/n/a The RiverSource Funds), Robins Kaplan adamantly maintained, on behalf of the American Express trustees, that the plaintiffs in that case were entitled to depose only two trustees – the chairman of the board of trustees and the chair of the contract committee. In the *Gallus* case, Robins Kaplan argued that "there is no reason to have all seven of those [Trustees] testify and describe, over and over, what materials they reviewed, what discussion they had, and what vote was taken."[4] Critically, the Court agreed with Robins Kaplan and held that the plaintiffs would be permitted to take only the depositions of the chairman of the board and the chair of the contract committee and that the information learned from those depositions "should determine whether it is appropriate to depose the remaining five independent directors." *See Gallus*, Civ. No. 04-4498 Slip Op. (DWF-SRN) (D.

---

[4] Robins Kaplan's letters to the plaintiffs in the *Gallus* matter are particularly insightful on this point. For example, they wrote to the plaintiffs: "[a]ll you have ever said is that you want to examine the other Board members as to their conscientiousness – 'their duties' as you say in the letter…you cite to nothing from the depositions of [the Chairman of the Board and Chairman of the Contract Committee] which causes you to suspect that other Board members were not conscientious." *See Gallus v. Am. Express Fin. Corp., et al.*, Civ. No. 04-4498 (DWF-SRN) (D. Minn.) (Ex. 6 (Mar. 14, 2006 Letter from Robins, Kaplan, Miller & Ciresi to G. Burns) to Director's Mem. in Opp. to Pls. Mot. to Take More Deps. of Directors, June 9, 2006). (Exhibit 6 attached to Welsh Decl.).

Minn. Nov. 10, 2005) (Exhibit 4 attached to Welsh Decl.); *Gallus*, Civ. No. 04-4498 (DWF-SRN) (D. Minn.) (Director's Br. Mot. to Quash at 7, Oct. 11, 2005) (Exhibit 5 attached to Welsh Decl.).[5]  Plaintiffs in the instant action should be held to the same standard as the plaintiffs in *Gallus* – as urged by Robins Kaplan in that case – and should, at a minimum, be required to start with depositions of Mr. Hill and Ms. Baxter and thereafter explain why the depositions of any additional Trustees are "necessary."

The First Circuit has taken a similar tack in a different setting.  In *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001), the United States Court of Appeals for the First Circuit upheld the United States District Court's decision quashing a set of subpoenas seeking to depose additional members of a non-party working group about their analysis and processes when, pursuant to the initial subpoenas, the non-party company had already produced two members of the group for depositions.  After the depositions of the two employees, who were all members of the same working group that analyzed combustion liners for signs of counterfeiting, defendant Signal subpoenaed three additional members of that same working group to testify on the same subject – *i.e.*, the analysis performed by the team that conducted its work and reached its conclusions.  Finding that the request was "belated, duplicative and cumulative, and otherwise unduly burdensome to the appellees," the First Circuit affirmed the District Court's order quashing the subpoenas for additional depositions.  *Id.* at 193 ("Two GEAE representatives were already deposed, and Signal did not articulate any dissatisfaction with the testimony it received.").  Like Plaintiffs here, the subpoenaing party, Signal, "ha[d] not shown that the information sought from [the three additional employees]

---

[5] After the depositions permitted by the Court in *Gallus*, Plaintiffs petitioned for permission to take the depositions of the five remaining directors.  Robins Kaplan again opposed Plaintiffs' motion and the Court again agreed with Robins Kaplan, noting "Plaintiffs have not stated what they learned or did not learn from the [depositions of the chairman of the board and chair of the contract committee] that warrants taking further [Trustee] depositions." *Gallus*, Civ. No. 04-4498 Slip Op. (DWF-SRN) (D. Minn. June 22, 2006) (Exhibit 7 attached to Welsh Decl.).

would be anything but cumulative or duplicative. Therefore," the court held, "it would be an 'undue burden' on GEAE, a non-party, to permit such a 'fishing expedition'" and averred that "we will not allow Signal to go on a 'fishing expedition,' with the mere 'hope' that it will obtain the information it" seeks. *Id.* (quoting *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989)).

The reasoning in *Ameristar* compels the same result here. Like Signal, Plaintiffs argue they should be permitted to depose four additional Trustees as to the methods and analysis of the Trustees as a group, despite the fact that they will have a full opportunity to depose two representative Trustees on these same matters. Unlike Signal, however, Plaintiffs have not even waited to take the depositions of two of the Trustees before making their demand – and moving this Court – for additional, and wholly duplicative, testimony. Given the Trustees' demonstrated willingness to produce two representatives for testimony and given the fact that Plaintiffs have not so much as attempted to determine whether the testimony of Mr. Hill and Ms. Baxter is sufficient before seeking additional testimony on precisely the same subject, the Court should deny Plaintiffs' Motion to Compel the depositions of any additional Trustees. If, after the depositions of Mr. Hill and Ms. Baxter, Plaintiffs can articulate a specific and relevant basis for requiring additional Trustee deposition testimony, such non-duplicative depositions could proceed.

### III. PLAINTIFFS' REQUESTS FOR DOCUMENTS CREATED, SENT OR RECEIVED AFTER JANUARY 1, 2006 SHOULD BE STAYED PENDING THE COURT'S DECISION ON THE RELEVANCE OF 2006 TO THIS ACTION

#### A. There Is No Reason For The Trustees To Collect, Review Or Produce Any 2006 Documents Until the Court Rules On Plaintiffs' Pending Motion to Compel As To Putnam

Contrary to Plaintiffs' assertions, Ropes & Gray LLP, as counsel to the Funds and the Trustees, does not "refuse" to produce 2006 documents. Instead, the Funds and Trustees have

-10-

consistently noted that a nearly identical motion by Plaintiffs seeking to compel Defendants to produce documents for the 2006 period is currently pending before this Court. That motion has been fully briefed and, on November 28, 2006, was the subject of two hours of oral argument before this Court. A decision on that motion is forthcoming. *See* Pls.' 4/27/06 Mot. to Compel, 6-8 (Docket 50); Defs.' 5/11/06 Opp. to Mot. to Compel, 17-20 (Docket 51); Pls.' 9/11/06 Rev. Mot. to Compel (Docket 65). The Court's decision will likely decide, among other things, the issue of whether the 2006 period is relevant to this action, as well as the scope of permissible discovery for the 2006 period. In view of this forthcoming decision, Ropes & Gray has repeatedly requested that the Trustees and the Funds be permitted to wait for the Court to rule on the pending motion to compel as to Defendants before engaging in extensive – and what may (depending on the Court's forthcoming ruling) ultimately prove to be entirely unnecessary – further document discovery efforts. Indeed, the parties in the Section 36(b) case brought against MFS and also before this Court, *Dumond v. Mass. Fin. Svc. Co.*, agreed to precisely such a stay pending this Court's ruling on the identical issue in that case.

The interests of efficiency and economy central to the Rule 45 procedure require, at a minimum, the postponement of the issues raised by the instant motion until the Court has ruled on Plaintiffs' motion to compel many of the same categories of documents from Defendants.

   **B. The 2006 Documents Are Not Otherwise Discoverable**

As their fall-back position, Plaintiffs assert that the 2006 documents are relevant and discoverable regardless of how this Court rules on the earlier motion to compel as to Putnam. Plaintiffs insist that, regardless of the outcome of the motion to compel as to Putnam, they are nonetheless entitled to obtain 2006 documents because such documents would include "historic analyses of the data, and therefore, the analyses prepared for the 2006 contract review" – analyses which Plaintiffs claim they are entitled to obtain. *See* Pls.' Mem. at 8. Plaintiffs'

argument is disingenuous. First, the requests contained in the October Subpoenas are breathtakingly broad and are, in no way, limited to historic "data" prepared as part of the Black Book process. Second, Plaintiffs already have obtained from Defendants precisely the historic "data" they claim they now need to obtain from the Funds and the Trustees.

Far from seeking historic data relating to the 2006 Black Book process or, for that matter, documents limited to a post-complaint damages calculation – and contrary to Plaintiffs' claim that the requests are "narrowly tailored," – the requests contained in the October Subpoenas are exceedingly broad. *See* Pls.' Mem. at 7. In order to comply with the fifteen document requests contained in the October Subpoenas, the Trustees would need to collect and review every document created, sent or received by any Trustee or by any staff member of the Office of the Trustees beginning in January of 2006. By requesting all communications between the Trustees and the Defendants, Plaintiffs are essentially seeking to morph their role as Plaintiffs in this action into that of watchdogs for the Funds, a role which is served by the Trustees.

Although Plaintiffs contend that it would require "minimal" effort to comply with the October Subpoenas, this is simply not true. For example, Request Number 10 in the October Subpoenas asks for the production of "all written communications between PIM and PRM, on the one hand, and any Trustee, on the other hand." This request, and many others, are not limited to the subject matter of this litigation, let alone to "historic" Black Book "data" or even a post-complaint damages calculation; on the contrary, the requests seek <u>every communication</u> between the Trustees and the Defendants or between the Trustees and their Staff, regardless of the subject matter and regardless of its relevance to this action. Such requests are not only not "narrowly targeted," they *prima facie* violate Rule 45. *See Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995) ("Obviously, if the sought-after

documents are not relevant nor calculated to lead to the discovery of admissible evidence, then *any burden whatsoever* imposed upon [non-party] Acer would be by definition 'undue.'") (emphasis in original); *Heidelberg Americas*, 333 F.3d at 41 (affirming decision to quash a non-party subpoena in part because "[t]he materials sought [by the subpoena to non-party Heidelberg] are not probative of...the threshold issue in the [underlying] litigation."). The discovery process is intended to support the finding of evidence to support claims filed in court and is not intended to allow a plaintiff the opportunity to manufacture new claims.

Lastly, Plaintiffs *have already obtained* from Putnam much of the historic data they seek from the Funds. Specifically, as counsel to Plaintiffs informed counsel to the Funds and the Trustees during the meet and confer process preceding the filing of Plaintiffs' Motion, Putnam has already produced to Plaintiffs copies of the Black Books and other related financial information from 2006. These documents – which Plaintiffs, by their own admission, already possess – are more than sufficient to address Plaintiffs' ostensible need for "historic" "data" from the 2006 Black Book process.

## IV.   CONCLUSION

For the foregoing reasons, the Trustees respectfully request that the Court deny Plaintiffs' Motion to Compel.

### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), the Trustees respectfully request a hearing on this motion.

Respectfully submitted,

/s/ Kim B. Nemirow
John D. Donovan  (BBO# 130950)
Peter L. Welsh  (BBO# 643261)
William F. Abely  (BBO# 660281)
Kim B. Nemirow  (BBO# 663258)
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

Counsel to the Putnam Funds and to the
Independent Trustees of the Putnam Funds

Dated:  December 15, 2006
Boston, Massachusetts

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| John J. Vaughn, Gerald A. Kalbfleisch, and Michael and Myrtle Hathaway, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Number 04-CV-10988 (GAO) |
| Putnam Investment Management, LLC and Putnam Retail Management, LLP, | ) ) ) | |
| Defendants. | ) ) | |

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that the foregoing Independent Trustees of the Putnam Funds Opposition to Plaintiffs' Motion to Compel was served upon the following persons electronically through the ECF System and by First Class Mail, postage pre-paid, this 15th day of December, 2006:

Lisa A. Furnald
Robins, Kaplan, Miller & Ciresi L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199

                                        /s/ Peter L. Welsh
                                        Peter L. Welsh