UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| JOHN J. VAUGHN, GERALD A. KALBFLEISCH, MICHAEL HATHAWAY, and MYRTLE HATHAWAY,<br><br>        Plaintiffs,<br><br>v.<br><br>PUTNAM INVESTMENT MANAGEMENT, LLC and PUTNAM RETAIL MANAGEMENT LIMITED PARTNERSHIP,<br><br>        Defendants. | Civil Action No. 04-10988 (GAO) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION TO ENLARGE DEPOSITION LIMIT**

Plaintiffs respectfully request that the Court enlarge the deposition limit from twenty depositions to twenty-seven. Plaintiffs need the additional depositions because this is a fact-intensive action involving, *inter alia*, the fees, costs and services for the investment management of five mutual funds, as well as the conduct of the twelve trustees who serve as fiduciaries to those funds and annually approve the fees. Plaintiffs have now completed or scheduled eleven depositions, but to prepare their case for trial need approximately sixteen more witnesses. Plaintiffs submit that their request for twenty-seven depositions is eminently reasonable in light of the number of factual issues involved.

I.    BACKGROUND.

Plaintiffs bring this action against Putnam Investment Management ("PIM") and Putnam Retail Management Limited Partnership ("PRM") under Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b) on behalf of five mutual funds, the Voyager Fund, Classic Equity Fund, Growth Opportunities Fund, Investors Fund and The Putnam Fund for Growth and Income (the "Funds"). PIM is the investment advisor to the Funds and PRM is the underwriter and distributor. Plaintiffs are shareholders of the Funds and allege that PIM and PRM (collectively, "Putnam") charge the Funds excessive management and 12b-1 fees in breach of Putnam's fiduciary duties. Specifically, Plaintiffs contend that the Portfolio Selection fees component (the cost of selecting securities for the Funds to buy, sell, or hold and performing

certain other functions) of the management fees PIM charges to the Funds and the Promotional Distribution Fee component (the cost of marketing and distributing the Funds' shares) of the 12b-1 fees charged by PRM are excessive and could not have been the result of an arm's length negotiation. Plaintiffs further allege that Putnam's fees are excessive by their retention of certain "fall-out benefits", including "soft dollars" that properly belong to the Funds.

Plaintiffs expect to prove at trial that the fees Putnam charges the Funds are excessive under the pertinent factors, including (1) economies of scale; (2) comparative fee structures; (3) the profitability of the fund to the adviser-manager; (4) the nature and quality of services provided to the fund; (5) fall-out benefits; and (6) the independence and conscientiousness of the trustees. *See Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923 (2d Cir. 1982). During the scheduling conference held on September 22, 2005, the Court ordered that Plaintiffs would initially be permitted to take twenty depositions. Transcript of Hearing (Dkt. No. 42), at 34. The Court indicated that twenty depositions was "not necessarily the final word on the subject" and that additional depositions would be allowed if warranted. *See id.* at 34-35.

II.  PLAINTIFFS HAVE COMPLETED OR ARE SCHEDULED TO COMPLETE ELEVEN DEPOSITIONS OF WITNESSES ON TOPICS MATERIAL TO PLAINTIFFS' CLAIMS.

Plaintiffs have completed six depositions to date, and another five depositions are scheduled to occur over the next several weeks. As set forth below, each of these witnesses possesses information that is highly material to Plaintiffs' claims.

1. The 30(b)(6) deposition of Putnam concerning accounting issues.

Putnam produced David Boon and Stacy Mills, who testified on July 12, 2006, about matters concerning Putnam's accounting systems, Putnam's ledgers and consolidated financial statements, and Putnam's revenue, expense and cost allocations across the Funds. Plaintiffs needed this deposition to understand Putnam's financial statements and accounting systems as a first step toward unraveling the various fees, costs and expenses involved.

2. The 30(b)(6) deposition of Putnam concerning the sources, meaning, and preparation of the annual black books and associated materials.

Putnam produced David Boon for this deposition on October 16, 2006. The black books and associated materials are the advocacy materials Putnam provides to the Trustees, and the materials the Trustees rely upon in annually approving the management contracts and fees.

Accordingly, Plaintiffs needed this deposition to obtain the facts necessary to understand these important materials.

    3.-6. <u>The depositions of the portfolio managers responsible for providing services to the Funds in exchange for the Portfolio Selection Fee.</u>

Plaintiffs allege that the component of the management fees charged for the service of selecting securities for the Funds to buy, sell, or hold and performing certain other functions (the Portfolio Selection Fee) is excessive. Plaintiffs will soon complete the depositions of four portfolio managers[1] responsible for performing these and other services (*i.e.* Portfolio Selection) for the Funds and institutional clients. Because Portfolio Selection is provided in exchange for the challenged part of the management fees, complete deposition testimony from Putnam's portfolio managers is critical. These depositions are targeted to facts about the nature and quality of the services provided to the Funds, economies of scale, and the services provided to institutional clients (which relates to the comparative fee factor). The specific depositions are identified below.

- David King, portfolio manager for the Fund for Growth and Income since at least 2000, was deposed on November 15, 2006.
- Michael Abata, portfolio manager for the Classic Equity Fund since December 2004, was deposed on November 16, 2006.
- James Weiss, portfolio manager for the Investors Fund since 2002, was deposed on November 17, 2006.
- Robert Ginsberg, portfolio manager for the Voyager Fund and the Growth Opportunities Fund since 2005, will be deposed on January 24, 2007.

    7. <u>The Chairman of the Board of Trustees for the Funds, John Hill, is scheduled to testify on January 16, 2007.</u>

The Trustees are fiduciaries of the Funds and, among other things, are (in theory) responsible for selecting the investment advisor for the Funds and negotiating the fees paid. Mr. Hill's testimony is expected to address all of the *Gartenberg* factors as they relate to what Putnam communicated to the Trustees and what Mr. Hill has relied upon in annually approving the fees requested by Putnam, as well as his own independence and conscientiousness.

---

[1] Plaintiffs use the term "portfolio managers" to refer to the investment management employees who perform Portfolio Selection Service. The actual titles of these witnesses vary.

8. <u>Patrick Quinn, Assistant Vice-President/Senior Financial Analyst, is scheduled to testify on January 26, 2007.</u>

Mr. Quinn had significant and meaningful involvement in the preparation of the black books and associated materials for each year except 2004. Although Putnam produced Mr. Boon to testify about the black books (see number 2 above), Mr. Boon was not personally involved with the black book preparation before 2005 and in response to a number of questions relative to different time periods he testified that he was unable to answer, but that Mr. Quinn would likely be able to respond. Plaintiffs need Mr. Quinn's testimony because of the extent of his involvement in the preparation of these critical documents on which the Trustees rely. He also prepares the quarterly reports on the 12b-1 fees that are presented to the Trustees. Mr. Quinn is also expected to provide Plaintiffs with the factual information needed to rebut the affidavit of David Boon, submitted by Putnam in Opposition to Plaintiffs' Motion to Compel Institutional Discovery (Dkt. No. 100).

9. <u>Putnam's Head of Trading, Rich Block, is scheduled to testify on January 23, 2007.</u>

It is the trading department that, among other things, prepares Putnam's customary reports about the soft dollars generated by the Funds. Mr. Block's testimony is expected to provide facts concerning soft dollars, directed brokerage, best execution, broker selection, stock lending agreements, daily liquidity issues, and the Securities and Exchange Commission's proceedings against Putnam concerning preferred marketing arrangements (SEC Administrative Proceeding File No. 3-11868). These topics are material to Putnam's fall-out benefits, comparative fee structures, and the nature and quality of the services Putnam provides to the Funds.

10. <u>The Chairperson of the Contract Committee of the Board of Trustees, Jameson Baxter, is scheduled to testify on January 26, 2006.</u>

The Contract Committee is charged with evaluating the materials submitted by Putnam to advocate for its fees and then recommending to the full board of Trustees whether or not to approve the fees. Ms. Baxter's testimony is expected to address all of the *Gartenberg* factors as they relate to what Putnam communicated to the Trustees and what Ms. Baxter relied upon in annually approving the fees requested by Putnam, as well as her own independence and conscientiousness.

11. <u>The Chief Administrative Officer for Putnam, Mitchell Fishman, is scheduled to testify on January 30, 2007.</u>

PRM is the entity that receives the Funds' 12b-1 fees, which are the fees that Putnam charges for, among other things, marketing and distributing the Funds' shares. Plaintiffs allege that the 12b-1 fees are excessive and could not have been the result of an arm's length negotiation. Mr. Fishman's testimony is expected to provide information about the nature of the 12b-1 fees, the amount of 12b-1 fees charged the Funds, the services provided in consideration for the fees, and the costs of providing those services.

### III. PLAINTIFFS REQUIRE ADDITIONAL WITNESSES TO ADDRESS TOPICS NOT ADDRESSED (OR NOT ADDRESSED COMPLETELY) BY THE WITNESSES WHOSE DEPOSITIONS HAVE CONCLUDED OR WILL CONCLUDE SHORTLY.

Looking forward, Plaintiffs have identified certain key factual areas that have either not been (or will not be) addressed at all in the aforementioned eleven depositions, or are incompletely addressed by this discovery. To address these issues, Plaintiffs will need to take the additional sixteen depositions described below. If they are not permitted to do so, Plaintiffs will suffer significant prejudice and their ability to address Putnam's anticipated summary judgment motion and to prevail at trial will be impacted.

The additional witnesses are described below. Although Plaintiffs may need witnesses different from those identified depending upon subsequently-produced discovery, Plaintiffs are reasonably certain based upon the discovery produced to date that they can complete deposition discovery with a total of twenty-seven depositions.

12. <u>The Head of Institutional Management, Sandra Whiston.</u>

Plaintiffs allege that the excessiveness of Putnam's management fees is demonstrated by the smaller fees charged to its institutional clients for performing identical services. Plaintiffs intend to obtain from Ms. Whiston the facts needed to support this important part of their claim, such as the facts concerning the institutional contracts, the negotiations leading to the institutional contracts, the fee structures for institutional clients, the presentations to potential clients, the marketing materials given to potential clients, the structure of the teams assigned to provide services to institutional clients, and the accrual and use of institutional soft dollars. Putnam has indicated that it will move for summary judgment on the grounds that institutional fees cannot properly be compared to the fees paid by the Funds. Accordingly, it is imperative that Plaintiffs obtain full deposition discovery on these and other institutional topics.

5

13. <u>A 30(b)(6) Deposition of Putnam Advisory Company ("PAC") addressing institutional issues.</u>

As is apparent from the discussion for deposition number 12 above and Plaintiffs' Motion to Compel Institutional Discovery (Dkt. No.90), the importance of institutional fees and services cannot be overstated. Plaintiffs anticipate that Ms. Whiston will be able to testify concerning many of the institutional issues for which Plaintiffs need facts to oppose Putnam's promised motion for summary judgment. But to ensure that there are no gaps, Plaintiffs are serving a 30(b)(6) deposition notice to PAC (the Putnam entity that contracts with the institutional clients) to address the most important institutional topics, such as the contracts, the fees, the services provided, and marketing. Fact discovery ends on February 28, 2006 and Ms. Whiston's deposition has not yet been scheduled. Accordingly, Plaintiffs cannot simply wait until the conclusion of her deposition to determine whether, and to what extent, a 30(b)(6) deposition of PAC will be necessary.

14-17. <u>Four additional Trustees</u>.

Plaintiffs have noticed the depositions of four additional independent Trustees, Myra Drucker, Thomas Stephens, Charles Curtis and John Mullin. These Trustees have refused to appear, and on December 1, 2006 Plaintiffs filed a motion to compel their depositions. (Dkt. No. 85). Plaintiffs refer the Court to the papers they filed in connection with that motion to compel for a full discussion of the reasons why Plaintiffs need the depositions of these four witnesses. As a very general matter, however, these depositions are needed to address the independence and conscientiousness of these Trustees, a *Gartenberg* factor.

18. <u>Managing Director and Senior Counsel, Robert Leveille.</u>

Mr. Leveille drafted the part of the 2005 black books where Putnam tells the Trustees that mutual fund services are different and more costly than the services provided to institutional clients, and where (incomplete) information is provided about institutional fees. Mr. Leveille also drafted part of the 2005 black books explaining the services provided under the management contracts, analyzing fall-out benefits, and explaining the services provided under the distribution plans. He has knowledge about the content of the management contracts for the Funds, 12b-1 plans for the Funds, and revisions thereof. In fact, Putnam in response to interrogatories seeking the persons most knowledgeable about these topics identified Mr. Leveille for the 2005 black book. His testimony is needed to address factual issues concerning institutional fees and services, fall-out benefits, 12b-1 fees, and the process of communicating

6

information about these topics to the Trustees.  For example, Plaintiffs need to ask Mr. Leveille about the process and reasons for including certain information (and not others) in the black books.

19.     Former Senior Counsel, Steven Asher.

As Senior Counsel at Putnam in 2003 and 2004, Mr. Asher is Mr. Leveille's predecessor.  Plaintiffs may need his testimony if Mr. Leveille is unable to respond to questions covering this earlier time period.

20.     Former Managing Director, Operations Financial Support, Jonathan Horwitz.

Mr. Horwitz was Managing Director, Operations Financial Support in 2003 and 2004 and, in that capacity, was involved in the preparation of the black books.  He prepared the economies of scale analyses that was presented to the Trustees in those years, as well as analyses concerning categories of costs implicated by services to mutual funds and institutional clients.  In 2005, Mr. Horwitz left Putnam and joined the Office of the Putnam Trustees.  Mr. Horwitz thus has information about the fee review process in his roles as a Putnam employee and an employee acting on behalf of the Trustees.  Plaintiffs served interrogatories seeking the persons most knowledgeable about the negotiations of the management contracts between the Trustees and Putnam, the persons most knowledgeable about the negotiations of the 12b-1 plans between the Trustees and Putnam, the persons most knowledgeable about the economies of scale of the Funds, and the persons most knowledgeable about the sharing of resources between PIM and PAC.  For the 2004 time period, the only witness Putnam identified that Plaintiffs seek to depose is Mr. Horwitz.  His testimony is thus especially needed because none of the other witnesses who have been or will be deposed are able to testify about the 2004 time period.

21-23.    Three additional portfolio managers.

The service that Plaintiffs allege is identical across Putnam's institutional and mutual fund accounts is Portfolio Selection, which includes selecting which securities for the fund/institutional accounts to buy, sell or hold.  Accordingly, the testimony of the portfolio managers who perform these services is critical.  Plaintiffs need to depose three more portfolio managers (in addition to the witnesses identified in numbers 3-6 above).  Although a final determination has not yet been reached with respect to the particular individuals needed, Plaintiffs anticipate needing the testimony of additional portfolio managers for the Funds so that the relevant time period is covered, as well as the testimony of portfolio managers of comparable institutional funds.

24. <u>A witness to address the affidavit of David Boon.</u>

In their Opposition to Plaintiffs' Motion to Compel Institutional Discovery (Dkt. No.100), Putnam submitted the Affidavit of David Boon that, *inter alia*, contends that Plaintiffs cannot use certain of Putnam's documents to prove that Putnam's costs to perform mutual fund services do not justify the differences between institutional and mutual fund fees. Unless Mr. Quinn can adequately testify about the facts surrounding these contentions (see witness number 8 above), Plaintiffs will require testimony from a fact witness who can.

25.-26. <u>Two institutional clients.</u>

As stated above, there are critical factual issues involving Putnam's institutional clients, including contract negotiation, fees, costs and services. Putnam has hundreds of institutional clients, but Plaintiffs seek to depose just two. Putnam's clients will likely have information different from or in addition to Putnam's witnesses, and will certainly have their own unique perspective on the fee negotiations (which, unlike the Funds, actually occur at arm's length). Plaintiffs require full institutional discovery to defeat Putnam's promised motion for summary judgment.

27. <u>A 30(b)(6) deposition of Lipper.</u>

Lipper provides industry-wide mutual fund fee, adviser profitability, and fund performance data and/or analysis, and places Putnam in a peer group of fund complexes. Putnam provides certain Lipper information and reports to the Trustees in connection with the annual fee reviews. Plaintiffs need testimony from Lipper about the process of compiling and presenting this data (which, presumably, the Trustees rely upon), including its communications with Putnam, to understand the meaning and significance of this data.

## IV. CONCLUSION

There are many questions of fact to be addressed in this action, and Plaintiffs have conducted deposition discovery in a manner targeted to obtain the most material facts needed to survive summary judgment and, ultimately, to prevail at trial. Plaintiffs require an additional seven depositions to complete its efforts. Without this discovery, Plaintiffs most certainly will be prejudiced. Plaintiffs respectfully request that this Motion be allowed.

Respectfully submitted,

Dated: January 12, 2007

/s/ Lisa A. Furnald
David E. Marder (BBO #552485)
Marc N. Henschke (BBO #636146)
Lisa A. Furnald (BBO #631059)
Jonathan D. Mutch (BBO #634543)
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: LAFurnald@rkmc.com
(617) 267-2300

Thomas R. Grady (admitted *pro hac vice*)
Ackerman, Link, & Sartory, P.A.
222 Lakeview Avenue, Suite 1250, Esperante
West Palm Beach, FL 33401

## CERTIFICATION UNDER LOCAL RULES 7.1(a)(2)

I hereby certify that Plaintiffs' counsel has conferred with counsel for Defendants and have attempted in good faith to resolve or narrow the issues raised by the within motion.

Dated: January 12, 2007

/s/ Lisa A. Furnald
Lisa A. Furnald
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: LAFurnaldr@rkmc.com
(617) 267-2300

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the January 12, 2007, a true copy of this document was served electronically through the ECF System and by first class mail, postage prepaid, to those counsel of record indicated as non-registered ECF participants.

                                        <u>/s/ Lisa A. Furnald</u>
                                        Lisa A. Furnald
                                        Robins, Kaplan, Miller & Ciresi LLP
                                        800 Boylston Street, 25th Floor
                                        Boston, MA 02199
                                        E-mail: LAFurnaldr@rkmc.com
                                        (617) 267-2300