UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    x

JOHN J. VAUGHN, GERALD A.
KALBFLEISCH, MICHAEL HATHAWAY    :
and MYRTLE HATHAWAY,

                                                        :

      Plaintiffs,                         Civil Action

                                 :   No. 04-10988-GAO

      v.

                                 :

PUTNAM INVESTMENT            **ORAL ARGUMENT REQUESTED**
MANAGEMENT, LLC and         :
PUTNAM RETAIL MANAGEMENT LIMITED
PARTNERSHIP                    :

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    x

**DEFENDANTS PUTNAM INVESTMENT
MANAGEMENT, LLC'S AND PUTNAM RETAIL
MANAGEMENT LIMITED PARTNERSHIP'S OPPOSITION
TO PLAINTIFFS' MOTION TO EXPAND THE TWENTY DEPOSITION LIMIT**

James R. Carroll
David S. Clancy
Scott T. Lashway
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800

Counsel for Defendants Putnam
Investment Management, LLC and
Putnam Retail Management Limited
Partnership, and for Putnam Advisory
Company, LLC

Dated:  January 26, 2007

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    PLAINTIFFS' MOTION SHOULD BE DENIED FOR
      FAILURE TO COMPLY WITH LOCAL RULE 26.2(B) . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PLAINTIFFS HAVE ALREADY BEEN
      GRANTED LEAVE TO TAKE TWENTY
      DEPOSITIONS -- TWICE AS MANY AS THE RULES' DEFAULT LIMIT . . . . . . . . 2

III.  THERE HAS BEEN (AND CONTINUES TO BE) EXTENSIVE
      AND MEANINGFUL DEPOSITION DISCOVERY IN THIS CASE --
      TWELVE DEPOSITIONS HAVE BEEN OR WILL SOON BE TAKEN . . . . . . . . . . . 2

IV.   WITHOUT ANY EXPANSION OF THE EXISTING
      DEPOSITION LIMIT, PLAINTIFFS MAY TAKE EIGHT
      MORE DEPOSITIONS -- AND PLAINTIFFS DO NOT MAKE CLEAR
      HOW THEY INTEND TO USE THOSE EIGHT DEPOSITIONS, EVEN AS THEY
      ASK THIS COURT FOR PERMISSION TO TAKE EVEN MORE DEPOSITIONS . . . 4

V.    PLAINTIFFS' SHOWING OF "NEED" IS OTHERWISE INADEQUATE . . . . . . . . . . 5

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## PRELIMINARY STATEMENT

Putnam Investment Management, LLC, and Putnam Retail Management Limited Partnership hereby oppose Plaintiffs' motion for permission to expand the twenty-deposition limit set by this Court. As the Court may recall, the Plaintiffs' previous request to <u>double</u> the ten deposition limit under the Local Rules was allowed. Defendants respectfully oppose yet another expansion of the already burdensome discovery in this case. Importantly, Plaintiffs have not shown and cannot show any compelling need to further expand the deposition limits in this matter. There is no reason to believe that the proposed additional (and largely duplicative) depositions will unearth any evidence to support Plaintiffs' heavy burden of demonstrating that Putnam's fees were "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." <u>See</u> <u>Gartenberg v. Merrill Lynch Asset Mgmt., Inc.</u>, 694 F.2d 923, 928 (2d Cir. 1982). Accordingly, for the reasons set forth herein, Plaintiffs' motion should be denied.

## I.    PLAINTIFFS' MOTION SHOULD BE DENIED FOR FAILURE TO COMPLY WITH LOCAL RULE 26.2(B)

Local Rule 26.2(B) requires that a motion requesting "additional discovery events" "be signed by the attorney <u>and the party making the request</u>" (emphasis added); the motion at issue is not signed by any of the Plaintiffs, and it should therefore be denied. Local Rule 26.2(B) is of particular significance in this case, which is a prototypical example of lawyer-driven litigation. For example, as this Court will recall, this case commenced with a plaintiff (Mr. Wicks) who for months, during the pendency of this suit, owned no Putnam shares at all. Plaintiffs' counsel explained that after learning of Mr. Wicks' fund sale, Plaintiffs' counsel

1

unsuccessfully tried to reach him "for several months."[1]

## II.    PLAINTIFFS HAVE ALREADY BEEN GRANTED LEAVE TO TAKE TWENTY DEPOSITIONS -- TWICE AS MANY AS THE RULES' DEFAULT LIMIT

During the September 22, 2005 hearing, this Court permitted Plaintiffs to take twenty depositions.  (Tr. of Hr'g at 34 (Docket No. 42).)  That is twice as many depositions as the Local Rules of this Court ordinarily permit.  Local Rule 26.1(C) states:  "Unless the judicial officer orders otherwise, the number of discovery events shall be limited for each side . . . to ten (10) depositions, twenty-five (25) interrogatories, twenty-five (25) requests for admissions, and two (2) separate sets of requests for production."

## III.    THERE HAS BEEN (AND CONTINUES TO BE) EXTENSIVE AND MEANINGFUL DEPOSITION DISCOVERY IN THIS CASE -- TWELVE DEPOSITIONS HAVE BEEN OR WILL SOON BE TAKEN

Plaintiffs have already taken the following depositions:

- A Rule 30(b)(6) deposition on thirteen topics.[2]  Defendants proffered two

---

[1]    Mr. Grady, counsel for Plaintiffs, declared to the Court in July, 2005 that "I learned [that Mr. Wicks had sold shares in some or all of his Putnam mutual funds that are the subject matter of this lawsuit] from my paralegal who had been attempting to reach Mr. Wicks for several months, without success, and had just obtained this information."  (Declaration of Thomas R. Grady, Exhibit A to Pls. Resp. to Defs. Mot. for Summary Judgment on Claims of Steven G. Wicks and Opp. to Mot. to Stay at 1-2, filed July 18, 2005 (Docket No. 33) (emphasis added).)

[2]    The topics were:  1) "The names . . . of all of Defendants' accounting systems;" 2) "The names . . . of all of Defendants' accounting systems used to collect financial documents related to 12b-1 fees, management fees, costs, expenses, and revenues associated with the Funds;" 3) "The queries Defendants can or do perform, using Defendants' accounting systems or other technology, to collect data related to 12b-1 fees, management fees, costs, expenses, and revenues associated with the Funds;" 4) "Litigation response policies, including any response if given notice of a duty to preserve data contained in Defendants' accounting systems;" 5) "The manner in which journals or subledgers and general ledgers for the Funds are constructed from the data input into the accounting systems;" 6) "The manner in which journals or subledgers and general ledgers for Defendants are constructed from the data input into the accounting systems;" 7) "The manner in which revenues, costs and expenses of the Funds are input into the accounting systems;" 8) "The manner in which Defendants' revenues, costs and expenses are allocated across the Funds;" 9) "The manner in which Funds' revenues, costs and expenses contained in journals, subledgers, general ledgers and trial balances are input into the financial statements of the Funds;" 10) "The manner in which Defendants' revenues, costs and expenses contained in journals, subledgers, general ledgers and trial balances are consolidated into the financial statements of Defendants;" 11) "The manner in which Defendants differentiate between the costs, expenses and revenues attributable to the Funds and the costs, expenses and revenues that are not

(continued...)

witnesses for this deposition:  Stacy Mills, Putnam's Controller, and David

Boon, head of Putnam's Operations Finance Department, which prepares

the "black books" (materials that are provided to the Trustees each year in

connection with their review of management and 12b-1 fees);

• A Rule 30(b)(6) deposition on five topics.[3]  Defendants proffered Mr.

Boon for this second 30(b)(6) deposition;

• David King, portfolio member for the Putnam Growth & Income Fund;

• Michael Abata, portfolio leader for the Putnam Classic Equity Fund;

• James Wiess, portfolio leader for the Putnam Investors Fund;

• Robert Ginsberg, portfolio leader for the Putnam Voyager Fund and the

Putnam Growth Opportunities Fund;

• John Hill, the Chair of the Putnam Funds' Board of Trustees; and

• Richard Block, the head of Putnam's Trading Department.[4]

---

[2]        (...continued)
attributable to the Funds;" 12) "The identity, nature and regular content of any periodic financial reports related to
Defendants and the Funds, the source of the data in each of the line items contained in such reports, and the manner
in which one could obtain a more detailed accounting of each of the line items contained within such reports;" and
13) "The identity of chief accounting officers, chief financial officers, corporate comptrollers, and/or other officers
responsible for supervising accounting for the Funds."  (Letter from David S. Clancy, Esq. to David E. Marder, Esq.,
Lisa A. Furnald, Esq., and Thomas J. Gallo, Esq., dated May 15, 2006, Exhibit 1 hereto.)

[3]        The topics were:  1) "The meaning of and assumptions underlying the Putnam-created documents in the
black books and associated materials for 2002-2006, and for 1995-2006 as to information therein addressing (i)
economies of scale and (ii) black book Tab 18 and its prior-year equivalents;" 2) "The process by which the black
books and associated materials were prepared in 2002-2006;" 3) "The sources of the information contained in the
black books and associated materials for 2002-2006, and for 1995-2006 as to (i) information therein addressing
economies of scale and (ii) black book Tab 18/its prior year equivalents;" 4) "The identity of the person who
prepared the black books and associated materials for 2002-2006, and the persons most knowledgeable as to the
various parts of those materials;" and 5) "The process of determining the content of the black books and associated
materials in 2002-2006, and in 1995-2006 as to (i) information therein addressing economies of scale and (ii) black
book Tab 18/its prior-year equivalents."  (Letter from David S. Clancy, Esq. to Lisa A. Furnald, Esq., dated
September 28, 2006, Exhibit 2 hereto.)

[4]        Together, these depositions have resulted in over fifteen hundred pages of deposition transcripts.

3

On the date of this filing (January 26, 2007), Plaintiffs are taking two additional depositions:

- Patrick Quinn, who by Plaintiffs' own description has "had significant and meaningful involvement in the preparation of the black books." (Pl. Mem. at 4); and

- Jameson Baxter, Chair of the Contract Committee of the Putnam Board of Trustees.

In addition, Defendants have agreed to the following additional depositions, which will be taken in February:

- Mitchell Fishman, Chief Administrative Officer, scheduled for February 1, 2007; and

- Sandra Whiston, head of Putnam's institutional business. The parties are conferring about a date for this deposition.

## IV. WITHOUT ANY EXPANSION OF THE EXISTING DEPOSITION LIMIT, PLAINTIFFS MAY TAKE EIGHT MORE DEPOSITIONS – AND PLAINTIFFS DO NOT MAKE CLEAR HOW THEY INTEND TO USE THOSE EIGHT DEPOSITIONS, EVEN AS THEY ASK THIS COURT FOR PERMISSION TO TAKE EVEN MORE DEPOSITIONS

Once Plaintiffs have taken all of the twelve depositions listed above, they may still take eight additional depositions, without any expansion of the present limit.

Plaintiffs do not explain how they intend to use their eight remaining depositions. By definition, only after providing this explanation could Plaintiffs furnish what ought to be a prerequisite to their requested relief: identification of the specific depositions they want this Court to specially permit, and a particularized basis for their request.

4

Local Rule 26.2(B) permits a motion for expansion of discovery limits "should a party <u>exhaust</u> the opportunities for any type of discovery events." (emphasis added). This rule exists to prevent the kind of motion Plaintiffs have filed: one that makes a premature request for additional discovery, that is neither clear about the particular additional discovery that is sought, and why it is justified in light of the discovery already taken or allowed to be taken.

## V.    <u>PLAINTIFFS' SHOWING OF "NEED" IS OTHERWISE INADEQUATE</u>

Section III of Plaintiffs' brief identifies additional depositions that they would like to take (ignoring that some of them are within the already-existing twenty-deposition limit), and then makes conclusory statements about why those depositions are purportedly necessary. Those statements are inadequate:[5]

a.    *"Managing Director and Senior Counsel, Robert Leveille."* (Pl. Mem. at 6.) Defendants agree to this deposition. It should be noted, however, that it is not clear why Plaintiffs treat this as a contested deposition. In the January 4, 2007 letter attached as Exhibit 3, Plaintiffs' counsel stated that they were not certain they wanted this deposition; they made a similar statement in the December 22, 2006 letter attached as Exhibit 4.

b.    *"Four additional Trustees."* (Pl. Mem. at 6.) Plaintiffs have taken the depositions of the most relevant Trustees, John Hill, Chair of the Board of the Putnam Funds, and Jameson Baxter, Chair of the Contract Committee, both of whom are able to testify to the deliberations and votes that occurred during relevant meetings of the Trustees and Contract Committee, respectively. The Trustees' counsel has objected to further depositions on multiple substantial grounds, which are fully briefed and before this Court. As the Trustees' brief

---

[5]    Defendants have already agreed to one of the depositions referenced in Section III of Plaintiffs' brief: Sandra Whiston. <u>See</u> Section III, <u>supra</u>. Defendants therefore do not address that witness further.

explains, the additional trustee depositions requested would be duplicative:  Mr. Hill and Ms. Baxter are fully knowledgeable about the bases for, and the reasoning underlying, the Trustees' decisions in the relevant time period with respect to the fees at issue.  See The Independent Trustees of the Putnam Funds' Opposition to Plaintiffs' Motion to Compel at 7 (Dec. 15, 2006) (Docket No. 94) (hereafter "Trustees' Brief.")  The questioning of Mr. Hill and Ms. Baxter was largely duplicative, and Plaintiffs' counsel have not identified any basis for deposing additional Trustees, or identified any unique subjects on which other Trustees supposedly need to be examined.  Moreover, Robins Kaplan (Plaintiffs' counsel in this case) itself argued in another pending Section 36(b) case that, for these very reasons, only two trustees should be deposed -- and Robins Kaplan won.  See Gallus v. Am. Express Fin. Corp., et al., Civ. No. 04-4498 Slip Op. (DWF-SRN) (D. Minn. Nov. 10, 2005), Exhibit 4 to the Transmittal Declaration of Peter L. Welsh (Docket No. 94), filed with the Trustees' Brief.

          c.      *"Three additional portfolio managers."*  (Pl. Mem. at 7.)  Plaintiffs have already taken the deposition of four portfolio managers, and together those four portfolio managers have responsibility for all of the five funds at issue in this case.  Additional portfolio manager depositions would be duplicative of testimony by these four portfolio managers.[6]  Further, Plaintiffs do not even identify which other portfolio managers they want to depose, much less provide an adequate showing that a deposition of each of those individuals is necessary.  See Pl. Mem. at 7 ("a final determination has not yet been reached with respect to the

---

[6]      Plaintiffs have already deposed:

      1)  David King, portfolio member for the Putnam Fund for Growth & Income on November 15, 2006;
      2)  Michael Abata, portfolio leader for Putnam Classic Equity Fund on November 16, 2006;
      3)  James Wiess, portfolio leader for Putnam Investors Fund on November 17, 2006; and
      4)  Robert Ginsberg, portfolio leader for Putnam Growth Opportunities and Voyager Funds on
         January 24, 2007.

particular individuals needed . . . ").

        d.     "*A 30(b)(6) Deposition of Putnam Advisory Company ("PAC") addressing institutional issues.*" (Pl. Mem. at 6.) Despite Putnam's objections -- grounded on repeated rulings by other courts that evidence of a mutual fund manager's separate institutional clients is irrelevant and nonmaterial -- to institutional-related discovery, Putnam has already agreed to produce for deposition the head of its institutional business, Sandra Whiston. Her deposition will be in February.

        Any further institutional-related depositions, particularly the burdensome Rule 30(b)(6) deposition Plaintiffs have proposed, are plainly inappropriate. This would be Plaintiffs' fourth 30(b)(6) deposition, and it would require preparation of a witness or witnesses on no less than twenty-one topics, many of them sweeping in breadth. For example, the very first alone is:

> "The service agreements (including advisory, sub-advisory, management, investment, administrative or distribution agreements) between Putnam Investment Management LLC, Putnam Retail Management Limited Partnership, Putnam Advisory Company LLC, or any other related entity (collectively "Putnam") and Putnam's current, former or prospective Institutional Clients, including Putnam's solicitation of Institutional Clients to enter into such agreements (including bids or proposals and responses thereto), the terms of the agreements, the nature of the services provided under the agreements, the agreements' preparation, negotiation, execution, initial and periodic approval process, the operation of the fee schedules, and whether the agreements are generated from a standard form."[7]

        Defendants cannot reasonably be expected to prepare a witness on this and twenty other topics in the short time remaining for discovery in this case, particularly considering the

---

[7]    The twenty-one topics are listed on Schedule A to Plaintiffs' notice of 30(b)(6) deposition of Putnam Advisory Company, LLC, at Exhibit 5 to this brief.

discovery that is ongoing.[8]  Nor should Defendants be required to do so.  The discovery Plaintiffs

seek in this deposition is similar in substance and scope to the document discovery they seek in

their pending motion to compel the production of additional institutional-related documents.

Putnam's opposition to that motion explains why this discovery is inappropriate.  Among other

things, for decades, court after court has rejected plaintiffs' efforts to use fees on institutional

accounts as a benchmark for "appropriate" mutual fund fees.[9]  Following that authority, the

United States District Court for the District of Missouri recently barred introduction of evidence

concerning institutional fees at the trial of a Section 36(b) case as "irrelevant."  Baker, et al. v.

Am. Century Inv. Mgmt., No. 04-4039 (W.D. Mo. July 17, 2006).[10]  Plaintiffs there had argued

that institutional fees "dramatically and graphically expose[] [American Century's] excessive fee

charges."  See Plaintiffs' Suggestions in Opposition to American Century's Motion In Limine, at

---

[8]        For example, the following depositions have been either scheduled or are agreed upon:  Patrick Quinn on January 26, Jameson Baxter on January 26, Mitchell Fishman on February 1, Sandra Whiston, and Robert Leveille. Notice and/or a subpoena for deposition has been served for the following persons and dates:  Steven Asher on February 6; a 30(b)(6) deposition of Putnam Advisory Company, LLC on February 16; Brian O'Toole on February 20; and Lipper on February 23 (in Denver).  Defendants intend to depose all four plaintiffs in mid-February.

[9]        Gartenberg v. Merrill Lynch Asset Mgmt., Inc. ("Gartenberg I"), 528 F. Supp. 1038, 1044 (S.D.N.Y. 1981), aff'd 694 F.2d 930 n.3 (2d Cir. 1982), cert denied, 461 U.S. 906 (1983) (District Court and Second Circuit rejected plaintiffs' attempted use of fees charged to pension funds as a benchmark for appropriate mutual fund fees);  Schuyt v. Rowe Price Prime Reserve Fund, Inc., 663 F. Supp 962, 974 n.38 (S.D.N.Y. 1987), aff'd 835 F.2d 45 (2d Cir. 1987), cert. denied, 485 U.S. 1034 (1988) (District Court rejected plaintiffs' attempt to compare a money market fund's fees with the fees charged by the same adviser to its "private counsel"(institutional) accounts);  Strougo v. BEA Assocs., 188 F. Supp. 2d 373, 384 (S.D.N.Y. 2002) (the "relevant comparison must be to other mutual funds, not to non-mutual fund institutional clients");  Kalish v. Franklin Advisers, Inc., 742 F. Supp. 1222, 1237 (S.D.N.Y. 1990) ("a mutual fund adviser-manager must be compared with members of an appropriate universe:  adviser managers of similar funds.");  In re Alliance Bernstein Mutual Fund Excessive Fee Litigation, No. 4 Civ. 4885, 2006 WL 1520222, *2 (S.D.N.Y. May 31, 2006) (dismissing Section 36(b) claim on motion to dismiss, noting that an independent report stated that "the [mutual fund v. institutional] fee differential reflects, among other things, different services provided to such clients, and different liabilities assumed").

[10]       See Exhibit D to Defendants' Appendix in support of their recently-filed opposition to Plaintiffs' motion to compel the production of institutional documents, which is Docket No. 101.

8

2.[11]  After years of litigation and strident accusations, the <u>American Century</u> plaintiffs ultimately dismissed that case, suddenly stating, among other things, that "if the case were tried, the court would likely determine that the compensation . . . was fair and reasonable."  <u>See</u> <u>Baker</u>, 04-4039 (Stipulation of Dismissal dated July 31, 2006, attached as Exhibit E to Defendants' Appendix in support of their recently-filed opposition to Plaintiffs' motion to compel the production of institutional documents, which is Docket No. 101).

                 e.    *"Two institutional clients."*  (Pl. Mem. at 8.)  Plaintiffs do not even identify the institutional clients they seek to depose, much less explain why a deposition is necessary for each of them.  Instead, Plaintiffs' brief substitutes superficial generalities.  For example, it states:  "Putnam's clients will . . . certainly have their own unique perspective on the fee negotiations."  (Pl. Mem. at 8.)  It is not even clear what this statement means, much less how it supports the relief that Plaintiffs seek.  Similarly superficial is Plaintiffs' statement that they "require full institutional discovery to defeat Putnam's promised motion for summary judgment."  (Pl. Mem. at 8.)[12]

        Defendants are already providing extensive and meaningful institutional-related discovery, in the context of an overall document production which now exceeds 330,000 pages,

---

[11]     <u>See</u> Exhibit 12 to Plaintiffs' Appendix in support of their motion to compel the production of institutional documents, which is Docket No. 92.

[12]     Plaintiffs' "summary judgment" reference is apparently in response to Putnam's statement, in its pending opposition to Plaintiff's motion to compel additional institutional-related document discovery, that the differences between mutual funds and institutional accounts are better addressed "on a more complete record at summary judgment."  The parties have twice negotiated a summary judgment deadline in this case, and so it should be no surprise that Putnam <u>may</u> file a summary judgment motion -- but Putnam's more fundamental point was that Plaintiffs are wrong to effectively seek adjudication of merits issues on discovery motions, because such issues will need to be addressed at the <u>merits</u> stage of this case (summary judgment and/or bench trial).

and which has consumed the time of attorneys and staff attorneys for much of this past year.[13]

        f.      _"Former Senior Counsel, Steven Asher."_  (Pl. Mem. at 7.)  Plaintiffs state

that they "may" need Mr. Asher's testimony, "if" Mr. Leveille, Mr. Asher's successor, is unable to

answer certain questions.  (Id.)  This speculation is insufficient to support a request for

substantial expansion of the twenty-deposition limit, especially since Putnam has agreed to make

Mr. Leveille available.

        g.      _"Former Managing Director, Operations Financial Support, Jonathan_

_Horwitz."_  (Pl. Mem. at 7.)  This deposition would be duplicative.  David Boon is head of

Putnam's Operations Finance Department, which prepares the "black books" (materials that are

provided to the Trustees each year in connection with their review of management and 12b-1

---

[13]      With respect to the institutional side of its business, Putnam is producing: an excel spreadsheet for each of the years 2001 to 2004 that contains institutional account specific data such as an account identifying number, whether the account is an institutional or sub-advisory account, the product type (e.g., "small cap value"), a client number, total year-end assets, the total fee (in dollars), the effective fee (stated as a percentage), Putnam's total revenue from that account, the type of client, the inception date of the account, the account's one year rate of return, the account's portfolio turnover rate, the names of the account's investment management team members, the account's fee schedules, and the account's top twenty-five holdings; the investment management agreements for the many accounts on the spreadsheets; the PAC Form ADV Part II's covering the period 2002 through June 30, 2005 (these non-public SEC filings contain extensive information concerning PAC, including model institutional fee schedules); representative pitch books, client review books, product profiles, product commentaries, and client appraisals for institutional products that correspond to the funds at issue; the annual black books (three volumes a year) for a more-than-ten-year period (as Plaintiffs themselves state in their motion to compel institutional discovery brief, "Putnam devotes an entire section of the annual black book to institutional fees and services"); PAC financial statements; the trial balances (which encompass PAC, along with all of the other Putnam entities); other financial records encompassing PAC, including "flash reports," which are periodic Putnam financial reports based upon the trial balances, and which in effect form an intermediate step between the trial balances and year-end financial statements. In addition, Putnam's counsel is reviewing more than 2 million pages of e-mail for documents falling within specified categories, and those categories include (for example) categories like: (i) documents "that compare or contrast fees paid by the funds at issue with fees paid in connection with the management of Putnam institutional accounts;" (ii) documents "that compare the services PIM provides to the funds at issue pursuant to its management contracts on the one hand, and the investment advisory services PAC provides on the other hand;" and (iii) documents "that compare the investment performance or returns of the funds at issue with the investment performance or returns of institutional accounts." These categories are listed in more detail in Putnam Investment Management, LLC's, Putnam Retail Management Limited Partnership's and Putnam Advisory Company, LLC's Opposition To Plaintiffs' Motion To Compel With Respect To Institutional Issues (Docket No. 90), filed under seal on December 22, 2006, and examples of the various documents listed in this footnote are in the appendix to that opposition.

fees).  Plaintiffs have deposed him twice, and the second of these depositions was a Rule

30(b)(6) deposition "concerning the sources, the meaning, and preparation of the annual black

books and associated materials" for the period covering 2002-2006 -- which encompasses 2004,

the year for which Plaintiffs assert they need Mr. Horwitz's testimony.  In addition, Plaintiffs are

deposing Patrick Quinn, who Plaintiffs themselves describe as having "had significant and

meaningful involvement in the preparation of the black books and associated materials for each

year except 2004." (Pl. Mem. at 4.)

       h.    *"A witness to address the affidavit of David Boon."* (Pl. Mem. at 8.)

Plaintiffs state:  that they will "require testimony from a fact witness who can" "testify about the

facts surrounding" the Affidavit of David Boon, filed by Defendants with their Opposition To

Plaintiffs' Motion To Compel Institutional Discovery (Docket No. 100).  In a letter from

Plaintiffs, dated January 18, 2007 and Exhibit 6 hereto, Plaintiffs wrote that "[they] expect that

Mr. Quinn will be able to answer many, if not all, of the questions" about "representations made

in the recent Boon Affidavit . . .."  Plaintiffs wrote in their moving brief that "Mr. Quinn is also

expected to provide Plaintiffs with the factual information needed to rebut the affidavit of David

Boon." (Pl. Mem. at 4.)  It is premature for Plaintiffs to seek an additional deposition on a topic

that Plaintiffs admit will likely be covered by an already scheduled deponent.

       i.    *"A 30(b)(6) deposition of Lipper."* (Pl. Mem. at 8.)  Plaintiffs state:

> "Lipper provides industry-wide mutual fund fee, adviser
> profitability, and fund performance data and/or analysis, and places
> Putnam in a peer group of fund complexes.  Putnam provides
> certain Lipper information and reports to the Trustees in
> connection with the annual fee reviews.  Plaintiffs need testimony
> from Lipper about the process of compiling and presenting this
> data (which, presumably, the Trustees rely upon), including its
> communications with Putnam, to understand the meaning and

significance of this data."

(Pl. Mem. at 8.)  However, the Lipper data is part of the black books, and Plaintiffs are today

deposing Patrick Quinn, who they themselves describe as having "significant and meaningful

involvement in the preparation of the black books and associated materials."  (Pl. Mem. at 4.)

Further, Plaintiffs have already taken a Rule 30(b)(6) deposition, the subject matter of which -- as

Plaintiffs themselves now describe it -- was "the sources, meaning and preparation of the annual

black books and associated materials."  (Pl. Mem. at 2.)  Plaintiffs provide no basis for a

conclusion that these depositions are inadequate "to understand the meaning and significance" of

the Lipper data within the black books (Pl. Mem. at 8); indeed, because they have not yet

completed Mr. Quinn's deposition (which is being taken today), any such conclusion by Plaintiffs

would be premature.

* * *

In other contexts, this Court has indicated that Section 36(b) plaintiffs should

provide meaningful support for their discovery demands:[14]

- On August 2, 2006, at the hearing on Plaintiffs' first motion to compel

    production of documents, this Court expressed concerns about

    "unnecessary inefficiencies," and an "archaeological dig," and suggested

    that discovery be shaped upon "prioritizing" and "assessment."  (Tr. of

    August 2, 2006 Hr'g. at 4.)

---

[14]    In addition to the expansion of the number of depositions, Plaintiffs continue to demand additional and
excessive document discovery.  Indeed, Plaintiffs recently served on Defendants a second set of requests for the
production of documents, as well as a second subpoena duces tecum on Putnam Advisory Company, LLC (attached
as Exhibits 7 and 8, respectively, hereto).  Together, these two requests seek an additional seventy-two categories of
documents.  Plaintiffs have also recently served subpoenas duces tecum on ten of Putnam's institutional clients, each
subpoena requesting fourteen additional categories of documents.

- On October 18, 2006 during a status conference in another pending Section 36(b) action, this Court stated, "I think at some point we're going to have to begin to get concrete about spelling out the theory in terms of already discovered documents, materials, and why that – those dots draw a line that support further discovery." Forsythe, et al. v. Sun Life Financial, Inc., et al. (04-10584) (Tr. of October 18, 2006 Hr'g.).

- This Court made similar comments at the November 28, 2006 hearing concerning Section 36(b)'s one-year recovery period.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

13

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Putnam Investment Management, LLC and

Putnam Retail Management Limited Partnership respectfully request a hearing on this motion.

Dated:  January 26, 2007                              Respectfully submitted,
          Boston, Massachusetts

/s/ James R. Carroll
James R. Carroll (BBO #554426)
David S. Clancy (BBO #636031)
Scott T. Lashway (BBO #655268)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800
jcarroll@skadden.com
dclancy@skadden.com
slashway@skadden.com

Counsel for Defendants Putnam
Investment Management, LLC and
Putnam Retail Management Limited
Partnership, and for Putnam Advisory
Company, LLC

### Certificate of Service

I, Scott T. Lashway, hereby certify that on January 26, 2007, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those as non registered participants.

January 26, 2007                              /s/ Scott T. Lashway
                                            Scott T. Lashway

14