**EXHIBIT 5**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| JOHN J. VAUGHN,<br>GERALD A. KALBFLEISCH, and<br>MICHAEL AND MYRTLE HATHAWAY,<br><br>       Plaintiffs,<br><br>v.<br><br><br>PUTNAM INVESTMENT<br>MANAGEMENT and PUTNAM RETAIL<br>MANAGEMENT LIMITED PARTNERSHIP<br><br>       Defendants. | Civil Action No. 04-10988-GAO |

## NOTICE OF TAKING RULE 30(b)(6) DEPOSITION

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) and 45 of the Federal Rules of

Civil Procedure, commencing at 9:30 a.m. on February 16, 2007 at the law offices of Robins,

Kaplan, Miller & Ciresi LLP, 800 Boylston Street, 25th Floor, Boston, MA, 02199, counsel for

the Plaintiffs, Vaughn, Kalbleisch and Hathaway will take the deposition upon oral examination

of Putnam Advisory Company ("PAC"), through one or more of its officers, directors, managing

agents, or other persons who consent to testify on PAC's behalf and who are most

knowledgeable with respect to the deposition topics set forth in the attached Schedule A.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Federal Rules of Civil

Procedure, the deposition will be taken upon oral examination before a court reporter, notary

public or other person authorized by law to administer oaths, and will be recorded using video and stenographic and/or audiographic means.

The deposition will continue from day to day until completed. You are invited to attend and cross-examine.

Dated: January 18 , 2007

Respectfully submitted,

VAUGHN, KALBLEISCH, and HATHAWAY

By their attorneys,

David Marder (BBO No. 552485)
Meghan E. Walt (BBO No. 658971)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
Tel. (617) 267-2300

Thomas R. Grady  (Admitted *pro hac vice*)
Ackerman, Link, Sartory
222 Lakeview Avenue
Suite 1250 – Esperante
West Palm Beach, FL  33401
Tel. (561) 838-4100

## CERTIFICATE OF SERVICE

I, David E. Marder, certify that I served a copy of the foregoing 30(b)(6) Deposition Notice on January 18, 2007 upon Defendants' counsel, David S. Clancy, Skadden, Arps, Slate, Meagher & Flom LLP, One Beacon St., Boston, MA 02108 by first class mail.

Dated:  January 18, 2007

_____
David E. Marder

## SCHEDULE A

1.      The service agreements (including advisory, sub-advisory, management, investment, administrative or distribution agreements) between Putnam Investment Management LLC, Putnam Retail Management Limited Partnership, Putnam Advisory Company LLC, or any other related entity (collectively "Putnam") and Putnam's current, former or prospective Institutional Clients, including Putnam's solicitation of Institutional Clients to enter into such agreements (including bids or proposals and responses thereto), the terms of the agreements, the nature of the services provided under the agreements, the agreements' preparation, negotiation, execution, initial and periodic approval process, the operation of the fee schedules, and whether the agreements are generated from a standard form.

2.      Presentations and pitches made in an effort to market Putnam for advisory, sub-advisory, management, investment, administrative or distribution services to current, prospective and former Institutional Clients.

3.      The marketing materials formerly and currently used by Putnam to attract institutional clients, including promotional documents, brochures, ADV Part II documents, fact sheets, newsletters, articles, catalogs, presentation folders, documents containing descriptions of Putnam's large cap value or large cap growth management teams, Putnam's portfolio managers, and/or performance claims and any other form of advertisement.

4.      Putnam's marketing policies and processes for Institutional Clients.

5.      Putnam's rack rate fee schedules, actual fee schedules, most favored nation agreements or any other agreements in which Putnam provides assurances to the Institutional Clients of providing the Institutional Clients with the lowest costs for its services.

6.      Putnam's current and former policies and processes governing the sale of institutional shares or Y-shares, including the negotiation, execution, and operation of any service agreement (including advisory, sub-advisory, management, investment, administrative or distribution agreements) entered into by Putnam and its current, prospective and former Institutional Clients, allowing for the purchase of such institutional shares or Y-shares.

7.      The nature of the investment styles or portfolio types designated in the management agreements with the Institutional Clients.

8.      The structure of the Putnam teams (including, but not limited to, portfolio management, account management and accounting teams) assigned to provide services under Putnam's service agreements (including advisory, sub-advisory, management, investment, administrative or distribution agreements) with the Institutional Clients.

9.      The negotiation, execution and operation of all soft dollar agreements, brokerage agreement and/or commission recapture agreements (collectively, "Soft Dollar Agreements") for each of Putnam's current, prospective and former Institutional Clients and the initial and periodic

approval process for these Soft Dollar Agreements, as well as the manner in which any relevant soft dollar credits are accounted for and allocated, policies on such allocations, approval of such allocations, and guidelines for use of such soft dollar credits.

10.    The fallout benefits received by Putnam as a result of its current, prospective and former service agreements (including advisory, sub-advisory, management, investment, administrative or distribution agreements) with the Institutional Clients.

11.    The review policy and process for all draft and final service agreements (including advisory, sub-advisory, management, investment, administrative or distribution agreements) between Putnam and the Institutional Clients.

12.    The review policy and process for all of Putnam's draft and final marketing materials for Institutional Clients.

13.    The process and policy for documenting Putnam's new, continuing or terminated · relationships with the Institutional Clients.

14.    The manner and/or policy governing how brokers are selected to effect securities transactions for the Institutional Clients, including the costs involved in such trades, the manner in which the overall reasonableness of the brokerage commissions paid by the Institutional Clients is evaluated, who conducts the evaluations, and the factors considered in making these determinations.

15.    The manner and/or policy governing the evaluation of whether the Institutional Clients are receiving best execution of their brokerage transactions, including who conducts the evaluations, the factors considered in making these determinations and the manner in which this information is presented to the Institutional Clients.

16.    The Institutional Clients' average commission rate paid to brokers that provide soft dollar services versus the Institutional Clients' average commission rate paid to brokers that do not provide soft dollar services to Putnam.

17.    Presentations made to the Institutional Clients discussing or relating to soft dollars.

18.    Since January 1, 2000, any consultant (for example, Mercer or Callan) analysis, referrals, investigations or reports related to Putnam's servicing or handling of any of the Institutional Clients' accounts.

19.    Since January 1, 2000, any public or private investigations of, and any administrative proceedings related to, Putnam's servicing or handling of any of the Institutional Clients' account, as well as any settlements reached with respect to such investigations or proceedings.

20.    Putnam's distribution policies and processes for Institutional Clients.

21.    The nature of any representations by employees of Putnam that service institutional clients to Putnam's Operations Finance department or the Trustees about the nature of the services provided to institutional clients in connection with the process of determining the reasonableness of the management fees charged to mutual funds.