**EXHIBIT 7**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

JOHN J. VAUGHN, GERALD A. )
KALBFLEISCH; MICHAEL HATHAWAY; and )
MYRTLE HATHAWAY, )
Plaintiffs, )
)
)
v. )
) Civil Action No. 04-10988 (GAO)
)
PUTNAM INVESTMENT )
MANAGEMENT, LLC; and PUTNAM )
RETAIL MANAGEMENT LIMITED )
PARTNERSHIP )
Defendants. )

## PLAINTIFFS' SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS TO DEFENDANTS PUTNAM INVESTMENT MANAGEMENT, LLC AND PUTNAM RETAIL MANAGEMENT, LIMITED PARTNERSHIP

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs John J. Vaughn, Gerald A. Kalbfleisch, Michael Hathaway, and Myrtle Hathaway (collectively, "Plaintiffs") hereby request that Defendants Putnam Investment Management, LLC ("PIM") and Putnam Retail Management Limited Partnership ("PRM") (collectively, "Defendants") provide written responses to these requests, and produce all responsive documents and tangible things, within thirty (30) days of service of these requests.

## I. INSTRUCTIONS

1.      Defendants are required to respond to this request for production of documents and tangible things by drawing upon all materials in their possession, ownership, custody, or control, actual or constructive, including materials that Defendants have a right or ability to secure from any other source. These sources include, but are not limited to, Defendants' employees, agents, managing agents, attorneys, accountants, investment bankers, consultants,

advisers, officers, directors, or representatives of any type whatsoever. These sources further include, but are not limited to, Defendants' predecessors, successors, parents, subsidiaries, affiliates, divisions, and their respective employees, agents, managing agents, attorneys, accountants, investment bankers, consultants, advisers, officers, directors, or representatives of any type whatsoever.

2. If any document or tangible thing herein requested was, but no longer is, in Defendants' possession or subject to their control, whether actual or constructive, state what disposition was made of the document or tangible thing, why such disposition was made, to whom the document or tangible thing was transferred or delivered if applicable, where the document or tangible thing presently is located, and the date or dates (or approximate date or dates) on which such disposition was made.

3. In the event that Defendants file a proper and timely objection to any portion of any individual request for the production of documents and tangible things presented herein, Defendants are required to respond to all other portions of that request that do not fall within the ambit of their objection.

4. If any portion of any document or tangible thing is responsive to any production request herein, then the entire document or tangible thing must be produced. If any requested document or tangible thing cannot be produced in full, then Defendants must produce that document or tangible thing to the greatest extent possible. Whenever a document or tangible thing is not produced in full, or is produced in redacted form, Defendants must indicate that fact on the document or tangible thing produced.

5. If any document or tangible thing responsive to a production request herein is withheld in whole or in part, for any reason whatsoever, including, but not limited to, any claim

of privilege, work product, confidentiality, or trade secret, then Defendants must promptly provide a privilege log which states with respect to each such document, tangible thing, or withheld portion thereof: (a) the privilege or ground under which it is being withheld; (b) the type of document or tangible thing (*e.g.*, memo, letter, e-mail); (c) a description of the subject matter thereof; (d) the identity of its author or creator; (e) the identity of all persons to whom it is addressed and all persons to whom copies thereof ever have been furnished; (f) the date thereof; and (g) the present custodian and location thereof.

6. If there do not exist documents or tangible things responsive to a specific production request herein, then Defendants must indicate that fact in their written response hereto.

7. The documents or tangible things produced in response hereto shall be segregated and clearly marked or labeled so as to correspond to the specific production requests to which such documents or tangible things are responsive and are being produced. Alternatively, such documents or tangible things shall be produced as they are kept in the usual course of business, including the production of files and file labels from which such documents or tangible things are taken.

8. All documents or tangible things produced pursuant hereto are to be delivered to David E. Marder, Esq. at the offices of Robins, Kaplan, Miller & Ciresi LLP, 800 Boylston Street, 25th Floor, Boston, Massachusetts 02199.

9. This is a continuing request for the production of documents and tangible things. Thus, if after making its initial production(s), Defendants become aware of any additional responsive documents or tangible things in their possession, ownership, custody or control (actual or constructive), including materials which it has a right to secure from any other source,

Defendants are required without further request to produce, or to make available for inspection and copying, such additional documents or tangible things.

## II. DEFINITIONS

1. The terms "documents" and "tangible things" as used herein shall mean each non-identical copy of any of the types of materials referenced in Local Rule 26.5(c)(:) and Fed. R. Civ. P. 34(a), and shall specifically include emails, voice mails, instant messages, and computer data, and any electronic, magnetic, or digital media on which information can be stored, including but not limited to tapes, hard drives, discs, and any other form of computer memory.

2. The term "non-identical copy" as used herein shall mean any document or tangible thing that, but-for markings, additions, deletions, signatures, modifications of any kind (including, but not limited to, notations on the backs or margins of pages thereof, blind carbon copy notations, attachments, alterations, amendments, or mark-ups) would otherwise be identical to other documents or tangible things responsive to any production request herein. Each non-identical copy constitutes a distinct document or tangible thing and must be produced in response hereto.

3. The term "meeting(s)" as used herein shall mean any assembly, convocation, encounter, or contemporaneous presence of two or more persons for any purpose, whether or not planned, arranged, or scheduled in advance, whether or not occurring face-to-face or by other means including, without limitation, by telephone, videoconference or instant messaging, and whether or not the meeting was informal or formal or occurred in connection with some other activity.

4. The term "agreement" as used herein shall mean any contract, transaction, or other arrangement of any kind, whether conditional, executed, executory, express, or implied,

and whether oral or written, in which rights are granted or obligations assumed. The term "agreement" shall apply to completed, actual, contemplated, or attempted agreements or renewals of agreements.

5. The term "negotiate" or any variant thereof as used herein shall mean, without limitation, any deliberations, discussions, conferences, bargaining or trading between parties or their agents, representatives, counsel, or any other persons as herein defined.

6. The term "any" shall mean "any and all." The term "all" as used herein also shall mean "any and all."

7. The terms "and" and "or" as used herein shall be construed conjunctively or disjunctively to bring within the scope of these production requests any and all information which might otherwise be construed as outside their scope.

8. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb includes also within its meaning all other tenses of the verb so used.

9. All entities referred to herein shall be deemed to include their parent companies, subsidiaries, affiliates, directors, officers, employees, agents, successors, assigns, and representatives thereof, including attorneys, consultants, accountants, and investment bankers.

10. The terms "communication," "person," and "concerning" shall have the meanings set forth in Local Rule 26.5.

11. The term "Complaint" shall mean the Second Amended Complaint filed in this action on or about February 7, 2006.

12. The term "Answer" as used herein shall mean Defendants' Answer And Affirmative Defenses to the Complaint filed in this action on our about February 27, 2006.

13. The term "The Funds" as used herein shall mean, collectively, the Putnam mutual funds identified on Exhibit A to the Complaint, including any mutual funds with different names by which any of these funds were formerly known.

14. The term "PIM" as used herein shall mean the named Defendant Putnam Investment Management, LLC, and any of its agents, assigns, affiliates, predecessors in interest, representatives, employees, servants, associates, attorneys, or any other persons or entities through which Putnam Investment Management, LLC has conducted business potentially including, but not limited to, Putnam LLC; Putnam Investments; Putnam Fiduciary Trust Company; Putnam Investor Services; The Putnam Advisory Company, LLC; Putnam Advisory Company, LLP; Putnam Investments Limited; and Putnam Investments Trust.

15. The term "PRM" as used herein shall mean the named Defendant Putnam Retail Management Limited Partnership, and any of its agents, assigns, affiliates, predecessors in interest, representatives, employees, servants, associates, attorneys, or any other persons or entities through which Putnam Retail Management Limited Partnership has conducted business potentially including, but not limited to, Putnam LLC; Putnam Investments; Putnam Fiduciary Trust Company; Putnam Investor Services; The Putnam Advisory Company, LLC; Putnam Advisory Company, LLP; Putnam Investments Limited; and Putnam Investments Trust.

16. The terms "Defendants," "you," "your," or "yours" as used herein shall collectively mean, unless otherwise specified in a particular request, PIM and PRM.

17. The term "PAC" as used herein shall mean Putnam Advisory Company, LLC, and any of its agents, assigns, affiliates, predecessors in interest, representatives, employees,

servants, associates, attorneys, or any other persons or entities through which Putnam Advisory Company, LLC has conducted business.

18. The term "Management Contract" as used herein shall mean any contract between an investment advisor and a mutual fund or other client whereby an investment advisor agrees to provide, *inter alia*, management and/or investment advisory services in exchange for fee-based compensation. By way of example, the term "Management Contract" is meant to include, but not be limited to, contracts of the type that PIM has entered into with The Funds.

19. The term "Management Fees" as used herein shall mean the fees that an investment advisor charges and/or receives pursuant to the breakpoint fee schedule contained in any particular Management Contract.

20. The term "Putnam Mutual Funds" as used herein shall mean, collectively, the entire family of open-end registered investment companies managed or operated by any Putnam entity including, but not limited to, The Funds.

21. The term "Board of Trustees" as used herein shall mean the entire board for any of The Funds -- including their independent staff, auditors, and legal counsel -- as well as any committees, subcommittees, groups, or other portions of such boards.

22. The term "Black Book" shall refer to the materials prepared annually to assist the Board of Trustees in the Management Contract review and renewal process, including any such materials that are not physically included within the black binders.

23. The term "Institutional Account" as used herein shall mean an account of a non-mutual fund client for which an investment advisor provides management and/or investment advisory services. By way of example, the term "Institutional Account" is meant to include, but not be limited to, accounts held by individual clients; corporate profit-sharing and/or pension

fund clients; state, governmental, and/or public employee retirement fund clients; university endowment fund clients; charitable foundation clients; collective investment vehicle clients; and/or any other categories of clients of the types serviced by PAC.

24. The term "Investment Management Team" as used herein shall mean, relative to any particular client account, that group of persons employed by or associated with an investment advisor who participate in formulating and/or providing an investment program for, and/or making investment decisions on behalf of, a client. As such, the term "Investment Management Team" is meant to include, but not be limited to, Portfolio Leaders, Portfolio Members, and research analysts. The term "Investment Management Team" is also meant to include, but not be limited to, Managing Directors, Portfolio Managers, Chief Investment Officers, and/or Group Chief Investment Officers to the extent that these titles represent positions distinct from Portfolio Leaders and/or Portfolio Members.

25. The term "Fall-Out Benefits" as used herein shall mean the aggregate of direct and indirect benefits that providers of services in connection with a Management Contract and/or a Distribution Plan may receive over and above their collection of Management Fees and/or 12b-1 Fees. As such, the term "Fall-Out Benefits" is meant to include, for example, brokerage and/or research services received from broker-dealers; soft-dollar allocations; transfer agency fees; custodian fees; attraction of new customers to other funds and products offered by said providers of services; and/or any other benefits.

## III. REQUESTED DOCUMENTS AND TANGIBLE THINGS

The following specific requests for the production of documents and tangible things are subject to the "INSTRUCTIONS" and "DEFINITIONS" set forth above.

## REQUEST FOR PRODUCTION NO. 1:

Any and all communications between the Defendants and Lipper, Inc. between 2002 and the present including, but not limited to, any and all documents and data provided to Lipper, Inc. by the Defendants to facilitate the preparation of mutual fund industry comparisons of Management Fees, expenses, profitability, sales charges, custody costs, servicing costs, market share and investment performance included in Tabs 9, 13, 14, 25, 40, 48 and 52 of the Black Book and comments made by the Defendants on any drafts of or proposals related to Tabs 9, 13, 14, 25, 40, 48 and 52.

## REQUEST FOR PRODUCTION NO. 2:

Any and all communications between the Defendants and Russell Global Indexes between 2002 and the present including, but not limited to, any and all documents and data provided to Russell Global Indexes by the Defendants to facilitate analysis of the performance of the Defendants' Institutional Accounts; any reports prepared by Russell Global Indexes for the Defendants; and any draft reports exchanged by the Defendants and Russell Global Indexes.

## REQUEST FOR PRODUCTION NO. 3:

Any and all documents prepared for or utilized in any presentations to Fidelity Investments or its affiliates in an effort to convince them to hire any of the Defendants for financial management or custody services including all drafts of such documents.

## REQUEST FOR PRODUCTION NO. 4:

Documents such as the Management Methodology Agreement produced at Putnam-Wicks 0215313-0215327 for each of The Funds from 2002 through 2006 and any drafts of the same or amendments thereto.

**REQUEST FOR PRODUCTION NO. 5:**

Documents that would allow one to determine the precise dollar amount of the portion of the expenses recorded in each row of the Institutional column in the documents found at Tab 50 of the Black Books from 2002 through trial that were incurred under investment management agreements.

**REQUEST FOR PRODUCTION NO. 6:**

Documents that would allow one to determine the precise dollar amount of the portion of the expenses recorded in each row of the Institutional column in the documents found at Tab 50 of the Black Books from 2002 through trial that were incurred in connection with services that were not performed under investment management agreements, including documents that would allow one to determine this amount for each separate type of service performed.

**REQUEST FOR PRODUCTION NO. 7:**

For each type of service included in the previous request, provide five (5) representative samples of the agreements that govern the payment for and provision of such services for each year from 2002 to the present.

**REQUEST FOR PRODUCTION NO. 8:**

Documents that would allow one to determine the precise portion of the expenses in each cost center that are rolled up in the Institutional column of the documents found at Tab 50 of the Black Books from 2002 through trial that were incurred in connection with services that were not performed under investment management agreements, including documents that would allow one to determine this amount for each separate type of service performed.

**REQUEST FOR PRODUCTION NO. 9:**

Documents that would allow one to determine the precise dollar amount of the portion of the revenue entry in the first row of the Institutional column in the documents found at Tab 50 of the Black Books from 2002 through trial that were incurred under investment management agreements.

**REQUEST FOR PRODUCTION NO. 10:**

Documents that would allow one to determine the precise dollar amount of the portion of the revenue entry in the first row of the Institutional column in the documents found at Tab 50 of the Black Books from 2002 through trial that were incurred in connection with services that were **not** performed under investment management agreements, including documents that would allow one to determine this amount for each separate type of service performed.

**REQUEST FOR PRODUCTION NO. 11:**

Documents sufficient to allow one to determine the precise dollar amount of the revenue and expenses related to providing record-keeping services to defined contribution plans as discussed on page 9 of the Affidavit of David Boon filed with Putnam Investment Management, LLC's, Putnam Retail Management Limited Partnership's and Putnam Advisory Company, LLC's Opposition to Plaintiffs' Motion to Compel with Respect to Institutional Issues.

**REQUEST FOR PRODUCTION NO. 12:**

Documents sufficient to determine the budget for the accrual and expenditure of "soft dollars" on behalf of The Funds and all of the Defendants' Mutual Funds for each year from 2002 through the present as discussed with Mr. Michael Abata in his deposition on pages 181-182, including any reports or analyses of whether such budgets were met for each year.

**REQUEST FOR PRODUCTION NO. 13:**

Documents reflecting the allocation of research dollars by each member of The Funds' Investment Management Team from 2002 through 2006 as described in Mr. Michael Abata's deposition at pages 179-180.

**REQUEST FOR PRODUCTION NO. 14:**

Documents describing the manner and/or policy governing how the Defendants select brokers to effect securities transactions for The Funds.

**REQUEST FOR PRODUCTION NO. 15:**

Documents describing the manner in which the Defendants evaluate the overall reasonableness of the brokerage commissions paid by The Funds, including who conducts the evaluations and the factors that they consider in making these determinations.

**REQUEST FOR PRODUCTION NO. 16:**

Documents describing the manner in which the Defendants evaluate whether The Funds are receiving best execution of their brokerage transactions, including who conducts the evaluations, the factors considered in making these determinations and the manner in which this information is presented to the Board of Trustees.

**REQUEST FOR PRODUCTION NO. 17:**

Documents that would allow one to determine The Funds' aggregate average commission rate per share and the average commission rate per share by broker, expressed in both soft dollars and in hard dollars.

**REQUEST FOR PRODUCTION NO. 18:**

Documents that would allow one to determine The Funds' average commission rate paid to brokers that provide soft dollar services to Defendants.

**REQUEST FOR PRODUCTION NO. 19:**

Documents that would allow one to determine The Funds' average commission rate paid to brokers that do not provide soft dollar services to Defendants.

**REQUEST FOR PRODUCTION NO. 20:**

Documents identifying the brokers from which the Defendants obtain soft dollar credits, as well as:

    a.    a description of the products or services received from each broker;

    b.    the total commissions directed to the broker by The Funds;

    c.    the criteria for selecting these brokers to execute trades for The Funds.

**REQUEST FOR PRODUCTION NO. 21:**

Documents that would allow one to determine the conversion ratio or price of research offered by each broker through which Defendants obtain third-party research benefits for The Funds.

**REQUEST FOR PRODUCTION NO. 22:**

All corporate policies with respect to soft dollar arrangements that address, *inter alia*, the proper allocation of products or services with "mixed uses," the retention of correspondence, including e-mails, related to directed brokerage and "step-out" arrangements, and records of the value, quantity and purpose for each soft dollar product or service.

**REQUEST FOR PRODUCTION NO. 23:**

All written agreements and contracts related to Defendants' soft dollar arrangements, directed brokerage, third-party research providers/vendors, soft dollar "converters," "clearing" shops and "step-out" arrangements for The Funds.

**REQUEST FOR PRODUCTION NO. 24:**

Documents sufficient to determine the size, timing and nature of cash flows into and out of The Funds and the Defendants' Institutional Accounts.

**REQUEST FOR PRODUCTION NO. 25:**

Documents discussing the impact or ramifications of cash flows into and out of The Funds and/or the Defendants' Institutional Accounts that are large enough to affect investment decisions, the manner in which such flows affect on the management of the portfolios of each such Fund or institutional account, including any changes in the investment style or trading methodology due to such flows, and any difficulties or challenges presented by such flows.

**REQUEST FOR PRODUCTION NO. 26:**

Any regular and customary reports summarizing, analyzing or measuring cash flows into and out of The Funds or the Defendants' Institutional Accounts, including any backup, drafts or supplemental materials.

**REQUEST FOR PRODUCTION NO. 27:**

All documents discussing or analyzing the difference in cash flows in Defendants' Institutional Accounts and Putnam Mutual Fund accounts.

**REQUEST FOR PRODUCTION NO. 28:**

Documents memorializing the role of the Board of Trustees in exploring the possible sale of Putnam Investments to any potential purchaser, including, but not limited to, documents concerning the sale of Putnam Investments to Power Financial Corp.

**REQUEST FOR PRODUCTION NO. 29:**

Documents concerning the role of the Board of Trustees in exploring the management of The Funds following the possible sale of Putnam Investments to any potential purchaser, including, but not limited to, the sale of Putnam Investments to Power Financial Corp.

**REQUEST FOR PRODUCTION NO. 30:**

All documents directed to, received from or generated by the Board of Trustees, (including, but not limited to, correspondence, emails and handwritten notes) concerning the possible sale of Putnam Investments to any potential purchaser, including, but not limited to, Power Financial Corp.

**REQUEST FOR PRODUCTION NO. 31:**

Copies of all draft contracts (including markups and black-lined versions) and final contracts sent to, received from or generated by the Board of Trustees or anyone else related to the sale of Putnam Investments to Power Financial Corp.

**REQUEST FOR PRODUCTION NO. 32:**

Documents memorializing all negotiations, meetings, emails, correspondence and handwritten notes involving the Funds' trustees leading up to the sale of Putnam Investments to Power Financial Corp.

**REQUEST FOR PRODUCTION NO. 33:**

Documents discussing whether the Putnam management, including the Board of Trustees, would remain in place following the sale of Putnam Investments to Power Financial Corp.

**REQUEST FOR PRODUCTION NO. 34:**

All due diligence or other documents discussing with Power Financial Corp. this litigation, the merits of the litigation or whether any of the fees charged to the mutual funds were or are excessive.

**REQUEST FOR PRODUCTION NO. 35:**

Documents sufficient to determine the precise dollar amount of institutional assets managed by Putnam or its affiliates pursuant to investment management contracts on a quarterly basis for each year from 2002 through trial.

**REQUEST FOR PRODUCTION NO. 36:**

Documents sufficient to determine the precise dollar amount of institutional assets in the defined benefit, international and non-fund 401K businesses as separated into columns at bates number PUTNAM WICKS 0004972 managed by Putnam or its affiliates pursuant to investment management contracts on a quarterly basis for each year from 2002 through trial.

**REQUEST FOR PRODUCTION NO. 37:**

Documents sufficient to determine the precise dollar amount of assets in the Voyager, Investors, Growth Opportunities, Growth and Income and Classic Equity mutual funds managed by Putnam or its affiliates pursuant to investment management agreements on a quarterly basis for each year from 2002 through trial.

**REQUEST FOR PRODUCTION NO. 38:**

Documents sufficient to determine the precise dollar amount of the mutual fund assets managed by Putnam or its affiliates pursuant to investment management agreements on a quarterly basis for each year from 2002 through trial.

Dated: January 11, 2007

Respectfully submitted,

/s/ David E. Marder
David E. Marder (BBO #552485)
Lisa A. Furnald (BBO #631059)
Jonathan D. Mutch (BBO #634543)
Meghan E. Walt (BBO #658971)
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: DEMarder@rkmc.com
(617) 267-2300


Thomas R. Grady (admitted *pro hac vice*)
Ackerman, Link, & Sartory, P.A.
222 Lakeview Avenue,
Suite 1250, Esperante
West Palm Beach, FL 33401

## CERTIFICATE OF SERVICE

I, David E. Marder, hereby certify that the foregoing document was sent by hand delivery to the counsel of record for the Defendants.

/s/ David E. Marder
David E. Marder
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: DEMarder@rkmc.com
(617) 267-2300

Dated: January 11, 2007