**EXHIBIT 8**

AO 88 (Rev. 11/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT
## FOR THE    DISTRICT OF    MASSACHUSETTS

| | |
|---|---|
| John J. Vaughn, Gerald A. Kalbfleisch, Michael Hathaway and Myrtle Hathaway,<br>　　　　Plaintiffs,<br><br>　　　　V.<br><br>Putnam Investment Management, LLC, and Putnam Retail Management Limited Partnership,<br>　　　　Defendants. | **SUBPOENA IN A CIVIL CASE**<br><br>Case Number:[1]  1:04-CV-10988 (GAO) |

TO:   Putnam Advisory Company, LLC
　　　In care of David S. Clancy, Esq., Skadden, Arps, Slate, Meagher & Flom LLP
　　　One Beacon Street, Boston, MA  02108-3194

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | |
|  | DATE AND TIME |
|  | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION: | DATE AND TIME: |
|---|---|
|  |  |

X YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below. **SEE EXHIBIT A attached hereto.**

| PLACE:<br>**Robins, Kaplan, Miller & Ciresi L.L.P.**<br>**800 Boylston Street, 25th Floor**<br>**Boston, MA  02199** | DATE AND TIME:<br><br>**February 4, 2007**<br>**9:30 a.m.** |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>*[signature]*, Counsel for Plaintiffs | DATE<br>January 5, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Lisa A. Furnald, Esquire, Robins, Kaplan, Miller & Ciresi, LLP,
800 Boylston Street, 25th Floor, Boston, MA 02199 617-859-2790

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on reverse)

---

[1] If action is pending in district other than district of issuance, state district under case number.

## Exhibit A To Subpoena To Putnam Advisory Company, LLC

I. **DEFINITIONS**

1. The terms "documents" and "tangible things" as used herein shall mean each non-identical copy of any of the types of materials referenced in LR 26.5(c)(2) and Fed. R. Civ. P. 34(a), and shall specifically include electronically stored information, emails, voice mails, instant messages, and computer data, and any electronic, magnetic, or digital media on which information can be stored, including but not limited to tapes, hard drives, discs, and any other form of computer memory.

2. The term "non-identical copy" as used herein shall mean any document or tangible thing that, but-for markings, additions, deletions, signatures, modifications of any kind (including, but not limited to, notations on the backs or margins of pages thereof, blind carbon copy notations, attachments, alterations, amendments, or mark-ups) would otherwise be identical to other documents or tangible things responsive to any production request herein. Each non-identical copy constitutes a distinct document or tangible thing and must be produced in response hereto.

3. The term "agreement" as used herein shall mean any contract, transaction, or other arrangement of any kind, whether conditional, executed, executory, express, or implied, and whether oral or written, in which rights are granted or obligations assumed. The term "agreement" shall apply to completed, actual, contemplated, or attempted agreements or renewals of agreements.

4. The term "any" shall mean "any and all." The term "all" as used herein also shall mean "any and all."

5. The terms "and" and "or" as used herein shall be construed conjunctively or disjunctively to bring within the scope of these production requests any and all information which might otherwise be construed as outside their scope.

6. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb includes also within its meaning all other tenses of the verb so used.

7. All entities referred to herein shall be deemed to include their parent companies, subsidiaries, affiliates, directors, officers, employees, agents, successors, assigns, and representatives thereof, including attorneys, consultants, accountants, and investment bankers.

8. The term "Black Book" shall refer to the materials prepared annually to assist the Board of Trustees in the management contract review and renewal process, including any such materials that are not physically included within the black binders.

9. The term "third-party research" as used herein means research and other services purchased and paid for with commissions from trades executed through brokers or dealers, and encompasses any items that are included within the term "third-party research" used at Tab 19 of the 2004 Black Book (Putnam-Wicks 0003314-0003315). These services include, but are not limited to, research produced by third party consultants, systems used for portfolio trading, computer terminals, subscriptions and pricing services.

10. The term "soft dollars" as used herein means the commission-generated credits from the sale of securities used to purchase "third-party research".

11. The term "soft dollar commissions" as used herein means commissions paid on the sale of securities, which commissions are used to purchase third party research.

12. "Institutional Clients" means the following clients from the institutional spreadsheets produced by PAC, PIM and PRM in this litigation: 12, 24, 96, 97, 118, 127, 151, 174, 175, 194, 256, 263, 274, 313, 338, 340, 356, 381, 407, 410, 412, 415, 428, 439, 445, 451, 460, 488, 573, 600, 607 and 691.

13. "Proprietary research" as used herein means the brokerage and research services provided by the brokers which execute portfolio trades.

14. "Directed brokerage commissions" as used herein means commissions from transactions with the brokers or dealers selected by the Institutional Clients.

15. Unless otherwise stated, the time period applicable to these document requests shall be January 1, 2002 through the present.

16. Electronically stored information should be produced in native, searchable format.

## II. REQUESTED DOCUMENTS AND TANGIBLE THINGS

1. All documents and tangible things constituting agreements between PAC and any of the Institutional Clients concerning soft dollars and/or directed brokerage commissions.

2. All documents and tangible things constituting agreements between PAC and any of the Institutional Clients concerning commission recapture.

3. All documents and tangible things constituting directions or instructions by any of the Institutional Clients to cause brokerage transactions to be executed by a particular broker or dealer.

4. Documents and tangible things sufficient to determine the percentage of directed brokerage commissions of any Institutional Client (as a percentage of all commissions of the client) on an annual basis.

5. Documents and tangible things sufficient to determine the percentage of soft dollar commissions for any Institutional Client (as a percentage of all commissions of the client) on an annual basis.

6. Documents and tangible things sufficient to determine the total brokerage commissions for any Institutional Client on an annual basis.

7. Documents and tangible things sufficient to determine the total soft dollar commissions for any Institutional Client on an annual basis.

8. Documents and tangible things sufficient to determine the hard dollar equivalents of the soft dollar commissions for any Institutional Client on an annual basis.

9. Documents and tangible things sufficient to determine the basis point impact of hard dollar equivalents for any Institutional Client on an annual basis.

10. All documents and tangible things constituting or sufficient to identify the annual soft dollar budgets for each Institutional Client.

11. Documents and tangible things sufficient to determine the amount of soft dollars accrued to any Institutional Client on an annual basis.

12. Documents and tangible things sufficient to identify the manner in which soft dollars are allocated.

13. Documents and tangible things sufficient to determine the hard dollar equivalents applied to third party research for any Institutional Client.

14. All financial ledgers, accounting systems and the electronic back up thereto containing soft dollar data for any Institutional Client.

15. Documents and tangible things sufficient to determine the amount paid on an annual basis by any Institutional Client for proprietary research.

16. Documents and tangible things sufficient to determine the total dollar value of portfolio transactions placed with brokers and dealers for any Institutional Client on an annual basis.

17. Any and all documents prepared for or utilized in any presentations to Fidelity Investments or its affiliates in an effort to convince them to hire Putnam Investment Management LLC, Putnam Retail Management Limited Partnership, Putnam Advisory Company LLC, or any other related entity for financial management or custody services, including all drafts of such documents.

18. Documents sufficient to determine the size, timing and nature of cash flows into and out of the Institutional Clients' accounts.

19. Documents discussing the impact or ramifications of cash flows into and out of the Institutional Clients' accounts that are large enough to affect investment decisions, the manner in which such flows affect on the management of the portfolios of each such institutional accounts, including any changes in the investment style or trading methodology due to such flows, and any difficulties or challenges presented by such flows.

20. Any regular and customary reports summarizing, analyzing or measuring cash flows into and out of the Institutional Clients' accounts, including any backup, drafts or supplemental materials.

21. All documents discussing or analyzing the difference in cash flows in the Institutional Clients' accounts and Putnam Mutual Fund accounts.

22. Documents that would allow one to determine the precise dollar amount of the portion of the expenses recorded in each row of the Institutional column in the documents found at Tab 50 of the Black Books from 2002 through trial that were incurred under investment management agreements.

23. Documents discussing the impact or ramifications of cash flows into and out of the Institutional Clients' accounts that are large enough to affect investment decisions, the manner in which such flows affect on the management of the portfolios of each such institutional accounts, including any changes in the investment style or trading methodology due to such flows, and any difficulties or challenges presented by such flows.

24. Any regular and customary reports summarizing, analyzing or measuring cash flows into and out of Institutional Clients' accounts, including any backup, drafts or supplemental materials.

25. Any regular and customary reports summarizing, analyzing or measuring cash flows into and out of the Institutional Clients' accounts, including any backup, drafts or supplemental materials.

26. All documents discussing or analyzing the difference in cash flows in the Institutional Clients' accounts and Putnam Mutual Fund accounts.

27. Documents that would allow one to determine the precise dollar amount of the portion of the expenses recorded in each row of the Institutional column in the documents found at Tab 50 of the Black Books from 2002 through trial that were incurred in connection with services that were not performed under investment management agreements, including

documents that would allow one to determine this amount for each separate type of service performed.

28. For each type of service included in the previous request, provide five (5) representative samples of the agreements that govern the payment for and provision of such services for each year from 2002 to the present.

29. Documents that would allow one to determine the precise portion of the expenses in each cost center that are rolled up in the Institutional column of the documents found at Tab 50 of the Black Books from 2002 through trial that were incurred in connection with services that were not performed under investment management agreements, including documents that would allow one to determine this amount for each separate type of service performed.

30. Documents that would allow one to determine the precise dollar amount of the portion of the revenue entry in the first row of the Institutional column in the documents found at Tab 50 of the Black Books from 2002 through trial that were incurred under investment management agreements.

31. Documents that would allow one to determine the precise dollar amount of the portion of the revenue entry in the first row of the Institutional column in the documents found at Tab 50 of the Black Books from 2002 through trial that were incurred in connection with services that were not performed under investment management agreements, including documents that would allow one to determine this amount for each separate type of service performed.

31. Documents sufficient to allow one to determine the precise dollar amount of the revenue and expenses related to providing record-keeping services to defined contribution plans as discussed on page 9 of the Affidavit of David Boon filed with Putnam Investment

Management, LLC's, Putnam Retail Management Limited Partnership's and Putnam Advisory Company, LLC's Opposition to Plaintiffs' Motion to Compel with Respect to Institutional Issues.

32.  Documents sufficient to determine the precise dollar amount of institutional assets managed by PAC or its affiliates pursuant to investment management contracts on a quarterly basis for each year from 2002 through trial.

33.  Documents sufficient to determine the precise dollar amount of institutional assets in the defined benefit, international and non-fund 401K columns at bates number PUTNAM WICKS 0004972 managed by PAC or its affiliates pursuant to investment management contracts on a quarterly basis for each year from 2002 through trial.