# **EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------x
JOHN J. VAUGHN, GERALD A.
KALBFLEISCH, and MICHAEL and    :
MYRTLE HATHAWAY
                                :
       Plaintiffs,
                                :     Civil Action
    - against -                       No. 04-10988-GAO
                                :
PUTNAM INVESTMENT MANAGEMENT,
LLC and PUTNAM RETAIL           :
MANAGEMENT, LLP
                                :
       Defendants.
------------------------------x


**[PROPOSED] SURREPLY IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS**

          James R. Carroll
          Peter J. Simshauser
          David S. Clancy
          SKADDEN, ARPS, SLATE,
           MEAGHER & FLOM LLP
          One Beacon Street
          Boston, Massachusetts 02108
          (617) 573-4800

Dated: February __, 2007        Counsel for Defendants Putnam
                                Investment Management, LLC and
                                Putnam Retail Management Limited Partnership

Plaintiffs' motion for leave to take additional depositions is not signed by Plaintiffs, and Defendants objected to it on that basis. Defendants' Opposition states:

> "Local Rule 26.2(B) requires that a motion requesting 'additional discovery events' 'be signed by the attorney <u>and the party making the request</u>' (emphasis added); the motion at issue is not signed by any of the Plaintiffs, and it should therefore be denied. Local Rule 26.2(B) is of particular significance in this case, which is a prototypical example of lawyer-driven litigation."

(<u>See</u> Defendants' Opposition, Docket No. 114, filed January 26, 2007.)

In response, Plaintiffs' Reply stated that plaintiffs had signed certifications in support of their motion, and were "aware of the ongoing progress of the litigation, including discovery." Below is the relevant portion of Plaintiffs' Reply, including Plaintiffs' argument headings:

> "**II. ARGUMENT**
>
> **A. The Plaintiffs Consent to the Filing of the Motion to Expand the Twenty Deposition Limit, and Have <u>Completed the Necessary Local Rule 26.2(B) Certifications.</u>**
>
> In its Opposition, Putnam contends that the Plaintiffs' Motion should be denied because the Plaintiffs have not complied with LR 26.2(B). Putnam also gratuitously asserts that this case is 'driven' by the desires of Plaintiffs' counsel without regard to the wishes of the individual plaintiffs. To the contrary, each plaintiff in this action is aware of the ongoing progress of this litigation, <u>including discovery</u>, and has consented to the filing of the Motion to Expand the Twenty Deposition Limit by completing a certification. The certification for each plaintiff is attached to this memorandum as Exhibit A."

(<u>See</u> Plaintiffs' Reply at 1, Docket No. 117, filed February 8, 2007) (emphasis in original).

The Reply's assertions are demonstrably wrong. All four Plaintiffs were deposed this week, and it is clear that plaintiffs are ignorant of the progress of discovery in this litigation, and of the pending motion. Moreover, the purported certifications Plaintiffs' counsel have submitted as Exhibit A to their Reply have literally nothing to do with this motion. These are boilerplate, undated documents that counsel had the Plaintiffs sign two years ago -- <u>in 2005</u> -- and which the Plaintiffs did not understand when they signed.

The following sets forth the relevant portions of the four plaintiffs' deposition testimony, and Defendants call the Court's attention to the bold-text portions, in particular.[1]

### I. JOHN VAUGHN (transcript pages at Exhibit 1 hereto):

Q: Showing you exhibit 14, that's a document and it's filed in this litigation entitled certification pursuant to local rule 26.2(B) do you see that, sir, do you see exhibit 14?

A: Oh, okay.

Q: Is that your signature on the bottom of the page there?

A: It is.

\* \* \*

Q: **What's your best recollection of the year in which you signed exhibit 14?**

A: **I would say 2005.**

Q: **2005?**

A: **Correct.**

\* \* \*

Q: And in the next sentence where you say you consent to any effort to seek discovery events, what, what are discovery events as you use the term there?

A: I don't know.

\* \* \*

Q: **Did you understand what you were signing at the time that you signed it, whenever that was?**

A: **I understand the first sentence probably.**[2]

Q: **How about the second sentence do you understand that?**

A: **No.**[3]

\* \* \*

Q: Do you know how many depositions your attorneys have taken in this case?

A: No, I don't.

Q: Do you know how many they want to take?

A: I have no idea.

---

[1]   These are "rough" transcripts provided by the court reporter, and certain of the words and punctuation likely will be corrected in the final transcripts.

[2]   The first sentence of the certification is: "I . . . hereby certify that I have discussed the scope of discovery in this action with my counsel." Mr. Vaughn's earlier description of discovery suggests he did not understand the term.

[3]   The second sentence of the certification is: "I consent to any effort by my counsel to seek discovery events that exceed the presumptive limits set forth in the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of Massachusetts."

## II. <u>GERALD KALBFLEISCH (transcript pages at Exhibit 2 hereto)</u>:

Q:  Mr. Kalbfleisch, showing you what's been marked Exhibit 23. This is the rule 26.2(B) certification that has your name at the bottom. Is that your signature sir?

A:  Correct.

Q:  When did you sign this document?

A:  I do not remember.

Q:  What's your best recollection as to the year in which you signed this document?

A:  I do not remember.

Q:  Was it 2007? Was it this year or some year before 2007?

A:  Before 2007, I know that.

\* \* \*

Q:  In the first sentence there it says that you have discussed the scope of discovery in this action. Do you see that?

A:  Yes, I do.

Q:  What is that referring to?

A:  There again, I relied on the attorneys to take care of the legal part of this.

Q:  Do you know what discovery is in a lawsuit?

A:  No, I don't.

Q:  And in the second sentence, it says that you consent to any effort by your counsel to seek discovery events that exceed the presumptive limits set forth in certain rules. Do you see that?

A:  Correct.

Q:  Do you know what discovery events means in that context?

A:  No, I don't.

Q:  Do you know how many depositions your attorneys have taken in this case?

A:  No, I do not.

Q:  Do you know how many they're seeking to take?

A:  No, I do not.

Q:  Do you know whether they're going to go into Federal court in Boston next week and try the take more depositions?

A:  That, I do not.

3

### III. MICHAEL HATHAWAY (transcript pages at Exhibit 3 hereto):

Q: Mr. Hathaway, handing you what's been marked Exhibit 4. Do you recognize that?

A: Yes.

Q: And is that your signature at the bottom of the page there, sir?

A: Yes, it is.

**Q: And do you understand that your attorneys are seeking to conduct extra discovery in this case?**

A: What's that mean?

Q: Well, let me-- let me show you on the exhibit here where you say in the first sentence that you certify you've discussed the scope of discovery in this action with your counsel, correct do you see that?

A: Uh-huh. Uh-huh.

**Q: And in the next sentence you say you consent to any effort by your counsel to seek discovery events that exceed the presumptive limits set forth in the Federal rules of civil road and the local rules for the United States district Court for the district of Massachusetts; do you see that?**

A: Yes, sir.

Q: What does that mean to you?

A: I'm not really sure.

Q: Was this just a page that was given to you to sign by the attorneys and you signed it because they told you to?

A: Yeah. I read it. But I didn't understand it.

\* \* \*

Q: Do you know what the limits are in the rules for discovery events?

A: No.

**Q: Do you know how many depositions your lawyers have taken in this case?**

A: No.

Q: Do you know -- do you know who they've taken depositions from?

A: No, I don't.

Q: Can you identify a single person who your lawyers have taken depositions from in this case?

A: Depositions what are you talking to?

Q: What we're doing here is a deposition, right?

A: None that I know of.

Q: Do you know how many depositions your lawyers want to take in this case?

A: No, I don't.

4

### IV. MYRTLE HATHAWAY (transcript pages at Exhibit 4 hereto):

Q; Okay. Now, showing you Exhibit 8, this is a document entitled certification pursuant to local rule 26.2 B and is that your signature at the bottom of the page there ma'am?

A: Yes, sir.

Q: When did you sign this?

A: I'm not sure when it was.

Q: To your best recollection, when did you sign this?

A: I don't know.

Q: Was it in the last week or two or could it have been a year or two ago?

A: It's been longer than that.

Q: Okay. Do you know whether it was sometime this year, 2007?

A: It wasn't this year.

Q: Was it in -- was it in 2006?

A: I don't remember when it was done.

Q: Could it have been 2005 or 2004?

A: Possibly.

\* \* \*

Q: And then in the, in the next sentence, you say that you consent to any effort to seek discovery events that exceed the presumptive limits set forth in the Federal and local rules of the United States district court for the district of Massachusetts. Do you see that?

A: Yes.

Q: And what, what does that mean, what are discovery events?

A: I'm not sure.

\* \* \*

Q: Can you identify any depositions that your attorneys have taken in this case?

A: No.

Q: Do you know how many depositions they've taken?

A: No.

Q: Do you know how many they want to take?

A: No.

Q: Do you know why they're asking permission to take additional depositions if they are, in fact, asking that?

A: No.

Q: Do you know whether they are asking permission to take additional depositions?

A: No.

5

Simply put, it is not true that plaintiffs "consented to the filing of the Motion to Expand the Twenty Deposition Limit by completing a certification," and it is not true that plaintiffs are "aware of the ongoing progress of this litigation, including discovery."[4]

To the contrary, plaintiffs signed <u>generic</u> certifications early in this case, and those certifications were then put on the shelf, and dusted off for use in the instant motion. L.R. 26.1 was plainly intended as a check and balance -- it is inappropriate to circumvent it by filling out a "blank check" certification at the beginning of a case.

In sum, there is no question that the instant motion violates L.R. 26.1: it is a "request" for additional discovery that is not "signed by the attorney <u>and the party making the request</u>." (emphasis added.)

This is not a disagreement about a technical issue. This is a case in which Defendants have been put through years of staggering burden and expense -- discovery has already cost millions -- and in which the scheduling order already permits twice the number of depositions provided for by the Local Rules. Defendants and the Court are entitled to full compliance with a rule that requires plaintiffs merely to know about and sign a request for additional discovery.[5]

---

[4] It appears that the certifications were prepared in early 2005, before the Court had even permitted John Vaughn to enter this case. Plaintiffs' pleadings and letters bear computer-generated document numbers in the lower left corner, and those numbers have steadily increased as the litigation has progressed. Each certification has a number beginning with 35024311 (<u>see</u> Exhibit A to Plaintiffs' Reply, which is Docket 117), and Plaintiffs' filings have not had document numbers that low since early 2005. For example, Plaintiffs' June 20, 2005 Motion for Leave to File a Second Amended Complaint had the number 35024336, which is higher than the number on the just-filed certifications, while Plaintiffs' motion for leave to file a reply on this motion (Docket 115) has the much higher number 35037216. (Exhibit 5 to this brief contains the cover page of each of those two filings, so that the Court can see the referenced document numbers, which are in the lower left-hand corner.)

[5] "Delays will . . . be reduced if the deadlines contained in tailored scheduling orders are enforced, and <u>if litigants and their attorneys come to understand that the provisions of the discovery rules and of discovery orders ordinarily will be enforced as written</u>." (Comment to Rule 2.01 of the United States District Court Expense and Delay Reduction Plan) (emphasis added). <u>See also</u> Advisory Committee Notes to Fed. R. Civ. P. 26(g) (requirement of attorney signature on discovery
(cont'd)

6

Dated: February __, 2007         Respectfully submitted,
       Boston, Massachusetts

                                 _____
                                 James R. Carroll (BBO #554426)
                                 Peter J. Simshauser (BBO #665153)
                                 David S. Clancy (BBO #636031)
                                 SKADDEN, ARPS, SLATE,
                                  MEAGHER & FLOM LLP
                                 One Beacon Street
                                 Boston, Massachusetts  02108
                                 (617) 573-4800
                                 jcarroll@skadden.com
                                 psimshau@skadden.com
                                 dclancy@skadden.com

                                 Counsel for Defendants Putnam
                                 Investment Management, LLC and
                                 Putnam Retail Management Limited Partnership

### Certificate Of Service

   I, David S. Clancy, hereby certify that on February __, 2007, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those as non-registered participants.

Dated: February __, 2007         _____
                                 David S. Clancy

---

*(cont'd from previous page)*
motions) (2006 Edition, p. 149) ("Concern about discovery abuse has led to widespread recognition that there is a need for more aggressive judicial control and supervision.")

7