UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOHN J. VAUGHN, GERALD A.
KALBFLEISCH, MICHAEL HATHAWAY    :
and MYRTLE HATHAWAY

                                           :

   Plaintiffs,

                                           :   Civil Action
   v.                                          No. 04-10988-GAO
                                           :

PUTNAM INVESTMENT MANAGEMENT,
LLC and PUTNAM RETAIL    :
MANAGEMENT LIMITED PARTNERSHIP

                                           :

   Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR A PROTECTIVE ORDER AS TO
THE DEPOSITION OF PUTNAM PRESIDENT AND CEO CHARLES HALDEMAN**

                                         James R. Carroll
                                         Peter Simshauser
                                         David S. Clancy
                                         Scott T. Lashway
                                         SKADDEN, ARPS, SLATE,
                                           MEAGHER & FLOM LLP
                                         One Beacon Street
                                         Boston, Massachusetts  02108
                                         (617) 573-4800


                                         Counsel for Defendants
                                         Putnam Investment Management,
                                         LLC and Putnam Retail Management
Dated:  March 27, 2007              Limited Partnership, and Charles Haldeman

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT .....................................................................................................................................2

I.  IN THE PRESENT CIRCUMSTANCES,
    IT WOULD BE APPROPRIATE FOR THIS COURT
    TO BAR THE DEPOSITION OF MR. HALDEMAN ALTOGETHER ...........................2

    A.  Under Applicable Case Law, A Deposition Of
        Mr. Haldeman Should Be Permitted Only Upon A Compelling Justification.........2

    B.  Plaintiffs Have Offered No Compelling
        Justification For A Deposition Of Mr. Haldeman ....................................................3

    C.  Plaintiffs' Own Conduct Shows Vividly That
        A Deposition Of Mr. Haldeman Is In No Way "Necessary" ...................................6

II. NONETHELESS, MOVANTS SEEK ONLY THAT ANY DEPOSITION
    OF MR. HALDEMAN BE SUBJECT TO REASONABLE PARAMETERS ...................7

III. THIS REQUEST FOR A
     REASONABLE APPROACH WITH RESPECT TO ANY DEPOSITION
     OF MR. HALDEMAN IS SUPPORTED BY TWO ADDITIONAL FACTORS .............8

    A.  As A General Matter, Section 36(b) Litigation Has Proven To Lack Merit...........8

    B.  The Plaintiffs Here Are Utterly Disengaged,
        And Cannot Be Bothered To Fulfill Minimal Discovery Obligations.....................9

CONCLUSION..................................................................................................................................11

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGE(S)**

Baine v. Gen. Motors Corp., 141 F.R.D. 332 (M.D. Ala. 1991) ....................................................... 2

Baker v. Am. Cent. Inv. Mgmt., Inc., No. 04-cv-4039 (W.D. Mo. July 31, 2006) ...................... 3, 8

In re Franklin Mut. Funds Fee Litig., 04-cv-00982 (D.N.J. March 13, 2007) ................................ 9

Jones, et al. v. Harris Assocs., L.P., 04-cv-8305 (N.D. Ill. Feb, 27, 2007) ..................................... 8

Thomas v. Int'l. Bus. Mach., 48 F.3d 478 (10th Cir. 1995) ........................................................ 2, 7

Williams v. Waddell & Reed, No. 04-cv-2561 (D. Kan. Sept. 25, 2006) ........................................ 3

**RULES**                                                                                                    **PAGE(S)**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 9

Fed. R. Civ. P. 26 ....................................................................................................................... 1, 7

L.R. 26.2(B) ............................................................................................................................. 9, 10

**PRELIMINARY STATEMENT**

On February 15, 2007 -- less than two weeks before the then-applicable fact discovery cut-off of February 28 -- Plaintiffs' counsel noticed the deposition of Putnam's President and CEO Charles Haldeman. (Exhibit A contains that deposition notice, and also the more recent "revised" notice, which sets April 10, 2007 as the new deposition date.)

This case was filed in May 2004, and in the three years leading up to February 15, 2007, Plaintiffs' counsel <u>never</u> suggested <u>any</u> intent or desire to take Mr. Haldeman's deposition. Indeed, as recently as January 2007, Plaintiffs' counsel filed a deposition plan with the Court specifying twenty-seven purportedly important depositions, and a deposition of Mr. Haldeman was <u>not among them</u>. Further, Plaintiffs' counsel have refused to provide any justification, let alone a meaningful one, for a deposition of Mr. Haldeman, and they have also refused to agree to any time or subject-matter parameters for that deposition. (<u>See</u>, for example, the letter from Plaintiffs' counsel dated March 15, 2007, attached hereto as Exhibit B.)

Rule 26(c) of the Federal Rules of Civil Procedure provides that a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, undue burden or expense, including . . . that the disclosure or discovery not be had." Under that rule, and relevant caselaw, it would be appropriate in the current circumstances for this Court to bar a deposition of Putnam President and CEO Charles Haldeman altogether. Nonetheless, only the following moderate relief is requested:

(1)  That the Court require Plaintiffs' counsel to identify the information they seek through deposition of Mr. Haldeman, and explain why they cannot obtain that information by some other means; and

(2)  <u>If</u> the Court is satisfied with this showing, that it limit the deposition to subject areas that Plaintiffs' counsel has demonstrated to be warranted, and to a time period that is appropriate in light of that showing, <u>e.g.</u>, three hours.

**ARGUMENT**

I.   IN THE PRESENT CIRCUMSTANCES,
     IT WOULD BE APPROPRIATE FOR THIS COURT
     TO BAR THE DEPOSITION OF MR. HALDEMAN ALTOGETHER

   A.   Under Applicable Case Law, A Deposition Of
        Mr. Haldeman Should Be Permitted Only Upon A Compelling Justification

Courts do not permit depositions of high-level employees such as Mr. Haldeman unless a plaintiff makes a compelling showing that, in the particular circumstances, there is no less intrusive means of obtaining relevant information.

In Baine v. General Motors Corp., for example, the court granted a motion for a protective order quashing plaintiffs' deposition of a corporate vice-president (a Mr. Mertz), even when the case involved a fatal car accident, and Mr. Mertz had written a memo regarding his observations of the car's vehicle restraint system. 141 F.R.D. 332, 333-36 (M.D. Ala. 1991). Referring to the law in this area as "fairly unequivocal," the court held that:

> [d]eposing [Mr. Mertz] at this time would be oppressive, inconvenient and burdensome inasmuch as it has not been established that the information necessary cannot be had from Mr. Sinke [head of a relevant company division], other of the distributees of the Mertz memorandum, interrogatories, or the corporate deposition.

Id. at 335.

Similarly, in Thomas v. International Business Machines ("IBM"), the Tenth Circuit affirmed a district court order quashing a deposition notice to the chairman of IBM's board of directors. 48 F.3d 478 (10th Cir. 1995). In granting the protective order, the court held that deposing the chairman was improper where the plaintiff "made no attempt to demonstrate that the information she seeks to obtain from [the chairman] could not be gathered from other IBM personnel, for whom a deposition might have been less burdensome." Id. at 483.

2

Senior Judge Robert E. Keeton made a similar ruling in <u>In re Citigroup Inc. Capital Accumulation Plan Litigation</u>, a multi-district litigation proceeding that is pending in this Court. There, Citigroup moved for a protective order barring the deposition of its chairman. The Court issued the protective order, stating that the deposition of the chairman would be barred absent a "showing of good cause for taking this deposition, if and when circumstances develop that create a likelihood that evidence would be obtained in or as a result of this deposition that would not be available otherwise and would be material to an issue this court is deciding." Transcript of Case Management Conference at 20-21, <u>In re Citigroup Inc. Capital Accumulation Plan Litig.</u>, No. 00-11912-REK (Dec. 14, 2001) (relevant excerpts attached as Exhibit C).

### B. Plaintiffs Have Offered No Compelling Justification For A Deposition Of Mr. Haldeman

Plaintiffs have had extensive document and deposition discovery in this case. Exhibit D is a summary of that discovery, and as it shows, discovery has included production of more than 390,000 pages of documents -- far more than in two recently-concluded Section 36(b) cases.[1] Discovery has also included, so far, fourteen depositions, including:

- Three 30(b)(6) depositions, the twenty-seven topics of which are set forth in Exhibit E, and the designated deponents for which were (i) Putnam's Controller, Stacy Mills, and (ii) the head of Putnam's Operations Finance department, David Boon (the Operations Finance department creates the annual trustee fee-review materials, which are referred to at Putnam as "black books").

---

[1] In two recently-concluded 36(b) cases -- <u>Williams v. Waddell & Reed</u>, No. 04-cv-2561 (D. Kan. Sept. 25, 2006), and <u>Baker v. American Century Investment Management, Inc.</u>, No. 04-cv-4039 (W.D. Mo. July 31, 2006) -- the stipulations of dismissal recite that plaintiffs' counsel reviewed more than "<u>100,000</u> pages of documents produced." See Stipulation of Dismissal With Prejudice at 2, <u>Williams</u>, No. 04-cv-2561 (Sept. 25, 2006) (Exhibit G to Defendants' and Putnam Advisory Company, LLC's ("PAC") opposition to Plaintiffs' motion to compel with respect to institutional issues (Docket No. 100, filed under seal)); Stipulation of Dismissal at 3, <u>Baker</u>, No. 04-cv-4039 (July 31, 2006) (Exhibit E to Defendants' and PAC's opposition to Plaintiffs' motion to compel with respect to institutional issues (Docket No. 100, filed under seal)).

3

- Patrick Quinn, who Plaintiffs admit "had significant and meaningful involvement in the preparation of the black books."[2]

- Mitchell Fishman, Chief Administrative Officer of Putnam Retail Management.

- Richard Block, the head of Putnam's Trading Department.

- Sandi Whiston, the head of Putnam's institutional business.

- Four investment managers:

  - David King, portfolio member for the Putnam Growth & Income Fund;
  - Michael Abata, portfolio leader for the Putnam Classic Equity Fund;
  - James Wiess, portfolio leader for the Putnam Investors Fund; and
  - Robert Ginsberg, portfolio leader for the Putnam Voyager Fund and the Putnam Growth Opportunities Fund. (Plaintiffs have noticed the deposition of a fifth investment manager, Brian O'Toole).

- Lipper, Inc., the firm that prepares competitive data presented in Putnam's black books.

- John Hill, the Chair of the Funds' Board of Trustees.

- Jamie Baxter, the Chair of the Trustees' Contract Committee.

Plaintiffs have not explained what additional information they purportedly need from Mr. Haldeman. Instead, Plaintiffs have (i) pointed to the fact that the e-mail search plan developed by undersigned counsel included review of Mr. Haldeman's e-mail, and (ii) vaguely asserted an entitlement to "questioning of Mr. Haldeman [on] all of the issues in the case, including all of the Gartenberg factors." (See letter from Plaintiffs' counsel dated March 15, 2007, attached as Exhibit B.)

As to the first purported justification, Plaintiffs ignore that Defendants' e-mail search plan reflected the fact that, when Defendants prepared and presented the plan, Plaintiffs had previously separately subpoenaed Mr. Haldeman for documents. In addition, while

---

[2] Pls.' Mem. in Supp. of Mot. to Enlarge Dep. Limit at 4 (Jan. 12, 2007) (Docket No. 107).

4

Defendants have described the individuals whose e-mails they agreed to search as key individuals, that is unavailing to Plaintiffs in the context of this motion.  Mr. Haldeman is Putnam's President and CEO and he therefore is <u>unquestionably</u> a key person.  But that is the <u>point</u>:  courts are protective of such individuals with respect to depositions, and yet Plaintiffs have been and continue to be unreasonable in refusing to agree to reasonable parameters with respect to Mr. Haldeman's deposition.  Plaintiffs have not, for example, pointed to anything produced from Mr. Haldeman's e-mail files as a justification for deposing him.

As to the second purported justification (asserted entitlement to "question" Mr. Haldeman on "all of the <u>Gartenberg</u> factors"), examination of the <u>Gartenberg</u> factors shows that there is no possible basis for a deposition of Mr. Haldeman that is seven hours in length, and unlimited in subject matter:

(a) <u>The profitability of the mutual funds at issue</u>.  Plaintiffs already have conducted extensive discovery on this topic.  They deposed at length Putnam personnel knowledgeable about how the profitability of the mutual funds at issue is determined and reported to the Trustees.  They also obtained documents from Lipper, Inc., the entity that compares the profitability of different mutual fund complexes, and deposed a senior Lipper officer.

(b) <u>Fall-out benefits, if any, to the adviser</u>.  Plaintiffs allege that certain Putnam brokerage arrangements for trading of mutual fund portfolio securities are a "fall-out benefit" to Putnam.  (<u>See</u> Second Am. Compl. at ¶¶ 93-98) (making allegations about how Putnam benefits from the research it acquires from third parties in connection with portfolio trades (also known as "soft dollars")).  Plaintiffs have been given ample opportunity to explore the nature of Putnam's brokerage and trading practices -- <u>e.g.</u>, they have deposed Putnam's Head of Trading.  If Plaintiffs want to learn even more about the nature of those practices, they should so indicate, either via a further Rule 30(b)(6) notice or otherwise.

(c) <u>Economies of scale realized as the funds at issue have grown</u>.  The funds at issue have not seen any material growth in the time period at issue, which begins in May 2003, one year before this suit was filed.  To the extent Plaintiffs want to make arguments about economies of scale involving <u>earlier</u> periods of time, Mr. Haldeman did not join Putnam until October 2002, and did not become Putnam's President and CEO until December 2003.

    (d)    <u>Fees charged by other funds</u>.  Plaintiffs have been provided extensive information about Putnam fees already (<u>e.g.</u>, more than ten years of black books, and tens of thousands of pages of black book back-up), and Mr. Haldeman is obviously not a vital source for information about fees charged by Putnam <u>competitors</u>.

    (e)    <u>Independence and conscientiousness of independent directors</u>.  Plaintiffs have deposed two of Putnam's independent Trustees, and are scheduled to depose two more in coming weeks.  Moreover, Putnam has produced volumes upon volumes of information relating to the Trustee's review of Putnam, going back more than ten years.

    (f)    <u>The nature and quality of the services provided by the investment adviser</u>.  Plaintiffs presumably intend to compare Putnam's performance and shareholder services with those of other mutual fund advisors.  But such comparison would presumably be performed largely on the basis of macro-level facts, <u>e.g.</u>, performance ratings and service awards.  On this issue, as on the others, Plaintiffs have not justified a seven hour, and otherwise unrestricted, deposition of Mr. Haldeman.

In addition, Plaintiffs have taken fourteen depositions, and they can still take six more depositions; this means that, whatever information Plaintiffs still claim to need, they still have multiple additional depositions as potential avenues to obtain that information.

### C.  Plaintiffs' Own Conduct Shows Vividly That A Deposition Of Mr. Haldeman Is In No Way "Necessary"

Any assertion by Plaintiffs' counsel that they "need" Mr. Haldeman's deposition is belied by their prior representations to this Court.

In mid-January, Plaintiffs filed their motion seeking leave to conduct <u>twenty-seven</u> depositions in the case, and the brief in support of that motion stated the rationale for each deposition.  (<u>See</u> Pls.' Mem. in Supp. of Mot. to Enlarge the Dep. Limit (Jan. 12, 2007) (Docket No. 107).)

The first page of Plaintiffs' brief stated that they "have completed or scheduled eleven [of those twenty-seven] depositions, but to prepare their case for trial need approximately sixteen more witnesses."  <u>Id.</u> at 1.

6

<u>Mr. Haldeman was not one of those "sixteen more witnesses."</u>

Further, Plaintiffs did not notice Mr. Haldeman's deposition until February 15, at which time the discovery deadline was February 28. See <u>Thomas</u>, 48 F.3d at 484 (considering "the fact that [the plaintiff] waited until the eleventh hour to request the deposition.")

In light of these facts, it is clear that Mr. Haldeman's deposition is -- at best -- an afterthought, and Plaintiffs cannot credibly argue that they have a substantial need for the deposition.

## II.   NONETHELESS, MOVANTS SEEK ONLY THAT ANY DEPOSITION OF MR. HALDEMAN BE SUBJECT TO REASONABLE PARAMETERS

As shown already, it would be eminently appropriate in the present circumstances for this Court to prohibit the deposition of Mr. Haldeman altogether. Nonetheless, only the following more moderate relief is requested:

(1)   That the Court require Plaintiffs to identify the information they seek through deposition of Mr. Haldeman, and explain why they cannot obtain that information by some other means; and

(2)   <u>If</u> the Court is satisfied with this showing, that the Court limit the deposition of Mr. Haldeman to subject areas that Plaintiffs have demonstrated to be warranted, and to a time period that is appropriate in light of that showing, <u>e.g.</u>, three hours.

An order of this nature is authorized by Fed. R. Civ. P. 26, and is well within this Court's general case-management powers.

Further, such an order would prevent the kind of wasteful and inappropriate approach that Plaintiffs have taken with other witnesses. For example, Plaintiffs kept the Chairman of the funds' Board, Mr. John Hill, in deposition from 9:33 a.m. until <u>7:03 p.m.</u>, in part as a result of wasting substantial time harassing Mr. Hill with inefficient and frivolous questions. Much of the entire morning session was occupied with questions concerning trustee independence, including a lengthy series of argumentative questions about Mr. Hill's brief

7

employment with Marsh & McLennan in the early 1980s -- more than twenty-five years ago. Plaintiffs' empty line of questioning about trustee independence then actually continued into the afternoon, and, all told, it occupies much of pages 58 through 196 of the 419-page deposition transcript. Those 138 pages of deposition transcript vividly show Plaintiffs' willingness to cavalierly take the time of responsible and busy individuals, and it also vividly highlights the emptiness of Plaintiffs' case: Plaintiffs have no meritorious argument about trustee independence, and yet they spent much of an entire day with Mr. Hill on that topic.

### III. THIS REQUEST FOR A REASONABLE APPROACH WITH RESPECT TO ANY DEPOSITION OF MR. HALDEMAN IS SUPPORTED BY TWO ADDITIONAL FACTORS

Defendants and Mr. Haldeman call the Court's attention to two additional factors, which further support the moderate relief described in Section II:

#### A. As A General Matter, Section 36(b) Litigation Has Proven To Lack Merit

Over time, the courts have seen wave after wave of Section 36(b) lawsuits, and yet no Section 36(b) Plaintiff has ever prevailed on the merits.

The current wave of 36(b) cases is faring no better. For example:

- Last year, a Section 36(b) case against American Century was dismissed voluntarily on the eve of trial, after years of litigation, and strident accusations very similar to those here. The parties filed a joint stipulation of dismissal that did not reference, and was not filed in support of, any settlement. The stipulation stated, in part: "Plaintiffs have concluded that, if the case were tried, the Court would likely determine that the compensation . . . was fair and reasonable." Stipulation of Dismissal at 4-5, Baker v. Am. Cent. Inv. Mgmt, Inc., 04-cv-4039 (W.D. Mo. July 31, 2006) (Docket No. 282) (Exhibit E to Defendants' and PAC's opposition to Plaintiffs' motion to compel with respect to institutional issues (Docket No. 100, filed under seal)).

- Last month, a Section 36(b) case against mutual fund advisor Harris Associates was dismissed, in its entirety, on summary judgment. Jones, et al. v. Harris Assocs., L.P., 04-cv-8305 (N.D. Ill. Feb. 27, 2007) (attached hereto as Exhibit F). Among other aspects of the decision, the court rejected plaintiffs' arguments based upon lower institutional fees, "[e]ven assuming for the mere sake of comparison that the services Harris's institutional clients received were indistinguishable from those the funds received." The court reasoned that the fees on the funds at issue fell between what

8

- some institutional clients paid and what some more expensive non-Harris mutual funds paid, and were therefore within a "range of prices that investors were therefore willing to pay," and so could not possibly be "so disproportionate to the value of services . . . that they could not have been the product of arms-length bargaining." Id. at 16-18.  (Year after year, Putnam's fees, have been well within the range of fees charged by its competition.)

- Last week, a Section 36(b) case against Franklin Templeton was dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  The court found the 53-page complaint's allegations about poor performance and "above-market fees" inadequate, against a standard that the court described as follows:  "In general, a violation of § 36(b) occurs where the advisor or its affiliate received a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and does not reflect the product of arms-length bargaining." In re Franklin Mut. Funds Fee Litig., 04-cv-00982, at 10 (D.N.J.  March 13, 2007) (attached hereto as Exhibit G).

### B.    The Plaintiffs Here Are Utterly Disengaged, And Cannot Be Bothered To Fulfill Minimal Discovery Obligations

Like other Section 36(b) suits, the suit at bar is a hollow, lawyer-driven lawsuit -- as vividly illustrated recently in two ways.

**First**, on January 12, 2007, Plaintiffs' counsel filed their motion for leave to take twenty-seven depositions, and in violation of L.R. 26.2(B), the motion was not signed by the Plaintiffs themselves.  When Defendants pointed this out in their opposition, Plaintiffs' counsel submitted a reply attaching "certifications" signed by the Plaintiffs, and, at a minimum, the reply strongly suggested that the certifications were signed in connection with the extra-deposition motion, by Plaintiffs who -- at the time they signed the certifications -- were knowledgeable about that motion.[3]  As Defendants discovered the very next week during the Plaintiffs'

---

[3]   Below is the relevant portion of Plaintiffs' Reply, including Plaintiffs' argument headings:
*(cont'd)*

9

depositions, that was simply not true. In fact, Plaintiffs signed the "certifications" as long ago as 200<u>5</u>, Plaintiffs did not understand what the certifications meant, and Plaintiffs knew <u>nothing</u> about the extra-deposition motion. Two business days after Defendants disclosed this issue to the Court, Plaintiffs' counsel withdrew their extra-depositions motion.[4]

        **Second**, three of the four Plaintiffs refused to travel to Boston to be deposed in this matter, citing health issues, and Defendants were forced to take their depositions in St. Louis, Missouri. During those St. Louis depositions (which took place in February 2007) it was revealed that those three Plaintiffs had recently taken substantial trips:

    (a)    Mr. Vaughn was healthy enough in November 2006 to take a five hour drive to a vacation spot, and then a five hour drive back. He admitted that no doctor has advised him against traveling. (The relevant testimony is attached as Exhibit H.)

    (b)    Mr. Kalbfleish was healthy enough in September 2006 to fly to San Diego and back. (The relevant testimony is attached as Exhibit I.)

---

*(cont'd from previous page)*

> "II.    ARGUMENT
>
>     **A. The Plaintiffs Consent to the Filing of the Motion to Expand the Twenty Deposition Limit, and Have Completed the Necessary Local Rule 26.2(B) Certifications.**
>
>     In its Opposition, Putnam contends that the Plaintiffs' Motion should be denied because the Plaintiffs have not complied with LR 26.2(B). Putnam also gratuitously asserts that this case is 'driven' by the desires of Plaintiffs' counsel without regard to the wishes of the individual Plaintiffs. To the contrary, each Plaintiff in this action is aware of the ongoing progress of this litigation, <u>including discovery</u>, and has consented to the filing of the Motion to Expand the Twenty Deposition Limit by completing a certification. The certification for each Plaintiff is attached to this memorandum as Exhibit A."

<u>See</u> Pls.' Confidential Reply Mem. in Supp. of Mot. to Expand the Twenty Dep. Limit at 1 (Feb. 8, 2007) (Docket No. 117) (emphasis in original).

[4]    This issue is fully addressed in Defendants' Surreply in Opposition to Plaintiffs' Motion for Leave to Take Additional Depositions (Feb. 20, 2007) (Docket No. 120).

      (c)      Last summer, Mr. Hathaway drove more than 900 miles each way to visit his wife's brother in Pennsylvania.  (The relevant testimony is attached as Exhibit J.)

Plaintiffs also know virtually nothing about the <u>substance</u> of this case:  for example, Mrs. Hathaway thinks the case is about Putnam charging more to her than to fund shareholders in Pennsylvania. (<u>See</u> Myrtle Hathaway Dep. 51-53, Feb. 12, 2007 (relevant testimony attached at Exhibit K).)  Defendants believe that Plaintiffs' lack of knowledge is extremely important, but for present purposes, Defendants believe it is enough to point out that Plaintiffs do not <u>care</u> about the case, and cannot be bothered to fulfill <u>minimal</u> litigation obligations -- even as their lawyers press for unending discovery from Putnam, and now press for a seven-hour deposition of Putnam's President and CEO.

### **CONCLUSION**

For the foregoing reasons, Defendants and Mr. Haldman respectfully request:

(1)     That the Court require Plaintiffs to identify the information they seek through deposition of Mr. Haldeman, and explain why they cannot obtain that information by some other means; and

2)     <u>If</u> the Court is satisfied with Plaintiffs' showing, that the Court limit the deposition of Mr. Haldeman to subject areas that Plaintiffs have demonstrated to be warranted, and to a time period that is appropriate in light of that showing, <u>e.g.</u>, three hours.

A proposed order is Exhibit 1 to the accompanying motion.

11

| | |
|---|---|
| Dated: March 27, 2007<br>Boston, Massachusetts | Respectfully submitted,<br><br> /s/ James R. Carroll<br>James R. Carroll (BBO #554426)<br>Peter Simshauser (BBO #665153)<br>David S. Clancy (BBO #636031)<br>Scott T. Lashway (BBO #655268)<br>SKADDEN, ARPS, SLATE,<br> MEAGHER & FLOM LLP<br>One Beacon Street<br>Boston, Massachusetts  02108<br>(617) 573-4800<br>jcarroll@skadden.com<br>psimshau@skadden.com<br>dclancy@skadden.com<br>slashway@skadden.com<br><br>Counsel for Defendants<br>Putnam Investment Management,<br>LLC and Putnam Retail Management<br>Limited Partnership, and Charles Haldeman |

## Certificate Of Service

I, Scott T. Lashway, hereby certify that on March 27, 2007, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 27, 2007.

| | |
|---|---|
| Dated: March 27, 2007 | /s/ Scott T. Lashway<br>Scott T. Lashway |