# EXHIBIT G

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

**In re FRANKLIN MUTUAL FUNDS FEE
LITIGATION**

MASTER FILE: 04-CV-982 (WJM)

**OPINION**

Patrick L. Rocco
Shalov Stone & Bonner LLP
163 Madison Avenue
P.O. Box 1277
Morristown, New Jersey 07962

Jerome M. Congress
Janine L. Pollack
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza
New York, New York 10119

*(Attorneys for Plaintiffs)*

Gregory J. Hindy
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07101

Daniel A. Pollack
Martin I. Kaminsky
Edward T. McDermott
Anthony Zaccaria
Pollack & Kaminsky
114 West 47th Street
New York, New York 10036

*(Attorney for Defendants)*

**MARTINI, U.S.D.J.:**

     This matter comes before the Court on Defendants' motion to dismiss Plaintiffs' Second

Amended Derivative Complaint for failure to state a claim under Federal Rule of Civil Procedure

12(b)(6).  For the following reasons, Defendants' motion is **GRANTED** and Plaintiffs' Second

Amended Derivative Complaint is **DISMISSED WITH PREJUDICE**.

## BACKGROUND

For purposes of the present motion, it is necessary to provide some background regarding

this matter.   On October 4, 2004, three shareholders of three Franklin and Templeton mutual

funds filed a Consolidated Amended Complaint (the "Class Action Complaint" or "C.A.C.").

The suit was brought on behalf of all investors owning shares in 103 Franklin and Templeton

Mutual Funds between March 2, 1999 to November 17, 2003.[1]  The Class Action Complaint

named as defendants Franklin Resources, Inc., which is the parent company of all the defendants,

the funds' investment advisors and distributors, and the funds' directors, officers, and trustees.

Also named as nominal defendants were the funds themselves.

The gravamen of the Class Action Complaint was that the defendants engaged in a

kickback scheme with securities brokers that benefitted everyone involved but the funds and their

shareholders.  *See generally In re Franklin Mut. Funds*, 388 F. Supp. 2d 451, 457 (D.N.J. 2005).

Essentially, the plaintiffs claimed that the defendants made undisclosed payments to brokers to

encourage them to push the funds onto unsuspecting investors.   Under agreements known as

"shelf-space arrangements," the brokers would give the funds priority placement when

encouraging investors to invest in mutual funds.   Plaintiffs claimed this led to more people

investing in the funds, causing the funds' net asset value to grow.   As the net asset value of the

_____

[1]Three individual shareholders initially filed separate complaints in this matter.  Plaintiff
Stephen R. Alexander IRA filed its initial complaint on March 2, 2004.  Plaintiff Frank Tricarico
filed his initial complaint on March 4, 2004 and plaintiff Cathy Wilcox filed her initial complaint
on May 12, 2004.  The Court consolidated these matters on June 29, 2004.  The plaintiffs then
filed their Class Action Complaint on October 4, 2004.

funds grew, the defendants began collecting greater compensation because they charged the funds fees as a percentage of net asset value. As the defendants collected greater compensation they, in turn, continued making payments to brokerage firms to induce brokers to steer more investors into the funds. As this circle continued, and the Funds expanded, the brokers and the defendants reaped the pecuniary rewards while the investors were left owning shares in ever-larger, less dynamic mutual funds laden with excessive fees. The plaintiffs also claimed that this scheme directly harmed investors because it reduced the funds' net asset value per share, decreasing the amount by which each shareholder was entitled to redeem his or her shares.

The Class Action Complaint contained ten counts. Only Counts Three through Four and Seven through Ten, though, are relevant to the motion presently before the Court. Count Three purported to assert a class action claim under § 36(b) of the Investment Company Act of 1940 (the "ICA"), 15 U.S.C. §§ 80a-35(b). It alleged that the Funds' investment advisors and distributors breached their fiduciary duty to the Funds by engaging in the above-mentioned kickback scheme. Count Four, which relied on Count Three as a predicate for liability, claimed that Franklin Resources Inc. was liable under § 48(a) of the ICA, 15 U.S.C. § 80a-47(a), for causing the funds' investment advisors and distributors to violate § 36(b). Finally, Counts Seven through Ten purported to assert various state law claims against the defendants.

On September 9, 2005, this Court dismissed all ten counts of the Class Action Complaint. *See In re Franklin Mut. Funds*, 388 F. Supp. 2d 451. As to Counts Three and Four, the Court dismissed them because a § 36(b) claim may only be maintained derivatively and not on behalf of a class. *Id.* at 467-69. The Court, though, granted the plaintiffs an opportunity to replead those counts derivatively. *Id.* at 474. As to the plaintiffs' state law claims in Counts Seven

3

through Ten, the Court dismissed them as preempted under the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f). *Id.* at 471-73.

In response to our invitation to replead Counts Three and Four derivatively, the plaintiffs filed a Second Amended Derivative Complaint (the "Derivative Complaint" or "D.C.") on March 10, 2006. The Derivative Complaint is now brought by seven plaintiffs ("Plaintiffs") on behalf of twelve Franklin and Templeton Mutual Funds (the "Franklin Fund(s)" or "Fund(s)") in which they are shareholders.[2] (D.C. ¶¶ 12-18.) The defendants in the Derivative Complaint are: (1) Franklin Resources, Inc.; (2) the Funds' investment advisors (the "Investment Advisor Defendants"); and (3) the Funds' distributors and underwriters (the "Distributor Defendants") (collectively, the "Defendants"). (*Id.* ¶¶ 19-31.). The Derivative Complaint contains two counts. Count One attempts to allege a derivative § 36(b) claim and Count Two attempts to assert a derivative § 48(a) claim.

The Derivative Complaint differs substantially from the Class Action Complaint. As will be discussed below, Plaintiffs now attempt to assert a traditional "*Gartenberg*-style" action. The gravamen of their Derivative Complaint is that the Investment Advisor and Distributor Defendants charged the Funds excessive fees that were grossly disproportionate to the value of the services they provided, and were not within the bounds of what would have been negotiated at arm's-length. (*Id.* ¶¶ 1-4.) The fees primarily at issue here are Investment Advisor Fees and "Rule 12b-1 Fees." (*Id.* ¶¶ 3-4, 34-38.) The Investment Advisor Defendants received

---

[2]These funds are the Mutual Beacon Fund, Mutual Shares Fund, Mutual European Fund, Mutual Discovery Fund, Templeton World Fund, Templeton Foreign Fund, Templeton Growth Fund, Franklin U.S. Government Securities Fund, Franklin AGE High Income Fund, Franklin DynaTech Series Fund, Franklin Small Cap Growth II Fund, and the Franklin Blue Chip Fund.

Investment Advisor Fees, while the Distributor Defendants received Rule 12b-1 Fees. (*Id.* ¶ 35.) Both fees are calculated as a percentage of assets under management. (*Id.* ¶¶ 34-35.) Therefore, the dollar amount of such fees increase as the size of the Fund grows. (*Id.*)

Essentially, Plaintiffs claim that Defendants' fees were excessive for two reasons. First, Defendants failed to pass onto the Funds the benefits of "economies of scale." (*Id.* ¶¶ 2-4, 43-44.) Open-ended mutual funds, such as the Franklin Funds, can experience economies of scale. (*Id.* ¶ 43.) Because of economies of scale, it does not cost more on a per share basis to manage additional assets in a growing mutual fund. (*See id.* ¶ 44.) For instance, many of the costs, such as research costs, remain fixed regardless of the amount of assets in a given fund. (*See id.*) Therefore, the cost of maintaining a shareholder's account is typically the same for all shareholders, regardless of the relative size of their accounts. (*See id.*) Here, Plaintiffs claim that the Funds' assets grew dramatically. (*Id.* ¶ 41.) As a result, this created substantial economies of scale. (*Id.* ¶ 42-45.) Plaintiffs allege, however, that Defendants never passed along the benefits of those economies of scale by lowering their fees or providing additional services.

Plaintiffs' second explanation for the excessive fees mirrors their allegations in the Class Action Complaint. They claim that the kickback scheme, as described above, harmed the Funds because it increased the Defendants' fees while not resulting in the Funds receiving any additional services. (*Id.* ¶¶ 5, 59, 64, 83, 87, 91.) As such, Plaintiffs claim that Defendants received "something for nothing." (*Id.* ¶ 5, 64.)

Plaintiffs further allege that the board of directors (the "Directors") of the Funds failed to exercise due care when approving the Rule 12b-1 Fees paid to Defendants. Plaintiffs claim that the uninformed adoption and renewal of these distribution agreements resulted in the charging of

Rule 12b-1 fees that did not benefit the Funds. (*Id.* ¶ 97.) Moreover, Plaintiffs allege that the Directors failed to obtain the information necessary to evaluate the use of Rule 12b-1 Fees for the Investment Advisor and Distributor Defendants' shelf-space arrangements. (*Id.* ¶ 98.) Plaintiffs also allege that the independent Directors were actually controlled by the Investment Advisor Defendants. (*Id.* ¶¶ 104-107.) Plaintiffs also claim that, because of various professional and social relationships, the independent Directors had no incentive to question the actions of the non-independent Directors. (*Id.* ¶¶ 109-110.)

In lieu of answering, Defendants filed a motion to dismiss Plaintiffs' Derivative Complaint under Rule 12(b)(6) for failure to state a claim. Plaintiffs oppose this motion and argue that their Derivative Complaint satisfies the standard for pleading claims under §§ 36(b) and 48(a). Defendants' motion is now before the Court.

## DISCUSSION

### I.    Standard of Review

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 430 F.3d 478, 483 (3d Cir. 1998). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based on those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any

set of facts which could prove consistent with the allegations," a court may dismiss a complaint

for failure to state a claim. *Hirshon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Zynn v.

O'Donnell*, 688 F.2d 940, 941 (3d Cir. 1982).

## II.    *In re Lord Abbett Mutual Funds Fee Litigation*

Before addressing whether Plaintiffs' Derivative Complaint states a claim under §§ 36(b)

and 48(a), the Court shall address a preliminary question.  Recently, in a case virtually identical

to this one, the Court held that preemption of one count of a class action complaint under SLUSA

requires dismissal of the entire class action. *In re Lord Abbett Mut. Fund. Fee Litig.*, 463 F.

Supp. 2d 505 (D.N.J. 2006) (hereinafter "*Lord Abbett*").  The Court based this ruling on: (1) the

statutory text of SLUSA; (2) the Third Circuit's decision in *Rowinski v. Salomon Smith Barney*,

398 F.3d 294 (3d Cir. 2005); (3) recent Supreme Court precedent construing SLUSA; and (4) the

lack of any legislative intent to the contrary.  Since this decision, two other Courts have applied

our holding in other securities cases. *See Superior Partners v. Chang*, 2007 U.S. Dist. LEXIS

1457, at *17-21 (S.D. Tex. Jan. 8, 2007); *Siepel v. Bank of Am., N.A.*, 2006 U.S. Dist. LEXIS

93602, at *36 n.11. (E.D. Mo. Dec. 27, 2006); *but see In re Am. Mut. Funds Fee Litig.*, No. 04-

5593, 2007 U.S. Dist. LEXIS 8276 (C.D. Ca. Jan. 18, 2007).

After the parties concluded their briefing on Defendants' motion to dismiss, the Court

asked them to discuss the applicability of the *Lord Abbett* decision to the instant matter.[3]  During

oral argument, Plaintiffs conceded that our *Lord Abbett* decision is factually "on all fours" with

this case. (Tr. of Hearing, 1/30/2007, at p. 6.)  In light of this concession, the Court shall apply

---

[3]The Defendants requested, and the Court granted, leave to supplement their motion to dismiss to rely on the holding in *Lord Abbett*. (Tr. of Hearing, 1/30/07, at p. 5-6.)

the *Lord Abbett* decision and dismiss the instant matter in its entirety. As explained earlier, Plaintiffs originally brought this case as a class action. Furthermore, the Court previously dismissed Counts Seven through Ten of the Class Action Complaint under SLUSA. *In re Franklin Mut. Funds*, 388 F. Supp. 2d at 471-73. Therefore, dismissal of the entire class action was appropriate. As such, the Court shall vacate that portion of its previous opinion granting Plaintiffs leave to replead their §§ 36(b) and 48(a) claims derivatively and, instead, dismiss this entire matter as preempted by SLUSA.

However, even if this matter were not subject to dismissal for the reasons articulated in *Lord Abbett*, Plaintiffs nevertheless fail to state a claim under either § 36(b) or § 48(a) of the ICA. The following explains why.

### III.    Section 36(b) of the Investment Company Act

Count One of the Derivative Complaint attempts to allege a claim under § 36(b) of the ICA. Defendants argue that Plaintiffs fail to state a claim under § 36(b) because they do not allege any facts which, if proved, would establish a breach of fiduciary duty within the relevant time period for recovering damages under § 36(b). In response, Plaintiffs argue that the Derivative Complaint fully satisfies the pleading requirements for a § 36(b) claim. Because the Court finds that Plaintiffs fail to state a claim under § 36(b), Count One is dismissed with prejudice.

Congress enacted the ICA in 1940 to address "its concern with 'the potential for abuse inherent in the structure of investment companies.'" *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 536 (1984). Because a mutual fund is usually created and managed by an organization known as an investment advisor, and the investment advisor normally supervises the daily

operation of the fund and selects affiliated persons to serve on the company's board of directors,
Congress realized that "the relationship between investment advisors and mutual funds is fraught
with potential conflicts of interest." *Id.* To minimize the impact of such conflicts, Congress
promulgated a statutory scheme that regulates the transactions between a fund and its advisors,
limits the inter-relationship between the board of directors and the fund's advisors, and requires
agreements for investment advice to be reduced to a written contract and approved by the
directors and shareholders of the fund. *Id.* at 536-537 (citations omitted).

    After these initial measures proved insufficient in regulating fee arrangements for
investment advice, Congress amended the ICA in 1970 to strengthen the judicial oversight of
such arrangements. *Id.* at 539. In amending the ICA, Congress imposed a "fiduciary duty" on
investment advisors and their affiliates and permitted either the Securities Exchange Commission
or a shareholder to commence an action on the grounds that the mutual fund's fees constitute a
"breach of fiduciary duty." *Id.* (citations omitted). This fiduciary duty was codified in § 36(b) of
the ICA. In its present incarnation, § 36(b) provides:

> An action may be brought under this subsection ... by a security
> holder of such registered investment company on behalf of such
> company, against such investment advisor, or any affiliated person of
> such investment adviser ... for breach of fiduciary duty in respect of
> such compensation or payments paid by such registered investment
> company or by the security holders thereof to such investment advisor
> or person.

In sum, § 36(b) provides that "investment company advisors owe shareholders in investment
companies a fiduciary duty with respect to determining and receiving their advisory fees." *Green
v. Fund Asset Mgmt., L.P.*, 286 F.3d 682, 685 (3d Cir. 2002). This fiduciary duty has also been

read to apply to the payment of Rule 12b-1 Fees. *Meyer v. Oppenheimer Mgmt. Corp.*, 764 F.2d 76, 82-83 (2d Cir. 1985).

The fiduciary duty imposed by the 1970 amendment is significantly narrower than the fiduciary relationship recognized by common law. *Green*, 286 F.3d at 685. The 1970 amendments were designed "to provide a means by which the Federal courts can enforce the federally-created fiduciary duty with respect to management compensation." *Id.* Under § 36(b), the mere showing of a conflict of interest in the mutual fund arrangement is insufficient; a shareholder must allege an actual breach of fiduciary duty with respect to the compensation for services rendered. *Id.* at 684-85; *Fox*, 464 U.S. at 534. In general, a violation of § 36(b) occurs where the advisor or its affiliate received a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and does not reflect the product of arm's-length bargaining. *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982); *Green v. Fund Asset Mgmt., L.P.*, 147 F. Supp. 2d 318, 330 (D.N.J. 2001).

Furthermore, the 1970 amendments also included a number of limitations on the fiduciary duty imposed under § 36(b). *Green*, 286 F.3d at 685. Specifically, § 36(b)(3) provides: a shareholder may only sue the recipient of the fees, recovery is limited to actual damages resulting from the breach, and damages are not recoverable for any period prior to one year before the action was instituted. *Id.* (citing 15 U.S.C. § 80a-35(b)(3)). Furthermore, the plaintiff has the burden of proving a breach of fiduciary duty, which differs from the common law rule requiring a fiduciary to justify its conduct. *Id.* (citations omitted). With this backdrop in mind, we now turn to the first issue raised by the parties concerning § 36(b).

A.    **The Damages Period Under § 36(b)(3)**

10

The first issue the Court must address is the period in which Plaintiffs may recover damages under § 36(b). As mentioned before, § 36(b)(3) provides that damages are not recoverable prior to one year before the action was instituted. The parties here raise various arguments regarding the formulation of this time period.

### 1.    Plaintiffs Instituted this Action on March 10, 2006.

The parties initially dispute when Plaintiffs "instituted" this action for purposes of determining the one-year period of recovery under § 36(b)(3). Section 36(b)(3) provides that: "No award of damages shall be recoverable [under § 36(b)] for any period prior to one year before the action was instituted." 15 U.S.C. § 80a-35(b)(3). Defendants argue that this period began when Plaintiffs filed their Derivative Complaint on March 10, 2006. As such, they claim that Plaintiffs are only entitled to recover damages suffered one year prior to that date – i.e., March 10, 2005 to March 10, 2006. Plaintiffs oppose this argument. According to Plaintiffs, they instituted this action when the Stephen R. Alexander IRA filed its initial complaint in this matter on March 2, 2004. *See supra* note 1. Plaintiffs also argue, in the alternative, that even if the action did not commence on that date, their Derivative Complaint "relates back" to the Class Action Complaint for purposes of determining the one-year period. Because the Court finds that the one-year period began upon the filing of the Derivative Complaint, and Plaintiffs' Derivative Complaint does not relate back to the Class Action Complaint, Plaintiffs instituted this action on March 10, 2006.

First, the statutory text of the ICA supports Defendants' position that Plaintiffs instituted this action upon filing the Derivative Complaint. Specifically, § 36(b) provides that "[a]n action may be brought ... by a security holder of such registered investment company *on behalf* of such

company ... for breach of fiduciary duty ...." 15 U.S.C. § 80a-35(b) (emphasis added). Section 36(b)(3) then limits the recovery of damages under this section, stating that "[n]o award of damages shall be recoverable for any period prior to one year before *the action* was instituted." 15 U.S.C. § 80a-35(b)(3) (emphasis added). Reading these two provisions together, it is apparent that the one-year period for recovering damages under § 36(b) begins when a plaintiff institutes a derivative action under that section. The term "action," as used in § 36(b), clearly refers to an action brought by a security holder in a particular fund *on behalf of* that fund – i.e., a derivative action. It does not refer to a "class action" brought on behalf of all the shareholders in the fund complex. *See, e.g., In re Franklin Mut. Funds*, 388 F. Supp. 2d at 468 ("'[A] § 36(b) action is undeniably 'derivative' in the broadest sense of the word.'" (quoting *Fox*, 464 U.S. at 535 n.11)). Since this is the case, it necessarily follows that, under § 36(b)(3), the period for recovery in a suit brought *on behalf of* a fund extends one year back from the filing of the suit *on behalf of* that fund. In the instant matter, Plaintiffs did not institute a § 36(b) action *on behalf of* any Fund until they filed their Derivative Complaint on March 10, 2006. Until that date, Plaintiffs only filed a class action.

Plaintiffs' second argument, that their Derivative Complaint "relates back" to the filing of their Class Action Complaint for purposes of determining the one-year period under § 36(b)(3), is also incorrect. The relation back principle is found in Federal Rule of Civil Procedure 15(c). Essentially, it allows an amended pleading to relate back, for purposes of the statute of limitations, to the time when the original complaint was filed. Fed. R. Civ. P. 15(c). Notably, relation back is a rule of procedure. *Schach v. Ford Motor Co.*, 210 F.R.D. 522, 526 (M.D. Pa. 2002) (noting that "the Third Circuit has made clear that the question of relation back is

12

procedural...." (citing *Nelson v. County of Allegheny*, 60 F.3d 1010, 1014 (3d Cir. 1995)); *Estate*

*of Fortunato by Fortunato v. Handler*, 968 F. Supp. 963, 967 (W.D. Pa. 1996). The one-year

period under § 36(b)(3), however, is not a statute of limitations. It is a substantive limitation on

the damages a plaintiff may recover under the ICA. *Krinsk v. Fund Asset Mgmt.*, No. 85-8428,

1986 U.S. Dist. LEXIS 25691, at *11-13 (S.D.N.Y. May 9, 1986) (noting that § 36(b)(3) "places

a substantive limit on damages rather than a procedural limitation on the time within which an

action may be brought."). Therefore, the relation back principle cannot work to extend the time

limit for recovery of damages under § 36(b)(3). *See, e.g., Resolution Trust Corp. v. Olson*, 768

F. Supp. 283, 285 (D. Ariz. 1991) ("Relation back under Rule 15 does not apply when the statute

at issue defines substantive rights rather than merely limiting procedural remedies." (citation

omitted)). In fact, applying Rule 15(c) here would be inconsistent with the Rules Enabling Act,

28 U.S.C. § 2072, which mandates that the Federal Rules of Civil Procedure "shall not abridge,

enlarge, or modify any *substantive* right." (emphasis added).

Accordingly, Plaintiffs instituted this action on March 10, 2006 for purposes of

determining the period of recovery under § 36(b). Applying the one-year period to this date,

Plaintiffs may recover damages from March 10, 2005 to March 10, 2006. We will now turn to

Plaintiffs' next argument regarding this time period – namely, whether Plaintiffs may recover

damages until the end of this action.

      **2.**      **Plaintiffs May Only Recover Damages Suffered from March 10, 2005
to March 10, 2006.**

Plaintiffs next argue that § 36(b)(3) does not regulate how far into the *future* a plaintiff may recover damages. According to Plaintiffs, they are entitled to recover damages until the end of this action. The Court disagrees.

While § 36(b)(3) does not explicitly place an end date on when a plaintiff may recover damages under § 36(b), the intent and purpose of the statute clearly limits recovery to one year. Specifically, the ICA requires that a fund's investment advisory and principal underwriting contracts be approved annually by the board of directors or by majority vote of the outstanding voting securities of the fund. 15 U.S.C. §§ 80a-15(a)(2), (b)(1); 17 C.F.R. 270.15a-2. These contracts then govern the payment of investment advisory and underwriting fees, which may later be tested by a fund shareholder in an appropriate § 36(b) action. Therefore, it is clear from the ICA that the intent of § 36(b)(3) was to provide fund shareholders, along with the Securities Exchange Commission, a means for testing newly passed advisory and distribution contracts. *See Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1038 (2d Cir. 1992) (noting that the one-year period under § 36(b)(3) "is fully adequate for the § 36(b) claim since other provisions of the statute require that shareholders review and approve the subject contracts annually." (citing 15 U.S.C. § 80a-15(c))); *Brever v. Federated Equity Mgmt. Co.*, 233 F.R.D. 429, 433 (W.D. Pa. 2005) (stating that "[t]he limitations on § 36(b) actions reflect the congressional intent to establish a means by which recently awarded management contracts may be policed, tested and modified or rescinded under federal court review."). Congress also intended, by limiting recovery to one year, to curb the potential for increased costs of litigation and the abusive use of lawsuits. *Brever*, 233 F.R.D. at 433 (citing H.R. Rep. No. 1382, 91st

14

Cong., 2d Sess. 8, 38 (1970)).  Extending the right to recover damages beyond one year, therefore, would violate the text and intent of § 36(b).

Accordingly, Plaintiffs' period of recovery under § 36(b)(3) is March 10, 2005 to March 10, 2006.  We will now turn to the heart of this case – namely, whether Plaintiffs state a claim under § 36(b) of the ICA.

### B.    Failure to State a Claim Under § 36(b)

As mentioned earlier, to be found liable for a violation of § 36(b), a defendant "must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Gartenberg*, F.2d at 928 (citing *Fogel v. Chestnutt*, 668 F.2d 100, 112 (2d Cir. 1981)).  To survive a motion to dismiss a § 36(b) claim, a plaintiff must "allege ... facts pertinent to the relationship between the fees charged and the services rendered by the investment advisor [or distributor]." *Midgal*, 248 F.3d at 327; *see also Krantz v. Prudential Invs. Fund Mgmt.*, 305 F.3d 140, 143-44 (3d Cir. 2002) (adopting standard in *Midgal*).  Furthermore, Plaintiffs must plead facts showing that those violations occurred during the statutory one-year period under § 36(b)(3).  *In re Salomon Smith Barney Mut. Fund Fee Litig.*, 441 F. Supp. 2d 579, 598 (S.D.N.Y. 2006) (citing *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04-4885, 2006 U.S. Dist. LEXIS 939, at *5-8 (S.D.N.Y. Jan. 11, 2006)); *see also Green v. Nuveen Advisory Corp.*, 295 F.3d 738, 744 (7th Cir. 2002) ("Although [plaintiffs] attempt in a secondary argument to show an actual conflict resulting from a leveraging decision in 1994, this time period was ... before the Act's recoverable one-year period began.").

15

Here, Plaintiffs' Derivative Complaint fails to state a claim under § 36(b). As mentioned before, the Derivative Complaint is brought on behalf of twelve Funds. (D.C. ¶¶ 12-18.) As to ten of those Funds, the Derivative Complaint fails to allege any facts regarding the fees charged to those Funds during March 10, 2005 and March 10, 2006.[4] The only facts pled regarding those Funds' fees refer to fees paid in 2004 and earlier. Therefore, Plaintiffs fail to allege that the fees charged to these Funds were excessive during the relevant period of recovery under § 36(b)(3). Accordingly, Plaintiffs' § 36(b) claims as to these funds are dismissed.

As to the remaining two Funds, namely, the Templeton Growth Fund ("Growth Fund") and the Templeton Foreign Fund ("Foreign Fund"), the allegations fail to state a claim. Regarding those Funds' fees, the Plaintiffs allege that the Growth Fund and Foreign Fund had some of the highest fees in the industry based upon an undated website report from FundExpenses.com, last visited by Plaintiffs on March 9, 2006. (D.C. ¶ 42.) For instance, the report states that the Growth Fund ranked 18th out of 50 in terms of total fees charged to the Funds, taking in over $251.3 million in fees. (D.C. ¶ 42.) Furthermore, the same report states that the Foreign Fund ranked 24th out of 50, taking in over $213.5 million in total fees. (D.C. ¶ 42.)

Regarding the services rendered by Defendants during the relevant time period, Plaintiffs make only one allegation regarding the Growth Fund. They allege that the Growth Fund grew so large that it began to function more like an index fund, which traditionally charge lower

---

[4]Those ten funds are: Mutual European Fund, Franklin Small Cap Growth II Fund, Mutual Shares Fund, Franklin Blue Chip Fund, Franklin DynaTech Series Fund, Templeton World Fund, Franklin AGE High Income Fund, Franklin U.S. Government Securities Fund, Mutual Beacon Fund, and Mutual Discovery Fund.

management fees than actively managed funds because they require less active maintenance. (D.C. ¶¶ 74-75, 77.) Plaintiffs also make the same allegation regarding the Foreign Fund. (D.C.¶¶ 77.) However, Plaintiffs also allege that the Foreign Fund's current performance ranking is 731 of 855 relevant funds. (D.C. ¶ 70.) Plaintiffs contend that this poor performance suggests that the fees charged to the Foreign Fund were excessive in relation to the quality and nature of the services provided. (D.C. ¶¶ 70, 71.)

Plaintiffs' allegations regarding the Growth Fund and Foreign Fund are insufficient to state a claim under § 36(b). Specifically, the allegations pertaining to these Funds' resemblance to index funds does not address the actual services rendered to those Funds. Such an allegation is necessary "to show how the fees were disproportionate to th[e] relationship between fees and services." *Midgal*, 248 F.3d at 327. If plaintiffs were allowed to state a § 36(b) claim based upon such paltry allegations, then any fund that grew over time while not simultaneously lowering its fees would be subject to suit under the ICA. This cannot be allowed. *See, e.g., In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04-2567, 2006 U.S. Dist. LEXIS 1542, at *33 (S.D.N.Y. Jan. 17, 2006) ("Mere assertions that fees increased with the size of the Funds are not enough to establish that the benefits from economies of scale were not passed on to investors.") (citation omitted). It would also violate a stated intent of the drafters of the 1970 amendments, which was to "prevent the harassment of investment advisors by ill-founded or nuisance law suits, the so-called strike suit." H.R. Rep. 1382, 91st Cong., 2d Sess., 8 (1970).

Second, the allegations pertaining to the Foreign Fund's underperformance are also unavailing. The data relied upon in making this claim is undated, and therefore the Court cannot know whether it pertains to the Funds' fees during the relevant one-year period. However, even

17

assuming it was produced in 2006, its results would only cover at most 69 days of 2006, or less than one-fifth of the relevant one-year period covered by § 36(b).  As noted by one court, this poses "a serious problem" for the survival of Plaintiffs' claim.  *See AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2006 U.S. Dist. LEXIS 939, at *5-6 (noting that allegations about the financial performance of a fund for one-third of the year weakened plaintiff's case).  Furthermore, the Court is wary about attaching too much significance to a fund's financial performance.  As noted by the Fourth Circuit,

> While performance may be marginally helpful in evaluating the services which a fund offers, allegations of underperformance alone are insufficient to prove that an investment adviser's fees are excessive.  Investing is not a risk-free endeavor.  Even the most knowledgeable advisers do not always perform up to expectations, and investments themselves involve quite different magnitudes of risk.  Furthermore, investment results are themselves cyclical.  An underachieving fund one year may be an overachieving fund the next.  Accepting plaintiffs' invitation to permit discovery here because the funds under performed would make it possible for other plaintiffs to state a claim in limitless actions filed under Section 36(b).

*Midgal*, 248 F.3d at 327-28; *see also Benak v. Alliance Capial Mgmt. L.P.*, No. 01-5743, 2004 U.S. Dist. LEXIS 12231, at *27 (D.N.J. Feb. 9, 1994) (adopting *Midgal*'s proposition that underperformance, without more, is insufficient to establish excessiveness of fees).  Similarly, the Court here is not persuaded that allegations that the Foreign Fund underperformed, while simultaneously charging above-market fees, states a claim under § 36(b).

In sum, the Court finds that Plaintiffs' Derivative Complaint fails to state a claim as to any of the Funds under § 36(b).  Accordingly, Count One of Plaintiffs' Derivative Complaint is dismissed with prejudice.

**IV.    Section 48(a) of the Investment Company Act**

18

Defendants next move to dismiss Count Two of the Derivative Complaint, which attempts to state a claim under § 48(a) of the ICA. This section provides:

> It shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this title or any rule, regulation, or order thereunder.

15 U.S.C. § 80a-47(a). Thus, liability under § 48(a) is predicated upon a violation of another ICA provision. Because Plaintiffs failed to state a claim under § 36(b), no claim for violation of § 48(a) can be maintained.

In addition, the Court notes that numerous other courts have found that no private right of action exists under § 48(a). For instance, one court held that "the absence of rights-creating language, the existence of an alternative method of enforcement, and the existence of an explicit private right of action for another provision of the statute creates the strong presumption that Congress did not intend to create [a] private right[ ] of action under ... § 48(a)." *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 231-33 (S.D.N.Y. 2005); *see also Boyce v. AIM Mgmt. Group, Inc.*, No. 04-2587, 2006 U.S. Dist. LEXIS 71062, at *16 (S.D. Tex. Sept. 29, 2006); *In re Blackrock Mut. Funds Fee Litig.*, No. 04-164, 2006 U.S. Dist. LEXIS 13846, at **14-20 (W.D. Pa. Mar. 29, 2006); *In re Oppenheimer Funds Fee Litig.*, 419 F. Supp. 2d 593, 595 (S.D.N.Y. 2006); *In re Goldman Sachs*, 2006 U.S. Dist. LEXIS 1542, at **14-18; *Waldock v. M.J. Select Global, Ltd.*, 03-5293, 2005 U.S. Dist. LEXIS 38001, at **29-33 (N.D. Ill. Dec. 27, 2005). Although our circuit has yet to address this issue, we agree with the reasoning of these courts and adopt their conclusion that no private right of action exists under § 48(a). Accordingly, for these reasons, Defendants motion to dismiss Count Two is granted.

19

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Derivative

Complaint is **GRANTED** and the Derivative Complaint is **DISMISSED WITH PREJUDICE**.

An appropriate Order accompanies this Opinion.


March 13,  2007                              s/William J. Martini
                                             **William J. Martini, U.S.D.J.**

20