UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| JOHN J. VAUGHN, <br> GERALD A. KALBFLEISCH, and <br> MICHAEL AND MYRTLE HATHAWAY, <br> <br> Plaintiffs, <br> <br> v. <br> <br> PUTNAM INVESTMENT <br> MANAGEMENT, LLC and PUTNAM <br> RETAIL MANAGEMENT LIMITED <br> PARTNERSHIP, <br> <br> Defendants. | No: 1:04-CV-10988 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
AND HALDEMAN'S MOTION FOR PROTECTIVE ORDER
AS TO THE DEPOSITION OF TRUSTEE CHARLES HALDEMAN**

Plaintiffs, John J. Vaughn, Gerald A. Kalbfleisch, Michael Hathaway and Myrtle Hathaway ("Plaintiffs") respectfully submit this Opposition to the Motion for Protective Order as to the Deposition of Putnam President and CEO [and Trustee] Charles Haldeman (the "Motion for Protective Order") filed by Defendants Putnam Investment Management, LLC ("Putnam"), Putnam Retail Management Limited Partnership ("PRM") and Fund Trustee, Charles Haldeman ("Haldeman"). For the reasons discussed below, Plaintiffs respectfully request that the Court deny the Motion for Protective Order and require Mr. Haldeman to appear for deposition.

**I. INTRODUCTION**

The Plaintiffs seek the testimony of <u>one</u> interested Trustee: Ed Haldeman. It is undisputed that Mr. Haldeman, as Trustee, <u>personally</u> owes fiduciary duties to the Plaintiffs as

Fund shareholders.[1]  It is also undisputed that Mr. Haldeman has information that is highly relevant.  Indeed, he likely has more information than any other witness because of his position at Putnam (not to mention his position as a Trustee).  With relevance and materiality conceded, Putnam argues only that Mr. Haldeman cannot be bothered or, if bothered, must be given a road map of questioning and relieved of the local rules applicable to all other witnesses.  As the only interested Trustee whose testimony has been requested, there is no reason to treat Mr. Haldeman different than other disinterested Trustees and witnesses.  Defendants' and Haldeman's motion should be denied.

If Plaintiffs sought Mr. Haldeman's testimony because he is CEO, perhaps there would be something to debate.  Conveniently (and surprisingly) omitted from Defendants' papers, however, is this dispositive fact: Haldeman is a Trustee of the mutual funds at issue and was the Co-Head of Investments before being hired as CEO to replace the ousted Larry Lasser in the wake of Putnam's mutual fund scandals.  Like any other Putnam Trustee (including Trustees Hill, Baxter, Drucker, and Curtis), Mr. Haldeman should appear without special treatment.

Plaintiffs allege that Putnam, PRM, and their management and interested trustees (like Haldeman)[2] failed to disclose to the disinterested trustees all information required under § 15 and, as a result, the fees negotiated could not be found to be within a range that would have resulted from arms' length negotiation.  In addition, the interested trustees (especially Haldeman) had interests so thoroughly aligned with the disinterested trustees that the latter could not possibly have been, or had even the appearance, after full disclosure, of being independent.

---

[1]    Despite the fact that Haldeman is a Trustee owing duties of loyalty to Fund shareholders like Plaintiffs, he has teamed up with Putnam and PRM on this Motion.  This highlights the conflict between his loyalty to Putnam and his loyalty to the Funds and their shareholders.  Clearly, Mr. Haldeman has resolved this conflict by siding with Putnam, his employer, and not the Funds and their shareholders, his fiduciary beneficiaries.

[2]    In light of what Plaintiffs now know, Haldeman could be named a defendant.  See Moses v. Burgin, 445 F.2d 369, 376 (1st Cir. 1971)(holding that interested trustees have a duty of full disclosure to disinterested trustees).

Accordingly, all management agreements between Putnam, PRM and the Funds are void under Section 36(b) and all payments made pursuant to them are recoverable by Plaintiffs.

In Moses, 445 F.2d at 376, the First Circuit held that a fund advisor and interested trustees "were under a duty of full disclosure of information to . . . unaffiliated directors in every area where there was even a possible conflict of interest between their interests and the interests of the fund."  In Gartenberg v. Merrill Lynch Asset Management, 694 F.2d 923, 933 (2d Cir. 1982), the Second Circuit set out factors deemed important in 1982 that it used in determining whether a defendant has violated Section 36(b).  Among these factors is the "independence and conscientiousness of the trustees."  Id.  Mr. Haldeman, during much of the time pertinent to this lawsuit, was a Trustee of the Funds in this case, and previously Putnam's Co-Head of Investments - facts conveniently overlooked in the Motion for Protective Order and facts that, under Moses and Gartenberg, make his testimony among the most important factors to be examined.  As discussed below, given the liberal scope of discovery, the serious fiduciary duties owed by Putnam, PRM, and Haldeman to the Plaintiffs, and Mr. Haldeman's roles directly related to this case, the Motion for Protective Order should be denied and the Court should order that Mr. Haldeman appear for deposition.

## II.  DEFENDANTS CARRY A HEAVY BURDEN OF SHOWING GOOD CAUSE TO JUSTIFY ENTRY OF A PROTECTIVE ORDER

In derogation of the general policy in favor of liberal discovery, Federal Rule of Civil Procedure 26(c) permits the Court to enter an appropriate protective order "for good cause shown." Federal Rule of Civil Procedure, Rule 26(c)(emphasis added).  Under Rule 26(c) "the courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Gulf Oil Company v. Bernard, 452 U.S. 89, 102, n. 16 (1981).  "The moving party has a heavy burden of showing extraordinary circumstances based

on specific facts that would justify such an order." <u>Prozina Shipping Co. Ltd v. Thirty-Four Automobiles</u>, 179 F.R.D. 41, 48 (D. Mass. 1998).

### III. HALDEMAN WAS PUTNAM'S DIRECTOR OF INVESTMENTS AND IS THE ONLY INTERESTED TRUSTEE FROM WHOM PLAINTIFFS SEEK TESTIMONY

Defendants argue that because Mr. Haldeman is the CEO of Putnam, he should not be subjected to a deposition as any other witness might be. Motion for Protective Order at 2. As discussed below, courts have granted no discovery immunity to corporate CEO's. Nonetheless, Defendants do not even address the real discovery issues, choosing instead to ignore the fact that Plaintiffs seek his deposition <u>not</u> because he is CEO but because he has been a Trustee since 2004 and was previously the Co-Head of Investments.

A.  **Mr. Haldeman's Role as Trustee of the Funds**

Mr. Haldeman joined Putnam in 2002 as a Senior Managing Director and Co-Head of Investments. <u>See</u> Putnam's Board of Trustees Biographies, attached as Exhibit A, at 3. In 2003, in the wake of Putnam's mutual fund scandal, the former CEO, Larry Lasser, was fired and Mr. Haldeman was named President and Chief Executive Officer of Putnam to replace Lasser. Significantly, since 2004, Mr. Haldeman has been a member of Putnam's Board of Trustees responsible, in part, for disclosing information to the disinterested Trustees (<u>see</u> <u>Moses</u>, 445 F.2d at 376 and §36(b)), negotiating (with himself as Fund Trustee and Putnam President), and then approving the very fees at issue in this case.

Given Mr. Haldeman's role and participation in these material events, it is no surprise that both sides recognized Mr. Haldeman as an important witness from the outset of this case. For example:

1.  Nearly two years ago, in their May 25, 2005 Initial Disclosure Statement, Plaintiffs identified Mr. Haldeman as a person "believed to have knowledge of the Funds' fees

and expenses, the Funds' selection of an investment manager, the management contract and other contracts for services entered into by the Funds, services provided by Defendants to the Funds, and other matters central to this litigation.[3]  A copy of Plaintiffs' Initial Disclosure Statement is attached as Exhibit B.

2.  In defense of their discovery conduct, Defendants represented to this court that they were conducting "an expensive and time-consuming search of the e-mail of <u>key individuals</u> . . . ." D.E. #71 at 11 (emphasis added)[4].  One of the "key individuals" identified by Defendants was Mr. Haldeman (<u>Id</u>. at 12) "in light of [his] level of involvement in the annual fee-review process." <u>Id</u>. at 13.

B.  **Mr. Haldeman's Role as Co-Head of Investments**

The central issue in this case is whether Putnam, PRM, and Haldeman satisfied their § 15(c) obligations and created an atmosphere of full disclosure such that the fees charged by Putnam and PRM to the Funds could approximate the fee that would be achieved in arms-length negotiation.  <u>See</u> <u>Moses</u>, 445 F.2d at 376; <u>Gartenberg</u>, 694 F. 2d at 928.  However, given the relationship between a mutual fund and its adviser, fee negotiations are not truly arms-length.  Unlike those mutual funds, however, Putnam and its institutional clients truly engage in arms-length negotiations.  This provides a point of comparison for the fees charged to the Funds.  Mr. Haldeman, who was Putnam's Co-Head of Investments, was responsible for engaging in arms-length negotiations with institutional clients,[5] as well as reporting to the Fund Trustees.

---

[3]  "The obvious purpose of the disclosure requirement of Rule 26(a)(1)(A), Fed. R. Civ. P., is to give the opposing party information as to the identification and location of persons with knowledge so that they can be contacted in connection with the litigation, either for purposes of serving a proposed amended complaint . . . or for being interviewed or <u>for being deposed</u> or for doing background investigation." <u>Biltrite Corporation v. World Road Markings, Inc.</u>, 202 F.R.D. 359, 362 (D. Mass. 2001).

[4]  "D.E. #____" refers to this Court's docket entry numbers.

[5]  For example, Haldeman was involved in negotiations with the Alaska Permanent Fund Corporation and the Florida State Board of Administration.

Thus, as not disputed by Defendants, Mr. Haldeman's testimony is relevant to virtually all of the issues in this case, including the services provided institutional clients versus mutual funds, the fees charged institutional clients versus mutual funds, the components of such fees including directed brokerage and soft dollars, the information Putnam provides to the trustees during the annual contract review process, and the deliberations by the trustees in deciding whether to approve Putnam's advisory fee and contracts. Its relevance conceded, Defendants should not be allowed to focus solely on Mr. Haldeman's role as CEO rather than Trustee and Co-Head of Investments.

C.  **The Law Does Not Shield Mr. Haldeman's Relevant Testimony from Discovery**

Given the foregoing discussion, it is small wonder that the Motion for Protective Order avoids any discussion of Mr. Haldeman's extensive involvement with the issues relevant to this case as Trustee of the Funds and as Co-Head of Investments, and instead focuses solely on Mr. Haldeman's role as Chief Executive Officer of Putnam. Nonetheless, under the case law, Defendants can find no sanctuary in Haldeman's title as CEO in order to avoid their discovery obligations.

For example, in Travelers Rental Co. v. Ford Motor Company, 116 F.R.D. 140, 141 (D. Mass 1987) the court ordered that four "high-level executives at the Ford Motor Company," including Ford's President and its Executive Vice President of international automotive operations, appear for deposition. In doing so, the court noted that each executive had information regarding the decision-making process at issue in the case. Id. at 142. "When the motives behind corporate action are at issue, an opposing party usually has to depose those officers and employees who in fact approved and administered the particular action." Id. Similarly, the central issue in this case is whether the decision-making process in approving

Putnam's advisory fees produced management (and distribution) contracts that could have been the result of an arms-length negotiation. As Co-Head of Investments, and later as a trustee of the Funds, Mr. Haldeman was involved in that very decision-making process and has information regarding services provided to institutional versus mutual fund clients, the make-up of advisory fees and their various components, the information provided to the Fund trustees during the annual contract review process, and the process by which the trustees decided whether to approve Putnam's advisory contracts each year.

The court in Travelers Rental Co. also noted the important role of counsel in formulating discovery:

> [I]t must be borne in mind that in determining what is relevant and what discovery should be taken, considerable deference should be given to counsel's good-faith judgment as to the needs of his case.
>
> ***
>
> I do not think...that the court should be in a position of second-guessing counsel's judgment except when counsel goes beyond the pale, so to speak, and seeks discovery for which there is no factual basis, or which is taken in bad faith or for tactical advantage or solely for the purpose of harassment or oppression.

Id. at 146, 147.

As discussed above, there is ample support for Plaintiffs' request to take Mr. Haldeman's deposition. Nothing in the Motion for Protective Order suggests that in seeking this deposition Plaintiffs or their counsel are going "beyond the pale."

Defendants also complain that Plaintiffs have already taken fourteen depositions, and can schedule another six. Motion for Protective Order at 3, 4, 6. They state that as a result there is no justification for taking Mr. Haldeman's deposition as he can add nothing further and his testimony would simply be cumulative. This argument has no merit for three reasons and, like prior arguments about Plaintiffs deposing additional Trustees, should be rejected by this Court.

First, this Court has allowed Plaintiffs to take 20 depositions. Plaintiffs choose, as one of them, Haldeman.

Second, as discussed further below, the cases, including cases cited by Defendants, hold just the opposite. They often cite a failure to take previous depositions as reason to postpone the deposition of a high-level executive. See, e.g., Thomas v. International Business Machines, 48 F. 3d 478, 483 (10th Cir. 1995) (cited by Defendants) (faulting plaintiff for failing to take the depositions of any other IBM employee prior to noticing the deposition of IBM's chairman of the board). Courts, sensitive to the demands on an executive's time, prefer to see written and deposition discovery prior to the deposition of a high-ranking executive. Thus, the fact that Plaintiffs have taken extensive prior discovery supports their contention that they have subpoenaed Mr. Haldeman only after duly considering the necessity of his testimony.

Third, this Court rejected a similar "cumulative discovery" argument when it permitted, over objection, Plaintiffs to take the depositions of four of the Fund's disinterested Trustees. See Electronic Clerk's Notes dated 2/21/2007. Here, Haldeman is the only interested Trustee whose deposition has been sought by Plaintiffs. As such, and as part of the management responsible for providing § 15(c) information to the very Board of Trustees on which he sits, only he can provide the evidence sought from management. See Moses, 445 F.2d at 376, 377.

Nor can Defendants take any solace in the cases they cite in the Motion for Protective Order. None was a case involving a trustee attempting to avoid testifying about his responsibility to those to whom a fiduciary duty was owed. For example, in Thomas, the plaintiff brought an age discrimination suit claiming that her supervisors gave her undeservedly low performance evaluations in order to coerce her to resign, inflicted intentional emotional distress on her, and committed fraud and deceit in evaluating her performance. Thomas, 48 F. 3d

at 482. The plaintiff sought to take the deposition of the chairman of the board of directors of defendant IBM. Unlike this case, there was no allegation of a special duty owed by the witness to the plaintiff. The district court entered a protective order preventing the deposition of IBM's chairman only because (1) plaintiff's notice of deposition violated a local rule regarding the amount of notice required; (2) the notice sought to take the deposition locally rather than complying with the "normal procedure that the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business;" (3) plaintiff failed to take the depositions of any other IBM personnel, including the direct supervisors that conducted plaintiff's performance evaluations and rankings; (4) unlike the admission of relevance by Defendants here, IBM submitted an affidavit stating that the chairman of the board did not know plaintiff, had no information on her work evaluations, or that she even worked for IBM; and (5) plaintiff waited until the last day of the discovery period (and then requested a 10 day extension on that same day) to notice the deposition. Id. at 483.

By contrast, here, there is currently no discovery cutoff date and Plaintiffs properly noticed and set the deposition, in a timely fashion, properly set the stage for the deposition by first taking the depositions of numerous other witnesses and engaging in written discovery, and have demonstrated that Haldeman (as Defendants agree) has relevant testimony, and, significantly, personally owed duties to both the disinterested trustees and the Funds and their shareholders like Plaintiffs.

Defendants also argue that the Court should prohibit Mr. Haldeman's deposition altogether. Motion for Protective Order at 1,7. They then, however, back away from this position and "generously" offer to produce Mr. Haldeman, but under restrictions dictated by them. Defendants propose that the deposition be limited to 3 hours (less than half the time to

which Plaintiffs are entitled under the Rules), and then only if Plaintiffs first provide them with a road map for the questioning of Mr. Haldeman. Id.

Defendants' proposal rings hollow given that "[a]bsent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition." Prozina, 179 F.R.D. at 48 (quoting Motsinger v. Flynt, 119 F.R.D. 373, 378 (M.D.N.C. 1988)). Further, even in the rare case where a court determines that a party should provide a preview of its deposition topics, such preview is presented to the court *in camera*, not to the opponent. See In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation, 205 F.R.D 535, 537 (S.D. Ind. 2002).

At any rate, Defendants misunderstand the burden on a motion for protective order. It is not Plaintiffs who must justify taking Mr. Haldeman's deposition that is wholly within the permissible parameters set out by the Rules of Civil Procedure and this Court's orders. Rather, it is Defendants who carry the weighty burden of establishing "good cause" to limit Plaintiffs' legitimate discovery rights. See Federal Rule of Civil Procedure, Rule 26(c); Prozina, 179 F.R.D. at 48 (movant carries heavy burden to justify entry of protective order). See also Gulf Oil, 452 U.S. at 102, n. 16 (to resolve a motion for protective order, the "courts insist[] on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements). Plaintiffs respectfully submit that Defendants have not even addressed in one sentence the relevant issue (i.e., whether Haldeman, a Trustee, gets a pass on testimony because he is also the CEO), much less carried their burden. Thus, on both the facts and the law, Plaintiffs are justified in seeking Mr. Haldeman's deposition and the Motion for Protective Order should be denied.

## IV. THE BALANCE OF THE MOTION FOR PROTECTIVE ORDER IS SPECIOUS

Rather than disclose to this Court that Haldeman is a Trustee having personal knowledge and owing separate duties to the disinterested Trustees and the Funds and their shareholders, they chose instead to indirectly attack Plaintiffs and their counsel. All of this is mere rhetoric and opinion of defense counsel (with which Plaintiffs and their counsel disagree), and more importantly, has <u>nothing</u> to do with the issue of Haldeman's testimony.[6] Responding to these arguments, therefore, is not necessary other than to note Plaintiffs' disagreement, and to express, once again, that Defendants and Haldeman avoid the main issue - Haldeman's role as Trustee of the Funds and Co-head of Investments.

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that Defendants' and Haldeman's Motion for Protective Order be denied and that Mr. Haldeman, a Trustee of the Funds, be ordered to appear at deposition like any other Putnam Trustee.

---

[6] For example, Putnam challenges the accuracy of Plaintiffs' certifications submitted in connection with Plaintiffs' Motion to Enlarge the Deposition Limit. Motion for Protective Order at 9-10. Plaintiffs addressed this argument, entirely irrelevant here, in Plaintiffs' Status Report on Discovery Disputes ("Status Report") [D.E. # 119].

Respectfully Submitted,

JOHN J. VAUGHN, GERALD A. KALBFLEISCH, and MICHAEL HATHAWAY and MYRTLE HATHAWAY,

/s/ David E, Marder_____
David E. Marder (BBO #552485)
Lisa A. Furnald (BBO #631059)
Jonathan D. Mutch (BBO #634543)
Meghan E. Walt (BBO #658971)
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA  02199
(617) 267-2300
demarder@rkmc.com

Thomas R. Grady (admitted *pro hac vice*)
Grady & Associates
720 Fifth Avenue South
Suite 200
Naples, FL  34102

Dana Foster (admitted *pro hac vice*)
Ackerman, Link, & Sartory, P.A.
222 Lakeview Avenue, Suite 1250, Esperante
West Palm Beach, FL  33401

Dated: April 20, 2007

## CERTIFICATE OF SERVICE

      I, David E. Marder, hereby certify that this document filed through the ECF system on April 20, 2007 will be served electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those non-registered participants.

      /s/ David E. Marder
      David E. Marder
      Robins, Kaplan, Miller & Ciresi LLP
      800 Boylston Street, 25th Floor
      Boston, MA 02199
      E-mail: demarder@rkmc.com
      (617) 267-2300