# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------x
JOHN J. VAUGHN, GERALD A.
KALBFLEISCH, and MICHAEL and                :
MYRTLE HATHAWAY
                                            :
            Plaintiffs,
                                            :   Civil Action
       - against -                              No. 04-10988-GAO
                                            :
PUTNAM INVESTMENT MANAGEMENT,
LLC and PUTNAM RETAIL                       :
MANAGEMENT LIMITED PARTNERSHIP
                                            :
            Defendants.
------------------------------x

### [PROPOSED] REPLY MEMORANDUM IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AS TO THE DEPOSITION OF PUTNAM PRESIDENT AND CEO CHARLES HALDEMAN

Defendants and Charles Haldeman submit this reply in support of their motion for protective order as to the deposition of Mr. Haldeman, in order to make the following points:

**First**, Plaintiffs' Opposition reads as if the motion at issue seeks to bar Mr. Haldeman's deposition altogether. Plaintiffs state that Mr. Haldeman has duties to Putnam and to shareholders and "has resolved this conflict by siding with Putnam, his employer . . . ." (Opposition at 2.) Plaintiffs even go so far as to assert: "Defendants also argue that the Court should prohibit Mr. Haldeman's deposition altogether." (Id. at 9.) However, the moving brief is clear as day that the movants are seeking reasonable and modest <u>limitations</u> on Mr. Haldeman's duty to appear. Remarkably, for their claim that the movants seek to bar Mr. Haldeman's deposition "altogether," Plaintiffs cite page 1 of the moving brief; it unambiguously states, however:

> Under that rule, and relevant caselaw, it would be appropriate in the current circumstances for this Court to bar a deposition of Putnam President and CEO Charles Haldeman altogether. <u>Nonetheless, only the following moderate relief is requested</u>:

(1) That the Court require Plaintiffs' counsel to identify the information they seek through deposition of Mr. Haldeman, and explain why they cannot obtain that information by some other means; and

(2) *If* the Court is satisfied with this showing, that it limit the deposition to subject areas that Plaintiffs' counsel has demonstrated to be warranted, and to a time period that is appropriate in light of that showing, e.g., three hours.

(Memorandum Of Law In Support Of Motion For A Protective Order As To The Deposition Of Putnam President And CEO Charles Haldeman (hereinafter in citations, "Moving Brief") at 1 (Docket No. 123) (emphasis added).)[1]

**Second**, Plaintiffs' brief is superficial and fails to meaningfully address the motion's central arguments. The opposition consists largely of recitation of the obvious (e.g., that Mr. Haldeman is an affiliated Trustee with corresponding duties), and hollow assertions (e.g., Putnam "failed to disclose to the disinterested trustees all information required under § 15 . . ."). The moving brief, based upon the case law it cites, called for substance: identification of what information Plaintiffs need from Mr. Haldeman, and why he is the most appropriate source of that information. Plaintiffs respond with rhetoric.[2]

---

[1] Plaintiffs also cite page 7 of the moving brief, and it too states that although under governing law it would be appropriate to prohibit Mr. Haldeman's deposition, "[n]onetheless, only the following more moderate relief is requested . . . ." (Moving Brief at 7 (Docket No. 123) (emphasis added).)

[2] The suggestion that Mr. Haldeman has some inherent "duty" to appear for an unrestricted seven hour deposition is illogical. Also, in the pending 36(b) case Gallus v. Am. Express Fin. Corp., Civ. No. 04-4498, slip op. at 1-2 (Docket No. 99) (D. Minn. Nov. 10, 2005), the Robins Kaplan law firm itself, on behalf of its own trustee clients, vigorously and successfully opposed a motion to compel seeking trustee depositions in addition to two that had already been taken. The brief cited considerations of "burden" and relevance, and argued that the only Gartenberg factor "that requires discovery from the directors is . . . the independence and conscientiousness of the independent trustees." Memorandum Of Law In Support Of Motion To Quash Subpoenas, Gallus v. Am. Express Fin. Corp, Civ. No. 04-4498 (Docket No. 89) (D. Minn. Oct. 11, 2005) (attached as Exhibit 5 to the Transmittal Declaration of Peter Welsh (filed Dec. 15, 2006) (Docket No. 94); the order granting the Robins Kaplan motion is attached as Exhibit 4 to that same Declaration).

**Third**, Plaintiffs undermine their demand for seven hours with Mr. Haldeman by proclaiming that they "seek his testimony not because he is CEO but because he has been a Trustee since 2004 and was previously Co-Head of Investments." (Opposition at 4 (emphasis in original).) If Plaintiffs do not seek to depose Mr. Haldeman in his capacity as President and CEO, that makes their claim to seven unrestricted hours of Mr. Haldeman's time even more attenuated. What remains is Plaintiffs' reference to Mr. Haldeman's prior role as co-head of investments, and his subsequent role as an affiliated Trustee. But neither fact justifies subjecting him to the imposition that Plaintiffs are attempting:

    a. *Co-Head of Investments*. Plaintiffs fail to note that Mr. Haldeman held this position only from October 2002 until November 2003, meaning that if this case ended today, Mr. Haldeman would have held the position for less than thirteen percent of the time period this Court has held is relevant (May 18, 2003 to judgment). Plaintiffs do not explain what information they need from Mr. Haldeman with respect to that sliver of time, an omission that is particularly telling in light of the extensive related information that Plaintiffs already possess. For example, Plaintiffs have already taken the depositions of four investment managers of the particular funds at issue, and they are slated to take the deposition of a fifth. They also have taken the deposition of Myra Drucker, the Chairperson of the Trustees' Investment Oversight Committee, and the Trustees' Investment Process Committee. And Plaintiffs have received more than 390,000 pages of documents, including -- for 1/1/00 to 6/30/06 -- the monthly Putnam reports on investment performance to the full Board of Trustees, and additional reports to the Trustees' Investment Oversight Committees. That wealth of documentation includes a host of other investment-related material as well, including -- for example -- organizational charts encompassing Putnam's investment personnel, documents describing and discussing the funds'

investment objectives and similar matters (including public filings dating back to 1995), management methodology agreements (documents describing investment teams' policies and procedures), and trading manuals.[3]

    b. *Affiliated Trustee*. Here too, Plaintiffs fail to justify subjecting Mr. Haldeman to lengthy examination. Their sole effort to do so falls flat because it is based on a mistake of fact. Plaintiffs argue that Mr. Haldeman is "a member of Putnam's Board of Trustees responsible, in part, for disclosing information to the disinterested Trustees, . . . <u>negotiating (with himself as Fund Trustee and Putnam President), and then approving the very fees at issue in this case</u>." (Opposition at 4 (emphasis added).) This is simply wrong. As Plaintiffs should know by now, the Trustees' <u>negotiation</u> of fees occurs through the Trustees' Contract Committee, which is comprised entirely of independent Trustees. Further, under the Investment Company Act, the Trustees' <u>approval</u> of fees is by vote of the independent Trustees, not of the affiliated Trustees.[4]

---

[3]  Plaintiffs also argue that as co-head of investments, Mr. Haldeman "was responsible for engaging in arms-length negotiations with institutional clients." (Opposition at 5.) Plaintiffs already deposed the head of Putnam's institutional business, Sandra Whiston, who has worked primarily in Putnam's institutional business for nearly twenty years, and who testified extensively about negotiations with institutional clients.

 Plaintiffs also say that the motion "conveniently (and surprisingly) omit[s]" that Mr. Haldeman was once co-head of investments. The moving brief focused on Mr. Haldeman's status as Putnam's President and CEO because in the correspondence and communications preceding this motion, Plaintiffs themselves said <u>nothing</u> about Mr. Haldeman's prior service as co-head of investments.

[4]  Section 15(c) of the Investment Company Act, 15 U.S.C. § 80a-15(c), requires that "the terms of such [management] contract or agreement and any renewal thereof [be] approved by the vote of a majority of directors, <u>who are not parties to such contract or agreement or interested persons of any such party</u>" (emphasis added). Similarly, Rule 12b-1(b), 17 C.F.R. § 12b-1, requires that 12b-1 fees be made pursuant to a written plan, which among other things, must be "approved by a vote . . . of the directors who are <u>not interested persons of the [investment] company</u>" (emphasis added). Fund prospectuses, which Plaintiffs obviously have, make the process clear:

> [T]he Contract Committee reviewed the information provided by Putnam Management and other information developed with the assistance of the Board's independent counsel and independent staff. The Contract Committee reviewed and discussed key aspects of

*(cont'd)*

4

**Fourth**, Plaintiffs cite their reference to Mr. Haldeman in their May 2005 initial disclosure. Plaintiffs fail to mention, however, that, in an essentially boilerplate manner, this disclosure listed the *entire* thirteen-member Board of Trustees, and that in the entire period of time from May 2005 until February 15, 2007, Plaintiffs made no mention of any desire to depose Mr. Haldeman. And Plaintiffs say nothing -- because there is nothing they <u>can</u> say -- about why their January 2007 list of <u>twenty-seven</u> "require[d]" depositions did not even mention Mr. Haldeman, much less list his deposition as one of the 27 depositions Plaintiffs claimed to need.[5]

**Fifth**, Plaintiffs misstate the law governing this motion. The moving brief shows that courts give special scrutiny to demands for the deposition of high level corporate officials like Mr. Haldeman. Plaintiffs state that none of the cases "involv[e] a trustee attempting to avoid testifying about his responsibility to those to whom a fiduciary duty was owed" (Opposition at 8), but this vague statement seems to be premised on Plaintiffs' mistaken belief that, in his capacity as an affiliated Trustee, Mr. Haldeman is "negotiating" fees with Putnam and "approving" those fees on behalf of fund shareholders. Plaintiffs also point out that in one of the cases cited in the moving brief, <u>Thomas v. International Business Machines</u>, 48 F.3d 478, 483 (10th Cir. 1995), a variety of factors cut against the requested deposition, but, as made clear in the moving brief,

---

*(cont'd from previous page)*
    this information with all of the Independent Trustees. Upon completion of this review, the Contract Committee recommended and the Independent Trustees approved the continuance of your fund's [management] contract.

(Putnam Fund for Growth and Income, Semiannual Report on Performance and Outlook (Form N-CSR) at Putnam-Wicks 0010174 (June 27, 2005) (Putnam-Wicks 0010163 to Putnam-Wicks 0010251).)

[5]    As if they are disclosing it for the first time, Plaintiffs state that Defendants' email search plan included Mr. Haldeman as a "key" individual. But the moving brief addressed this, and explained why it is in no way inconsistent with the moderate relief herein requested. (Moving Brief at 5 (Docket No. 123).) Plaintiffs fail to respond.

5

precisely the same is true here.[6] As to the cases Plaintiffs cite, none involve the situation here, i.e., a motion seeking appropriate <u>tailoring</u> of the deposition of a President/CEO, much less in a context where the Plaintiffs have already had discovery as extensive as these have had. Plaintiffs highlight that defect in their cases by quoting one of them -- <u>Prozina</u> -- for the inapposite proposition that "[a]bsent a strong showing of good cause and extraordinary circumstances, <u>a court should not prohibit altogether the taking of a deposition</u>." (Opposition at 10 (emphasis added).)[7] (In <u>Prozina</u>, the court was considering a request for expedited discovery, and rejected the defendants' effort to limit that discovery entirely to "documentary evidence." See <u>Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles</u>, 179 F.R.D. 41, 47 (D. Mass. 1998).)

**Sixth**, Plaintiffs argue that when a court requires the plaintiff to identify topics of deposition in advance, "such preview is presented to the Court *in camera*, not to the opponent." (Opposition at 10.) For that sweeping proposition Plaintiffs cite to a single case, <u>Bridgestone/Firestone, Inc. Tires Products Liability Litigation</u>, 205 F.R.D. 535, 537 (S.D. Ind. 2002). <u>Bridgestone</u> does not purport to express its result as a general "rule," and, overall, it

---

[6] See, e.g., Moving Brief at 6-7 (Docket No. 123) (Plaintiffs' January 2007 motion specifying 27 purportedly "required" depositions failed even to mention Mr. Haldeman); id. at 9-10 (Plaintiffs know virtually nothing about this case, and have failed to discharge basic discovery obligations).

[7] Plaintiffs' other cases are also inapposite. <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 101 (1981) addressed an issue involving "communications between parties and potential class members." In <u>Travelers Rental Co., Inc. v. Ford Motor Co.</u>, 116 F.R.D. 140, 141-142 (D. Mass. 1987), which alleged that a particular incentive program was an antitrust violation, the court permitted the plaintiff to depose high-level executives only after a first motion to compel resulted in plaintiff's "agree[ment]" to "first depose five officials of Ford who were not as high on the corporate ladder . . . and then reassess its need to take the depositions" of the higher-level executives (at 141-42), only after the plaintiff then submitted a "presentation outlining the connections between the four executives and the evidence and issues in the lawsuit" (e.g., a signed memorandum showing that one of the executives had approved the challenged incentive program when he was a lower-level executive) (at 142), and only after explaining that, in that case, "the motives behind corporate action are at issue" (at 142). As a review of <u>Gartenberg</u> shows, the question here -- whether the fees at issue are grossly unreasonable -- will turn on analysis of macro-level facts, e.g., fees charged to comparable funds, not on "motives." See <u>Gartenberg v. Merrill Lynch Asset Mgmt., Inc.</u>, 694 F.2d 923 (2d Cir. 1982).

supports <u>allowance</u> of this motion. For example, in addition to requiring an advance list of topics, the court required that the deposition take place at the deponent's place of business, "imposed strict time limits on the questioning," and made clear that the court intended to be available for dispute-resolution during the course of the deposition. <u>Id.</u> at 536-37.

**Seventh**, the moving brief cited facts showing the Plaintiffs' extreme disengagement from this case, their failure to satisfy minimal discovery obligations, and the inappropriate conduct with respect to the February 8, 2007 "certifications." (Moving Brief at 9-11.) Plaintiffs declare this part of the motion "entirely irrelevant," but that is wrong. Movants refer the Court to <u>Bodner v. Oreck Direct, LLC</u>, No. 06-04756, slip op. (N.D. Ca. April 25, 2007) (attached as Exhibit A). In this recent case, the named plaintiff met his lawyers through a newspaper advertisement, which is equivalent to the situation here,[8] and that plaintiff knew very little about the substance of the case, which is just the situation here.[9] The court denied a motion for class certification, stating that "[i]t is clear from the record that plaintiff's counsel, and not plaintiff, is the driving force behind this action," and that "[s]uch a 'cart before the horse' approach to litigation is not the proper mechanism for the vindication of legal rights." <u>Id.</u> at 3.

---

[8] <u>See</u> John Vaughn Dep. at 44-45, 81-85 (Feb. 13, 2007) (Mr. Vaughn became involved in Illinois litigation against Putnam after responding to an advertisement in a newspaper; he became involved in this suit after the Illinois litigation ended, when a Robins Kaplan lawyer called <u>him</u> about suing Putnam -- and when asked how that lawyer knew his name, he said "I don't know") (relevant testimony is attached as Exhibit B); Gerald Kalbfleisch Dep. at 20-23 (Feb. 13, 2007) (Mr. Kalbfleisch became involved in litigation against Putnam after responding to an advertisement in a newspaper) (relevant testimony is attached as Exhibit C); Michael Hathaway Dep. at 5-6 (Feb. 12, 2007) (Mr. Hathaway testified that he called a lawyer in Boston, whose name he could not remember, about an issue he could not remember, and the lawyer raised the issue of "unfair practices going on . . . [at] Putnam") (relevant testimony is attached as Exhibit D); Myrtle Hathaway Dep. at 25-27 (Feb. 12, 2007) (Mrs. Hathaway claimed that she "think[s]" she initiated a conversation with an attorney about Putnam, but could not remember when she did so, who she called, or how she got his name) (relevant testimony is attached as Exhibit E).

[9] For example, Mrs. Hathaway thinks the case is about Putnam charging more to her than to fund shareholders in Pennsylvania. (<u>See</u> Myrtle Hathaway Dep. at 51-53 (Feb. 12, 2007) (relevant testimony attached to the Moving Brief at Exhibit K (Docket No. 123)).)

7

This is not a class action, but the same underlying principle -- the inappropriateness of lawyer-driven litigation with place-marker plaintiffs -- squarely applies here, and in all cases. It defies common sense for Plaintiffs' counsel to call that principle "irrelevant," particularly where it is invoked not as a basis for dismissal of a lawsuit or a class certification motion, but instead as a consideration for the Court in assessing the proper scope of discovery.

Dated:  May __, 2007
        Boston, Massachusetts

Respectfully submitted,

_____
James R. Carroll (BBO #554426)
Peter Simshauser (BBO #665153)
David S. Clancy (BBO #636031)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800
jcarroll@skadden.com
psimshau@skadden.com
dclancy@skadden.com

Counsel for Defendants
Putnam Investment Management,
LLC and Putnam Retail Management
Limited Partnership, and Charles Haldeman

### Certificate Of Service

    I, Scott T. Lashway, hereby certify that on May __, 2007, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on May __, 2007.

Dated:  May __, 2007

_____
Scott T. Lashway

8